UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANGELOS METAXAS and PERTSHIRE
INVESTMENTS LP,

          Plaintiff(s),

          v.

MARK DAVID GRAUBARD, ESQ. d/b/a M.
DAVID GRAUBARD, YESCHIEL SHIMON
"SAM" SPREI, FRANK R. SEDDIO, ESQ., and
JONATHAN RUBIN

          Defendants.

Case No. 1:25-cv-05844-AMD-PCG

## JOINT STATUS REPORT

Pursuant to the Court's Minute Order dated March 27, 2026, and entered on March 31, 2026 (the "March 27 Order"), Plaintiffs Angelos Metaxas and Pertshire Investments LP, jointly with Defendants Sam Sprei ("Sprei"), Frank Seddio, Esq. ("Seddio"), and Jonathan Rubin ("Rubin"), respectfully submit this joint status report concerning Defendants Sprei's, Seddio's, and Rubin's motions to quash Plaintiffs' subpoenas to Flagstar Bank, TD Bank, and Northfield Bank (the "Third-Party Subpoenas") (ECF Nos. 51, 53, and 54).

## I.    Background

On February 25, 2026, and pursuant to Federal Rule of Civil Procedure ("Rule") 45(a)(4), Plaintiffs notified Defendants that Plaintiffs would serve the three Third-Party Subpoenas, which request, *inter alia*, specific account and transaction records, including accounts belonging to Defendants Sprei, Seddio, and Rubin, which Plaintiffs identified through transaction records from Defendant Graubard's interest on lawyer account in which Plaintiffs' deposited their escrowed funds (the "Account Records"). Defendant Graubard's Account Records, which Plaintiffs received through third party discovery in this matter, reflect a host of transactions at the three banks to

whom the Third-Party Subpoenas are directed between Defendant Graubard's account and Defendants, entities controlled by Defendants, and/or other third parties associated with Defendants. Plaintiffs served copies of the Third-Party Subpoenas on Defendants and personally served all three banks that same day.

On March 6, 2026, Defendant Rubin filed a letter motion to quash the TD Bank Subpoena (ECF No. 51). On March 11, Defendants Sprei and Seddio filed substantially identical motions to quash all three Third-Party Subpoenas (ECF Nos. 53, 54) (together the "Motions to Quash"). On March 13, 2026 Plaintiffs filed a letter motion in response to the Motions to Quash. (ECF No. 56). As explained in the letter, Defendants did not confer with Plaintiffs before filing the Motions to Quash, as required by Rule 37(a)(1) and Section III.A.1 of this Court's Individual Practices and Rules ("Individual Rules"), and Defendants did not follow the informal-discovery-conference process required by Section III.A.2 of this Court's Individual Rules (*See* ECF No. 56). Plaintiffs therefore requested that the subpoenas be denied as improper, or if the Court considered them, denied on the merits. (*Id.*)

Following a discovery conference on March 16, 2026, the Court temporarily stayed enforcement of the Third-Party Subpoenas until March 25, 2026, to give Defendants Sprei, Seddio, and Rubin the opportunity to retain counsel and for the parties to enter a protective order which was implicated by the Motions to Quash.

Counsel for Defendants Sprei and Seddio noticed their appearances on March 18 and 19, 2026, respectively (ECF Nos. 61–64). Counsel for Defendant Rubin informed Plaintiffs on March 20, 2026, that he had been retained, and he noticed his appearance on March 24, 2026 (ECF No. 68).

The Court entered the parties' proposed protective order on March 20, 2026 (ECF No. 66).

On March 25, 2026, the parties filed a joint status report setting forth their positions on the pending Motions to Quash (*see* ECF No. 72, at 3–4). The Court discussed the pending motions during the March 27, 2026 discovery conference (the "March 27 Conference").

Between March 27 and 31, 2026, Plaintiffs corresponded and met and conferred with counsel for Defendants Sprei, Seddio, and Rubin. As detailed below, the parties were able to resolve some, but not all, of their disagreements.

