

Lauren Zimmerman
1155 Avenue of the Americas, Floor 26
New York, New York 10036
Direct Dial: 646.356.6023
Fax: 646.755.3397
lzimmerman@beneschlaw.com

April 8, 2026

Via ECF

Magistrate Judge Peggy Cross-Goldenberg
United States District Court
Eastern District of New York
225 Cadman Plaza East, Room 1230
Brooklyn, New York 1120

Re:    *Metaxas et al. v Graubard et al.*, No. 25-cv-5844 (AMD) (PCG)

Dear Magistrate Judge Peggy Cross-Goldenberg:

Plaintiffs Angelos Metaxas and Pertshire Investments LP (together, "Plaintiffs") respect-fully submit this letter in opposition to the renewed motion filed on April 1, 2026 (ECF No.73, the "Renewed Motion to Quash") by Defendant Jonathan Rubin ("Rubin") to quash Plaintiffs' third-party subpoena to TD Bank, NA ("TD Bank") (the "Subpoena," ECF No. 74-1). For the reasons below, the motion should be denied.

## Background

This action concerns the mishandling, conversion, and *ongoing* theft of $2 million that Plaintiffs transferred in December 2024 to the interest on lawyer account ("IOLA") held by De-fendant Mark David Graubard ("Graubard") at Valley National Bank ("Valley"), as well as sub-sequent efforts by Defendant Graubard, his co-Defendants, and others to interfere with Plaintiffs' ability to recover their funds, including through their coordinated efforts to abuse process in the Kings County Supreme Court case captioned *Olden LLC v. Metaxas et al.*, Index No.505819/2025, (the "State Court Action"), including by fraudulently obtaining a temporary restraining order to purportedly freeze Plaintiffs' escrowed funds in Defendant Graubard's IOLA.

As set forth in the parties' joint status report dated April 1, 2026 (ECF No. 74), Plaintiffs served notice on all parties on February 25, 2026, that Plaintiffs would serve a third-party subpoena to three banks, including TD Bank, which was personally served the same day.

The Subpoena, requests, *inter alia*, identifying information, transaction records, and com-munications regarding any accounts held at TD Bank by any of the named Defendants (including Defendant Rubin) or certain non-party individuals and entities (including entities controlled by

Defendant Rubin) identified by Plaintiffs as having transacted with  Defendant Graubard's IOLA,[1] having been involved in the transactions and events giving rise to Plaintiffs' claims, or being controlled by a named Defendant.

On March 4, 2026, TD Bank contacted Plaintiffs requesting an extension of the deadline to respond to the Subpoena until March 18, 2026. On March 5, 2026, Plaintiffs agreed to TD Bank's extension request. On March 6, 2026, Defendant Rubin filed a letter motion to quash the Subpoena (ECF No. 51). On March 13, 2026, Plaintiffs filed a letter responding to all three motions to quash filed by Defendants Rubin, Sam Sprei ("Sprei"), and Frank R. Seddio, Esq. ("Seddio"), (ECF No. 56), requesting that the motions be denied as procedurally improper or alternatively, denied on the merits. (*Id.*)

Following a discovery conference on March 16, 2026, the Court temporarily stayed enforcement of the Subpoena until March 25, 2026, to give Defendant Rubin and his *pro se* co-defendants the opportunity to retain counsel and for the parties to enter a protective order. On March 20, 2026, the Court entered the parties' proposed protective order (ECF No. 66), memorializing the agreement between Defendant Rubin¸ who was *pro se* at the time, and counsel for Plaintiffs and the other Defendants. On March 24, 2026, TD Bank informed Plaintiffs that it would withhold its response to the Subpoena pending a resolution of the motions to quash.

On March 25, 2026, the parties filed a joint status report setting forth their positions on the pending motions to quash (ECF No. 72, at 3–4). The pending motions were discussed by the Court during the March 27, 2026 discovery conference (the "March 27 Conference"). Plaintiffs thereafter met and conferred with counsel for Defendant Rubin, were able to resolve certain disagreements, and reached impasse on the issues discussed herein.

On April 1, 2025, as directed by the Court's March 27, 2026 Minute Entry, the parties filed a joint status report identifying those Subpoena disputes that have not been resolved and that the pending motions to quash will be renewed. (ECF No. 74). That same day, Defendant Rubin filed his Renewed Motion to Quash, objecting to Subpoena Request Nos. 1(n), (2) as to Defendant Rubin's Individual Account(s), and Subpoena Request Nos. 7(k) and 8(j) (ECF No. 51).[2]

---

[1] Plaintiffs obtained records of Defendant Graubard's IOLA and other accounts at Valley through a third-party subpoena previously issued to Valley in this matter. (*See* ECF Nos. 32–33).

