

Lauren Zimmerman
1155 Avenue of the Americas, Floor 26
New York, New York 10036
Direct Dial:  646.356.6023
Fax:  646.755.3397
lzimmerman@beneschlaw.com

April 8, 2026

Via ECF

Magistrate Judge Peggy Cross-Goldenberg
United States District Court
Eastern District of New York
225 Cadman Plaza East, Room 1230
Brooklyn, New York 1120

     Re:    *Metaxas et al. v Graubard et al.*, No. 25-cv-5844 (AMD) (PCG)

Dear Magistrate Judge Peggy Cross-Goldenberg:

Plaintiffs Angelos Metaxas and Pertshire Investments LP (together, "Plaintiffs") respectfully submit this letter in opposition to the renewed motion filed on April 1, 2026 (ECF No.75, the "Renewed Motion to Quash") by Defendant Frank R. Seddio, Esq. ("Seddio") to quash Plaintiffs' third-party subpoena to TD Bank, NA ("TD Bank") (the "Subpoena," ECF No. 74-1). For the reasons below, the motion should be denied.

## Background

This action concerns the mishandling, conversion, and ongoing theft of $2 million that Plaintiffs transferred in December 2024 to the interest on lawyer account ("IOLA") held by Defendant Mark David Graubard ("Graubard") at Valley National Bank ("Valley"), as well as subsequent efforts by Graubard, his co-Defendants, and others to interfere with Plaintiffs' ability to recover their funds, including through abuse of process in the Kings County Supreme Court case captioned *Olden LLC v. Metaxas et al.*, Index No.505819/2025, (the "State Court Action")—namely, a temporary restraining order purportedly freezing Plaintiffs' escrowed funds in Defendant Graubard's IOLA.

As set forth in the parties' joint status report dated April 1, 2026 (ECF No. 74), Plaintiffs served notice on all parties on February 25, 2026, that Plaintiffs would serve a third-party subpoena to three banks, including TD Bank, which was personally served the same day.

The Subpoena, requests, *inter alia*, identifying information, transaction records, and communications regarding any accounts held at TD Bank by any of the named Defendants (including Defendant Seddio) or certain non-party individuals and entities (including Defendant Seddio's law firm, Seddio & Associates P.C.) identified by Plaintiffs as having transacted with Defendant

Graubard's IOLA,[1] having been involved in the transactions and events giving rise to Plaintiffs' claims, or being controlled by a named Defendant.

On March 4, 2026, TD Bank contacted Plaintiffs requesting an extension of the deadline to respond to the Subpoena until March 18, 2026. On March 5, 2026, Plaintiffs agreed to TD Bank's extension request. On March 11, 2026, Defendant Seddio filed a letter motion to quash the Subpoena (ECF No. 54).[2] On March 13, 2026, Plaintiffs filed a letter responding to all three motions to quash filed by Defendants Seddio, Sam Sprei ("Sprei"), and Jonathan Rubin ("Rubin") (ECF No. 56), requesting that the motions be denied as procedurally improper or, alternatively, denied on the merits. (*Id.*).

Following a discovery conference on March 16, 2026, the Court temporarily stayed enforcement of the Subpoena until March 25, 2026, to give Defendant Seddio and his *pro se* co-defendants the opportunity to retain counsel and for the parties to enter a protective order. On March 20, 2026, the Court entered the parties' proposed protective order (ECF No. 66), memorializing the agreement between Defendant Rubin, who was *pro se* at the time, and counsel for Plaintiffs and the other Defendants. On March 24, 2026, TD Bank informed Plaintiffs that it would withhold its response to the Subpoena pending a resolution of the motions to quash.

On March 25, 2026, the parties filed a joint status report setting forth their positions on the pending motions to quash (ECF No. 72, at 3–4). The pending motions were discussed by the Court during the March 27, 2026 discovery conference (the "March 27 Conference"). Plaintiffs thereafter met and conferred with counsel for Defendant Seddio, were able to resolve certain disagreements, and reached impasse on the issues discussed herein.

