# Exhibit 5

Case 1:25-cv-05844-AMD-PCG    Document 77-5    Filed 04/08/26    Page 1 of 20 PageID #: 609

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS:  CIVIL TERM:  PART 52
- - - - - - - - - - - - - - - - - - - - - - -X
                                              :
OLDEN LLC,                                    :
                                              :
                    Plaintiff,                :
                                              :     INDEX NUMBER:
         - against -                          :     505819/2025
                                              :
ANGELOS METAXAS and PERTSHIRE                 :
INVESTMENTS LP,                               :     CONTINUED
                                              :     HEARING
                    Defendants,               :
                                              :
         - and -                              :
                                              :
DAVID GRAUBART,                               :
                                              :
                    Nominal Defendant.    :
- - - - - - - - - - - - - - - - - - - - - - -X

                                 Supreme Court
                                 360 Adams Street
                                 Brooklyn, New York 11201
                                 March 30, 2026

B E F O R E :

        HONORABLE FRANCOIS A. RIVERA,
                Justice of the Supreme Court


A P P E A R A N C E S :


        SELENDY GAY
        Attorneys for the Defendants ANGELOS METAXAS and
        PERTSHIRE INVESTMENTS LP
        1290 Avenue of the Americas
        New York, New York 10104
        BY:  BABAK GHAFARZADE, ESQ.


        BENESCH LAW
        Attorneys for the Defendants ANGELOS METAXAS and
        PERTSHIRE INVESTMENTS LP
        1155 Sixth Avenue
        New York, New York 10036
        BY:  LAUREN ZIMMERMAN, ESQ.

TESSER, RYAN & ROCHMAN, LLP
Attorneys for the Nominal Defendant DAVID GRAUBART
15 Fisher Lane, Suite 200
White Plains, New York 10603
BY:  RANDY TESSER, ESQ.


ISRAEL GOLDBERG, ESQ.
Pro Se
14 Wall Street, Suite 2064
New York, New York 10005


AIDALA BERTUNA & KAMINS P.C.
Attorneys for Non-Party FRANK SEDDIO
546 Fifth Avenue, Sixth Floor
New York, New York 10036
BY:  IMRAN H. ANSARI

KIYOKO PANZELLA, RPR, CRR
SENIOR COURT REPORTER

- kyp -

Q.   You can put that to the side.

Now I'm directing your attention to the document marked for -- the exhibit marked for identification at 150, one-five-zero.  It was handed to you earlier.  This is an email that you sent on December 23, 2025, at 4:57 p.m., correct?

A.   Yes.

Q.   And that's just about three hours after the Court's order, and we just looked at it, Exhibit 58 was entered on NYSCEF, correct?

A.   Yes.

Q.   And this email has subject line "Chase" and the recipients of the email are Edward King, and there's two -- two email addresses for Edward King and Sam Sam, correct?

A.   Yes.

Q.   And Sam Sam is Sam Sprei, correct?

A.   Yes.

Q.   And Edward King is the same Edward King who you testified last week you were holding a check, I believe, that you were hoping would clear?

A.   Yes.

Q.   Now, Edward King at this time that you sent this email was a sitting judge in this Supreme Court, correct?

A.   I don't know.  I know he was a judge.  I don't know where.

Q.   You knew he was a judge.  This email states, "Ed" --

quote:

"Ed, you have not responded to my several requests for information on the blocked bank accounts.  This is crucial for the transfer of escrow funds that we both signed and the funds for Sam that are needed to help settle a very serious case."

Did I read that correctly?

A.    Yes.

Q.    The fund -- the -- the funds you referred to, the funds for Sam that are needed to settle a very serious case, is that the $2 million at issue in this case?

A.    Yes.

MR. GHAFARZADE:  Your Honor, we -- we move to admit Exhibit 150 into evidence.

THE COURT:  I'm baffled.  This email, one of the recipients is a -- was a Supreme Court justice at the time?

MR. GHAFARZADE:  Correct, Your Honor.

THE COURT:  Is this the same King who apparently is in trouble and indicted and --

MR. GHAFARZADE:  I don't know about indicted, but was under investigation by the Committee For Judicial Conduct, Your Honor, yes, and resigned, yes.

THE COURT:  Wisely so, I assume.

What are you asking for the Court to do?  I just got taken aback.

MR. GHAFARZADE:  Just enter the exhibit.

THE COURT:  Oh, it's in.  It's in.

THE CLERK:  So marked.

(Whereupon, the aforementioned exhibit was entered into evidence.)

THE COURT:  You should be aware that I made it a point on all cases to prohibit any communication with the Court by letter either filed in NYSCEF or sent to the part. The only way this Court hears from you is by appropriate notice of motion period.  I don't know why that's not standardized everywhere, but that's the way it is here.

