UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANGELOS METAXAS and PERTSHIRE
INVESTMENTS LP,

Plaintiffs,

v.

MARK DAVID GRAUBARD, ESQ. d/b/a M.
DAVID GRAUBARD, YESCHIEL SHIMON
"SAM" SPREI, FRANK R. SEDDIO, ESQ., and
JONATHAN RUBIN

Defendants.

Case No. 1:25-cv-05844-AMD-PCG

## JOINT STATUS REPORT

Pursuant to the Court's Minute Order dated May 4, 2026, and entered on May 5, 2026 (the "May 4 Order"), Plaintiffs Angelos Metaxas ("Metaxas") and Pertshire Investments LP ("Pertshire"), jointly with Defendants Jonathan Rubin ("Rubin") and Mark David Graubard Esq. ("Graubard") respectfully submit this joint status report concerning outstanding discovery issues.[1]

## I.      Party Document Discovery

### A.      Discovery from Defendant Graubard

Defendant Graubard has substantially completed his document production and is conferring with Plaintiffs to resolve any outstanding issues.

Defendant Graubard has also served responses, dated May 5 and May 12, 2026, to Defendant Rubin's First Sets of Requests for Admission, Interrogatories, and Requests for Production,

---

[1] Defendant Sam Sprei ("Sprei") and counsel for Defendant Frank Seddio, Esq. ("Seddio") were included on all correspondence regarding this joint status report, and their edits are reflected herein. However, because Plaintiffs did not receive signature approval from either Sprei or counsel for Seddio by the time of filing, their signatures are not included below.

which are the subject of Defendant Rubin's Local Civil Rule 37.3 meet-and-confer correspondence dated May 13, 2026.

**B.      Discovery from Defendant Rubin**

On May 3, 2026, Defendant Rubin produced 7,539 documents and communications, all of which Rubin designated as "confidential." On May 18, Rubin made a corrective production to address certain missing attachments and technical issues raised by Plaintiffs. At Plaintiffs' request, Rubin has agreed to review and de-designate any documents that do not fall within the protected categories under Section 3 of the Confidentiality Order (ECF No. 66). Rubin anticipates substantial completion of his document production by June 1, 2026.

**C.      Discovery from Defendant Seddio**

At 11:54 p.m. on April 30, 2026, Seddio produced a single 91-page PDF that, according to him, substantially completed his document productions

Following the May 4 discovery conference and pursuant to the Court's so-ordering of Plaintiffs' proposed search terms on May 5, *see* ECF No. 97, Seddio provided search-term hit reports for his own email account on May 7, and for his current and former employees' email accounts on May 13. Seddio has not collected ESI from the three attorneys—Samuel Spirgel, Amanda Phillip, and Roger Victor Archibald—who appeared on Seddio's behalf at hearings in the underlying State Court Action.

Seddio's May 7 hit-count report also disclosed that he maintained his "regular practice of clearing text messages in the ordinary course of personal device maintenance and management" throughout the course of this litigation, such that his cell phone does not contain text messages from prior to mid-April. At Plaintiffs' request, Seddio has agreed to cease that practice, and Plaintiffs reserved all rights with respect to Seddio's prior deletions.

At 11:56 p.m. on May 14, Seddio produced 262 additional documents and communications to Plaintiffs and stated that a privilege log would follow.[2] Seddio served his privilege log, identifying 99 withheld documents, at 1:53 a.m. on May 15.

Defendant Seddio served responses, dated May 8, 2026, to Defendant Rubin's First Sets of Requests for Admission, Interrogatories, and Requests for Production, which are the subject of Defendant Rubin's Local Civil Rule 37.3 meet-and-confer correspondence dated May 14, 2026, served on Defendant Seddio's recently-appeared counsel (ECF No. 100).

***Plaintiffs' Position***: Seddio continues to fall far short of his discovery obligations and his continued violations of this Court's discovery orders warrants sanctions.

Seddio's May 14 production and May 15 privilege log, which Plaintiffs are in the process of reviewing, contains patent deficiencies which raise major concerns about not only his compliance with the Court's orders and applicable discovery rules but also potential spoliation.

