THE LAW OFFICES OF

# NATHANIEL Z. MARMUR, PLLC

1140 SIXTH AVENUE, 17TH FLOOR, NEW YORK, NY 10036

T: 212-257-4894  F: 646-829-9519

NMARMUR@MARMURLAW.COM

WWW.MARMURLAW.COM

May 29, 2026

**By ECF**

The Honorable Peggy Cross-Goldenberg
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Metaxas et al. v. Graubard et al.*, Case No. 1:25-cv-5844 (AMD) (PCG)

Dear Judge Cross-Goldenberg:

We represent Defendant Yeschiel Shimon "Sam" Sprei  in the above-captioned action. In accordance with Your Honor's May 20, 2026 Order, we write to respectfully request that the Court stay all civil proceedings against Mr. Sprei pending the resolution of the parallel federal criminal proceedings in *United States v. Sprei, et al.*, Case No. 1:26-mj-91 (PCG) (copy attached), in which Mr. Sprei has been charged by criminal complaint with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. For the reasons set forth below, the balance of interests strongly favors a stay.

At the threshold, however, the Court should be aware of the central problem that will arise if this civil case proceeds: Mr. Sprei intends to invoke his Fifth Amendment privilege against self-incrimination with respect to all testimony, document production, interrogatory responses, requests for admission, and other discovery in this action. This is not a tactical choice; it is a constitutional necessity given the pending criminal complaint and the government's continuing investigation. If the civil case proceeds without a stay, Mr. Sprei will be forced into an impossible dilemma: either waive his Fifth Amendment privilege and provide testimony and discovery that could be used against him in the criminal prosecution, or invoke the privilege and face severe consequences, including adverse inferences and potential default in this matter. *See United States v. Certain Real Property & Premises Known as 4003-4005 5th Ave.*, 55 F.3d 78, 83 (2d Cir. 1995) (a civil litigant who invokes the Fifth Amendment "must bear the consequence of lack of evidence, and the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation").

Thus, absent a stay, Mr. Sprei will be effectively deprived of any meaningful opportunity to contest Plaintiffs' allegations. The denial of a stay will also generate a steady stream of disputes over the scope of Mr. Sprei's privilege assertions in response to every discovery request, interrogatory, and deposition question, burdening the Court and the parties with motion practice that a stay would eliminate.

Hon. Peggy Cross-Goldenberg
May 29, 2026
Page 2 of 5

## I.  BACKGROUND

On October 17, 2025, Plaintiffs Angelos Metaxas and Pertshire Investments LP commenced this civil action against Mr. Sprei and three co-defendants, asserting claims for declaratory judgment, tortious interference with contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, abuse of process, attorney deceit and collusion under N.Y. Judiciary Law Section 487, conversion, and aiding and abetting conversion. The claims arise from the alleged misappropriation of $2 million in escrow deposits that Plaintiffs placed with co-defendant Mark David Graubard, Esq. in connection with a potential investment opportunity.

As discovery in the civil case was ongoing, on May 8, 2026, a criminal complaint and arrest warrant were filed under seal in this District charging Mr. Sprei and Edward Harold King with conspiracy to commit wire fraud in violation of 18 U.S.C. §1349. The criminal complaint alleges that Mr. Sprei and King engaged in a scheme to defraud investors by soliciting funds under the pretense of an investment opportunity, placing those funds in escrow with an attorney who served as a purportedly independent escrow agent, and then converting the investors' funds to personal use while refusing to return them upon demand. The criminal complaint thus describes a modus operandi that is materially identical to the conduct alleged in this civil action: both allege that Mr. Sprei presented investors with a business opportunity, required them to deposit funds in escrow to demonstrate "proof of liquidity," arranged for an attorney to serve as escrow agent under agreements granting the investors an unconditional right to demand return of their funds within two business days, and then refused to return the funds upon demand.  Indeed, the criminal complaint makes clear that the government is prepared to expand the charges beyond the fraud alleged therein.  *See* Criminal Complaint ¶2 ("The [United States Attorney's Office"] and the Internal Revenue Service Criminal Investigations are investigating [Sprei and King] for their roles in numerous [similar] schemes to defraud . . .  [and the] launder[ing of] the illegal proceeds."]

