Selendy Gay PLLC
1290 Avenue of the Americas
New York, NY 10104
212.390.9000

Selendy|Gay

Babak Ghafarzade
Associate
212.390.9085
bghafarzade@selendygay.com

June 5, 2026

<u>Via ECF</u>

Magistrate Judge Peggy Cross-Goldenberg
United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

  **Re:**  *Metaxas et al. v. Graubard et al.*, No. 25-cv-5844

Dear Judge Cross-Goldenberg,

  Plaintiffs respectfully submit this letter pursuant to the Court's directive at the May 20, 2026 discovery conference and in response to Defendant Sprei's May 29, 2026 letter motion (ECF No. 117, the "May 29 Letter") to stay all civil proceedings against him pending the resolution of a pending criminal proceeding against him, *see United States v. Sprei*, No. 26-mj-91 (E.D.N.Y.) (the "Criminal Action"). As the Court correctly observed at the May 20 conference, a stay is not warranted here.[1]

  A stay of civil proceedings in favor of parallel criminal proceedings is "an extraordinary remedy," and "the Constitution rarely, if ever, *requires* such a stay." *Louis Vuitton Malletier S.A. v. LY USA*, Inc., 676 F.3d 83, 98 (2d Cir. 2012)). "A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Id.* "The existence of a civil defendant's Fifth Amendment right arising out of a related criminal proceeding thus does not strip the court in the civil action of its broad discretion to manage its docket." *Id.* at 98–99. "The person seeking a stay 'bears the burden of establishing its need.'" *Id.* at 97 (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)). "Absent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim." *Id.* (cleaned up).

---

[1] Defendant Rubin did not file any similar briefing and thus has abandoned his prior argument for a 90-day adjournment of the fact-discovery deadline based on the mere pendency of the Criminal Action. *See* Joint Status Report 15–16, ECF No. 107 (May 18, 2026).

Magistrate Judge Peggy Cross-Goldenberg
June 5, 2026

To determine whether a stay is warranted, a district court must make "a particularized inquiry into the circumstances of, and the competing interests in, the case." *Id.* at 99. Courts in this circuit typically do so by applying a six-factor balancing test:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Id*. Properly balanced, these factors weigh decidedly *against* the blanket stay requested by Defendant Sprei. *See* ECF No. 117.

*First*, Sprei cannot establish "the most important factor" for obtaining a stay: substantial overlap between the Criminal Action and the instant matter. *United States v. Kwok*, 2024 WL 1250985, at \*3 (S.D.N.Y. Mar. 22, 2024) (citation omitted) (denying stay). "Cases substantially overlap when they 'arise from the same facts and involve nearly identical issues.'" *Kwok*, No. 23-cr-118, ECF No. 204, at 7 (Dec. 21, 2023) (citation omitted) (attached as Exhibit A). The criminal complaint against Sprei alleges a fraud conspiracy arising out of February 26, 2025, wire transfers totaling approximately $6.5 million by non-party investors to a non-party escrow agent in connection with the anticipated purchase of commercial real estate in Freehold, New Jersey. *See* ECF No. 117, at 8–9 ¶¶ 5–6 (criminal complaint exhibited to Sprei's May 29 Letter). Plaintiffs, who are neither parties to nor complaining witnesses in the Criminal Action, by contrast, assert different claims based on different facts: the December 5 and 6, 2024, wire transfers totaling $2 million by Plaintiffs to Defendant Graubard, who is not the subject escrow agent in the Criminal Action, in connection with a possible investment in a Florida company, *see* Compl. ¶¶ 39–46, ECF No. 1, and the associated scheme to initiate and pursue abusive, collusive, and deceitful follow-on litigation and manipulate court process to conceal their theft and prevent Plaintiffs from recovering their funds, *see id.* ¶¶ 6–11. Not only is there no overlap between the Criminal Action's fraud-conspiracy charge and Plaintiffs' claims against Sprei for declaratory judgment, tortious interference with contract, aiding and abetting breach of fiduciary duties, and aiding and abetting conversion, but the criminal complaint also does not allege any manipulative litigation conduct by Sprei whatsoever, let alone abuse of process or attorney deceit and collusion.[2] Sprei's May 29 Letter

---

[2] As previewed in the Joint Status Report filed on June 3, ECF No. 118, Plaintiffs intend to move to amend and supplement their pleadings to add further factual allegations and claims against Sprei and certain co-defendants based on evidence garnered through discovery in this matter regarding Sprei's engineering, in concert with Defendants Seddio and Graubard, of (a) the recusal of at least two Kings County Supreme Court Judges in the State Court Action and dismissal of such action the day after the issuance of an order of contempt against Defendant Graubard for failing to return Plaintiffs' escrow funds; (b) filing of six, seriatim and abusive applications for temporary restraining orders by Defendant Graubard to avoid enforcement of the contempt order, and (c) the drafting and filing of each of Seddio's frivolous and abusive filings and