## II.     The Third-Party Subpoenas

### A.     Subpoena to Flagstar Bank – No Pending Objections

Only Defendants Sprei and Seddio previously moved to quash the Third-Party Subpoena to Flagstar Bank, but counsel to both parties confirmed that their clients no longer object to any aspect of that subpoena.

Accordingly, Defendant Sprei's and Seddio's  Motions to Quash may be denied as to Flagstar Bank.

### B.     Subpoena to Northfield Bank – No Pending Objections

Only Defendants Sprei and Seddio previously moved to quash the Third-Party Subpoena directed at Northfield Bank. Defendants Seddio and Sprei no longer object to Plaintiffs' subpoena to Northfield Bank.

Accordingly,  Defendant Sprei's and Seddio's Motions to Quash may be denied as to Northfield Bank.

### C.     Subpoena to TD Bank

Only Defendants Rubin and Seddio have raised any objections to the Third-Party Subpoena to TD Bank. A copy of the subpoena to TD Bank is attached as **<u>Exhibit 1</u>**.

**1.      Defendant Rubin's Objections to the TD Bank Subpoena**

Defendant Rubin raised objections to the production of TD Bank account and transaction records pertaining only to accounts held by him personally and by Queen Equities LLC, WHP Equities LLC, and Esther Equities LLC.

Following conferrals with Plaintiffs, Defendant Rubin does not object to the production of responsive TD Bank account and transaction records from December 1, 2024, through the present concerning the accounts belonging to Queen Equities LLC and WHP Equities LLC. Plaintiffs have agreed to hold their request for account and transaction records pertaining to the account held by Esther Equities LLC, without prejudice to renewing that request following a review of other transaction records produced in discovery.

Plaintiffs and Defendant Rubin are at impasse over Plaintiffs' requests for TD Bank account and transaction records concerning Defendant Rubin's individual account(s). They are also at impasse over Plaintiffs' narrowed proposal for Request Nos. 7–8: TD Bank communications from December 2024 to present regarding any cancelled, returned, or bounced checks; any transactions deemed potentially fraudulent or suspicious by any bank; and any freezes, holds, or closures of any of Defendant Rubin's individual or corporate accounts.

**a.      Plaintiffs' Position**

**Subpoena Request Nos. 1(n) and 2 as to Defendant Rubin's Individual Account(s):**
These requests seek "Documents sufficient to show all accounts held, owned, or controlled by" Defendant Rubin, and "documents sufficient to show the account opening records, including but not limited to Documents containing the following information: a. The Account Holder; b. All Authorized Users; c. The date the account was established; d. The Account Holder's mailing address; e. Each Authorized User's mailing addresses; and f. If the account is closed, the date the account was closed."

Defendant Rubin's individual account(s) at TD Bank, where Defendant Graubard transferred substantial funds from the at-issue interest on lawyer account to accounts held by Queen Equities LLC and WHP Equities LLC, which Plaintiffs understand to be entities controlled by Defendant Rubin, are relevant to Plaintiffs' allegations that Defendant Rubin participated in and financially benefited from the conversion of Plaintiffs' escrowed funds. Indeed, at the March 27 Conference, this Court ruled that Defendants' personal account records are squarely relevant to Plaintiffs' claims and ordered Defendant Graubard to produce an even broader set of documents and information, not limited to accounts at any one bank, in response to Plaintiffs' discovery requests. *See* Plaintiffs' Request for Production No. 4 ("***Documents sufficient to identify all bank accounts held, owned, or controlled by You, Your spouse,*** if any, or any of the entities identified in response to Request No. 3 during the Relevant Period, and for each account, identify the bank in which the account is or was held, the bank address, account type, account number, date the account was opened, date the account was closed (if applicable), and all authorized users on each bank account.") and Plaintiffs' Interrogatory No. 13 ("***Identify each and every bank account held, owned, or controlled by You, Your spouse,*** if any, or any entity identified in Your response to Interrogatory No. 11 and for each bank account, identify the bank in which the account is or was held, the bank address, account type, account number, date the account was opened, date the account was closed (if applicable), and all authorized users on each bank account.") (emphasis added).