[2] Subpoena Requests Nos. 1(n) and 2 seek "Documents sufficient to show all accounts held, owned, or controlled [at TD Bank] by" Defendant Rubin, and "[d]ocuments sufficient to show the [TD Bank] account opening records, including but not limited to Documents containing the following information: a. The Account Holder; b. All Authorized Users; c. The date the account was established; d. The Account Holder's mailing address; e. Each Authorized User's mailing addresses; and f. If the account is closed, the date the account was closed."

Subpoena Requests Nos. 7(k) and 8(j) seek "[a]ll Communications between" and "concerning" Defendant Rubin, and the two entities he controls, Queen Equities LLC and WHP Equities LLC. Plaintiffs have offered to limit the scope of these two Requests, as they pertain to Defendant Rubin, Queen Equities LLC, and WHP Equities LLC, to all communications from December 2024 to present regarding any cancelled, returned, or bounced checks; any transactions deemed potentially fraudulent or suspicious by any bank; and

**Standard of Review**

As relevant to the instant motion, Federal Rule of Civil Procedure 45 requires a court to quash a subpoena calling for the "disclosure of privileged or other protected matter, if no exception or waiver applies," Fed. R. Civ. P. 45(d)(3)(A)(iii), and permits a court to "quash or modify [a] subpoena" calling for the disclosure of "a trade secret or other confidential research, development, or commercial information," Fed. R. Civ. P. 45(d)(3)(B)(i). To have standing to quash a subpoena directed to a non-party, the movant must establish his own "personal privilege or right" in the information at issue. *Sali v. Zwanger & Pesiri Radiology Grp. LLP*, 2022 WL 1085508, at *16 (E.D.N.Y. Jan.10, 2022) (quoting *United States ex rel. Ortiz v. Mount Sinai Hosp.*, 169 F. Supp. 3d 538, 545 (S.D.N.Y. 2016)), *R. & R. adopted*, 2022 WL 819178 (E.D.N.Y. Mar. 18, 2022). If the movant can establish standing, he then "has the burden of establishing 'that the information that is the subject of the subpoena is not discoverable.'" *Id.* (quoting *De Venustas v. Venustas Int'l, LLC*, 2008 WL 619028, at *2 (S.D.N.Y. Mar. 5, 2008)).

**Argument**

While an individual may have standing to raise his privacy interest in his own personal financial affairs, "sensitive financial information is generally discoverable in federal court." *In re Rule 45 Subpoenas Issued to JP Morgan Chase Bank, N.A.*, 319 F.R.D.132, 134 (S.D.N.Y 2016) (citing *Conopco, Inc. v. Wein*, 2007 WL 2119507, at *2 (S.D.N.Y. July 23, 2007). "[E]ven the confidentiality of personal financial matters must yield to the Federal Rules of Civil Procedure, which govern the discovery of information relevant to the claims and defenses in a federal court action." *Id.* While "some courts 'weigh[ ] the relevance or probative value of the documents being sought against the privacy interests'" asserted by the party moving to quash, *id.* (quoting *Solow v. Conseco, Inc.*, 2008 WL 190340, at *4 (S.D.N.Y. Jan. 18, 2008)), "others simply find that relevant and non-privileged information must be produced," *id.* (citing *Conopco,* 2007 WL 2119507, at *2). Under either test, Defendant Rubin's motion fails.

**A.      The Challenged Subpoena Requests Seek Relevant, Probative Information**

*First*, the challenged requests seek relevant and probative information. Rule 26 of the Federal Rules of Civil Procedure allows for the broad discovery of "any nonprivileged matter that is relevant to any party's claim or defense" or that could "reasonably … lead to the discovery of admissible evidence." *Sali*, 2022 WL 1085508, at *16 (quoting Fed. R. Civ. P. 26(b)(1), *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011)). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept," *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, 2014 WL 5420225, at *7 (S.D.N.Y. Oct. 24, 2014) (quoting *Condit v. Dunne,* 225 F.R.D. 100, 105 (S.D.N.Y. 2004)), subject to a "relatively low threshold" for demonstrating that the material sought is relevant. *United States v. M/Y Amadea*, 2024 WL 4471617, at *2 (S.D.N.Y. Oct. 11, 2024).