On April 1, 2025, as directed by the Court's March 27, 2026 Minute Entry, the parties filed a joint status report explaining that the disputes regarding the Subpoena that have not been resolved and that the pending motions to quash would be renewed. (ECF No. 74). That same day, Defendant Seddio filed his Renewed Motion to Quash, objecting to Subpoena Request Nos. 1(o), 1(p), 2-4 (as applied to Defendant Seddio or his firm), 7(l), 7(m), 8(k), and 8(l) (*see* ECF No. 75 n. 2).[3]

---

[1] Plaintiffs obtained records of Defendant Graubard's IOLA and other accounts at Valley through a third-party subpoena previously issued to Valley in this matter. (*See* ECF Nos. 32–33).

[2] Defendant Seddio originally moved to quash subpoenas issued to Flagstar Bank and Northfield Bank, but he no longer objects to those subpoenas. (*See* ECF No. 74). Defendant Sprei also initially moved to quash all three subpoenas, but has since withdrawn his objections to those subpoenas. (*see* ECF No. 74, at 3)

[3] Subpoena Request Nos. 1(o), 1(p), and 2 seek "Documents sufficient to show all accounts [at TD Bank] held, owned, or controlled by" Defendant Seddio and his law firm, and "documents sufficient to show the [TD Bank] account opening records," including the account holder and corresponding mailing address, authorized users and their mailing addresses, date established, and date closed.

Subpoena Request Nos. 3 and 4 seek "Documents sufficient to show all Transactions during the Relevant Period" between Seddio's TD Bank accounts and accounts held by the other named Defendants and their agents, and, for each transaction, "identifying information for the counterparty," "[t]he identity of the Individual initiating each Transaction," "[t]he amount transacted," "[t]he date and time of the Transaction," and "[t]he resulting balance in the account following such Transaction."

## **Standard of Review**

As relevant to the instant motion, Federal Rule of Civil Procedure 45 requires a court to quash a subpoena calling for the "disclosure of privileged or other protected matter, if no exception or waiver applies," Fed. R. Civ. P. 45(d)(3)(A)(iii), and permits a court to "quash or modify [a] subpoena" calling for the disclosure of "a trade secret or other confidential research, development, or commercial information," Fed. R. Civ. P. 45(d)(3)(B)(i). To have standing to quash a subpoena directed to a non-party, the movant must establish his own "personal privilege or right" in the information at issue. *Sali v. Zwanger & Pesiri Radiology Grp. LLP*, 2022 WL 1085508, at *16 (E.D.N.Y. Jan.10, 2022) (quoting *United States ex rel. Ortiz v. Mount Sinai Hosp.*, 169 F. Supp. 3d 538, 545 (S.D.N.Y. 2016)), *R. & R. adopted*, 2022 WL 819178 (E.D.N.Y. Mar. 18, 2022). If the movant can establish standing, he then "has the burden of establishing 'that the information that is the subject of the subpoena is not discoverable.'" *Id.* (quoting *De Venustas v. Venustas Int'l, LLC*, 2008 WL 619028, at *2 (S.D.N.Y. Mar. 5, 2008)).

## **Argument**

### I.   **Defendant Seddio Lacks Standing**

Defendant Seddio lacks standing to object to the Subpoena on the basis of undue burden or relevance, which objections TD Bank itself has not asserted. "A party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." *Sali v. Zwanger & Pesiri Radiology Grp. LLP*, 2022 WL 1085508, at *16 (E.D.N.Y. Jan.10, 2022) (quoting *United States ex rel. Ortiz v. Mount Sinai Hosp.*, 169 F. Supp. 3d 538, 545 (S.D.N.Y. 2016)); *R. & R. adopted*, 2022 WL 819178 (E.D.N.Y. Mar. 18, 2022). Even where such a personal privilege or right is established, as in the case of an account holder challenging a subpoena seeking his account records, *id.* at *17, "a 'party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevance or undue burden,'" *id.* at *19 (quoting *Pegaso Dev. Inc. v. Moriah Educ. Mgmt. LP*, 2020 WL 6323639, at *4 (S.D.N.Y. Oct. 28, 2020)); *Malibu Media, LLC v. Doe*, 2016 WL 4444799, at *6 (E.D.N.Y. Aug. 23, 2016).