All right.  Please continue.

MR. GHAFARZADE:  Thank you, Your Honor.

Q.   Mr. Graubard, you were not emailing Mr. King here in his capacity as a judge, were you?

A.   No.

Q.   You were emailing him in his capacity as your co-counsel to certain clients that you shared and -- and an escrow agent, correct?

A.   No.

Q.   Mr. Graubard, your email continues in the third -- fourth paragraph, quote:

"Attached is the letter you wrote to me dated November 10, 2025, so I am still holding that check for $2 million, open paren, copy also attached, end -- close

D. GRAUBART - DIRECT/MR. GHAFARZADE                    227

paren," end quote.

Did I read that correctly?

A.   Yes.

Q.   The next page of this document is a copy of that November 10th letter you received from Mr. King, correct?

A.   Yes.

Q.   In the first paragraph Mr. King wrote to you that he was holding $4.5 million in his IOLA account at Chase Bank for your, quote, "mutual client," end quote, correct?

A.   Yes.

Q.   Who was that mutual client?

A.   Sam Sprei.

MR. GOLDBERG:  Your Honor, if I may, what exhibit are we reading from?

THE COURT:  I'm sorry, Counsel.  Did you say something?

MR. GOLDBERG:  Yes, I did, because I -- he's reading from -- I don't know which exhibit he's reading from.

THE COURT:  Oh, okay.

What exhibit are you reading from?

MR. GHAFARZADE:  I'm reading from Page 2 of the same exhibit, No. 150 in evidence.

THE COURT:  150 in evidence?

MR. GHAFARZADE:  Yes, and this is the attachment.

- kyp -

THE COURT:  Page 2.

MR. GHAFARZADE:  Yes.

THE COURT:  Okay.

MR. GHAFARZADE:  This is the attachment to Mr. Graubard's email to Mr. King dated December 2025.

THE COURT:  Are you --

MR. GOLDBERG:  Yes, I am.

THE COURT:  -- oriented?  Excellent.

Please continue.

Q.   So Mr. Graubard, the mutual client that you had with Mr. King was Sam Sprei, correct?

A.   Yes.

Q.   And in the fourth paragraph Mr. King wrote that Chase had agreed to issue a bank check for $2 million payable to your IOLA, correct?

A.   Yes.

Q.   And Mr. King wrote that you must hold the check in escrow until authorized by Chase to deposit, correct?

A.   Yes.

Q.   And the next page of this document is a photograph of that $2 million check that you received from Mr. King, correct?

A.   Yes.

Q.   And that check is a bank check, a cashier's check from Chase for $2 million dated November 5, 2025, correct?

A.   Yes.

Q.    But you didn't receive it on -- you didn't see a -- the physical copy of that check on November 5th, did you?

A.    Not the physical copy.  I didn't receive a copy of the check.

Q.    But you attach a photograph of the check to your email?

A.    Yes.

Q.    And where did you get that photograph?

A.    Because I have the actual check.

Q.    You have the actual check?

A.    Yeah.

Q.    And when did you receive a physical copy of that check?

A.    I don't understand your question.

Q.    Who handed you the check?

        MR. GOLDBERG:  Objection.

        THE COURT:  One moment, please.

        MR. GOLDBERG:  I'm confused.  When he says, "The physical copy," I'm not sure what that means.  Is this the copy or is it a real check?

        THE COURT:  Well, you're confused by the question or by the answer?

        MR. GOLDBERG:  By the question.  I'm not sure what he's asking.  Did he get a copy of the check?  Did he get the original the check?

        THE COURT:  I understand the confusion, but fortunately since you're going to be permitted to ask

- kyp -

questions you can clarify it.

But since you're alerted that Counsel's confused you're free to leave him confused or clarify your question.

MR. GHAFARZADE:  Thank you, Your Honor.

Q.   Mr. Graubard, when did you first receive --

THE COURT:  Let's do in this way.  The Court understands a check to be hard copy paper where someone is directing that funds be provided to the person who's indicated in the check and the person that's making the direction is the one who signs the check, and that's a normal understanding of a check.  When he asks this question is that the understanding of a check that you're working with?

THE WITNESS:  The check itself, yes, but he asked a copy.  I don't -- I'm confused by that.

THE COURT:  If you just answer my question and don't give me anything else then we're all on the same page.

Do you understand a check to mean exactly what I described?

THE WITNESS:  Yes.

THE COURT:  Because we're also understanding that there's such a thing as an E-check or photocopying of checks or these new procedures where you can take a photograph and the check electronically --

We're talking paper, hard copy check.

THE WITNESS:  Yes.

THE COURT:  Is that your understanding?

THE WITNESS:  Yes.

THE COURT:  So did you get hard copy paper check?

THE WITNESS:  Yes.