*First*, Seddio's prior counsel provided Plaintiffs with hit-count reports identifying approximately 9,645 potentially responsive documents and communications from Seddio's email account alone. In direct contravention of this Court's May 5 order, which required Seddio to produce (or log) all materials hitting on Plaintiffs' search terms, Defendant Seddio has produced fewer than 300 documents and communications from *all* sources: the 91-page, single-PDF production he made on April 30, and his May 14 production of 262 documents. Seddio's assertion below that he "has already produced in excess of 1,000 documents" is simply not true. Thus, Seddio remains in ongoing contempt of the Court's discovery orders. *See* Fed. R. Civ. P. 37(b)(2)(vii).

---

[2] Despite the notice of appearance filed by Seddio's counsel earlier in the day on May 14, which requests "that going forward, all court notices, pleadings, motion filings, orders, and correspondence regarding this case" be directed to counsel, ECF No. 100, Seddio himself emailed his production to Plaintiffs' counsel.

*Second*, Seddio has failed to produce documents and communications known to have been within his possession, custody, or control, including the following illustrative examples:

- On July 25, 2025, after the state court judge inquired into whether Graubard had complied with the court's July 17 order to deposit the $2 million with the clerk's office by July 21, Graubard's then-counsel sent Sprei (via WhatsApp) a message for Seddio to send to the court. The message began, "Given the amount at issue, I intended to personally oversee the deposit to ensure proper compliance. However, I was unable to make it to the courthouse before leaving town, and did not feel it appropriate for the nominal defendant to deposit the funds in my absence." Seddio then sent a substantially identical email (just omitting the phrase "leaving town") to the state court judge. Graubard's counsel has since testified in open court that he did not in any way communicate with Seddio between his drafting of the message for Seddio to send to the state court's chambers and Seddio's emailing such email. Obviously, then, Sprei must have transmitted the ghostwritten message to Seddio in writing, but Seddio has not produced to Plaintiffs or logged any such communication.

- On July 30, 2025, Graubard's then-counsel similarly sent Sprei (via WhatsApp) draft correspondence for Seddio to send to the state court judge requesting the adjournment of the July 31 sanctions hearing the judge had scheduled concerning the non-compliance with his order requiring Graubard to deposit Plaintiffs' escrowed funds with the clerk of the court. Again, Seddio used the pre-written language from Graubard's counsel in his letter to the state court the same day. And again, Graubard's counsel has testified that he did not have any direct communications with Seddio, so the only way Seddio could have received the draft was through Sprei, yet Seddio has not produced or logged any such correspondence.

- On November 6, 2025, Graubard's former counsel sent Sprei (via WhatsApp) a draft notice of discontinuance and associated explanatory letter that were then filed under Seddio's name and attorney credentials minutes later. As with the above communications, Seddio has not produced the intervening correspondence from Sprei.

- On December 14, 2025, after then-presiding Justice Montelione had issued a contempt order against Graubard, Graubard's former counsel and Sprei discussed (via WhatsApp) a plan to bring the law firm of Aidala Bertuna & Kamins P.C. ("ABK") into the State Court Action to induce Justice Montelione's recusal based on the firm's concurrent representation of him in unrelated litigation. The next day, December 15, at 2:45 p.m., Seddio's then-associate, Javid Nesaralli, emailed Sprei a draft letter stating that Seddio himself had retained ABK to represent him in defense of Plaintiffs' sanctions motion against Seddio, which at the time was returnable in February 2026. Sprei then forwarded the draft letter to ABK, who agreed to the representation on the condition that Seddio pay a retainer and execute an engagement agreement. Despite not fulfilling either condition for months, Seddio nonetheless added an ABK partner's signature to his letter and filed it as though he had *already* retained the firm. Unsurprisingly, Justice Montelione recused himself the next day and explained that he was forced to do so because of ABK's "appearance." (ABK did not actually appear in the State Court

4

Action until March 4, 2026.) Seddio has failed to produce or log Mr. Nesaralli's December 15, 2:45 p.m. email to Sprei, which Plaintiffs obtained through a third-party subpoena, or any related communications.