This background underscores that Mr. Sprei faces a very real risk of criminal exposure arising out of the allegations in the instant matter.  Although the civil complaint involves different alleged victims, the purported conduct – involving the holding out of escrow arrangements as an inducement to dupe investors – is of the same type and falls squarely within the scope of the government's ongoing investigation and threatened expansion of charges.  Notably, the civil complaint alleges that Plaintiffs "reported Sprei and Graubard's illegal conduct to law enforcement," Complaint ¶6, and even references other similar civil actions that plainly implicate criminal concerns, *see, e.g.*, ¶ 29, ¶31, ¶71.

## II.  LEGAL STANDARD

A district court has inherent discretionary authority to stay civil proceedings pending the resolution of related criminal proceedings. *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012). The Second Circuit has endorsed a six-factor balancing test for evaluating such motions: (1) the extent of overlap between the criminal and civil cases; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest. *Id.* at 97-99. Each factor favors a stay here.

Hon. Peggy Cross-Goldenberg
May 29, 2026
Page 3 of 5

### III.  ARGUMENT

**A. The Overlap Between the Criminal and Civil Cases Is Substantial**

The first *Louis Vuitton* factor, the extent of overlap between the criminal and civil cases, weighs heavily in favor of a stay. The criminal complaint charges Mr. Sprei with a conspiracy to defraud investors through a scheme involving: (i) presenting investors with a purported business opportunity; (ii) requiring them to deposit funds in escrow to demonstrate "proof of liquidity"; (iii) arranging for an attorney to serve as escrow agent under agreements granting the investors an unconditional right to demand return of their funds; and (iv) converting the investors' funds to personal use while refusing to return them. The civil complaint alleges materially identical conduct. The facts, the legal theories, and the evidence to be presented will overlap substantially. Even were the instant matter not ultimately charged in the criminal case, the underlying facts could well be admitted as FRE 404(b) evidence in a criminal trial or used to enhance a sentence as relevant conduct.

**B. The Criminal Complaint, Combined with the Government's Threatened Expansion of Charges, Demonstrates That Prosecution Is Likely and Imminent, Not Remote or Hypothetical**

The second *Louis Vuitton* factor, the status of the criminal case, also cuts sharply in favor of a stay.  Although the Second Circuit has observed that a stay is "most justified" where a defendant "is already under indictment for a serious criminal offense," *Louis Vuitton*, 676 F.3d at 101, that factor that applies with similar force where, as here, the government has arrested the defendant and charged him by criminal complaint with a serious offense and fully intends to move forward with the case.  The point is that prosecution is "not remote or hypothetical."  It has, in fact, commenced. *See United States v. Delacruz*, 862 F.3d 163, 176 (2d Cir. 2017) (noting that "the criminal complaint [had] initiat[ed] this prosecution").

*Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444 (2d Cir. 2013), is not to the contrary.  The Court there affirmed the discretionary denial of a stay where the defendant had "repeatedly failed to comply with the district court's discovery orders" and had engaged in "plainly dilatory tactics" before he was arrested on a criminal complaint. *Id.* at 453-54. Critically, though, the defendant was never indicted and the complaint was dismissed, *id.* at 454 and n.9. Dismissal here without further prosecution seems extraordinarily unlikely given the severity of the allegations and the criminal complaint's statements that investigations are continuing.

Moreover, whatever Mr. Sprei's prior discovery conduct may have been, much of which occurred when he was acting *pro se*, the filing of the criminal complaint on May 8, 2026, has created a fundamentally new legal landscape. Mr. Sprei's Fifth Amendment concerns have crystallized, and continued civil discovery will cause the precise constitutional harm that the stay doctrine is designed to prevent.

Finally, granting a stay now will not reward dilatory conduct; rather, it will prevent a constitutional violation. The alternative – forcing Mr. Sprei to choose between waiving his Fifth Amendment rights or suffering adverse inferences and potential default – is a far greater injustice than any delay Plaintiffs have experienced to date. And the Court retains full authority to impose appropriate conditions on the stay, including periodic status reports and a requirement that Mr. Sprei comply promptly with all discovery obligations once the stay is lifted.  Courts routinely impose such conditions to protect plaintiffs' interests while safeguarding a defendant's constitutional rights. *See, e.g., Doe v. Indyke*, No. 20-CV-00484 (JGK) (DF), 2020 WL 5518384, at *6 (S.D.N.Y. Sept. 14, 2020) (granting stay with periodic reporting requirements).