Magistrate Judge Peggy Cross-Goldenberg
June 5, 2026

conspicuously ignores Plaintiffs' factual allegations and claims on this score, to which the majority of Plaintiffs' Complaint is devoted. Sprei's contention that the two complaints "allege[] materially identical conduct" is therefore baseless, and his assertion that "[t]he facts, the legal theories, and the evidence to be presented will overlap substantially" is pure speculation. ECF No. 117, at 3; *compare Medequa LLC v. O'Neill & Partners LLC*, 2022 WL 311559, at *2 (S.D.N.Y. Feb. 1, 2022) (finding criminal and civil complaints arising out of failure to return escrow funds dissimilar based on differing fraud versus contract theories, as well as different alleged accomplices).[3]

     *Second*, Sprei does not even attempt to articulate any specific burdens he would face in the absence of a stay. He vaguely states that he "intends to invoke his Fifth Amendment privilege against self-incrimination with respect to all testimony, document production, interrogatory responses, requests for admission, and other discovery in this action." ECF No. 117, at 1. But Sprei *already responded* to Plaintiffs' interrogatories more than two months ago, Plaintiffs have not served any requests for admission, and Sprei's deposition is not scheduled until June 25, 2026. Because Sprei's deposition has "not yet taken place, there is no way of measuring with any precision what questions [Sprei] may refuse to answer, or what damage may be done to [his] position in the civil case by any assertions of privilege [he] might choose to make." *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 578 (S.D.N.Y. 2001). Thus, any concern about potential testimonial burdens "is entirely speculative at this stage." *Nat'l Coal. on Black Civic Participation v. Wohl*, 2021 WL 694557, at *4 (S.D.N.Y. Feb. 22, 2021). "Moreover, this is not a case in which the government itself has an opportunity to escalate the pressure on defendants by manipulating simultaneous civil and criminal proceedings, both of which it controls." *Sterling Nat'l Bank*, 175 F. Supp. 2d at 578–79. Indeed, unlike the cases cited by Sprei, the government has not sought to intervene in this case. *See SEC v. Baston*, 2023 WL 6850320, at *1 (S.D.N.Y. Oct. 17, 2023) (cited at ECF No. 117, at 4); *Frantatoro v. Grabato*, 2023 WL 5605669, at *1 (D.N.J. Aug. 30, 2023) (same).

     As for document productions, Sprei ignores the blackletter rule that "documents voluntarily prepared prior to the issuance of a summons," like the documents and communications sought through Plaintiffs' requests for production, are "not compelled testimony, so there [is] no Fifth Amendment protection for the *contents* of [such] records." *United States v. Fridman*, 974 F.3d 163, 174 (2d Cir. 2020). Sprei's former counsel already collected, in response to Plaintiffs' January 20 requests for production, potentially responsive materials from Sprei, ran Plaintiffs' proposed search terms over those materials, and provided hit counts to Plaintiffs. *See* Ex. B. The only reason these already -prepared

---

representations in the State Court Action, with the majority of this conduct taking place *after* Plaintiffs filed their Complaint in this action.

[3] Sprei contends that the government may offer *modus operandi* evidence from this case to prove the charges in the Criminal Action, *see* ECF No. 117, at 1, 3, but *modus operandi* evidence "must be so nearly identical in method as to ear-mark the act as the handiwork of the accused," *United States v. Lopez*, 2022 WL 1137095, at *3 (E.D.N.Y. Apr. 16, 2022) (quoting *United States v. Martoma*, 2014 WL 31213, at *4 (S.D.N.Y. Jan. 6, 2014)). As explained above, the acts giving rise to the Criminal Action are not similar to those underlying Plaintiffs' claims here, and Sprei's criminal defense counsel would surely argue as much to try to *exclude* such other-act evidence from the Criminal Action. Sprei cannot have it both ways.

Magistrate Judge Peggy Cross-Goldenberg
June 5, 2026

productions were not made to Plaintiffs was because Sprei decided, weeks before his arrest, to stop cooperating with his counsel. *See* Decl. David A. Shargel Supp. Mot. Withdraw Counsel, ECF No. 83-1 (Apr. 24, 2026).