While Plaintiffs have not specifically sought in their subpoena records belonging to Defendant Rubin's spouse, whether Defendant Rubin holds any accounts at TD Bank jointly with his wife and/or children does not change the fact of his control over them. As the Court indicated

during the March 27 Conference, any confidentiality concerns are adequately addressed by the protective order to which Defendant Rubin agreed and are not grounds for limiting the subpoena.

**Subpoena Request Nos. 7(k) and 8(j):** As relevant to the parties' dispute, these requests seek "all Communications between" and "concerning" Defendant Rubin, and the two entities he controls, Queen Equities LLC and and WHP Equities LLC. Plaintiffs have offered to limit the scope of these two Requests, as they pertain to Defendant Rubin, Queen Equities LLC, and WHP Equities LLC, to all communications from December 2024 to present regarding any cancelled, returned, or bounced checks; any transactions deemed potentially fraudulent or suspicious by any bank; and any freezes, holds, or closures of any of Defendant Rubin's individual or corporate accounts for Queen Equities LLC and WHP Equities LLC. Defendant Rubin, however, declined Plaintiffs' offered compromise.

Plaintiffs seek communications regarding cancelled, returned, or bounced checks and other transactions for which TD Bank raised concern directly to Defendant Rubin or his two entities as any such communications bear directly on Plaintiffs' allegations against Defendants in this action both in terms of the unlawful conversion of their funds and Plaintiffs' abuse of process claims. Specifically, Defendant Graubard's interest on lawyer account indicates that the Defendants repeatedly engaged in check kiting and other deceptive means of moving funds between interest on lawyer accounts belonging to several attorneys who participated in the scheme to convert Plaintiffs' funds and then hide such conversion through judicial process at key points in time in the Kings County Supreme Court case captioned *Olden LLC v. Metaxas et al.*, Index No.505819/2025, (the "State Court Action") and other related litigations, likely in an effort to establish, if necessary, that Plaintiffs' and other investor funds were intact when they were not. Plaintiffs understand that these types of transactions led to the closure of Defendant Graubard's at-issue interest on lawyer

account as well as the bank accounts of certain of the Defendants and related third parties in this matter. Plaintiffs thus have a good-faith basis to inquire into comparable conduct and communications involving Defendant Rubin.

### b. Defendant Rubin's Position

Defendant Rubin maintains that he has been misidentified in this action. Plaintiffs have alleged that a "Jonathan Rubin" is a managing member of Olden LLC who directed the filing of the State Court Action and conspired to misappropriate Plaintiffs' escrow deposits. Mr. Rubin denies these allegations and maintains that he has no connection to Olden LLC, the State Court Action, or the alleged scheme. Despite extensive third-party discovery—including comprehensive records from Defendant Graubard's interest on lawyer account, subpoenaed records from Valley National Bank, and Defendant Graubard's email correspondence—Plaintiffs have not produced a single document connecting Mr. Rubin to Olden LLC, the formation of that entity, or the authorization of the State Court Action. In fact, Plaintiffs have filed certifications in the State Court action taking the opposite position - NYSCEF Docs. 223, 226, 228–245 - establishing that Co-Defendant Seddio filed the State Court Action on behalf of Co-Defendant Sprei—not Defendant Rubin.

Notwithstanding this defense, and in an effort to move discovery forward in good faith, Mr. Rubin has agreed to withdraw his objections to the production of responsive TD Bank account and transaction records from December 1, 2024, through the present for Queen Equities LLC and WHP Equities LLC, subject to the Confidentiality Order (ECF No. 66). Plaintiffs have agreed to hold in abeyance their request for records pertaining to Esther Equities LLC. Mr. Rubin does not object to Request No. 6.