Here, Subpoena Request Nos. 1(n) and 2, which seek identifying information about Defendant Rubin's individual and corporate account records at TD Bank, are relevant to Plaintiff's

---

any freezes, holds, or closures of any of Defendant Rubin's individual or corporate accounts for Queen Equities LLC and WHP Equities LLC. Defendant Rubin declined this offer.

allegations that Defendant Rubin participated in and financially benefited from the conversion of and subsequent abuse of process related to Plaintiffs' escrowed funds. For example, discovery to date has shown that, on December 6, 2024, *the same day* that Plaintiffs wired their escrowed funds to Defendant Graubard's IOLA, Defendant Graubard wrote a check for $350,000 to Queen Equities LLC, which Defendant Rubin owns and manages.[3] That same day, Defendant Rubin wired $2,500 from Queen Equities LLC's account at TD Bank to Defendant Seddio's law firm.[4] Just days later, Defendant Rubin emailed Defendant Graubard, copying Defendant Sprei, requesting confirmation that Defendant Graubard (i) was holding "$250,000 … irrevocably assigned to me" and (ii) would wire the funds to Defendant Rubin the following day. Defendant Graubard confirmed that he would, and his IOLA records show that he wired $250,000 to Queen Equities LLC on December 12, 2024.[5] Defendant Rubin wired another $5,000 from Queens Equities LLC to Defendant Seddio's law firm on each of December 13, and 31, 2024. Ex. 2.

In addition, on January 28, 2025, Queen Equities LLC wired $550,000 to Graubard's IOLA. *See id.* And Graubard's IOLA records reveal multiple transactions, amounting to hundreds of thousands of dollars, with Defendant Rubin's company WHP Equities LLC in February, March, and April 2025. Each of these transactions were completed through Defendant Rubin's accounts at TD Bank. These transactions between Defendant Rubin, entities he controls, and Defendants Graubard and Seddio, in the days, weeks, and months after Plaintiffs' deposited their escrowed funds into Defendant Graubard's IOLA, establish the relevance of Defendant Rubin's individual and corporate bank account records, which are likely to show the extent of Defendant Rubin's participation in the unlawful conversion of Plaintiffs' escrowed funds and allow the tracing of its dissipation.

Moreover, at the March 27 Conference, this Court ruled that the Defendants' personal account records are squarely relevant to Plaintiffs' claims and ordered Defendant Graubard to produce an even broader set of documents and information, not limited to accounts at any one bank, in response to Plaintiffs' discovery requests. *See* Plaintiffs' Request for Production No. 4 ("***Documents sufficient to identify all bank accounts held, owned, or controlled by You*** … or any of the entities identified in response to Request No. 3 during the Relevant Period, and for each account, identify the bank in which the account is or was held, the bank address, account type, account number, date the account was opened, date the account was closed (if applicable), and all authorized users on each bank account.") and Plaintiffs' Interrogatory No. 13 ("***Identify each and every bank account held, owned, or controlled by You*** … or any entity identified in Your response to Interrogatory No. 11 and for each bank account, identify the bank in which the account is or was held, the bank address, account type, account number, date the account was opened, date the account was closed (if applicable), and all authorized users on each bank account.") (emphasis added).

---

[3] A copy of the December 6, 2024 check is attached as **Exhibit 1**.

[4] A copy of the Queen Equities LLC's December 2024 wires to Defendant Seddio's law firm is attached as **Exhibit 2**.

[5] A copy of the December 11–12, 2024 communications and transactions between Defendant Rubin and Defendant Graubard is attached as **Exhibit 3**.

With respect to the opening account records Plaintiffs seek through Request No 2, records related to the opening of Defendant Rubin's individual and corporate TD Bank accounts—such as the identity of the accounts' holders, co-signatories, authorized users, and the stated purpose of the account(s)—will establish who controlled the accounts (including other named Defendants) that sent and received sizable funds from Defendant Graubard's IOLA as well as to and from entities controlled by the other named Defendants, and for what purpose the accounts were purportedly intended. The revelation of joint ownership or control of any account will constitute evidence of coordination between the Defendants, and any discrepancies between the stated purpose of the account and its actual use may also reveal improper or undisclosed activity.

As discussed in the parties' April 1, 2026 joint status report (ECF No. 74, at 6), Plaintiffs' Subpoena Requests Nos. 7(k) and 8(j)—which Plaintiffs have narrowed to communications regarding cancelled, returned, or bounced checks and other transactions for which TD Bank raised concern directly to Defendant Rubin or his corporate entities—bear directly on Plaintiffs' allegations that Defendant Rubin participated in the unlawful conversion of Plaintiffs' escrowed funds and in the abuse of process that followed. Specifically, Defendant Graubard's IOLA account and Defendant Sprei's personal and corporate account records, which Plaintiffs have obtained through third party discovery here, indicate that the Defendants repeatedly engaged in check kiting and other deceptive means of moving funds between each other and the interest on lawyer accounts belonging to several attorneys to convert Plaintiffs' funds and then hide such conversion through judicial process. Specifically, Plaintiffs have identified instances of apparent check kiting by Defendants and/or their agents at key points in the State Court Action which appear to have been aimed create the impression that Plaintiffs' and other investor funds were intact when they were not.[6] Plaintiffs understand that these types of suspect transactions led to the closure of Defendant Graubard's IOLA at Valley and as well as the bank accounts of certain of the named Defendants and their agents in this matter. Accordingly, communications regarding the same suspect conduct stemming from Defendant Rubin's accounts are squarely relevant to establishing Defendant Rubin's conduct in support of the scheme to convert Plaintiffs' funds and hide such conduct through frivolous litigation. And Defendant Rubin offers no argument for why the requested information is "untethered" to Plaintiffs' allegations and does not identify the specific prejudice that would result from Plaintiffs receipt of any such communications. (ECF No. 73, at 2).