Defendant Seddio argues that Plaintiffs should be required to seek his and his firm's account records through party discovery because he purports it, not the Subpoena, is the preferred avenue for seeking such records. (*See* ECF No. 75 at 3). Even if that argument were persuasive (and it is not), Defendant Seddio lacks standing to raise such an undue-burden objection. *See In re Rule 45 Subpoenas Issued to JP Morgan Chase Bank, N.A.*, 319 F.R.D.132, 134 (S.D.N.Y 2016) (finding non-recipient lacked standing to object to bank's compliance with subpoena on the basis of undue burden simply because the records could have been obtained through party discovery).

---

Subpoena Request Nos. 7(l), 7(m), 8(k), and 8(l) seek "all Communications between" TD Bank and Defendant Seddio and his firm as well as "all Communications concerning" Defendant Seddio and his firm. As discussed in the April 1, 2026 joint status report (ECF. 74, at 13), Plaintiffs have offered to limit the scope of Request Nos. 7-8, as they pertain to Defendant Seddio and his firm, to all communications from December 2024 to present regarding any cancelled, returned, or bounced checks; any transactions deemed potentially fraudulent or suspicious by any bank; and any freezes, holds, or closures of any of Defendant Seddio's accounts. Defendant Seddio declined the offer and stood on his objections.

The cases cited by Defendant Seddio—*Lemoine v. Mossberg Corp.*, 2020 WL 3316119 (D. Conn. June 18, 2020) and *Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*, 2013 WL 5652759, at *3 (W.D.N.Y. Oct. 15, 2013)—are inapposite because, unlike here, the non-party subpoena target *itself* moved to quash and established that the subpoenas were merely a way to circumvent discovery requirements and procedures to bring discovery disputes to the Court's attention. *Lemoine*, 2020 WL 3316119, at *1, *Zoological*, 2013 WL 5652759, at *3.[4] Here, by contrast, TD Bank has not raised *any* objections to the Subpoena and indeed stands ready to produce responsive records and communications concerning accounts belonging to Defendant Seddio and his firm once the Court resolves his pending motion.

Moreover, as in *In re Rule 45 Subpoenas*, Defendant Seddio's own dilatory conduct defeats his argument that Plaintiffs should seek the records from him rather than through the Subpoena. 319 F.R.D. at 135. By order dated December 22, 2025, the Court directed all parties to respond to discovery requests by February 18, 2026. (ECF No. 28). It was only after Defendant Seddio ignored that Court-ordered deadline and refused to participate in *any* party discovery or communications related thereto that Plaintiffs were forced to issue the Subpoena to TD Bank. Defendant Seddio also waited two weeks after receiving notice of the Subpoena, and did not confer with Plaintiffs as required under the governing rules, before moving to quash the Subpoena on March 11, 2026. (ECF No. 54). Those circumstances further highlight Defendant Seddio's lack of standing to challenge the Subpoena on undue-burden or relevance grounds.

## II.    The Relevance and Probative Value of the Requested Information Defeat Defendant Seddio's Purported Privacy Interests

While an individual may have standing to raise his privacy interest in his own personal financial affairs, "sensitive financial information is generally discoverable in federal court." *In re Rule 45 Subpoenas*, 319 F.R.D. at 134 (citing *Conopco, Inc. v. Wein*, 2007 WL 2119507, at *2 (S.D.N.Y. July 23, 2007)). "[E]ven the confidentiality of personal financial matters must yield to the Federal Rules of Civil Procedure, which govern the discovery of information relevant to the claims and defenses in a federal court action." *Id*. While "some courts 'weigh[ ] the relevance or probative value of the documents being sought against the privacy interests'" asserted by the party moving to quash, *id.* (quoting *Solow v. Conseco, Inc.*, 2008 WL 190340, at *4 (S.D.N.Y. Jan. 18, 2008)), "others simply find that relevant and non-privileged information must be produced," *id.* (citing *Conopco,* 2007 WL 2119507, at *2). Under either test, Defendant Seddio's motion fails.