THE COURT:  Right.

And Counsel wants to know when did you get hard copy paper check, correct?  Is that the question?

MR. GHAFARZADE:  Yes, Your Honor.

THE COURT:  Yeah.

When?

THE WITNESS:  I think it was November 5th.

Q.   And who -- who gave it -- who handed it to you?

THE COURT:  How did you get it?

Q.   How did you get it?

A.   Through Mr. Sprei.

Q.   And how --

THE COURT:  How did he give it to you?

You have to answer some time today.

THE WITNESS:  I'm -- I'm just not sure whether he gave it to me in person or he had it delivered.  I don't remember.

THE COURT:  You don't remember?

THE WITNESS:  I don't remember which.

- kyp -

THE COURT:  Okay.

Please continue.

Q.   When did you receive it?

A.   November 5th.

Q.   Why did Mr. Sprei hand you a check for $2 million from Mr. King?

MR. TESSER:  Objection.  He didn't state that Mr. Sprei handed him the check.

THE COURT:  Is that your objection?

MR. TESSER:  That's my objection.

THE COURT:  Oh, I thought that you were objecting to the mental state of another person, but that -- that answer on that objection you can answer.

THE WITNESS:  I'm sorry.  What was the question?

THE COURT:  Would you like to read back?

THE WITNESS:  Please.

MR. GHAFARZADE:  I'll rephrase it.

THE COURT:  Feel free.

Q.   Why did Mr. Sprei give you a $2 million check from a sitting judge?

MR. TESSER:  I object.

THE COURT:  Overruled.

You may answer.

A.   As far as I know, he gave me a check from an attorney who -- from an attorney's escrow account, and the purpose was

- kyp -

trying to settle this case.

Q.   So the purpose of the check that you were holding issued by Mr. King's bank you understood to be to settle this case?

A.   Yes.

THE COURT:  Just to be clear, Mr. King was a sitting Supreme Court justice at the time?

MR. GHAFARZADE:  He had not yet resigned.  He was under investigation, Your Honor.

THE COURT:  But he was a sitting Supreme Court justice.

MR. GHAFARZADE:  As far as I know, yes.  Yes.  I believe his resignation was effective December 31st, so just the week after this email.

THE COURT:  I'm trying to stay as clear-headed as possible, but this information rattles me in my soul.

MR. GHAFARZADE:  Us, too.

THE COURT:  It's unbelievable.

Anyway, just to be clear, since the name King --

Well, anyway, please continue.

Q.   I'm showing --

THE COURT:  I'm sorry.

Were you aware that King is a Supreme Court justice at the time?

THE WITNESS:  I was told that he was a -- a judge,

- kyp -

but I didn't know which court or where.

THE COURT:  So you're okay with taking $2 million from a judge for whatever reason you thought was appropriate.

THE WITNESS:  I took it from an attorney who -- who -- a man who was an attorney who had an escrow account and represented to me that he had funds of a mutual client.

THE COURT:  So in your mind you didn't believe the funds were coming from Justice King?

THE WITNESS:  Right.  I was getting from an attorney.

THE COURT:  You didn't see Justice King's name on the email?

THE WITNESS:  No.  I wrote to him.

THE COURT:  You were communicating with a Supreme Court justice regarding funds coming to you.

THE WITNESS:  Oh, yes, I was told that he was a judge, that he was -- I was told that he was a judge.

MR. GHAFARZADE:  Perhaps I can clarify, Your Honor.  I think he's referring to the same person, if I could ask a clarifying question.

THE COURT:  I'm wondering if he needs to be advised about his right to remain silent for participating in potential crimes, but I assume as an attorney he probably is aware so let him proceed at his peril.

- kyp -

MR. GHAFARZADE:  Your Honor, he has competent counsel.

THE COURT:  Really?

MR. GHAFARZADE:  Well, he has counsel, Your Honor. I -- Your Honor, I -- if I --

THE COURT:  Please continue.

MR. GHAFARZADE:  I'm showing the witness a document in Folder No. 151.

THE COURT OFFICER:  Folder 151 or Exhibit 151?

MR. GHAFARZADE:  I'm sorry, Exhibit 151.  I thought they were in folders.

Q.   Mr. Graubard, I'm showing you a document marked as Exhibit 151 for identification.  This is an email from you to Judge King on November 11, 2025, at 5:05 p.m., correct?

A.   Yes.

Q.   And this is maybe six weeks -- several weeks earlier than the email we were just looking at, correct?

THE COURT:  Several weeks earlier from the email?

MR. GHAFARZADE:  Excuse me.

Q.   This is several weeks earlier from the December 23rd email that we were just discussing at Exhibit 150, correct?

A.   It's December 3rd, and this is November 11th.

Q.   So this is November 11th.

You wrote, quote, "Ed, please call me.  I got the check for 2 million and need to talk to you about it," end quote.