The fact these plainly responsive documents and communications have not been produced or logged by Seddio establishes that his search and collection process is either gravely insufficient, or that he is intentionally withholding responsive materials in an effort to shield himself and his co-Defendants from liability. Either way, the glaring production gaps raise major concerns.[3]

*Third*, despite his former attorney's April 8 oral representations to Plaintiffs that Seddio had adequately preserved all potentially responsive ESI, as well as Seddio's repeated, emphatic statements to the Court that, as a practicing attorney and former judge himself, he well understands his discovery obligations, on May 7, 2026, Seddio disclosed to Plaintiffs ***for the first that he has been routinely deleting data from his cell phone throughout the course of the instant litigation***. Indeed, it appears Seddio deleted data from his iPhone as recently as last month. Coupled with Seddio's patently inadequate document productions, Seddio's conduct raises grave concerns of possible spoliation.

*Fourth*, Seddio has refused to even *request* potentially responsive communications from the three attorneys, who identified themselves as of-counsel to his firm, and which appeared and made various representations on Seddio's and Graubard's behalf at several hearings in the State Court Action. Because those attorneys acted as Defendant Seddio's agents, their documents and communications within the scope of their agency are by definition within Defendant Seddio's control. Binding federal caselaw makes clear that "documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents." *Mirlis*

---

[3] Nor has Seddio provided any certification of substantial completion, as the Court suggested he should at the May 4 conference.

*v. Greer*, 80 F.4th 377, 382 (2d Cir. 2023). Seddio undoubtedly has the right, authority, and practical ability to obtain responsive communications from his agents. Instead of collecting and producing their documents, however, Seddio proposed that *Plaintiffs* subpoena the per diem attorneys at their own cost. That is unreasonable.

*Finally*, Seddio provided, along with his May 18 production, a privilege log (addressing only 102 fully withheld Documents) that is patently deficient on its face because many of the entries lack any descriptive information whatsoever about the nature of the withheld documents. *See* Local Civil Rule 26.2 (enumerating specific information that must be provided to support a privilege assertion). Moreover, none of the documents produced by Seddio contain any redactions, which means he entirely withheld documents without any tailoring for non-privileged information.

Seddio's major production deficiencies, including his failure to produce the thousands of documents and communications brought back by Plaintiffs' search terms, and now admission that he has been deleting throughout this litigation responsive data and communications, establishes he has violated this Court's discovery orders and his preservation and production obligations under the Federal Rules of Civil Procedure. Plaintiffs renew their request for sanctions against Seddio made in their May 1, 206 letter to the Court, ECF 93.

**_Defendant Seddio's Position_**: Plaintiffs' and Rubin's characterizations herein materially understate both the scope of Mr. Seddio's efforts and the posture of his appearance in this action.

First, counsel for Mr. Seddio only appeared on May 14, 2026. Until that point, Mr. Seddio—a solo practitioner with a small firm and limited in-house e-discovery resources—responded to rapidly evolving discovery demands on an expedited, largely pro se basis. The initial April 30 production was made under that time pressure and without the benefit of current counsel's guidance. Since counsel's formal appearance on May 14, 2026, Mr. Seddio has already produced

in excess of 1,000 documents, and that production is ongoing. The suggestion that his total production "fewer than 300 documents" is "woefully inadequate" is outdated and no longer accurate; the volume, custodians, and date range of his review and production have all significantly expanded in the short time since counsel's engagement.

Second, any gaps Plaintiffs perceive in the May 14 production or May 15 privilege log should be viewed in context: those were initial, good-faith efforts to comply quickly, not a final word on discovery. Since then, we have been systematically rerunning searches and cross-checking against documents produced by other parties. Where Plaintiffs believe they have a document from another source that does not appear in our production (or on the log) under a reasonable search, we invite them to identify those concerns and we will address them document-by-document, and either (i) confirm that the document was non-responsive under agreed search parameters, (ii) add it to a supplemental production, or (iii) log it if it is privileged. Counsel has no interest in hiding the ball; we are working to normalize a process that began without the benefit of e-discovery protocols.