Hon. Peggy Cross-Goldenberg
May 29, 2026
Page 4 of 5

## C. Plaintiffs' Interests Do Not Outweigh the Need for a Stay

The third and fourth *Louis Vuitton* factors, which weigh the interests of the parties, also counsel in favor of staying this action as to Sprei.  While Plaintiffs have a legitimate interest in the prompt resolution of their claims, and while the Court has understandably expressed frustration with Mr. Sprei's prior discovery conduct, the filing of the criminal complaint has fundamentally altered the calculus. The question is no longer whether Mr. Sprei should be compelled to comply with outstanding discovery requests, but whether the Court should force him to choose between his Fifth Amendment rights – necessary to protect his liberty given his status as a criminal defendant – and his ability to defend a civil action. That is a qualitatively different question, and the answer favors a stay.

Moreover, there is no risk that evidence will be lost or destroyed during a stay; the criminal investigation will preserve the relevant evidence, and the government's ongoing prosecution ensures that witnesses and documents will remain available. See *Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 40 (rejecting plaintiffs' argument that a stay would result in lost evidence, noting that "due to the overlapping issues in the criminal and civil trials, the criminal justice system will help safeguard the evidence") (cited in *Louis Vuitton*, 676 F.3d at 101).

## D. The Interests of the Court and the Public Favor a Stay

The final two *Louis Vuitton* factors also cut in Mr. Sprei's favor.  A stay will promote judicial economy. The outcome of the criminal proceedings may narrow or moot issues in this civil action, increase the potential for settlement, and avoid unnecessary discovery disputes arising from Mr. Sprei's invocation of the Fifth Amendment. A conviction in the criminal case, should it be expanded to encompass the allegations here, could even have collateral estoppel effect in this civil action, thereby simplifying the issues for trial. See *SEC v. Baston*, No. 1:23-cv-05347, at 5 (S.D.N.Y. Oct. 17, 2023) (granting stay and noting that the criminal proceedings "could directly affect the scope and result of the civil proceeding," including through collateral estoppel)(copy attached).

And as noted above, a stay will eliminate the need for further motion practice regarding Mr. Sprei's discovery compliance. If the civil case proceeds without a stay, the Court will face a steady stream of disputes over Mr. Sprei's invocation of the Fifth Amendment in response to every discovery request, interrogatory, and deposition question. A stay avoids this burden entirely.

The public interest also favors a stay. The public has a strong interest in the effective prosecution of criminal fraud, and that interest is best served by ensuring that the criminal proceedings are not complicated or undermined by parallel civil discovery. *See Frantatoro v. Grabato*, No. CV 23-53 (WJM) (MAH), 2023 WL 5605669, at *6 (D.N.J. Aug. 30, 2023) ("Substantial weight should be given to the public interest in a criminal case which supersedes a civil litigant's interest in a timely resolution of their civil claims.").

Hon. Peggy Cross-Goldenberg
May 29, 2026
Page 5 of 5

## IV.  CONCLUSION

For the foregoing reasons, Mr. Sprei respectfully requests that the Court stay all civil proceedings against him in this action pending the resolution of the parallel criminal proceedings in *United States v. Sprei, et al.*, Case No. 1:26-mj-91 (PCG). Mr. Sprei proposes that the stay remain in effect until the earlier of (a) the conclusion of the criminal proceedings or (b) further order of this Court, and that the parties be required to file status reports every 90 days.

Respectfully submitted,

**THE LAW OFFICES OF NATHANIEL Z. MARMUR PLLC**

  /s/Nathaniel Z. Marmur, Esq.

By:  Nathaniel Z. Marmur, Esq.
1140 Avenue of the Americas, 17th Floor
New York, New York 10036
Tel: 212-257-4894
Email: nmarmur@marmurlaw.com

**SHEPPE LLP**

  /s/Matthew Sheppe

By: Matthew Sheppe, Esq.
425 Madison Avenue, 19th Floor
New York, New York 10017
Tel: (212) 753-2424
Email: msheppe@sheppellp.com

*Attorneys for Defendant Yeschiel Shimon "Sam" Sprei*

Attachments

cc:      All Counsel by ECF

RCH:ADW/RMS
F. #2025R00653

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -

SAM SPREI,
        also known as
        "Yechiel Sprei,"
        "Shimon Sprei,"
        and "Eli Shapiro," and
EDWARD HAROLD KING,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

**AFFIDAVIT AND COMPLAINT IN SUPPORT OF ARREST WARRANTS**

(18 U.S.C. §§ 1349 and 3551 et seq.)