Sprei also glances over his utter failure to comply with multiple court orders well before his arrest and arraignment. Sprei first ignored Magistrate Judge Pollack's December 22, 2025 order requiring responses to document requests by February 18, 2026—three months before his arrest. ECF No. 28. Sprei then completely disregarded this Court's March 27 order adopting the parties' stipulated April 30 deadline for substantial completion of document productions which Sprei's own counsel negotiated, as well as the Court's April 30 order again requiring Sprei to abide by such deadline. *See* ECF No. 72, at 2; Apr. 30, 2026 Docket Order. By refusing to participate in discovery, Sprei effectively granted himself even more than the 30-day stay of discovery sought by his former counsel on April 24, ECF No. 83, which the Court denied on the ground that "[a] stay in the circumstances of this case would unfairly prejudice plaintiffs." Apr. 30, 2026 Docket Order. Sprei then chose to violate this Court's order that he attend the May 4 discovery conference called to address his ongoing discovery violations. And, despite being in violation of four separate court orders, Sprei brazenly ignored this Court's May 5 order (his sixth violation of a court order here) requiring him to provide "hit counts" for Plaintiffs' so-ordered search terms by May 7 and to produce all non-privileged documents by May 14. *See* ECF No. 97, at 9. Such "plainly dilatory tactics in tendering discovery even prior to" being criminally charged makes Sprei's stay arguments "ring hollow." *Louis Vuitton*, 676 F.3d at 102; *accord Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 454 (2d Cir. 2013).[4]

Sprei offers no legal basis to excuse his ongoing contempt of five of this Court's discovery orders, because there is none. Nor does Sprei raise any "concerns about expanding the scope of criminal discovery" through this action. *Nat'l Coal.*, 2021 WL 694557, at *4. His contention that "much of" his prior defiance of the Court's orders "occurred when he was acting *pro se*," ECF No. 117, at 3, is false. Much of Sprei's defiance occurred in the month he had counsel representing him, and in any event, Sprei has demonstrated a capacity to maintain a rotating roster of attorneys to work not only on his behalf but also for his co-Defendants, having engaged and contracted to pay attorneys for both Graubard and Seddio in the State Court Action, and now having two separate attorneys representing him in this action. Plaintiffs also note that Sprei's counsel of record in the Criminal Action, Benjamin Brafman, is among the costliest in the field.

---

[4] Sprei argues that *Guggenheim Capital* is inapposite because the criminal complaint there was dismissed before indictment. ECF No. 117, at 3 (citing 722 F.3d at 454 & n.9). But the Second Circuit in *Guggenheim* treated the dismissal and the defendant's "repeated[] fail[ure] to comply with the district court's discovery orders … by the time the criminal complaint was filed" as *separate factors* each weighing against a stay. 722 F.3d at 454. In any event, the Second Circuit made the same point about dilatory conduct in *Louis Vuitton*, where the defendants had been indicted. 676 F.3d at 102. The upshot is that Sprei's own dilatory conduct defeats his effort to now inappropriately leverage his criminal charges to avoid liability for civil claims that have been pending against him for nearly eight months.

4

Magistrate Judge Peggy Cross-Goldenberg
June 5, 2026

*Third*, Plaintiffs' private interests weigh strongly against a stay. Since January 2025, Plaintiffs have been deprived of $2 million that everyone agrees belonged solely to them and have expended millions of dollars trying to get it back, vindicate their rights, and obtain justice. While Defendants try to force delays at every turn, Plaintiffs' expenses continue to mount, and their $2 million remains stolen. As another district court has explained, "proceeding expeditiously in lawsuits is a matter of importance given the evidentiary concerns stemming from delay. For instance, a stay could result in witnesses becoming unavailable or suffering from fading memories, which would hamper Plaintiffs' case." *Nat'l Coal.*, 2021 WL 694557, at *3. That concern is especially important here, given that Seddio has admitted to deleting electronic communications he had a duty to preserve, Sprei refused to allow his former counsel to collect potentially responsive data and communications from his cell phone,[5] and Sprei has made a point of contacting every single witness Plaintiffs have called to testify in the parallel state-court sanctions proceedings during and after each witness' sworn testimony. Sprei even threatened one witness, Graubard's former attorney Shaya Gorkin, with a lawsuit and ethics complaint within hours of his providing truthful testimony on May 12, 2026, about Sprei's misconduct in the State Court Action, which Gorkin provided in response to a duly served subpoena. *See* Ex. C (May 12, 2026, communications from Sprei to Gorkin). And Sprei did so knowing that Gorkin was scheduled to be deposed in *this* matter on June 9—meaning Sprei has attempted to intimidate and tamper with at least one witness in both this matter and the State Court Action. Moreover, in cases like this one seeking monetary damages, "a delay could jeopardize [Plaintiffs'] ability to recover from Defendants." *Nat'l Coal.*, 2021 WL 694557, at *3. These concerns are "compounded" by the relatively advanced stage of this case as compared to the early-stage, pre-indictment criminal proceedings. *Id.* Sprei's "request for a stay pending resolution of [his] criminal case[] is thus essentially a request for an open-ended stay, which could be very costly to Plaintiffs." *Id.*

Indeed, Sprei concedes Plaintiffs' "legitimate interest in the prompt resolution of their claims," but his assertion that "there is no risk that evidence will be lost or destroyed during a stay" because "the criminal investigation will preserve the relevant evidence, and the government's ongoing prosecution ensures that witnesses and documents will remain available," ECF No. 117, at 4, assumes an overlap between the two cases that simply does not exist. Because there is no indication of any overlap whatsoever, Sprei cannot establish this factor. Even if the cases did overlap, Sprei does not contend that the government has seized any of the at-issue records or devices, so there remains a substantial risk of spoliation, as detailed above.