The parties remain at impasse on two issues.

First, Plaintiffs seek TD Bank account and transaction records for Mr. Rubin's individual account(s). Mr. Rubin objects. Every transaction Plaintiffs have identified in support of their

claims involves corporate entity accounts—Queen Equities LLC and WHP Equities LLC—not personal accounts. Plaintiffs have not identified a single personal-account transaction relevant to their claims. The existence of a pre-existing business relationship between Mr. Rubin and his co-defendants does not entitle Plaintiffs to wholesale access to an individual's personal and family banking records. Discovery must be "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Where, as here, Plaintiffs have not established any factual predicate connecting Mr. Rubin's personal accounts to the alleged scheme, financial discovery should be staged—permitting the corporate account records to be reviewed before invading an individual's personal financial privacy. *See Peskoff v. Faber*, 230 F.R.D. 25 (D.D.C. 2005) (granting protective order for personal bank accounts in fraud and RICO claims where plaintiff's non-specific desire to "follow the money" did not outweigh privacy interests); *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (courts "should not grant discovery requests based on pure speculation that amounts to nothing more than 'fishing expedition' into actions or past wrongdoing not related to alleged claims or defenses"); *Pasternak v. Dow Kim*, 275 F.R.D. 461, 463 (S.D.N.Y. 2011) (recognizing that financial discovery should be staged and proportional). Moreover, Mr. Rubin's individual accounts may include joint accounts with his spouse and children, who are not parties to this action and whose privacy interests are entitled to independent protection.

Second, Plaintiffs seek communications from TD Bank regarding cancelled, returned, or bounced checks; potentially fraudulent or suspicious transactions; and freezes, holds, or closures of accounts (narrowed Request Nos. 7–8). Mr. Rubin objects. These categories are untethered to any allegation in the Complaint and are designed to fish for prejudicial information rather than trace the specific funds at issue. *See New Falls Corp. v. Soni*, No. CV 16-6805 (ADS)(AKT), 2020

U.S. Dist. LEXIS 94747, at *4 (E.D.N.Y. May 29, 2020) ("[t]he party seeking discovery must make a prima facie showing that the discovery sought is more than merely a fishing expedition"). Mr. Rubin did not "decline" a compromise; rather, Plaintiffs' narrowed proposal would still require production of communications regarding suspicious activity reports, account freezes, and bounced checks—categories that bear no relationship to any allegation in the Complaint against Defendant Rubin, and that are designed to generate prejudicial inferences rather than trace specific funds.

Finally, Plaintiffs' reliance on the Court's March 27 ruling regarding Defendant Graubard is misplaced. Defendant Graubard is the escrow attorney who concededly received, held, and disbursed Plaintiffs' funds from his own interest on lawyer account. His financial records are directly relevant to tracing those specific funds. Mr. Rubin is in a fundamentally different posture: he is not alleged to have held Plaintiffs' funds in any fiduciary capacity, and his misidentification defense—which Plaintiffs have not rebutted with any documentary evidence—raises a threshold question about whether he is even the correct defendant. Extending the ruling as to Defendant Graubard's accounts to Mr. Rubin's personal accounts conflates two entirely distinct fact patterns. Similarly, Plaintiffs' assertion that "Defendants repeatedly engaged in check kiting and the movement of funds between interest on lawyer accounts" describes activity in Defendant Graubard's IOLA—not any account belonging to Mr. Rubin. Plaintiffs have identified no evidence that Mr. Rubin engaged in any such conduct.

All productions by Mr. Rubin will be made subject to the Confidentiality Order (ECF No. 66). The parties are in agreement that designations under the Confidentiality Order will be made, and may be challenged, in accordance with its terms.

## 2. Defendant Seddio's Objections to the TD Bank Subpoena

Defendant Seddio has raised objections to the production of account and transaction records pertaining to TD Bank accounts held by him personally and by his law firm, Seddio & Associates, P.C..