---

[6] Defendant Graubard recently testified under oath in the State Court Action that, in November 2025, Defendant Sprei provided Defendant Graubard with a $2 million check from the Chase bank account of then-sitting Supreme Court Justice Edward Harold King ("King"), who resigned from office shortly thereafter in December 2025, while under investigation for defrauding escrow depositors and mishandling escrow deposits. Defendant Graubard further testified that, a month later, in December 2025, he intended to use King's $2 million check to pay Plaintiffs and end the State Court Action in response to the state court's order, on pain of arrest, that Defendant Graubard file his account records establishing that Plaintiffs' funds remained intact in his IOLA but did not do so because King's account had been frozen. An excerpt of Defendant Graubard's sworn testimony is attached as **Exhibit 4**, and a copy of Defendant Graubard's correspondence with King, as well as a copy of the check, is attached as **Exhibit 5**.

**B.      The Probative Value of the Requested Information Outweighs Defendant Rubin's Purported Privacy Concerns**

*Second*, given the relevance of Defendant Rubin's individual and corporate bank records and communications, which may show further payments or other collusion among Defendants and others, the probative value of the information sought by the Subpoena outweighs Defendant Rubin's purported privacy and privilege objections. Courts have consistently found that such information outweighs privacy interests. *See, e.g.*, *In re Rule 45 Subpoenas*, 319 F.R.D. at 135 (denying motion to quash non-party subpoena for bank records given that the records "may show further payments or other signs of collusion" between defendants); *Eastman Kodak Co. v. Camarata*, 238 F.R.D 372, 376-77 (W.D.N.Y. 2006) (upholding subpoenas to non-party financial institutions for individual defendants personal financial information in RICO case involving allegations of transferring funds between defendants and various business and personal accounts maintained by defendants to conceal their unlawful activity); *Sierra Rutile Ltd. v. Katz*, 1994 WL 185751, at *4 (S.D.N.Y. 1994) ("While cognizant of the fact that the subpoenas [issued to financial institutions and seeking personal financial information] intrude on personal financial affairs ..., I am unable to conclude that the personal intrusion is so great that it outweighs defendants' right to pursue relevant material through the subpoenas in issue."). Defendant Rubin's privacy concerns are adequately addressed through the existing confidentiality order (ECF No. 66). *See Sali*, 2022 WL 1085508, at *17.

**C.      Defendant Rubin's Purported Privilege Concerns Do Not Support Quashing the Subpoena**

*Third*, Defendant Rubin's additional argument that the Subpoena should be quashed because his personal accounts sought under Request Nos. 1(n) and 2 "may include joint accounts with Mr. Rubin's spouse and children" (ECF No. 73, at 1), is unsupported by any factual representations or caselaw. While the Subpoena does not seek records of accounts belonging solely to Defendant Rubin's spouse or children, the potential disclosure of such information does not warrant quashing the Subpoena. Bank subpoenas are routinely enforced even if compliance would risk disclosure of joint account holders. *See Lopez v. Setauket Car Wash & Detail Center*, 2015 WL 13753675, at *5 (E.D.N.Y May 19, 2015) (upholding bank subpoena for individual "personal" records and finding the argument that the subpoena seeking personal financial records, including banking information with respect to accounts held jointly with wife, unavailing). And, as this Court has previously observed, any privacy concerns Defendant Rubin may have are addressed through the existing confidentiality order (ECF No. 66). *See Sali*, 2022 WL 1085508, at *17.

\*        \*        \*

Finally, Plaintiffs object to Defendant Rubin's request for leave to file a supplemental brief in support of his Renewed Motion to Quash. (ECF No. 73, at 2). The Subpoena was noticed and duly served on February 25, 2026, and has remained pending and unsatisfied for six weeks and counting. Defendant Rubin has had multiple opportunities to be heard on this issue (See ECF No. 51, Defendant Rubin's March 6, 2026 letter motion to quash, ECF No. 72, the March 25, 2026 joint status report, and ECF No. 75, the April 1, 2026 joint status report). Further briefing is unnecessary and will only further delay resolution of this issue.

6

## **Conclusion**

For the reasons above, the Court should deny Defendant Rubin's Renewed Motion to Quash the Subpoena and, in the interim, order produced all other aspects of the Subpoena to which no objection has been raised.

Respectfully,

BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP

Lauren Zimmerman

Cc: All Parties via ECF

7