### A.    The Challenged Subpoena Requests Seek Probative Information

The challenged Subpoena requests seek relevant and probative information. Rule 26 of the Federal Rules of Civil Procedure allows for the broad discovery of "any nonprivileged matter that is relevant to any party's claim or defense" or that could "reasonably … lead to the discovery of admissible evidence." *Sali*, 2022 WL 1085508, at *16 (quoting Fed. R. Civ. P. 26(b)(1), *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011)). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept," *Refco Grp. Ltd., LLC v.*

---

[4] As Plaintiffs explained in the April 1, 2026 joint status report, *Athalonz, LLC v. Under Armour, Inc.*, 2024 WL 1555685 (S.D.N.Y. Apr. 10, 2024), cited by Defendant Seddio in the joint status report and the Renewed Motion to Quash, is similarly inapposite.

*Cantor Fitzgerald, L.P.*, 2014 WL 5420225, at *7 (S.D.N.Y. Oct. 24, 2014) (quoting *Condit v. Dunne,* 225 F.R.D. 100, 105 (S.D.N.Y.2004)), subject to a "relatively low threshold" for demonstrating that the material sought is relevant. *United States v. M/Y Amadea*, 2024 WL 4471617, at *2 (S.D.N.Y. Oct. 11, 2024). Here, the Subpoena requests information reasonably calculated to lead to the discovery of admissible evidence concerning Plaintiffs' claims that Defendant Seddio was involved in the theft of Plaintiffs' escrowed funds, as well as the egregious abuse of process and deceptive litigation conduct to cover up the same.

Specifically, Subpoena Request Nos. 1(o), (p), and 2 seek the identification of Seddio's personal and corporate accounts at TD Bank and the opening records associated with those accounts. This Court has already ruled that such evidence is squarely relevant here when, at the March 16, 2026 hearing, the Court ordered Defendant Graubard to respond to Plaintiffs' requests for production of documents sufficient to identify all personal and corporate accounts he holds and corresponding account information including their opening account records. *See* Plaintiffs' Request for Production No. 4 ("**Documents sufficient to identify all bank accounts held, owned, or controlled by You** … or any of the entities identified in response to Request No. 3 during the Relevant Period, and for each account, identify the bank in which the account is or was held, the bank address, account type, account number, date the account was opened, date the account was closed (if applicable), and all authorized users on each bank account.") and Plaintiffs' Interrogatory No. 13 ("**Identify each and every bank account held, owned, or controlled by You** … or any entity identified in Your response to Interrogatory No. 11 and for each bank account, identify the bank in which the account is or was held, the bank address, account type, account number, date the account was opened, date the account was closed (if applicable), and all authorized users on each bank account.") (emphasis added). Moreover, the identity of account holders, co-signatories, authorized users, and the stated purpose of each account held by Defendant Seddio or his law firm will confirm who controlled each accounts and how it was used, and provide context on the transactions therein. The revelation of joint ownership or control of any account will constitute evidence of coordination between the Defendants and any discrepancies between the stated purpose of the account and its actual use may also reveal improper or undisclosed activity.

Subpoena Request Nos. 3 and 4 seek records related to transactions with specific counterparties identified through Plaintiffs' investigation and review of the financial records produced to date in this matter. For example, Defendant Graubard's IOLA records indicate that Defendant Graubard—purportedly an *opposing* party in the State Court Action—transferred $12,500 to Defendant Seddio's law firm on May 7, 2025, in the midst of Defendant Seddio's efforts to delay the preliminary-injunction hearing he had sought through his initial *ex parte* filings. (*See* Compl. ¶¶ 91–92).[5] Just *two days* later, on the eve of the hearing, the assigned judge in the State Court Action recused herself. (*Id.* ¶ 93).[6]

---

[5] A copy of the May 7, 2025 transaction is attached as **Exhibit 1**.