Did I read it correctly?

A.    Yes.

Q.    So you received the check on or about November 11, 2025, right?

A.    No.

THE COURT:  Perhaps we're talking about a different check.

MR. GHAFARZADE:  A different $2 million check.

Q.    Is this the same check from Judge King?

A.    Same check.

Q.    Same check?

A.    Yeah.

Q.    So why did you email him on November 11th stating that you had got the check if you had actually got the check several days earlier?

A.    He had given me this -- he had given me a letter on November 10th, and I wanted to speak to him about it.

Q.    So he gave you a letter on November 10th.  That's -- that's Page 2 of Exhibit 150 --

A.    Yes.

Q.    -- we were looking at.

And the November 10th letter stated that Chase had authorized him to issue you a check, correct?

A.    Yeah.

Q.    But you're saying -- your testimony is that you had

already received the check five days earlier?  So your testimony is that you received the check on November 5th?

A.   Yes, yes.

Q.   And that Mr. King then wrote you a letter on November 10th telling you why you received the check?

A.   Wrote the letter on November 10th.

Q.   Okay.

But your testimony is that you received the check on November 5th --

A.   Yes.

Q.   -- right?

I'm showing you the exhibit marked for identification at Exhibit 152.

MR. GHAFARZADE:  Oh, Your Honor, we move Exhibit 151 into evidence, the email -- the November 11th email we were just looking at.

THE COURT:  Put it in evidence.

THE CLERK:  So marked.

(Whereupon, the aforementioned exhibit was entered into evidence.)

Q.   Mr. Graubard, this is a log of text messages that you sent Judge King between March 12, 2025, and December 3, 2025, correct?

A.   What -- I'm sorry.  What date did you say?  I --

Q.   These are text messages that you sent Judge King

D. GRAUBART - DIRECT/MR. GHAFARZADE                238

between March 12, 2025, and December 3, 2025, correct?

A.   December -- yes.

MR. GHAFARZADE:  Your Honor, we move this into evidence.

THE COURT:  It's in.

THE CLERK:  So marked.

(Whereupon, the aforementioned exhibit was entered into evidence.)

Q.   Mr. Graubard, on -- on November 4, 2025, you wrote to Judge King, quote, "Ed, David Graubard here.  We must," and "must" is written in all caps, "speak tonight so please call me," and it lists a phone number.

Did I read that correctly?

A.   Yes.

Q.   And that was on November 4th?

A.   Yes.

Q.   And your next text message to Mr. King was sent on November 11, 2025, correct?

A.   Yes.

Q.   And you wrote, quote, "Ed, it is David Graubard. Important, so please call me," end quote, correct?

A.   Yes.

THE COURT:  Please continue, Counsel.

Q.   Mr. Graubard, these text messages that I just read you on November 4th and November 11, 2025, they concerned the $2

- kyp -

million check that you've been discussing, correct?

A.   Yes.

Q.   On December 2, 2025, you wrote to Judge King, quote, "David Graubard here.  It is crucial," and "crucial" is in all caps, "that you call me about Chase.  It is professional life or death," end quote.

Did I read that correctly?

A.   Yes.

Q.   Why was it professional life or death --

THE COURT:  Excuse me.  Whose life or death was he talking about?  Is that the question?

Q.   Mr. Graubard, whose life -- whose professional life or death were you referring to in your message dated December 12, 2025, to Judge King?

A.   Mine.

Q.   And why was it your professional life or death at issue?

A.   Because the money had to come from my escrow account.

Q.   And why was that professional life or death for you?

A.   I don't know if I'm allowed to answer that.  I don't know what --

Q.   Mr. Graubard, you've not been directed not to answer that.  I'm asking you a question and you're under oath.  Why was that professional life or death for you?

A.   Because it -- it could jeopardize my -- my role as an

- kyp -

-- status as an attorney.

Q. What could jeopardize your status as an attorney?

A. The $2 million in question here.

Q. You're referring to the $2 million that defendants Metaxas and Pertshire had transferred to you in December of 2024?

A. Yes.

Q. And that you had transferred to Mr. Sprei also in December of 2024?

A. No. I didn't transfer to Mr. Sprei.

Q. That you had transferred at Mr. Sprei's direction in December of 2024.

A. Yes.

Q. And that you were trying to get that money back in your account, correct?

A. Yes.

Q. And you did not want to file account records pursuant to the superseding contempt order that would show that you didn't have the money in your account, correct?

A. I don't think those records should be made public.

Q. You did not want to make those account records public.

A. Correct.

Q. As you had been ordered to do by the Court.

A. Yes.

THE COURT: So we'll take a recess at this time.

- kyp -