Third, as to the three per diem attorneys (Messrs. Spirgel, Phillip, and Archibald), the record does not support the sweeping assertion that every communication in their possession is within Mr. Seddio's "control" in the Rule 34 sense. Rule 34 reaches documents within a party's "possession, custody, or control," and in the Second Circuit "control" is construed broadly to include documents a party has the right, authority, or practical ability to obtain. *FTC v. Chase Nissan, LLC, No. 3:24-cv-00012 (JCH), 2024 U.S. Dist. LEXIS 133819 (D. Conn. July 29, 2024)* But even where "control" is argued, the scope of what must be pursued and produced remains bounded by Rule 26(b)(1) proportionality and Rule 26(b)(2)(C)'s express limitations on cumulative/duplicative discovery and discovery obtainable from more convenient sources. *Russell v. Scott, Civil Action*

No. 5:20-cv-184-gwc-kjd, 2022 U.S. Dist. LEXIS 137485 (D. Vt. Aug. 3, 2022). It is responding counsel's understanding that these lawyers were retained on a per-appearance basis to cover discrete calendar calls in state court. They are independent practitioners with their own firms, files, and obligations—more akin to independent contractors engaged for a limited purpose than to in-house employees. To the extent any appearance-related communications exist, the operative orders, transcripts, and most of the relevant exchanges with the court and opposing counsel are already reflected in the court record or in the other parties' email traffic. That is precisely the type of material Rule 26(b)(2)(C) identifies as "obtainable from some other source that is more convenient, less burdensome, or less expensive." We do not concede, as Plaintiffs urge, that Mr. Seddio has a blanket "right, authority, or practical ability" to commandeer the personal and firm email accounts of unrelated attorneys and their staff. Nonetheless, in the interest of avoiding motion practice, we have indicated we are willing to discuss targeted requests for particular communications if Plaintiffs can identify specific hearings or topics where they believe non-duplicative information is likely to be found.

Fourth, with respect to phone data, the "practice of clearing text messages" described in the May 7 hit-count report was a long-standing, general device-maintenance habit—not a litigation-targeted deletion policy—and it continued, unaltered, at a time when Mr. Seddio was not represented in this case. Spoliation is defined as the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *Coan v. Dunne*, 602 B.R. 429 (2019) To obtain spoliation sanctions, the movant must establish (1) an obligation to preserve at the time of destruction, (2) destruction with a culpable state of mind, and (3) relevance such that a reasonable trier of fact could find the destroyed evidence would support the movant's claim or defense. The undersigned understanding is

that as soon as Plaintiffs raised concerns, Mr. Seddio agreed to cease that practice going forward. There is no evidence that any texts uniquely relevant to this case were intentionally destroyed; to the contrary, virtually all substantive communications at issue here occurred by email and are being searched and produced. Plaintiffs' insinuations of "grave" spoliation thus rest on speculation rather than facts. *Coan v. Dunne*, 602 B.R. 429 (2019).

Finally, many of Plaintiffs' criticisms could be resolved more constructively through direct meet-and-confer. Now that counsel has appeared, any party with questions about particular custodians, search terms, or log entries is encouraged to contact undersigned counsel so that we can refine search parameters, clarify privilege descriptions consistent with Local Civil Rule 26.2, and agree on sensible priorities for any supplemental collection. We have already substantially increased both the volume and breadth of production in less than two weeks since appearance, and we remain committed to working cooperatively to complete discovery in a manner that is proportional to the needs of the case and respectful of all privileges and protections.

Rule 26 contemplates party conferral regarding discovery issues, including electronically stored information and the form of production. [https://d.docs.live.net/document?pddocfullpath=%2fshared%2fdocument%2fstatutes-legislation%2furn%3acontentItem%3a6G8Y-9RS3-RS3Y-W196-00000-00&pdmfid=1530671&pdcontentcomponentid=6331&pdproductcontenttypeid=urn%3apct%3a83&pdisdoclinkaccess=true&pdischatbotdoc=true&passagetext=YW55IGlzc3VlcyBhYm91dCBkaXNjbG9zdXJlLCBkaXNjb3ZlcnksIC4qaW5mb3JtYXRpb24gdW50aWwgdGhlIGNsYWltIGlzIHJlc29sdmVkLg%3d%3d&pdrfcid=105](https://d.docs.live.net/document?pddocfullpath=%2fshared%2fdocument%2fstatutes-legislation%2furn%3acontentItem%3a6G8Y-9RS3-RS3Y-W196-00000-00&pdmfid=1530671&pdcontentcomponentid=6331&pdproductcontenttypeid=urn%3apct%3a83&pdisdoclinkaccess=true&pdischatbotdoc=true&passagetext=YW55IGlzc3VlcyBhYm91dCBkaXNjbG9zdXJlLCBkaXNjb3ZlcnksIC4qaW5mb3JtYXRpb24gdW50aWwgdGhlIGNsYWltIGlzIHJlc29sdmVkLg%3d%3d&pdrfcid=105) Given Mr. Seddio's representation that production is ongoing, searches are being rerun, and he is willing to address specific exemplars document by document (produce, log if privileged, or confirm non-