No. 26-MJ-91

EASTERN DISTRICT OF NEW YORK, SS:

ANTHONY CUNDER, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Justice, United States Attorney's Office for the Eastern District of New York (the "USAO"), duly appointed according to law and acting as such.

Upon information and belief, in or about and between November 2024 and May 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SAM SPREI, also known as Yechiel Sprei, Shimon Sprei, and Eli Shapiro, and EDWARD HAROLD KING, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud, and to obtain money and property by means of one or more materially false and fraudulent pretenses, representations and promises, to wit: false representations to one or more investors and lenders, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in

interstate and foreign commerce one or more writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the USAO and have been since 2022. In the course of my duties as a Special Agent, I have investigated or participated in dozens of investigations including, but not limited to, investigations of fraud, bribery, money laundering, and theft offenses.

2. The USAO and the Internal Revenue Service Criminal Investigation are investigating the defendants SAM SPREI, also known as Yechiel Sprei, Shimon Sprei, and Eli Shapiro, and EDWARD HAROLD KING for their roles in numerous schemes to defraud, including multiple schemes to defraud real estate investors in which SPREI and KING solicited the victims' funds in fictitious investment opportunities, represented to the victims that their invested funds would be returnable on demand if the victims decided to cease involvement in the investments, and then later refused to return the money based on false excuses and converted at least a substantial portion of the victims' funds to their personal uses. The evidence gathered to date indicates that, in furtherance of these fraudulent schemes, SPREI and KING laundered the illegal proceeds, among other crimes.

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3

## I.    The Defendants

3.    The defendant SAM SPREI, also known as Yechiel Sprei, Shimon Sprei, and Eli Shapiro, is a real estate developer and investor who resides in Brooklyn, New York.

4.    The defendant EDWARD HAROLD KING is an attorney who resides in Brooklyn, New York.   KING previously served as a Justice of the Supreme Court, Kings County from approximately June 2024 to December 2025, when he resigned.

## II.    Investment Fraud Scheme

5.    In approximately November 2024, the defendant SAM SPREI, also known as Yechiel Sprei, Shimon Sprei, and Eli Shapiro, presented two investors ("Investor-1," "Investor-2," and, collectively, the "Investors"), individuals whose identities are known to your affiant, with an opportunity to purchase commercial real estate located in Freehold, New Jersey (the "Property").   During subsequent phone calls and electronic communications, SPREI represented to the Investors that there was an opportunity to bid on the Property through a bankruptcy court auction, but eligible bidders had to first show "proof of liquidity" by depositing funds in escrow.   SPREI also made numerous misrepresentations designed to deceive the Investors, including the following:

a. Deposited funds from the Investors would be placed in escrow with a reputable third-party escrow agent;

b. If the Investors decided not to participate in any bid on the Property, they could so advise the escrow agent and would receive the full amount deposited within two business days; and

c. The deposited escrow funds would not be used for any purpose or transferred out of escrow without the execution of further documentation and explicit authorization from the Investors.

6. On or about February 26, 2025, in reliance on these representations, the Investors wired a total of approximately $6.5 million in escrow—approximately $5.5 million from Investor-1 and $1 million from Investor-2—to a bank account in the name of the defendant EDWARD HAROLD KING ("King's Escrow Account") pursuant to written escrow agreements signed by the Investors and KING.[2] The agreements provided the Investors with an unconditional right to demand the return of the funds within two business days of such demand and also stated that the escrow agent could not pledge, deposit, or hypothecate the deposits without written permission of the Investors. In addition, defendant SAM SPREI, also known as Yechiel Sprei, Shimon Sprei, and Eli Shapiro, told the Investors that KING's professional service limited liability company would serve as escrow agent. SPREI further told the Investors that KING was an independent escrow agent and a New York judge.

7. In the days immediately following the wire transfers from the Investors to King's Escrow Account on or about February 26, 2025, King's Escrow Account engaged in the following transactions, contrary to the prior representations from the defendant SAM SPREI, also known as Yechiel Sprei, Shimon Sprei, and Eli Shapiro, that the deposited escrow funds would not be used for any purpose or transferred out of escrow without the execution of further documentation and explicit authorization from the Investors and contrary to the defendant

---

[2] Because Investor-1 used a bank account located in Colorado and King's Escrow Account was located in New York, I know the wire transfer from Investor-1 crossed state lines. Additionally, because Investor-2 used a bank account located in New York and the servers for Investor-2's bank were located outside New York, I know the wire transfer from Investor-2 crossed state lines.