*Fourth*, the interests of the Court and the public also weigh against a stay. "The Court has a 'well-recognized interest in disposing of the causes on its docket with economy of time and effort.'" *Nat'l Coal.*, 2021 WL 694557, at *4 (quoting *Louis Vuitton*, 676 F.3d at 104). "The public, too, has an interest in the prompt recovery of misappropriated funds."

---

[5] Sprei's former counsel notified Plaintiffs that the hit counts they provided, attached hereto as Exhibit B, did not include Sprei's text or WhatsApp messages, as Sprei had refused them access to his cellular phone. Notably, discovery in this matter has established that Sprei's main form of communication is the WhatsApp instant messaging application.

5

Magistrate Judge Peggy Cross-Goldenberg
June 5, 2026

*Gran Sabana Corp. N.V. v. Kossoff*, 2021 WL 3666116, at *3 (S.D.N.Y. Aug. 17, 2021). This action also implicates the Court's and the public's interests in ensuring compliance with court orders and rehabilitating "the reputation of the American judicial system in the eyes of foreign investors like Plaintiffs, who previously admired American courts' commitment to the rule of law," but whose faith has been severely damaged by the deceit, collusion, and manipulation exhibited by Sprei and his accomplices in this matter. Compl. ¶ 125. Sprei himself has claimed (and such evidence is filed on the State Court Action's public docket) to have inside access to judicial clerks and court staff in Kings County Supreme Court, through which he directly manufactured the recusal of at least two judges who presided over the State Court Action as soon as those judges showed a willingness to impose consequences for Graubard's defiance of court orders. Granting him a stay now would reward him for his misconduct and further call into question the authority and efficacy of the state and federal justice systems.

Without any basis whatsoever, Sprei contends that, without a stay, "the Court will face a steady stream of disputes over his invocation of the Fifth Amendment in response to every discovery request, interrogatory, and deposition question." ECF No. 117, at 4. Not so. Plaintiffs are more than willing to consider reasonable proposals for avoiding, where practicable, actual conflicts between Sprei's criminal and civil defenses. Indeed, Plaintiffs twice reached out to Sprei's counsel in advance of his filing of the May 29 Letter motion to request that he produce non-testimonial materials in parallel to any Fifth Amendment assertions he intended to make with respect to testimonial materials and offered to meet and confer to accomplish this task. Unfortunately, Sprei declined to engage whatsoever with Plaintiffs' outreach, even refusing to give Plaintiffs' the courtesy of previewing Sprei's position before filing his May 29 Letter, then opted to take an untenably broad position on the Fifth Amendment's application to civil discovery here. Still, Plaintiffs are confident that the parties can work cooperatively to narrow any disputes before raising them to the Court, and that the Court can consider any tailored remedies at the appropriate time.

Because Sprei has utterly failed to carry his burden to show that a stay is warranted, the Court should deny his motion.

Given Sprei's continuing failure to produce a single document in response to Plaintiffs' January 20 requests for production, Plaintiffs respectfully renew their prior motion to find Sprei in contempt of court pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(vii); award Plaintiffs compensatory and coercive sanctions in an amount to be determined; and impose on Sprei a coercive sanction, payable to Plaintiffs, of $1,000 per day for 14 days following the Court's order and $5,000 per day thereafter until such time as Sprei substantially completes his document productions in response to Plaintiffs' requests.[6]

---

[6] "The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Kosowski v. Nassau County*, 350 F.R.D. 346, 351 (E.D.N.Y. 2025) (quoting *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info.*

Magistrate Judge Peggy Cross-Goldenberg
June 5, 2026

In the alternative, the Court should consider rendering a default judgment against Sprei pursuant to Rule 37(b)(2)(A)(vi) as a sanction for his willful, bad-faith, and dilatory misconduct, including "retaining counsel but then not paying their fees," as well as defying no less than five of this Court's unambiguous discovery orders. *Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 124 (S.D.N.Y. 2015).

Respectfully,

Babak Ghafarzade
Associate

---

*Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004)). "The court may … serve either goal—the coercive or the compensatory—by awarding attorneys' fees and costs to a contempt victim." *Id.* (quoting *Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.*, 438 F. Supp. 3d 203, 208 (S.D.N.Y. 2020)); *see also Paramedics*, 369 F.3d at 651, 658 (finding such escalating amounts of per-day sanctions, from $1,000 to $5,000 per day, to be reasonable if properly supported in the district court's contempt order).