Defendant Seddio has agreed to produce in discovery transaction records and related communications, if any, between him and the following counterparties, which Plaintiffs identified based on transaction records produced by Valley National Bank:

- 536 Holdings LLC
- Frankel
- Graubard
- King
- Montclare
- Montclare & Wachtler
- Olden LLC
- Rubin
- Sprei
- Surf 9
- Wachtler

Plaintiffs and Defendant Seddio are at impasse over whether the records sought by Plaintiffs are more appropriately sought and objected to through party discovery, and in particular with respect to Plaintiffs' Request Nos. 1-2 (documents sufficient to identify accounts held by Seddio and his firm and details about each account); Request Nos. 3–4 as to the other counterparties (Queen Equities LLC, WHP Equities LLC, Esther Equities LLC, CPE Member LLC, Olden Group

LLC, and Olden Equities LLC); Request Nos. 7–8 (communications with TD Bank); and the timing of any production by Defendant Seddio in lieu of TD Bank.

### a. Plaintiffs' Position

**Request Nos. 1(o) & (p) and 2 as to Defendant Seddio's individual and firm accounts:**

These requests seek "Documents sufficient to show all accounts held, owned, or controlled by" Defendant Seddio and his law firm, and "documents sufficient to show the account opening records," including the account holder and corresponding mailing address, authorized users and their mailing addresses, date established, and date closed.

Defendant Seddio's individual and firm accounts, including at the bank to which Defendant Graubard transferred substantial funds from the at-issue interest on lawyer account, are relevant to Plaintiffs' allegations that Defendant Seddio participated in and financially benefited from the conversion of Plaintiffs' escrowed funds and the abuse of process he engaged in in coordination with Defendants to hide that conversion . Indeed, Plaintiffs note that Defendant Graubard's interest on lawyer account records indicate that Defendant Graubard transferred $12,500 to Defendant Seddio's law firm on May 7, 2025, *two days before* the first judge assigned to the State Court Action recused herself on the eve of the hearing on the preliminary sought by Seddio on behalf of his client, and which Seddio repeatedly delayed. TD Bank records produced to date by Defendant Rubin have shown additional transactions with Defendant Seddio's law firm:

- $2,500 from Defendant Rubin's company Queen Equities LLC on December 6, 2024, *the same day* Plaintiffs' $2 million escrow deposits were transferred out of Defendant Graubard's interest on lawyer account;

- $5,000 from Defendant Rubin's company Queen Equities LLC on December 13, 2024—a week after Plaintiffs' deposited their funds with Defendant Graubard and Graubard transferred substantial funds, and possibly Plaintiffs' funds, out of his account to entities controlled by Rubin; and

- $5,000 from Defendant Rubin's company Queen Equities LLC on December 31, 2024.

Moreover, as noted in Section II(C)(1)(a) *supra*, this Court ruled at the March 27 Conference that Defendants' personal and professional account records are squarely relevant to Plaintiffs' claims and ordered Defendant Graubard to produce and even broader set of information, as it was not limited to accounts at any one bank, in response to Plaintiffs' discovery requests. *See* Plaintiffs' Request for Production No. 4 ("***Documents sufficient to identify all bank accounts held, owned, or controlled by You, Your spouse,*** if any, or any of the entities identified in response to Request No. 3 during the Relevant Period, and for each account, identify the bank in which the account is or was held, the bank address, account type, account number, date the account was opened, date the account was closed (if applicable), and all authorized users on each bank account.") and Plaintiffs' Interrogatory No. 13 ("***Identify each and every bank account held, owned, or controlled by You, Your spouse,*** if any, or any entity identified in Your response to Interrogatory No. 11 and for each bank account, identify the bank in which the account is or was held, the bank address, account type, account number, date the account was opened, date the account was closed (if applicable), and all authorized users on each bank account.") (emphasis added).