[6] This transaction is especially relevant as, in support of their claim against Defendant Seddio for attorney deceit and collusion in violation of N.Y. Judiciary Law § 487, Plaintiffs specifically allege that Defendant Seddio orchestrated the recusal of at least one judge in the State Court Action.

In addition, TD Bank records produced to date by Defendant Rubin have shown additional transactions with Defendant Seddio's law firm at or near the time Plaintiffs wired their escrowed funds to Defendant Graubard:

- $2,500 from Defendant Rubin's company Queen Equities LLC on December 6, 2024, *the same day* Plaintiffs' $2 million escrow deposits were transferred out of Defendant Graubard's IOLA;

- $5,000 from Defendant Rubin's company Queen Equities LLC on December 13, 2024—a week after Plaintiffs' deposited their funds with Defendant Graubard; and

- $5,000 from Defendant Rubin's company Queen Equities LLC on December 31, 2024—three weeks after Plaintiffs' escrowed funds were deposited into Defendant Graubard's IOLA.[7]

These transactions—between Seddio's law firm and (1) Defendant Graubard's IOLA at an inflection point in the State Court Action, and just forty-eight hours before the first of four judicial recusals in the State Court Action, and (2) entities controlled by Defendant Rubin at or near the time Plaintiffs wired their escrowed funds to Defendant Graubard—establish both the relevance of Defendant Seddio's accounts at TD Bank, through which he completed these and potentially other relevant transactions, and the associated transaction records. Plaintiffs have every right to discover the nature of Defendant Seddio's accounts and associated transactions, as sought in Subpoena Request Nos. 1(o), (p) and 2–4. Indeed, any "subsequent transactions [after Plaintiffs' deposited their escrowed funds] with [those funds]—whether they be purported kickbacks … or transfers between accounts in an effort to conceal the proceeds or their location—may constitute further" unlawful conduct discoverable by Plaintiffs. *Eastman Kodak Co. v. Camarata*, 238 F.R.D 372, 377 (W.D.N.Y. 2006).

Additionally, Plaintiffs have agreed to seek through Subpoena Request Nos.7(l) and (m) and 8(k) and (*l*) solely communications between TD Bank and Defendant Seddio and his firm, or concerning Defendant Seddio and his firm, concerning transactions flagged by TD Bank as suspicious. There is no question any such communications are relevant to Plaintiffs' claims. Plaintiffs have already received through discovery here, including from Defendant Graubard, communications showing that Valley raised concerns to Defendant Graubard regarding suspicious transactions to and from his IOLA relating to Plaintiffs' escrowed funds and subsequent transactions involving entities controlled by Defendant Rubin, which ultimately resulted in Valley's closing of Defendant Graubard's IOLA.[8] In addition, Plaintiffs have identified several instances in which Defendant Graubard cashed a sizeable check provided by a named Defendant or one of their agents just before

---

[7] A copy of Defendant Rubin's TD Bank transactions is attached as **Exhibit 2**.

[8] A copy of the Valley communications is attached hereto as **Exhibit 3**. Plaintiffs have no idea whether Seddio and/or his law firm's TD Bank account remain(s) open, or whether either was frozen at any point after Plaintiffs' deposited their escrowed funds, as was the case with another escrow agent, recently resigned Justice Edward Harold King ("King"), whose bank account, which Defendant Graubard has attested held at least $2 million belonging to Defendant Sprei and which Defendant Graubard was directed by Defendant Sprei to use to try to end the State Court Action, was frozen by another bank. Copies of Defendant Graubard's correspondence with King and sworn testimony are attached as **Exhibits 4 and 5**.

key hearing dates in the Federal Action, which ultimately bounced in the days that followed but had the effect of artificially inflating the value of the IOLA.