responsiveness under agreed parameters), the Court should direct the parties to meet and confer on targeted issues (custodians, search terms, and specific allegedly missing documents) and to prioritize non-duplicative discovery proportional to the needs of the case. To the extent Plaintiffs seek broad categories already available in the court record or other parties' email traffic, the Court should limit such requests under Rule 26(b)(2)(C). *Russell v. Scott*, Civil Action No. 5:20-cv-184-gwc-kjd, 2022 U.S. Dist. LEXIS 137485 (2022)

### D. Discovery from Defendant Sprei

Defendant Sprei has not produced any documents to date.

Defendant Sprei has likewise not responded to Defendant Rubin's First Sets of Requests for Admission, Interrogatories, and Requests for Production.

***Plaintiffs' Position***: Sanctions are warranted for Sprei's continuing contempt of the Court's discovery orders. Sprei ignored the Court's May 14 deadline for providing Plaintiffs with hit counts. Sprei has provided no explanation for his brazen disregard of this Court's discovery orders.

Notably, prior to the Court's order, Sprei's former counsel on April 28 sent Plaintiffs hit counts showing that Sprei has at least 38,000 potentially responsive documents and communications which hit on Plaintiffs' search terms in his possession from his email account alone. There is no excuse for Sprei's failure to direct his former counsel to produce those to us. This does not even include documents and communications from Sprei's mobile device, such as WhatsApp messages and audio recordings, some of which we have received from third parties. *See, e.g.,* AG_001337-38 (July 16, 2025 WhatApp messages between Sprei and Gorkin where Gorkin seeks Sprei's "approval" of a draft message for Gorkin to send to Plaintiffs' counsel after being retained to represent Graubard, where Sprei specifically instructs Gorkin not to copy Sprei on the correspondence); AG_001344-45 (July 2, 2025 WhatApp messages between Sprei and Gorkin discussing a game

10

plan if Graubard does not have funds available to replace Plaintiffs' escrowed funds and deposit with the court that day).

***Defendant Sprei's Position***: By email dated Friday, May 15, 2026, at 7:30 p.m., Defendants Sprei requested that Plaintiffs include the following text, which Plaintiffs have not modified, in this joint status report:

> *Mrs zimmerman add in the letter that my Lawer is hired*
>
> *And he will file nop Monday and reach out*
>
> *To you to discus discovery*

### E.     Discovery from Plaintiffs

Plaintiffs have substantially completed their production of documents in response to Defendant Graubard's discovery requests. Today, two weeks before their May 29 substantial-completion deadline, Plaintiffs substantially completed their productions to all Defendants.

In addition, as explained below, Plaintiffs have been reproducing documents received in response to third-party subpoenas on a rolling basis as they are received.

Defendant Graubard has indicated that he intends to serve additional discovery requests on Plaintiffs in the coming days. Plaintiffs reserve all rights and objections, including as to the timeliness of Graubard's requests.

## II.     Third-Party Document Discovery

***Plaintiffs' Position***: Plaintiffs have issued subpoenas *duces tecum* to TD Bank, Flagstar Bank, Northfield Bank, Ainsworth Gorkin PLLC, Montclare & Wachtler LLP, and 536 Holdings LLC. Plaintiffs have been producing documents received in response to the subpoenas on a rolling basis to all Defendants.

At this time, the only subpoena that requires this Court's attention is Plaintiffs' subpoena to 536 Holdings LLC, which was served on April 10, 2026. 536 Holdings LLC did not produce any responses or objections to the subpoena, and the April 24 response deadline has long passed.