5

EDWARD HAROLD KING's prior written agreement that he could not deposit the deposited escrow funds without written permission of the Investors: two teller transaction withdrawals in the amounts of approximately $700,000 and $2,700,000 on or about February 27, 2025; an outgoing wire in the amount of approximately $850,000 to a bank account in SPREI's name, on or about February 27, 2025; a teller transaction withdrawal in the amount of approximately $7,500 on or about February 27, 2025; and two teller cash transaction debits each in the amounts of approximately $3,000 and $55,000 on or about March 3, 2025.[3]   Neither SPREI nor KING informed the Investors about any of these transactions or obtained their permission to transfer the deposited escrow funds.

8.      During the months following the Investors' transfer of $6.5 million to King's Escrow Account, the defendants SAM SPREI, also known as Yechiel Sprei, Shimon Sprei, and Eli Shapiro, and EDWARD HAROLD KING did not provide the Investors with any index number for a bankruptcy proceeding relating to the Property or any evidence that a bankruptcy sale was occurring, notwithstanding SPREI's prior representation that the real estate investment was to bid on the Property through a bankruptcy court auction.

9.      In approximately April 2025, the Investors wrote to the defendant EDWARD HAROLD KING, requesting the return of their deposited funds.   In response to this redemption request, KING advised the Investors that he would send a "notice" to "the trustee" regarding the redemption request.   However, neither escrow agreement referred to a "trustee" with respect to the obligation to return deposited funds upon request.   KING also later told the

---

[3]      A teller withdrawal refers to the process where a bank customer obtains cash from their bank account in person by filling out a withdrawal slip.   A teller cash transaction debits refers to the process where a bank teller reduces a customer's account balance by disbursing cash, such as for a withdrawal or check cashing.

Investors that instead of returning the funds to them, he would instead have KING's lawyer deposit the escrowed funds with an unspecified court, contrary to the prior representations from the defendant SAM SPREI, also known as Yechiel Sprei, Shimon Sprei, and Eli Shapiro, that the Investors' funds would be returned to them within two business days if they decided not to participate in any bid on the property and contrary to the defendant EDWARD HAROLD KING's prior written agreement that the Investors had an unconditional right to demand the return of the funds within two business days of such demand.

10.     According to a notice published in a national newspaper on or about January 14, 2025, the Property in question was the subject of a UCC public auction scheduled for March 11, 2025.[4]   The notice did not identify the defendant EDWARD HAROLD KING as an escrow agent, and it set the required escrow deposit at only $250,000, rather than the much higher $6.5 million stated by the defendant SAM SPREI, also known as Yechiel Sprei, Shimon Sprei, and Eli Shapiro.

11.     On or about May 1 and May 8, 2025, two wires in the amounts of $850,000 and $650,000, respectively, were sent from a bank account under the control of the defendant SAM SPREI, also known as Yechiel Sprei, Shimon Sprei, and Eli Sprei, to the Investors, representing a partial return of the Investors' $6.5 million investment.   However, SPREI and the defendant EDWARD HAROLD KING have not returned any further funds to the Investors.

12.     Based on my training and experience, as well as my participation in this investigation, including review of the timing of the debits from King's Escrow Account in the

---

4     A UCC auction is a non-judicial process under the Uniform Commercial Code that allows a secured lender to sell a borrower's collateral in a "commercially reasonable" manner, often through a public or private auction, to recover a loan.

days immediately following the $6.5 million interstate deposits from the Investors, there is probable cause to believe the defendants SAM SPREI, also known as Yechiel Sprei, Shimon Sprei, and Eli Shapiro, and EDWARD HAROLD KING made various intentional and material misrepresentations to the Investors to fraudulently obtain their funds.

WHEREFORE, your deponent respectfully requests that the defendants SAM SPREI, also known as Yechiel Sprei, Shimon Sprei, and Eli Shapiro, and EDWARD HAROLD KING be dealt with according to law.