Because the accounts themselves are relevant to Plaintiffs' allegations about the misappropriation of their $2 million in escrow deposits, identifying details about each account are also relevant. Plaintiffs are entitled to know who owned the account, who was authorized to make transactions with the account, when the account was opened or closed, and for what purpose it was established (for example, if it was an interest on lawyer account).

**Subpoena Request Nos. 3 and 4**: These requests seek "Documents sufficient to show all Transactions during the Relevant Period" involving Defendant Seddio's and Seddio & Associates' accounts and the details of those transactions. Plaintiffs have identified six additional entities for whom transactions are relevant to Plaintiffs' claims and defenses: Queen Equities LLC, WHP

Equities LLC, Esther Equities LLC, CPE Member LLC, Olden Group LLC, and Olden Equities LLC—each of which Plaintiffs understand to be entities controlled by Defendants Sprei and Rubin. Defendant Seddio has not agreed to produce documents concerning his potential transactions with these entities and ***has provided no basis for this refusal***. He also declined to confirm or deny whether such transactions exist. Plaintiffs have no choice but to seek these records from TD Bank.

**Subpoena Request Nos. 7(l) and (m) and 8(k) and (l):** These requests seek "all Communications between" TD Bank and Defendant Seddio and his firm and "all Communications concerning" Defendant Seddio and his firm. Plaintiffs have offered to limit the scope of Request Nos. 7-8, as they pertain to Defendant Seddio and his firm, to all communications from December 2024 to present regarding any cancelled, returned, or bounced checks; any transactions deemed potentially fraudulent or suspicious by any bank; and any freezes, holds, or closures of any of Defendant Seddio's accounts. Defendant Seddio, however, declined Plaintiffs' offered compromise.

Plaintiffs seek communications between TD Bank and Defendant Seddio regarding cancelled, returned, or bounced checks and other transactions for which TD Bank raised concern as any such communications bear directly on Plaintiffs' allegations against Defendants in this action, both in terms of the unlawful conversion of their funds and Plaintiffs' abuse of process claims. Specifically, Defendant Graubard's interest on lawyer account indicates that Defendants repeatedly engaged in check kiting and the movement of funds between interest on lawyer accounts belonging to several attorneys at key points in time in the State Court Action and other related litigations, likely in an effort to establish, if necessary, that Plaintiffs' and other investor funds were intact when they were not. Plaintiffs understand that these types of transactions led to the closure of Defendant Graubard's at-issue interest on lawyer account as well as accounts of other Defendants and related third parties in this matter. Plaintiffs thus have a good-faith basis to inquire

into comparable communications involving Defendant Seddio and his law firm. Defendant Seddio *has provided no basis for this refusal*. He also declined to confirm or deny whether such communications exist. Plaintiffs have no choice but to seek these records from TD Bank.

Defendant Seddio has also refused to agree to produce any documents responsive to the TD Bank Subpoena on an expedited timeline in view of the distinct provisions of Rule 45 and the Court's inquiry at the March 27 Conference regarding the speed of production.

Defendant Seddio's below argument that Plaintiffs should be precluded from enforcing a duly served subpoena on his bank and instead be forced to negotiate all financial discovery from him and his firm through Rule 34 is not supported by law. *Athalonz, LLC v. Under Armour, Inc.*, No. 24 Misc. 47 (DEH), 2024 WL 1555685 (S.D.N.Y. Apr. 10, 2024) (cited by Seddio below), is inapposite because, unlike here, the proponent failed to show that the subpoena target possessed relevant information, and the subpoena target *itself* moved to quash and established that compliance would impose an undue burden *on it*. *Id.* at *3. Because Defendant Seddio refuses to produce any identifying information for certain of his accounts (Request Nos. 1–2) or any transaction records or related communications relating to transactions involving Queen Equities LLC, WHP Equities LLC, Esther Equities LLC, CPE Member LLC, Olden Group LLC, and Olden Equities LLC (Request Nos. 3–4, 7–8), such documents are not, as he contends, "available from a party." *Athalonz*, 2024 WL 1555685, at *2. And TD Bank has not moved to quash the subpoena. Instead, TD Bank stands ready to produce the documents sought in Plaintiffs' duly served February 25, 2026 subpoena