Evidence that Defendant Seddio engaged in this type of conduct through his personal or firm account to further the conversion and abuse of process at issue here is squarely relevant here. Indeed, the large sum transferred to him by Defendant Graubard just before the preliminary injunction hearing and subsequent hearing suggests that he may have done so.

### B.    The Probative Value of the Requested Information Outweighs Defendant Seddio's Purported Privacy Concerns

The probative value of the information sought by the challenged requests outweighs Defendant Seddio's purported privacy and privilege objections. Courts have consistently held that where a third-party subpoena to a financial institution seeks documents relevant to the action that may show collusion between Defendants, the documents probative value outweighs the non-recipient's privacy objections. *See*, *e.g.*, *In re Rule 45 Subpoenas*, 319 F.R.D. at 135; *Eastman Kodak Co.*, 238 F.R.D at 376-77; *Sierra Rutile Ltd. v. Katz*, 1994 WL 185751, at *4 (S.D.N.Y. 1994). For example, in *In re Rule 45 Subpoenas*, the court denied the motion to quash a third-party bank subpoena seeking the bank records for an attorney representing one of the parties and his law firm, where the plaintiff demonstrated that, in order to obtain further proof of collusion between the Defendants to fund and control the litigation, he needed to see the extent to which the Defendants were funding the attorney and his law firm. 319 F.R.D. 132, at 134. Here, too, the information sought by the Subpoena is plainly relevant to Plaintiffs claims and allegations, as detailed above.

The Subpoena is not a "fishing expedition," as Defendant Seddio contends (ECF No. 75, at 3), because Plaintiffs have already uncovered evidence of transactions between Defendant Seddio's law firm, Defendant Graubard's IOLA, and several entities owned or controlled by Defendants and third parties at key points in time in the State Court Action. In fact, the existence of Defendant Seddio's account at TD Bank was discovered through these transactions. The Subpoena was narrowly tailored to TD Bank, which holds records of accounts, transactions, and communications related to Defendant Seddio. *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 206 F.R.D. 78 (S.D.N.Y. 2002) (cited by Seddio) is inapposite because, unlike here, the plaintiff failed to present a legitimate need for the financial information sought from the bank subpoena. *Id.* at *93. The Subpoena requests bear directly on Plaintiffs' unlawful conversion and abuse of process claims and will likely evidence collusion between Defendant Seddio, his law firm, and other Defendants.

### C.    Defendant Seddio's Purported Privilege Concerns Do Not Support Quashing the Subpoena

Defendant Seddio's argument that Plaintiffs' Subpoena seeks privileged communications (ECF No. 75, at 4), fails. Plaintiffs' do not seek privileged documents or communications from Defendant Seddio, and he offers no authority suggesting that relevant bank account information, such as the existence of and opening account records for a bank account and the record of transactions between an attorney and a client, are privileged. Nor has Defendant Seddio offered any authority suggesting that account records are privileged. Even if some responsive documents were somehow privileged (we know of none), Defendant Seddio offers a conclusory, unsupported

statement that presumes that all information involving Mr. Seddio's law firm and any transactions into or out of his bank account(s) is privileged and merits the entire Subpoena to be quashed.

And, as this Court has previously observed, any privacy concerns Defendant Seddio may have are addressed through the existing confidentiality order (ECF No. 66). *See Sali*, 2022 WL 1085508, at *17. Inasmuch as Defendant Seddio claims that the Subpoena is broad (it is not), as discussed therein and thoroughly in the joint report (ECF No. 74), Plaintiffs have further narrowed the scope of certain Subpoena requests at issue.

## Conclusion

For the reasons above, the Court should deny Defendant Seddio's Renewed Motion to Quash the Subpoena and, in the interim, order produced all other aspects of the Subpoena to which no objection has been raised.

Respectfully,

BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP

Lauren Zimmerman

Cc: All Parties via ECF

8