III.    **Depositions**

Plaintiffs have noticed depositions of the following witnesses:

- Shaya Gorkin – June 9, 2026

- Defendant Rubin – June 11, 2026

- Chang Hahn – June 12, 2026

- Defendant Graubard – June 17, 2026

- Montclare & Wachtler LLP – June 19, 2026

- Defendant Seddio – June 22, 2026

- Defendant Sprei – June 25, 2026

Defendant Rubin noticed half-day depositions for each Plaintiff on June 10. Plaintiffs are not available on that date and on May 13 proposed the following alternative dates:

- Plaintiff Pertshire – May 26 or 27 (in person in New York)

- Plaintiff Metaxas – preferably May 29 or otherwise May 26, 27, or 28 (remote)

*Plaintiffs' Position*: Plaintiffs are concerned because, while depositions are potentially beginning later this month for Plaintiffs, who have substantially completed their document production, depositions are beginning in a few weeks for Seddio and Sprei, who have not come close to substantially completing their document production—a circumstance Plaintiffs believe may be intentional.

*Defendant Rubin's Position*: Defendant Rubin previously confirmed in correspondence dated May 7, 2026 the dates of June 17, 2026 (Graubard), and June 25, 2026 (Sprei), without waiver of his rights under Local Civil Rules 30.3 and 26.4. As to the June 25 deposition of Mr.

Sprei, undersigned counsel will attend; Mr. Rubin personally is unlikely to attend that deposition due to the post-wedding *sheva brachos*.

Defendant Rubin appreciates Plaintiffs' agreement, reflected in the deposition list above, to move the deposition of Defendant Seddio from June 23, 2026 to June 22, 2026 to accommodate the conflict caused by Mr. Rubin's daughter's wedding.

Defendant Rubin further intends to serve notices of deposition for Defendant Graubard, Defendant Sprei, Defendant Seddio, and the Plaintiffs — including a Rule 30(b)(6) representative of Plaintiff Pertshire Investments LP — on dates that accommodate Mr. Rubin's personal attendance under Local Civil Rule 30.3. As to the depositions of Plaintiff Pertshire and Plaintiff Metaxas, Defendant Rubin previously proposed June 10, 2026 in his May 7, 2026 correspondence and will work with Plaintiffs' counsel to confirm dates consistent with the alternative ranges set forth above.

## IV.    Third-Party Defendant Frankel

Third-Party Defendant Chaskel Frankel was served with process on April 27, ECF No. 92, and his deadline to respond to Defendant Graubard's Third-Party Complaint is today, Monday, May 18.

## V.    Pending Criminal Charges Against Defendant Sprei

As the Court is aware, a criminal complaint was filed against Defendant Sprei on May 8. *United States v. Sprei*, No. 26-mj-91 (E.D.N.Y.). On May 13, Sprei was arrested, arraigned, and released on bond.

Plaintiffs and Defendant Rubin disagree on whether and the extent to which Sprei's pending criminal charges should affect the existing discovery schedule in this case. Defendant Graubard stated he does not object to Defendant Rubin's request. As of the time of filing this report, Defendants Sprei and Seddio have not taken a position on the issue.

13

***Plaintiffs' Position***: The mere fact of Defendant Sprei's pending criminal proceedings should have no effect on the existing discovery schedule. "A stay of a civil case to permit conclusion of a related criminal prosecution has been characterized as an extraordinary remedy." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012) (cleaned up) (affirming denial of stay). "A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Id.* (quoting *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995) (affirming denial of stay)). "Absent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim." *Id.* at 98 (cleaned up). The burden to show that a stay is warranted rests on the party seeking it. *Id.* at 97. To date, Mr. Sprei has not sought a stay, or even communicated any intention to seek a stay, of any of the instant matter, let alone the Court's discovery deadlines. Despite this fact, Rubin appears to believe he is entitled to a delay of the instant proceedings. There is no basis in law or logic for Rubin's request.

No Defendants other than Sprei are identified in the criminal complaint, so it is unclear how Sprei's pending criminal proceedings implicate any co-Defendants' discovery obligations as to warrant an extension. Moreover, the only set of transactions identified in the criminal complaint is separate and distinct from the set of transactions giving rise to this action, so regardless of any structural similarity between the complaints, it is unclear how those charges implicate discovery in this action. Defendant Rubin notes Sprei's failure to produce any documents, but Plaintiffs face the same issue, *see supra* Part I.D, and are nonetheless prepared to proceed on the existing schedule. Sprei's failure to produce any documents to Plaintiffs or Rubin predated Sprei's six hours in federal custody on May 13 and was the result of Sprei's ongoing decision to flout this Court's

14

discovery orders. His criminal proceedings are ancillary and, according to the criminal complaint, based on unrelated conduct.