Respectfully submitted,

Anthony Cunder
Special Agent
United States Department of Justice,
United States Attorney's Office,
Eastern District of New York

Sworn to before me by telephone
this __8th__ day of May, 2026

HONORABLE PEGGY CROSS-GOLDENBERG
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #:_____
DATE FILED:  10/17/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

          -against-

WILSON BASTON,

                Defendant.

---

1:23-cv-05347-MKV

**MEMORANDUM
OPINION AND ORDER
GRANTING INTERVENTION AND
STAYING ACTION**

MARY KAY VYSKOCIL, United States District Judge:

The United States of America (the "Government") seeks to intervene in this civil action pursuant to Federal Rule of Civil Procedure 24 and moves for a complete stay pending resolution of the parallel criminal matter pending in this District before Judge Victor Marrero, *United States v. Baston*, 1:23-cr-00303-VM (the "Criminal Action"). [ECF No. 7]. Defendant Wilson Baston ("Baston") consents to the requested stay. [ECF No. 8]. Plaintiff the Securities and Exchange Commission (the "SEC") takes no position. [ECF No. 9]. For the following reasons, the Government's application to intervene and motion to stay is GRANTED.

## BACKGROUND

On June 23, 2023, the SEC initiated this civil enforcement action against Baston by filing a Complaint alleging that Baston engaged in a scheme to defraud investors in a series of real estate investments. [ECF No. 1] ("Compl."). The Complaint raises claims against Baston under Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) and Rule 10b-5 of the Securities Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5. Compl. ¶¶ 78–83.

On the same day the SEC filed the Complaint, a three-count indictment was unsealed in the Criminal Action. *See* 1:23-cr-00303-VM, ECF No. 1 ("Indictment"). The Indictment charges Baston with wire fraud, 18 U.S.C. § 1343, securities fraud, 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R.

§ 240.10b-5, and aggravated identity theft, 18 U.S.C. § 1028A(a)(1) and (b), arising out of the same facts alleged in the Complaint in this civil action. *See generally* Indictment. Judge Marrero held a status conference in the Criminal Action on July 14, 2023, and scheduled a further pretrial status conference for November 3, 2023. 1:23-cr-00303-VM, ECF No. 21.

On September 6, 2023, the Government filed the current application to intervene and to stay [ECF No. 7] and a memorandum of law in support [ECF No. 8] ("Gov't Mem."). On September 26, 2023, the SEC filed a letter informing the Court that it takes no position on the motion to stay, but that it intends to continue investigating the conduct of nonparties to this and the Criminal Action. [ECF No. 9]. Baston has not opposed the motion to stay. The Government represents that Baston, through counsel, consents to a stay. Gov't Mem. 1.

## DISCUSSION

### I. Intervention

Under Federal Rule of Civil Procedure 24(a)(2), a party may intervene as a matter of right if the party "(1) timely file[s] an application, (2) show[s] an interest in the action, (3) demonstrate[s] that the interest may be impaired by the disposition of the action, and (4) show[s] that the interest is not protected adequately by the parties to the action." *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996) (internal quotation marks omitted). "Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant has a claim or defense that shares with the main action a common question of law or fact." *S.E.C. v. Milton*, No. 21 CIV. 6445 (AKH), 2022 WL 3156180, at *2 (S.D.N.Y. Aug. 8, 2022) (internal quotation marks omitted).

The Government has demonstrated that intervention as of right is appropriate in this case. First, the Government's application is timely, having been filed less than three months from the SEC's filing of the Complaint. *See S.E.C. v. Billimek*, No. 22 CIV. 10542 (JHR), 2023 WL 3061360, at *2 (S.D.N.Y. Apr. 24, 2023); *S.E.C. v. Credit Bancorp, Ltd.*, No. 99 CIV. 11395

2

(RWS), 2000 WL 1170136, at *2 (S.D.N.Y. Aug. 16, 2000). Second, "[t]he government ha[s] a discernible interest in intervening . . . to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *S.E.C. v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988). Third, the Government's interest "in limiting the defendant[] to the discovery available under the Federal Rules of Criminal Procedure" could be impaired by the disposition of this civil action in advance of the Criminal Action. *S.E.C. v. Berman*, No. 20 CIV. 10658 (LAP), 2021 WL 2895148, at *2 (S.D.N.Y. June 8, 2021) (internal quotation marks omitted). "Finally, although the interests of the SEC and the government certainly converge to some extent, the government is uniquely focused on the enforcement of criminal statutes." *S.E.C. v. Shkreli*, No. 15CV7175KAMRML, 2016 WL 1122029, at *2 (E.D.N.Y. Mar. 22, 2016). Thus, no party adequately protects the Government's interest in this action. *See id.*