### b. Defendant Seddio's Position

As Plaintiffs note, their "Third-Party Subpoenas . . . request, *inter alia*, specific account and transaction records . . . ." Plaintiffs omit, however, that the Third-Party Subpoenas are not limited to narrow and specific requests; rather, the Third-Party Subpoenas demand, among other

things, records reflecting every transaction in every account held at the specified banks for a period of more than two years. (*See, e.g.*, Ex. 1 at 7 (requesting, *inter alia*, "Documents sufficient to show all Transactions during the Relevant Period" for any accounts associated with Defendant Seddio or his law firm). Additionally, it is apparent that Plaintiffs' Third-Party Subpoenas were not—at least with respect to Defendant Seddio—truly targeted based on Plaintiffs' review of material from "Defendant Graubard's Account Records" and "transactions at the three banks," because Defendant Seddio holds no accounts at two of the banks, yet Plaintiffs still sought records from those banks regarding Defendant Seddio and any accounts he might hold there.

Even now, Plaintiffs argue that it is necessary for them to obtain "[d]ocuments sufficient to show all accounts held, owned, or controlled by" Defendant Seddio or his law firm because such accounts are "at the bank to which Defendant Graubard transferred substantial funds from the at-issue interest on lawyer account," but they do not identify any transfers to particular accounts held by Defendant Seddio or his law firm in any amounts close to the amount of the escrow deposits or with various of the supposedly relevant individuals and entities for whom records are sought. The mere fact that Defendant Seddio or his firm also has accounts at TD Bank, a major financial institution, is not sufficient to render all private account information relevant and discoverable through third-party practice. Likewise, limited individual transactions do not provide a basis for wholesale disclosure of private bank account information. *See, e.g.*, *Reserve Solutions, Inc. v. Vernaglia*, 2006 WL 1788299, at *2 (S.D.N.Y. June 26, 2006) (quashing non-party subpoena seeking personal financial records because the subpoena was not limited to "transactions at issue in th[e] case" and any "rights to subpoena the financial records [wa]s outweighed by intrusions into [the defendant]'s privacy interests"). Plaintiffs also repeat the argument that because the Court overruled objections by Defendant Graubard, who actually had custody of and transferred the funds at issue, to requests

15

for his bank records, every other Defendant's personal and professional account records are open and available to Plaintiffs. Defendant Seddio, however, is differently situated from Defendant Graubard and granting carte blanche access to all accounts held by Defendant Seddio or his law firm is not appropriate.

Regardless, however, and contrary to representations at the last discovery conference, Defendant Seddio has not refused to produce any bank records to Plaintiffs. Defendant Seddio did refuse to provide certain records in response to improper requests, including, among other things, Plaintiffs' demands for records of any liquidable assets belonging to his spouse and information about his current legal representation in pending actions. But Defendant Seddio also responded that he *would* produce records, if any, reflecting transactions with a number of the individuals and entities listed in Plaintiffs' requests, and offered to meet and confer regarding the relevance of transactions with others. After discussions with Plaintiffs in connection with this submission, Defendant Seddio further agreed to produce records, if any, regarding transactions with additional individuals and entities based on Plaintiffs' factual representations regarding relevance. As indicated to Plaintiffs on multiple occasions, Defendant Seddio remains available to further discussions about the proper scope of Plaintiffs' expansive requests in an effort to reach agreement on relevance where possible. Even with respect to the TD Bank subpoena, Defendant Seddio only objected to requests pertaining to his bank records or those of his firm, which are reflected in requests 1(o), 1(p), 2–4 (as applied to Defendant Seddio or his firm), 7(l), 7(m), 8(k), and 8(l).