Accordingly, Plaintiffs oppose Defendant Rubin's proposal to extend fact discovery by 90 days. Plaintiffs note that neither Defendant Seddio nor Defendant Sprei (despite his release from custody five days ago) has sought any change to the discovery schedule based on the pending criminal charges against Sprei. Unless and until Sprei raises a concern with the discovery schedule, this request is wholly premature, and Defendant Rubin lacks standing to make such a request. They have in no way explained how the fact that Sprei was arrested and released the same day, and who will remain out on bond, should have any effect on discovery here. Plaintiffs fear that Defendant Rubin is trying to use the criminal proceedings against Sprei as yet another opportunity to prolong and delay Plaintiffs' ability to vindicate their rights, as various Defendants have done time and again in this action.

***Defendant Rubin's Position***: Defendant Rubin does not seek a stay of this action and do not invoke the multi-factor analysis of *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83 (2d Cir. 2012), or *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir. 1980) (en banc), to relieve any party of any discovery obligation. Defendant Rubin respectfully submits, however, that the May 8, 2026 indictment of Defendant Sprei and his arrest on May 13—facts unknown to the parties at the time of the May 4 conference, and inconsistent with the predicates of the existing discovery schedule—warrant modest, targeted modifications to that schedule.

First, Defendant Sprei has not produced any documents in response to Plaintiffs' Requests for Production served on January 20, 2026, or in response to Defendant Rubin's First Set of Requests for Admission, First Set of Interrogatories, and First Set of Requests for Production. Indeed, Mr. Sprei has provided no response of any kind to Mr. Rubin's written discovery to date. Mr. Sprei

has not appeared by counsel since the withdrawal of his prior counsel (ECF No. 83), and is now a federal criminal defendant in a matter arising from an alleged scheme involving solicitation of investor funds, attorney escrow accounts, and unauthorized transfers thereof. *See* Compl., *United States v. Sprei and King*, No. 1:26-mj-00091 (E.D.N.Y. May 8, 2026). The Government has expressly represented that its investigation extends to "numerous schemes to defraud, including multiple schemes to defraud real estate investors." *Id.* ¶ 2. The prospect of meaningful written or testimonial discovery from Mr. Sprei within the remaining fact discovery period is, on these facts, attenuated.

Second, Defendant Rubin respectfully proposes that (i) the fact discovery cutoff currently set for June 30, 2026 be extended by ninety (90) days, to and including September 30, 2026, to permit the parties to conduct any follow-up discovery occasioned by Mr. Sprei's posture, including, where appropriate, the deposition of Mr. Sprei subject to any privilege determinations he may make; and (ii) the remaining deadlines in the so-ordered Joint Status Report (ECF No. 72) be adjusted commensurately, with a revised joint status report to issue within fourteen (14) days following the May 20 conference. The relief sought is modest, neutral as among the parties, and addresses a circumstance that did not exist at the time of the May 4 conference.

Third, Defendant Rubin does not undertake to speak for Defendant Sprei, who may set forth his own position concerning his anticipated participation in further discovery in this action.

Defendant Graubard stated he does not object to Defendant Rubin's request.

*    *    *

The parties appreciate the Court's time and attention on this matter.

Dated: May 18, 2026

/s/ Lauren J. Zimmerman
Lauren J. Zimmerman
BENESCH FRIEDLANDER COPLAN &
ARONOFF LLP
1155 Avenue of the Americas, Floor 26
New York, NY 10036
Tel: (646) 356-6023
lzimmerman@beneschlaw.com

Jennifer M. Selendy
Babak Ghafarzade
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY  10104
Tel: 212-390-9000
jselendy@selendygay.com
bghafarzade@selendygay.com

*Attorneys for Plaintiffs  Angelos Metaxas
and Pertshire Investments LP*

/s/ Mordy Gross
Mordy Gross
LAW OFFICES OF MORDY GROSS LLC
18 Broadway Ste 10612
Albany, NY 12207
484-680-0768
Mg@mordygross.com

*Attorney for Defendant Jonathan Rubin*

/s/ Randall Tesser
Randall Tesser
15 Fisher Lane, Suite 200
White Plains, NY 10603
(212) 754-9000
rtesser@tesserryan.com

*Attorney for Defendant Mark David Graubard*