Alternatively, permissive intervention is appropriate, in the Court's discretion, given the common questions of law and fact underlying this action and the Criminal Action. *See U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) ("Permissive intervention is wholly discretionary with the trial court."). "It is well-established that the [Government] may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact." *S.E.C. v. Downe*, No. 92 CIV. 4092 (PKL), 1993 WL 22126, at *11 (S.D.N.Y. Jan. 26, 1993); *see Billimek*, 2023 WL 3061360, at *2; *Berman*, 2021 WL 2895148, at *3; *Shkreli*, 2016 WL 1122029, at *3.

Accordingly, the Court GRANTS the Government's application to intervene.

## II. Complete Stay

Having granted the Government's application to intervene, the Court turns to the Government's request for a complete stay of this action pending the conclusion of the Criminal

Action.  Gov't Mem. 5–10.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936)).  "Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action."  *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) (citations omitted) (collecting cases).  In determining whether to grant such a stay, district courts in the Second Circuit consider the following factors:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Louis Vuitton*, 676 F.3d at 99.

Here, the application of each factor favors the Government's requested stay.  First, this action and the Criminal Action arise from the same alleged scheme to defraud investors, such that there is significant overlap of the issues.  *See Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("The strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter.").  Second, Baston has been indicted in the Criminal Action.  *See In re Par Pharm., Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment.").  Third, because "neither the SEC nor [Baston] oppose the stay, the Court discerns no prejudice to either party from a stay." *Billimek*, 2023 WL 3061360, at *3 (internal quotation marks omitted).  Fourth, considering that Baston consents to the Government's motion, the Court finds that Baston's private interests

4

favor a stay. *See Berman*, 2021 WL 2895148, at *3; *Billimek*, 2023 WL 3061360, at *3. Fifth, the interest of the Court in judicial efficiency favors a stay "because the outcome of the Criminal [Action] could directly affect the scope and result of the civil proceeding," *Berman*, 2021 WL 2895148, at *3, including by collaterally estopping Baston from relitigating the underlying facts should he be convicted, *S.E.C. v. Contorinis*, No. 09 CIV. 1043 RJS, 2012 WL 512626, at *3 (S.D.N.Y. Feb. 3, 2012), *aff'd*, 743 F.3d 296 (2d Cir. 2014). Finally, the public has a "weighty . . . interest in the prosecution of [a] criminal matter." *S.E.C. v. Carroll*, No. 19 CIV. 7199 (AT), 2020 WL 1272287, at *5 (S.D.N.Y. Mar. 17, 2020). Courts have consistently found that "the public's interest in the effective enforcement of criminal law trumps its interest in seeing the civil litigation move forward," *Billimek*, 2023 WL 3061360, at *3 (internal quotation marks omitted), especially where, as here, continued civil litigation could allow the defendant to "circumvent[] . . . the limitations on discovery in . . . criminal proceedings," *S.E.C. v. Abraaj Inv. Mgmt. Ltd.*, No. 19-CV-3244 (AJN), 2019 WL 6498282, at *3 (S.D.N.Y. Dec. 3, 2019) (internal quotation marks omitted).

Accordingly, the Court GRANTS the Government's motion to stay.

**CONCLUSION**

For the foregoing reasons, the Government's application to intervene and motion for a complete stay is GRANTED. The Government is DIRECTED to file a letter informing the Court of the status of the Criminal Action ninety days from the date of this Order, by January 15, 2024, and every ninety days thereafter. The Government is further DIRECTED that it shall promptly notify the Court when the Criminal Action has been resolved. The deadline for Baston to answer or otherwise respond to the Complaint [*see* ECF No. 5] is adjourned *sine die*. For the avoidance of doubt, this Order shall not prevent the SEC from investigating individuals not named in the

5

Complaint or in the Criminal Action. *See S.E.C. v. F.N. Wolf & Co.*, No. 93 CIV. 0379 (LLS), 1993 WL 568717, at *2 (S.D.N.Y. Dec. 14, 1993).

The Clerk of Court respectfully is requested to terminate the motion pending at docket entry 7.

**SO ORDERED.**

Date:  **October 17, 2023**
     **New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**