"If documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34, which governs discovery between parties, rather than subpoenaing them from a non-party witness pursuant to Rule 45." *Athalonz, LLC v. Under Armour, Inc.*, No. 24 Misc. 47 (DEH), 2024 WL 1555685, at *2 (S.D.N.Y. Apr. 10, 2024) (quoting *Fishon v. Peloton*

16

*Interactive, Inc.*, 336 F.R.D. 67, 69 (S.D.N.Y. 2020)) (internal alterations omitted). Here, Defendant Seddio has agreed to produce potentially relevant transaction records, if any, and offered to continue meeting and conferring with Plaintiffs to permit them a chance to articulate why transactions with others may be relevant as well. And where Plaintiff has articulated such a basis, Defendant Seddio has agreed to collect, review, and produce additional records should they exist. Party discovery, rather than third-party practice, would facilitate the measures the Court previously noted to protect irrelevant confidential information, such as redactions that banks may not be well-situated to make. Plaintiffs also are incorrect that Defendant Seddio "refused to agree to produce any documents responsive to the TD Bank Subpoena on an expedited timeline . . . ." In fact, Defendant Seddio declined only Plaintiffs' demand to start producing records immediately this week in view of logistical challenges, holidays, and the need for counsel to collect and review material prior to any production. Nevertheless, Defendant Seddio specifically offered to prioritize responsive account records in rolling productions prior to the April 30, 2026 production deadline to which Plaintiffs already agreed. That offer was ignored,

Party discovery, not third-party practice, is the appropriate avenue for Plaintiffs to seek these records pertaining to Defendant Seddio or his law firm. Pursuant to the Court's order, Defendant Seddio will file a brief letter today clarifying his prior motion to quash consistent with the above. Further, in approximately a week since appearing in this case, counsel for Defendant Seddio has appeared at two multi-hour settlement conferences, participated in a discovery conference, served responses and objections to requests for production, served interrogatory responses, negotiated an agreed discovery schedule, participated in the preparation of two joint status reports, and negotiated an agreed protective order. Consequently, there is no basis on which to conclude that counsel has engaged in delay or failed to address discovery matters in good faith.

\*     \*     \*

The parties appreciate the Court's time and attention on this matter.

Dated:  April 1, 2026

/s/ Lauren J. Zimmerman
Lauren J. Zimmerman
BENESCH FRIEDLANDER COPLAN &
ARONOFF LLP
1155 Avenue of the Americas, Floor 26
New York, NY 10036
Tel: (646) 356-6023
lzimmerman@beneschlaw.com

Jennifer M. Selendy
Babak Ghafarzade
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY  10104
Tel: 212-390-9000
jselendy@selendygay.com
bghafarzade@selendygay.com

*Attorneys for Plaintiffs Angelos Metaxas
and Pertshire Investments LP*

/s/ David Shargel (with consent)
David Shargel
Nicole Boeckman
BRACEWELL LLP
31 West 52nd Street Suite 1900
New York, NY 10019
212-508-6100 / -6013
David.Shargel@bracewell.com
Nicole.Boeckmann@bracewell.com

*Attorneys for Defendant Sam Sprei*

/s/ Jarrod L. Schaeffer (with consent)
Kenneth M. Abell
Jarrod L. Schaeffer
ABELL ESKEW LANDAU LLP
256 Fifth Avenue, 5th Floor
New York, NY 10001
Tel: 646-970-7341 / -7339
kabell@aellaw.com
jschaeffer@aellaw.com

*Attorneys for Defendant Frank R. Seddio, Esq.*

/s/ Mordy Gross (with consent)
Mordy Gross
LAW OFFICES OF MORDY GROSS LLC
18 Broadway Ste 10612
Albany, NY 12207
484-680-0768
Mg@mordygross.com

*Attorney for Defendant Jonathan Rubin*