June 17, 2026

**VIA ECF**

The Honorable Peggy Cross-Goldenberg, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: *Metaxas et al. v. Graubard et al.*, No. 1:25-cv-05844-AMD-PCG (E.D.N.Y.)

> Joint Letter Motion Under Your Honor's Individual Practices Section III.A — Discovery Disputes

Dear Magistrate Judge Cross-Goldenberg:

Pursuant to Section III.A of Your Honor's Individual Practices, Defendant Jonathan Rubin and Plaintiffs Angelos Metaxas and Pertshire Investments LP submit this joint letter motion regarding the discovery disputes that remain at impasse following the parties' continued meet-and-confer efforts (including narrowing of two items reflected herein).

***Claims and Defenses at Issue.*** This action arises out of a $2 million escrow deposit Plaintiffs Metaxas and Pertshire wired in December 2024 into an IOLA account held by Defendant Graubard in connection with a contemplated acquisition known as Surf 9. The Complaint asserts nine causes of action including (1) Declaratory Judgment under 28 U.S.C. § 2201; (3) Tortious Interference with Contract; (5) Aiding and Abetting Breach of Fiduciary Duty; (6) Abuse of Process; (7) Attorney Deceit and Collusion under N.Y. Jud. Law § 487 (against Defendant Seddio only); and (9) Aiding and Abetting Conversion. Mr. Rubin is named on Counts 1, 3, 5, 6, and 9. Plaintiffs' Rubin-specific factual contentions include that Mr. Rubin knowingly received all or part of the $2 million that Plaintiffs had entrusted to Defendant Graubard to hold in escrow, and that Mr. Rubin subsequently authorized Defendants Sprei and Seddio to use his name to obtain a preliminary injunction in and prosecute *Olden LLC v. Metaxas et al.*, Index No. 505819/2025 (Kings Cty. Sup. Ct.) (the "State Court Action"), for the purpose of interfering with Plaintiffs' rights to their money. Defendant Rubin denies the core allegations (Answer, ECF No. 19), denies knowingly receiving any escrowed funds, denies authoring or authorizing the Olden Affirmation filed at NYSCEF Doc. No. 4, denies any knowing participation in or authorization of the State Court Action, and notes Plaintiffs' own admission in the State Court Action — in a brief Plaintiffs' counsel filed on April 11, 2025 — that Mr. Rubin and Olden LLC were "nothing more than fronts to help facilitate Sprei and Graubard's theft of $2 million," and that Plaintiffs had "never interacted with or even known of Olden LLC or Rubin before being served with process." Defendant Rubin's Rule 12(c) pre-motion conference letter is pending at ECF No. 98. Judge Donnelly has not yet directed Plaintiffs to respond to Mr. Rubin's pre-motion letter.

***Rule 37(a)(1) Certification.*** The parties have made a good-faith effort to confer and resolve these disputes without court intervention.[1] Defendant Rubin sent meet-and-confer letters on April 28, 2026; May 11, 2026; May 19, 2026; and June 1, 2026. The parties conducted telephonic meet-and-confer sessions on May 6, 2026 and May 28, 2026. Plaintiffs sent a written reply on June 1, 2026. Defendant Rubin sent a responsive email on June 8, 2026 confirming the items at impasse and inviting cure by June 9, 2026. Plaintiffs' June 1, 2026 reply expressly stated "we have reached impasse" on the items below addressed in Sections I.A through I.E. Plaintiffs' June 11, 2026 supplemental production cured one portion of Item I.F (the 428 .opus voice-note natives) but did not cure the balance (47 email-family attachments). The disputes remaining below cannot be resolved without the Court's intervention.

Mr. Rubin's deposition was held June 11, 2026. Third-party depositions of Defendant Graubard's former attorneys Yeshaya Gorkin, Esq. and Changyeun Hahn, Esq. were held on June 9 and June 12, 2026, respectively. Defendant Graubard's deposition is scheduled for June 17, 2026. Defendants Seddio's and Sprei's depositions are scheduled for June 22 and June 25, 2026, respectively. Fact discovery closes June 30, 2026.

## I. DEFENDANT RUBIN'S POSITION

### A. Interrogatory 16 — Pre-Filing Investigation as to Defendant Rubin

Interrogatory 16 seeks Plaintiffs' identification of the factual investigation Plaintiffs and their counsel conducted, before filing the Federal Complaint on October 17, 2025, with respect to Mr. Rubin specifically. Plaintiffs' two-sentence response referenced only "public records, including court records." At Mr. Metaxas's May 29, 2026 deposition Mr. Metaxas confirmed under oath that he did not personally conduct a New York State courts search on Mr. Rubin and could not identify any fact developed between Plaintiffs' April 11, 2025 brief in *Olden v. Metaxas* — in which Plaintiffs affirmed in writing that Mr. Rubin and Olden LLC were "nothing more than fronts" — and the October 17, 2025 federal complaint that newly alleged Mr. Rubin as a knowing participant. The PACER question was deflected on litigation-strategy grounds without a privilege log entry. *Hickman v. Taylor*, 329 U.S. 495, 507-508 (1947), forecloses work-product protection over factual investigation steps. Plaintiffs declined to supplement.

**Relief sought:** Order compelling Plaintiffs, within fourteen (14) days, to either (i) supplement Interrogatory 16 with a non-evasive identification of the factual investigation steps taken before October 17, 2025 (databases queried, searches run, persons contacted, documents reviewed, by date), or (ii) supplement the June 1, 2026 privilege log under Fed. R. Civ. P. 26(b)(5)(A) with the work-product-protected mental-impression communications, by date, custodian, recipients, and non-boilerplate description.

---

[1] Defendant Rubin contends that the remaining issue raised in Plaintiffs' Position II.K (RFP 19 / pre-judgment asset discovery) is not ripe for the Court's intervention. Plaintiffs disagree, for the reasons set forth below.

**B. RFP 7 — Communications With Law Enforcement, Regulators, and Government Entities**

RFP 7 seeks Plaintiffs' communications with law enforcement, regulators, FinCEN, OFAC, state AG, and DA's offices. Plaintiffs object on First Amendment / *Noerr-Pennington* grounds. The Petition Clause does not insulate factual records of past petitioning from civil discovery; *Noerr-Pennington* bars substantive liability for petitioning conduct, not discovery of it. *Singh v. NYCTL 2009-A Tr.*, 683 F. App'x 76, 78 (2d Cir. 2017); *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93-94 (2d Cir. 2002); *Miracle Mile Assocs. v. Rochester*, 617 F.2d 18 (2d Cir. 1980). Plaintiffs' counsel admitted on the May 28 meet and confer that Plaintiffs' late-January 2026 outreach to law enforcement didn't mention Defendant Rubin because he was not someone Plaintiffs were interested in — squarely relevant to Plaintiffs' pre-suit investigation theory under Interrogatory 16 and Plaintiffs' Rule 11(b)(3) certification. Confidential treatment under ECF No. 66 is available.

**Relief sought:** Order compelling Plaintiffs, within fourteen (14) days, to produce all responsive non-privileged communications with law enforcement, regulators, FinCEN, OFAC, state AG, and DA's offices concerning Surf 9, the Escrow Deposits, or any defendant.

**C. RFPs 9 and 10 — State Court Action Documents and the "Publicly Available" Objection**

RFPs 9 and 10 seek Plaintiffs' documents and communications concerning the State Court Action, *Olden LLC v. Metaxas et al.*, Index No. 505819/2025 (Kings Cty. Sup. Ct.). Plaintiffs initially objected that the documents are "publicly available" on NYSCEF. In their portion of this letter, Plaintiffs have now represented (i) that "To the extent filings from the State Court Action were contained in Plaintiffs' email accounts that were searched, they were produced," and (ii) that "Plaintiffs are amenable to producing transcripts from the State Court Action that have not already been filed on the public docket."

***Defendant Rubin accepts Plaintiffs' compromise and narrows the relief sought.*** Defendant Rubin agrees that, subject to (a) Plaintiffs' production of the State Court Action hearing transcripts not already filed on the public NYSCEF docket, and (b) the separately briefed adequacy of Plaintiffs' email-account searches addressed in Items I.A and I.J above and below, this Item is no longer at impasse. Defendant Rubin expressly preserves the broader concerns about Plaintiffs' ESI methodology and "publicly available" objection insofar as they bear on other items in this submission. *See Charter Practices Int'l, LLC v. Robb*, No. 3:12cv1768(RNC), 2014 U.S. Dist. LEXIS 8166, at *7 (D. Conn. Jan. 23, 2014); Gross v. Lunduski*, 304 F.R.D. 136, 151 (W.D.N.Y. 2014).

**Relief sought:** Order requiring Plaintiffs, within fourteen (14) days, to produce all State Court Action hearing transcripts in Plaintiffs' possession, custody, or control that have not already been filed on the public NYSCEF docket.

**D. Interrogatory 2 — Defendant Rubin's Physical Presence in New York**

Rog 2 seeks Plaintiffs' identification of any fact known to Plaintiffs regarding Mr. Rubin's physical presence in New York during the Relevant Period. Plaintiffs refused on the ground that Defendant Rubin doesn't have to step foot in New York for personal jurisdiction. Plaintiffs confuse the merits of the personal-jurisdiction inquiry with Plaintiffs' Rule 33 obligation. Mr. Rubin's presence (or absence) in New York is independently relevant under Fed. R. Civ. P. 26(b)(1) to (a) Plaintiffs' burden to establish the in-state nexus elements of the tort claims, (b) the existence-of-contacts element of the tortious-interference and aiding-and-abetting claims, and (c) Mr. Rubin's contemplated counterclaim under N.Y. Civil Rights Law § 70-a. The May 29 deposition further confirmed that Mr. Metaxas resides in Geneva, Switzerland, and that Pertshire's general partner is a non-US entity; Plaintiffs' New York contacts are themselves in dispute and bear on symmetry.

**Relief sought:** Order compelling Plaintiffs, within fourteen (14) days, to answer Rog 2 with respect to any fact known to Plaintiffs regarding Mr. Rubin's physical presence in New York during the Relevant Period.

**E. Relevant Period Extension Through November 30, 2025**

Plaintiffs' "Relevant Period" ends February 19, 2025 (the State Court Action TRO date). Plaintiffs nevertheless rely on conduct on and after November 4, 2025 (the bond effort), November 6, 2025 (NYSCEF Doc. Nos. 83-84), and Plaintiffs' November 20, 2025 Sanctions Motion (NYSCEF Doc. Nos. 98, 100, 101, 217, 247, 306) in their Interrogatory answers Nos. 11, 12, and 13. Plaintiffs' June 2, 2026 reply conceded that Plaintiffs themselves plead conduct that post-dates February 19, 2025 ("our complaint alleges conduct by the Defendants that post-date the filing of the State Court Action"). Plaintiffs cannot rely on that conduct while withholding contemporaneous documents from the same period.

**Relief sought:** Order extending the Relevant Period for purposes of discovery from Plaintiffs through November 30, 2025.

**F. AG Natives — 47 Missing Email-Family Attachments (Item Partially Cured)**

Plaintiffs' May 21, 2026 third-party production from non-party Ainsworth Gorkin LLP, Bates METAXAS_AG_000001 – METAXAS_AG_001682, included 428 .opus voice-note slip sheets and 47 emails with attachments not produced. Plaintiffs delivered the 428 .opus natives in a supplemental production on June 11, 2026, curing that portion of the demand. The 47 email-family attachments — listed by Bates in Defendant Rubin's June 1, 2026 letter — remain unproduced. Plaintiffs assert that Ainsworth Gorkin "redacted" the 47 attachments for privilege, but neither Plaintiffs nor non-party Ainsworth Gorkin has produced a Fed. R. Civ. P. 26(b)(5)(A) privilege log identifying the 47 withheld items, the basis for any third-party privilege Plaintiffs adopt as their own, or the corresponding email family ties.

**Relief sought:** Order compelling Plaintiffs, within seven (7) days, to either (i) produce the 47 email-family attachments in native format, or (ii) identify each withheld item on a Fed. R. Civ. P.

26(b)(5)(A) privilege log with a non-boilerplate description and the specific privilege basis Plaintiffs adopt as their own.

### G. Call Detail Records — Metaxas and Macaya, Narrowed

Defendant Rubin's narrowed CDR request seeks Mr. Metaxas's and Mr. Macaya's CDRs for December 1, 2024 through October 17, 2025, limited to (i) calls to or from Mr. Frankel, (ii) calls to or from Mr. Sprei or his counsel (Mr. Kobre, Mr. Pasternak, Mr. Goldberg, Mr. Gorkin), (iii) calls to or from Mr. Graubard, and (iv) any calls associated with Mr. Rubin. Plaintiffs refused as unnecessarily burdensome given that Defendant Rubin has not interposed any defenses or counterclaims. That position is incorrect; Mr. Rubin's Answer at ECF No. 19 denies the core allegations. The CDRs are relevant to (a) Plaintiffs' damages and pre-suit investigation theories; (b) the Frankel correspondence in METAXAS_003409 (where Mr. Metaxas asked Mr. Frankel for a cellphone number, demonstrating that call records exist for at least that exchange); and (c) the asymmetry between Plaintiffs' direct communications with Mr. Frankel (whom Plaintiffs did not sue) and the absence of any communication with Mr. Rubin (whom Plaintiffs did sue).

**Relief sought:** Order compelling Plaintiffs, within fourteen (14) days, to produce Mr. Metaxas's and Mr. Macaya's CDRs for December 1, 2024 through October 17, 2025, narrowed to the four call categories above.

### H. Per-Defendant Damages and Fee Allocation

To the extent Plaintiffs' damages consist of attorneys' fees and costs incurred, those fees by their nature are allocable: fees are incurred to address discrete conduct by discrete persons. Plaintiffs' June 2, 2026 reply expressly stated: "We did not and will not agree to produce documents allocating the fees attributable to Defendant Rubin individually." Plaintiffs cannot simultaneously (i) seek joint-and-several attorneys' fees against four defendants on the theory that each played a distinct role, and (ii) refuse to disclose what portion of those fees Plaintiffs attribute to Mr. Rubin's individual acts. Refusal to allocate is a Fed. R. Civ. P. 26(a)(1)(A)(iii) initial-disclosure violation and a Fed. R. Civ. P. 26(g)(3) certification problem.

**Relief sought:** Order compelling Plaintiffs, within fourteen (14) days, to supplement their Rule 26(a)(1)(A)(iii) initial disclosures and their answer to Rog 17 with a per-defendant allocation of attorneys' fees and costs incurred to date, or to state in writing that no such allocation exists and that Plaintiffs will not seek per-defendant allocation at any subsequent stage.

### I. June 1, 2026 Privilege Log — Three Facial Deficiencies Under EDNY Local Civil Rule 26.2

Plaintiffs have clarified in their portion of this letter that the privilege log uses DD/MM/YYYY date convention. Defendant Rubin accepts that clarification and *withdraws* the prior deficiency challenges that relied on the contrary reading — specifically (a) the claim that no entries were dated in February 2025 (under DD/MM/YYYY, the log in fact contains 70 February 2025 entries), and (b) the claim that eleven entries (#4, #6, #73, #74, #77, #85, #109, #112, #137, #150, #158) reflected premature work-product invocation on January 2, 2025 (under DD/MM/YYYY, those

entries are dated February 1, 2025, which post-dates Plaintiffs' January 27, 2025 demand letter and properly anchors any work-product designation).

The remaining facial deficiencies under Fed. R. Civ. P. 26(b)(5)(A) and EDNY Local Civil Rule 26.2 are three: (1) no entries dated October 2025 — the month the Federal Complaint was filed — and no entries in May 2025; (2) non-party investors Sabby Mionis, Reda Maamari, and Philip Khoury appear as recurring participants on entries Plaintiffs claim are privileged, raising common-interest waiver questions — particularly in light of Plaintiffs' new representation that the three investors "were also clients of Plaintiffs' counsel," which itself raises joint-representation and waiver issues that warrant disclosure of any written common-interest or joint-representation agreement; and (3) boilerplate descriptions across nearly all entries in violation of EDNY Local Civil Rule 26.2(a)(2)(C). Defendant Rubin separately notes that across 176 entries spanning nine months of pre-suit work, zero entries identify Mr. Rubin in the Subject column — a fact that bears on Item I.A above but is not pressed as a free-standing log deficiency in light of Plaintiffs' clarification.

**Relief sought:** Order compelling Plaintiffs, within fourteen (14) days, to serve a supplemental log curing each of the five deficiencies as set out in Defendant Rubin's June 8, 2026 follow-up email (per-deficiency cure demands incorporated by reference, available on request).

### J. May 29, 2026 Deposition Privilege Invocations

Plaintiffs invoked privilege or work-product protection on the record on at least five subjects: (i) the date Plaintiffs first anticipated litigation; (ii) whether Plaintiffs or counsel ran PACER, NYSCEF, or commercial-database searches on Mr. Rubin before October 17, 2025; (iii) the strategic basis for naming Mr. Rubin as a defendant; (iv) Plaintiffs' communications with Mr. Macaya in advance of his May 26, 2026 deposition; and (v) the strategic basis for the State Court Action filings, including the April 11, 2025 "front" filing. Plaintiffs' position that "[w]e did not withhold any information on the basis of privilege that falls within the Relevant Period to which we agreed" is non-responsive: subjects (i) and (ii) sit squarely within Plaintiffs' own claimed pre-February 19, 2025 relevant period. *Hickman*, 329 U.S. at 507, forecloses work-product designation as to factual investigation steps. Plaintiffs cannot decline both halves of the framework.

**Relief sought:** Order compelling Plaintiffs, within fourteen (14) days, to do one of the following for each of the five subjects above: (A) supplement Rog 16 to identify the factual investigation steps taken on that subject as required by *Hickman*; or (B) identify on Plaintiffs' privilege log under Fed. R. Civ. P. 26(b)(5)(A) the work-product-protected mental-impression communications on that subject. Plaintiffs may choose (A) or (B) per subject, but cannot refuse both.

***Conclusion and Reservation as to Further Deposition of Mr. Metaxas.*** Defendant Rubin completed Mr. Metaxas's May 29, 2026 deposition without the benefit of (a) the June 1, 2026 privilege log, which post-dated the deposition; (b) the 47 email-family attachments at issue in Item I.F above; or (c) any further AG natives or supplemental production responsive to Items I.F, I.I, or I.J above. Defendant Rubin therefore reserves the right, if and to the extent Plaintiffs' production

in response to the Court's order on this motion identifies materials on which Mr. Metaxas should be examined, to seek leave for a two-hour further deposition of Mr. Metaxas on those discrete topics, by separate application made within fourteen (14) days after Plaintiffs' compliance. If Plaintiffs' production renders that reservation unnecessary, Defendant Rubin will so notify the Court.

## II. PLAINTIFFS' POSITION

### A. Interrogatory 16 — Pre-Filing Investigation as to Defendant Rubin

Rubin misunderstands Plaintiffs' response to Interrogatory 16. Plaintiffs' response reflects Plaintiffs' reliance on their counsel's investigation of the relevant facts giving rise to their claims against Rubin. Such investigative facts fall squarely within the work-product doctrine, and Rubin offers no basis to override the protections. *See Gropper v. David Ellis Real Est., L.P.*, 2014 WL 904483, at *3 (S.D.N.Y. Mar. 4, 2014) (collecting cases).

### B. RFP 7 — Communications With Law Enforcement, Regulators, and Government Entities

Rubin fails to establish how any communications between Plaintiffs' counsel and law enforcement or government regulators (to the extent any exist) have any relevance to Plaintiffs' claims against Rubin, who has raised no defenses or counterclaims in this matter.

### C. RFPs 9 and 10 — State Court Action Documents

It is not Plaintiffs' responsibility to download and produce the entire State Court Action docket for Rubin's benefit. These documents are publicly available and not uniquely in Plaintiffs' possession. Rubin has provided no authority to the contrary. To the extent filings from the State Court Action were contained in Plaintiffs' email accounts that were searched, they were produced. As a compromise, Plaintiffs are amenable to producing transcripts from the State Court Action that have not already been filed on the public docket in that case.

### D. Interrogatory 2 — Defendant Rubin's Physical Presence in New York

Rubin's arguments above do not establish the relevance of his New York contacts for purposes of discovery. The core factual disputes at issue are (1) Rubin's knowledge of Plaintiffs' escrow agreements and/or Graubard's fiduciary duties when he demanded and received some or all of Plaintiffs' $2 million from Graubard's interest on lawyer account; (2) Rubin's unlawful conversion of Plaintiffs' funds, and/or (3) Rubin's involvement in the State Court Action. Rubin's sworn testimony at his deposition established each, any of which establishes a New York nexus. Moreover, Rubin effectively concedes that he has waived any personal-jurisdiction defense by not asserting one in his responsive pleading and participating extensively in this case to date without objection. *E.g., Glob. Ref. Grp., Inc. v. PMD Analysis Inc.*, 2023 WL 5733968, at *10 (S.D.N.Y. Aug. 15, 2023),* R.&R. adopted*, 2023 WL 5734171 (Sept. 5, 2023). Rubin's "contemplated" counterclaims are not a basis for discovery.

**E. Relevant Period Extension Through November 30, 2025**

That Plaintiffs allege misconduct by Defendants post-dating the February 19, 2025 commencement of the State Court Action does not make Plaintiffs' own materials from that period relevant to any of the claims or defenses in this action. Plaintiffs and Defendants are differently situated in this litigation, so of course what is relevant to one side may differ from what is relevant as to the other. Despite several requests, to date, Rubin has provided no argument for why Plaintiffs' communications following Defendants' initiation of the abusive State Court Action against them is relevant or necessary to this matter, especially in light of the fact that Rubin has not raised a single defense or counterclaim in this action.

**F. AG Natives — 47 Email-Family Attachments**

As Plaintiffs have repeatedly informed Defendant Rubin, Plaintiffs have reproduced to Rubin (and his co-Defendants) all materials Plaintiffs have received from Ainsworth Gorkin PLLC. To the extent Plaintiffs receive additional productions, they will promptly reproduce the same. Rubin's suggestion that Plaintiffs are somehow obligated to prepare and serve a privilege log for a third-party production has no basis in law or logic.

**G. Call Detail Records — Metaxas and Macaya**

Call records were not collected from Plaintiffs' custodians and will not be produced at this late stage as requiring Plaintiffs to conduct another collection, review, and production from foreign custodians is unduly burdensome given that Defendant Rubin has not interposed any defenses or counterclaims and, despite several requests, has been unable to provide a single explanation for how records of Plaintiffs' phone calls are relevant or necessary.

**H. Per-Defendant Damages and Fee Allocation**

Plaintiffs have repeatedly informed Rubin that they do not possess any existing materials reflecting per-Defendant damages allocations, and they are not required to create new documents not in their custodians' possession to satisfy discovery requests. Rubin has provided no authority to the contrary.

**I. June 1, 2026 Privilege Log**

Plaintiffs served their privilege log on June 1, 2026 in accordance with the Federal and Local Rules. None of Rubin's purported "deficiencies" is valid: (1) because Plaintiffs' post-February 19, 2025 documents and communications are not relevant, *see supra* Part II.E, Plaintiffs did not log them; (2) Plaintiffs have already explained to Rubin that the date convention on the privilege log is DD/MM/YYYY, meaning he is misreading entries for February 1, 2025 as being for January 2, 2025; (3) Sabby Mionis, Reda Maamari, and Philip Khoury were also clients of Plaintiffs' counsel and shared a common interest with Plaintiffs; (4) the extent to which Rubin is expressly identified in Plaintiffs' privilege log has no bearing on the log's facial validity; and (5) Plaintiffs' entries are sufficient under the applicable rules.

**J. May 29, 2026 Deposition Privilege Invocations**

Plaintiffs have produced or included on their privilege log any documents and communications in their custodians' possession from the pre-February 19, 2025 period to which Plaintiffs agreed. There is therefore nothing to add to Plaintiffs' privilege log. During the May 29, 2026 deposition, Plaintiffs properly protected privileged communications post-dating February 19, 2025. Plaintiffs did not log such communications because such communications are beyond the scope of relevant discovery.

Rubin has not offered any legitimate basis for reopening Plaintiff Metaxas's deposition. *E.g., Dash v. Seagate Tech. (US) Holdings, Inc.*, 2015 WL 4257329, at *7 (E.D.N.Y. July 14, 2015) (denying defendant's motion to reopen plaintiff's deposition). Rubin's only purported bases — the sufficiency of Plaintiffs' June 1, 2026 privilege log and re-productions from Ainsworth Gorkin PLLC — are meritless for the reasons discussed above.

**K. Rubin's Discovery Deficiencies**

While Plaintiffs have worked with Defendant Rubin to resolve their concerns regarding his document productions, the parties are at impasse regarding one outstanding issue raised by Plaintiffs here.

Rubin has refused to respond to Plaintiffs' Request No. 19 of Plaintiffs' January 20, 2026 Requests for the Production of Documents ("RFPs"), which seeks documents sufficient to show the amount of unencumbered cash as well as the value of any marketable securities, secured, capital, or liquidatable assets, and liabilities presently held by Mr. Rubin, his spouse, or any of the entities under his control. Plaintiffs specifically discussed Mr. Rubin's refusal to respond to Plaintiffs' Request for Production No. 19 during the parties' April 7 meet and confer, at which point counsel for Rubin represented that Rubin was unwilling to compromise on his blanket objection to RFP 19. Plaintiffs then memorialized the parties' impasse as to RFP 19 in their April 11, 12:00 p.m. email to counsel for Rubin, in which Plaintiffs stated as follows: "In terms of Plaintiffs' ('RFPs'), we have reached the following agreements and areas of impasse: … 19: The parties have reached impasse." Two days later, counsel for Rubin agreed, in his email response to Plaintiffs, that the parties were at impasse as to RFP 19.

Rubin continues to refuse, *to this day*, to respond to RFP 19 and his below claim that RFP 19 has never been the subject of a meet and confer or any discovery discussion is provably false. Rubin's argument regarding the ripeness of a dispute on which the parties previously agreed to be at impasse and on which Rubin concedes he has no intention of changing his position on is entirely hollow and amounts to nothing more than a meritless and inefficient stall tactic. Moreover, the mere fact that a Rule 12(c) letter motion is pending, as Rubin argues below, does not, in any way, excuse Rubin's discovery obligations—a fact of which he is aware given that Rubin made a supplemental document production to Plaintiffs this past Friday, June 12, and sat for a deposition the previous day.

The Court previously reserved decision as to whether Plaintiffs' equivalent request directed to Defendant Graubard (Plaintiffs' RFP 33 to Graubard) was ripe for pre-judgment discovery.[2] *See* ECF No. 94, at 2. Substantial caselaw supports pre-judgment discovery of an adverse party's assets and financial information such discovery relates to punitive damages, which Plaintiffs seek here. *E.g., Wade v. Sharinn & Lipshie, P.C.,* 2009 WL 37521, at *1 (E.D.N.Y. Jan. 7, 2009); *Hazeldine v. Beverage Media, Ltd*., 1997 WL 362229, at *2–3 (S.D.N.Y. June 27, 1997); *Open Hous. Ctr., Inc. v. Kings Hwy. Realty*, 1993 U.S. Dist. LEXIS 15927, at *3–8 (E.D.N.Y. Nov. 8, 1993); *Tillery v. Lynn,* 607 F. Supp. 399, 402–03 (S.D.N.Y.1985).

Rubin's deposition testimony[3] has made RFP 19, a request Plaintiffs interposed on January 20, 2026 and which in no way constitutes a new "theory" as Rubin argues below, all the more relevant as Rubin testified, at length, that he has loaned Defendant Samuel Sprei approximately $10 million, which remains unpaid. *See* June 11, 2026 Deposition of Jonathan Rubin Rough Transcript at 277:15-17 ("Q. Okay. You testified that Mr. Sprei owes you roughly $10 million? A. Correct."). Rubin further testified that he paid $26,000 on Sprei's behalf for a transaction related to Surf 9 – the company Sprei proposed Plaintiffs consider investing in and for which he required they put money in escrow for purposes of establishing their liquidity.[4] *See id.* at 23:21-24:5 ("Q. And you said two times you advanced money for Surf 9? A. Yes. Q. To whom – to whom did you advance that money? A. Well, Mr. -- Mr. Graubard. Q. Okay. A. And then to some shipping company, $26,000 in order to ship out the merchandise that was sitting in the location there.").

Rubin's ability to loan out such substantial sums of money, including within the last few weeks, highlights the need to understand his assets and financial information in order for the Plaintiffs to seek and the Court to fashion the appropriate punitive damages amount.

Finally, Plaintiffs note the impropriety and inaccuracy of Rubin's statements below concerning the timeline and substance of Plaintiffs' drafting of the instant letter motion and his conspicuous omission of the fact that both parties have exchanged a multitude of revised drafts in this process. Plaintiffs decline Rubin's invitation to prolong any counterproductive back-and-forth on this issue but register their objection to Rubin's mischaracterizations and inappropriate disclosure of the substance and timing of counsel's revisions to the instant letter motion.

---

[2] Plaintiffs reserve the right and intend to request that the Court issue a ruling as to RFP 33 to Graubard, and each of its analogues as to the remaining Defendants.

[3] Rubin's June 11, 2026, deposition testimony identified certain deficiencies in Rubin's discovery responses to date. Plaintiffs are endeavoring to resolve those issues cooperatively with Rubin and reserve all rights to seek the Court's intervention if necessary.

[4] Notably, Graubard's Amended Answer in this matter attaches an email from Third Party Defendant Chaskel Frankel to Graubard directing that some or all of Plaintiffs' escrow funds be "release[d]… to Sam for surf 9".

## III. DEFENDANT RUBIN'S REPLY TO SECTION II.K

Defendant Rubin respectfully submits the following reply to address Plaintiffs' Section II.K and the footnotes Plaintiffs have annexed thereto.

***Procedural objection.*** Plaintiffs have substantively restructured Section II.K in successive drafts of this joint letter motion. While Plaintiffs included RFP 19 / pre-judgment asset discovery as a discovery issue in their initial draft circulated in the early morning hours of Monday, June 15, 2026, the deposition-driven, punitive-damages-based theory of relevance Plaintiffs now press — anchored to Mr. Rubin's June 11, 2026 deposition testimony regarding alleged loans to Defendant Sprei and a $26,000 shipping payment, and bolstered by the new footnote 4 citing Defendant Graubard's Amended Answer — appears in writing for the first time in Plaintiffs' June 16, 2026 9:00 p.m. redline, less than 24 hours before the parties' joint filing. Plaintiffs did not raise that theory in any meet-and-confer letter, telephone call, email, Rule 33 contention interrogatory, or Rule 34 supplemental request before circulating the June 16, 2026 redline. The new theory is therefore not properly before the Court under Fed. R. Civ. P. 37(a)(1) or Section III.A of Your Honor's Individual Practices.

***RFP 19 / pre-judgment asset discovery — the deposition-driven theory is not ripe; the new theory has never been the subject of any meet-and-confer; and is outside Rule 26(b)(1) on the current record.***

> ***(i) Whatever was at impasse in April 2026 is not what Plaintiffs now press.*** Plaintiffs assert that the parties discussed RFP 19 at an April 7, 2026 meet-and-confer and that the parties memorialized impasse on RFP 19 in correspondence on April 11 and April 13, 2026. Defendant Rubin's impasse position at that time was, and remains, that RFP 19 as written seeks "net worth discovery [that] is massively overbroad, invasive, and disproportionate." After Defendant memorialized that impasse, Plaintiffs went silent on RFP 19 for more than nine (9) weeks. There is no May 28, 2026 M&C reference to RFP 19; no May 11, 2026 or May 19, 2026 letter raising it; no June 1, 2026 letter mentioning it. The May 28 M&C Open-Issues Tracker — kept contemporaneously by Defendant Rubin's counsel — does not contain RFP 19. Plaintiffs' renewed push on RFP 19 first surfaces in Plaintiffs' Monday, June 15, 2026 initial draft of this joint letter motion, and the deposition-driven, punitive-damages-based theory of relevance now pressed surfaces still later — in Plaintiffs' June 16, 2026 9:00 p.m. redline. A nine-week silence on a request the responding party has objected to is not "endeavoring to resolve those issues cooperatively" (Plaintiffs' own footnote 3); it is abandonment of the issue, followed by reintroduction on an entirely new theory days before the filing deadline.

> ***(ii) The earlier financial-discovery impasse Plaintiffs reference is a different dispute that has already been resolved by the Court.*** To the extent Plaintiffs now suggest that prior

M&C discussion of Mr. Rubin's bank statements subsumes RFP 19, that suggestion is incorrect. The financial-records dispute the parties previously addressed concerned Mr. Rubin's personal and corporate bank statements for Queen Equities, Esther Equities, and WHP Equities under RFP 2 — and the related dispute over Plaintiffs' TD Bank subpoena. That dispute was definitively resolved when the Court denied Mr. Rubin's motion to quash Plaintiffs' subpoena to TD Bank and TD Bank produced those records over Mr. Rubin's protest. RFP 19 — to the extent read to seek pre-judgment asset discovery on a punitive-damages theory — is a different request, was never the subject of any M&C, is not encompassed within Plaintiffs' prior RFP 2 / TD subpoena fight, and is in any event outside the scope of Rule 26(b)(1) on the current record.

***(iii) Substantively, RFP 19 is also unripe.*** This Court reserved decision on the analogous Plaintiffs-to-Graubard RFP 33 (ECF No. 94, at 2) precisely because pre-judgment asset discovery on a punitive-damages theory is premature at the pleading stage. Defendant Rubin's Rule 12(c) pre-motion conference letter (ECF No. 98) remains pending. Plaintiffs have not yet shown that they will survive a pleading-stage challenge as to Mr. Rubin, and have not made the threshold showing required for pre-judgment asset discovery. The cases Plaintiffs cite (*Wade*, *Hazeldine*, *Open Housing Center*, and *Tillery*) confirm only that such discovery may be appropriate at some point — they do not excuse Plaintiffs' obligation to satisfy threshold requirements or to meet and confer first.

(iv) Plaintiffs' new "deposition testimony" paragraph confirms the procedural defect and does not satisfy the substantive threshold. The final paragraph of Plaintiffs' Section II.K - added in Plaintiffs' June 16, 2026 9:00 p.m. redline - argues that Mr. Rubin's June 11, 2026 deposition testimony "made RFP 19 all the more relevant" by reference to Mr. Rubin's alleged testimony that he had loaned Defendant Sprei "approximately $10 million" and paid "$26,000 on Sprei's behalf" "within just the last few weeks" in connection with a Surf 9 transaction. The paragraph is dispositive of Defendant's objection, on several grounds.

> (a) **Procedural defect**, **now confirmed by Plaintiffs' own pleading**. The factual predicate Plaintiffs assert was elicited at Mr. Rubin's deposition on June 11, 2026 — six (6) days before the parties' joint filing. In those six days, Plaintiffs did not write a meet-and-confer letter, did not place a telephone call, did not send an email, did not serve a Rule 34 supplemental request, did not propound a Rule 33 contention interrogatory, and did not otherwise meet and confer with Defendant Rubin on the new theory. The first time Plaintiffs assert the new theory in writing is in the June 16, 2026 9:00 p.m. redline. The issue is not ripe under Fed. R. Civ. P. 37(a)(1) or Section III.A of Your Honor's Individual Practices. Whatever impasse the parties reached on RFP 19 in April 2026 was on the request as written — discovery into "unencumbered cash, marketable securities, secured capital, liquidatable assets, and liabilities of Mr. Rubin, his spouse, or any of the entities under his control" — and Plaintiffs did not follow up on that impasse for more than

12

nine (9) weeks. The new deposition-driven theory now pressed in Plaintiffs' final paragraph is not what was the subject of that "impasse".

(b) **The four cases Plaintiffs cite each support limits and protective measures, not the sweeping discovery Plaintiffs seek**. Even taking Plaintiffs' characterization of Mr. Rubin's testimony at face value, the ability to make a single $26,000 payment goes to liquidity, not to net worth. RFP 19 seeks net-worth-style discovery of every asset and liability of Mr. Rubin, his spouse, and every entity under his control. None of the four cases sanctions that scope; each, properly read, supports Defendant's position.

*Wade v. Sharinn & Lipshie, P.C.*, 2009 U.S. Dist. LEXIS 60665, 2009 WL 37521 (E.D.N.Y. Jan. 7, 2009), is an FDCPA action in which the plaintiff also pleaded state-law negligence and gross negligence claims and sought punitive damages on the negligence claims. *Id*. at *1. The only opposition the defendant offered to net-worth discovery was a substantive argument that "punitive damages are not permitted under the FDCPA" — an argument the Magistrate Judge rejected because the punitive damages were tied to the state-law negligence claims. *Id*. The defendant raised no Rule 37(a)(1) meet-and-confer objection, no Rule 12 challenge to the underlying claims, and no objection to scope. *Id*. And the production was made "presumptively covered by the Confidentiality Order 'so ordered' by this Court." *Id*. No similar posture exists here: Defendant Rubin's pending Rule 12(c) pre-motion conference letter (ECF No. 98) goes directly to the viability of the underlying claims that supposedly support Plaintiffs' punitive-damages theory, and Plaintiffs have not satisfied their Rule 37(a)(1) burden.

*Hazeldine v. Beverage Media, Ltd.,* 1997 U.S. Dist. LEXIS 8971, 1997 WL 362229 (S.D.N.Y. June 27, 1997), is a Title VII / NYC Administrative Code § 8-502(a) employment discrimination discovery ruling that issued after the same court had denied the defendant's motion for summary judgment on the merits five months earlier. *See 954 F. Supp. 697* (S.D.N.Y. Jan. 28, 1997). And the Hazeldine court agreed with the defendants there that the plaintiff's "current requests for financial discovery are overbroad." 1997 WL 362229, at *3. The court (i) denied production of tax returns, holding the two-prong "compelling need" test was not satisfied; (ii) limited what could be ordered to "a financial affidavit in the form of a personal balance sheet listing his assets and liabilities" plus "a general statement of [defendant's] net worth," with the express observation that "[p]laintiff needs no more to establish her punitive damages claim"; (iii) ordered the production covered by a confidentiality stipulation; and (iv) bifurcated the trial between liability and damages. Id. at *4. The court quoted *Rupert v. Sellers*, 48 A.D.2d 265, 368 N.Y.S.2d 904 (4th Dep't 1975), for the proposition that "there is no need for a plaintiff to explore the details of a defendant's assets and liabilities. A mere

statement of defendants' respective total net worth is sufficient." 1997 WL 362229, at *4. RFP 19, by contrast, seeks far more than a net-worth statement.

*Tillery v. Lynn*, 607 F. Supp. 399 (S.D.N.Y. 1985), is a pre-trial discovery ruling in a dental malpractice action with a fraud claim. The court permitted pre-trial discovery of the defendant's personal assets — but only after, in the same opinion, denying the defendant's motion for partial summary judgment on the fraud and punitive damages claims, *id*. at 402; the court emphasized that "defendant's wealth should not be a weapon to be used by plaintiff to enable him to induce the jury to find the defendant guilty of malice," *id*. at 402-03 (quoting *Rupert*), and ordered the trial bifurcated so that "[n]o evidence as to defendant's financial status may be presented to the jury during the first phase of the trial," *id*. at 403. Mr. Rubin's Rule 12(c) pre-motion conference letter (ECF No. 98) is still pending; Judge Donnelly has not directed Plaintiffs to respond; the substantive vetting *Tillery* required has not occurred here. And the *Tillery* discovery was of a single defendant's personal assets — not, as RFP 19 demands, of a spouse and every entity under control.

*Open Housing Center, Inc. v. Kings Highway Realty Corp.*, 1993 U.S. Dist. LEXIS 15927 (E.D.N.Y. Nov. 8, 1993), is a Fair Housing Act / NYC Human Rights Law racial-discrimination case in which Magistrate Judge Azrack permitted broader discovery only because of two specific factual predicates that are absent here. First, the defendant's prior financial representations had been unreliable: defendant Diane Provenz had misstated her household monthly income on her court-filed application, including representing income "as of January 1, 1992" that conflicted with a $200,000 property sale and a $162,000 mortgage take-back. Id. at *11-12. Second, the trial schedule had been expedited — Judge Weinstein directed by order dated September 8, 1993 that "discovery was to be expedited so that trial could begin January 31, 1994." *Id*. at *2. Neither predicate is present here: Defendant Rubin has produced extensive financial records (corporate bank statements; TD Bank subpoena records that were produced after this Court denied Defendant's motion to quash); Plaintiffs have not alleged misrepresentation; and there is no expedited trial. And even in *Open Housing*, the court (i) acknowledged the general rule that "While case law in this circuit does not address whether pre-trial discovery can penetrate beyond statements of net worth it would seem that defendants are correct that in general it should not," id. at *11-12, and (ii) denied tax-return production for the two individual defendants (Noonan and Cannon) because "there have been no allegations that the representations defendants Barbara Noonan and Evelyn Cannon made about their net worth were unreliable," *id*. at *14. Additionally, this Court has noted in *Soto v. City of New York*, 2014 U.S. Dist. LEXIS 24627 (E.D.N.Y. Feb. 25, 2014), that "[r]ecent Supreme Court

jurisprudence casts substantial doubt on [the] rationale" of Open Housing, *citing State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003).

Read together, the four cases stand for the proposition that pre-trial net-worth discovery may be appropriate where (i) the underlying claims have survived a substantive challenge, (ii) the scope is limited to what the trier will actually need (often, a general net-worth statement, not categorical asset detail), (iii) trial is bifurcated so financial evidence is sequestered from the liability phase, and (iv) protective measures (confidentiality orders, FRE 502(d) clawbacks) are in place. None of those predicates are satisfied here, and most importantly, Plaintiffs have not engaged with any of them. The scope of RFP 19 — every asset and liability of Mr. Rubin, his spouse, and every entity under his control — exceeds anything any of the four cases has sanctioned.

(c) **The pleading-stage threshold has not been crossed**. Plaintiffs' punitive-damages-driven theory is itself the subject of Defendant Rubin's still-pending Rule 12(c) pre-motion conference letter at ECF No. 98. Judge Donnelly has not yet directed Plaintiffs to respond to that letter. This Court has further reserved decision on the analogous Plaintiffs-to-Graubard RFP 33 (ECF No. 94, at 2). Plaintiffs' suggestion that Defendant Rubin's compliance with already-noticed discovery — Defendant's supplemental production on June 12, 2026 and Defendant's appearance for deposition on June 11, 2026 — somehow forfeits the right to invoke Rule 37(a)(1) is non-responsive. Compliance with noticed discovery does not excuse Plaintiffs' independent obligation to meet and confer before pressing a **new theory** on a **new factual record – one that never was discussed in discovery**.

(d) **The deposition-driven theory Plaintiffs press is a transaction-discovery theory; RFP 19 is a net-worth request. The two are not the same.** Defendant reserves all rights with respect to the accuracy and completeness of Plaintiffs' characterization of Mr. Rubin's June 11, 2026 testimony, which is being transcribed. But even taking Plaintiffs' headline characterization of Mr. Rubin's testimony at face value, and even setting aside that Mr. Rubin testified the bulk of the $10 million is in attorney-held escrows, not cash advances, the facts Plaintiffs invoke — that Mr. Sprei owes Mr. Rubin a sum in the vicinity of $10 million, and that Mr. Rubin twice advanced money in connection with Surf 9, once via Defendant Graubard and once to a third-party shipping vendor for $26,000 to ship merchandise out of a Surf 9 location — describe discrete transactions in a longstanding lender-borrower relationship arising out of years of distressed real estate partnerships. Mr. Rubin testified that the relationship was "akin to a lender-borrower relationship" developed over years from distressed real estate partnerships. Those transactional facts do not tell the

Court what Mr. Rubin's net worth is, what his spouse's net worth is, or what any entity under his control is worth.

RFP 19, by its own terms, seeks documents "sufficient to show the amount of unencumbered cash as well as the value of any marketable securities, secured, capital, or liquidatable assets, and liabilities presently held by Mr. Rubin, his spouse, or any of the entities under his control." That is a request for a net-worth snapshot. It is not a request for transaction documents — not for ledgers of loans to Mr. Sprei, not for the underlying invoices or wire confirmations for the $26,000 shipping payment, not for the trustee account ledger in the Surf 9 bankruptcy (referenced in Plaintiffs' new footnote 4), and not for any of the other transaction-level material on which Plaintiffs' new theory now leans.

If Plaintiffs believe Mr. Rubin's deposition testimony opens up legitimate discovery of specific transactions, the proper vehicle is a properly noticed Rule 34 supplemental request for those transaction documents — served post-deposition, properly meet-and-conferred, and addressed by Defendant in the ordinary course — not a retroactive expansion of RFP 19 to cover transactional discovery that the request as written does not seek and that the meet-and-confer process has never addressed.

Finally, Defendant has requested but not received a copy of Plaintiffs' rough transcript and reserves all rights to dispute Plaintiffs' characterizations once the official transcript issues.

***Relief sought on Section II.K.*** For the reasons stated above, Defendant Rubin respectfully requests that the Court strike Section II.K from this joint letter motion as unripe and procedurally improper, and direct the parties to meet and confer on the issue before any further submission. To the extent the Court considers Section II.K notwithstanding that objection, Defendant Rubin respectfully requests that the Court deny Plaintiffs' motion to compel a response to RFP 19 on the current record, without prejudice to renewal upon (i) completion of meet-and-confer on the new deposition-based theory, and (ii) further proceedings on Defendant Rubin's pending Rule 12(c) pre-motion conference letter (ECF No. 98) and the analogous reservation of decision in ECF No. 94. Defendant Rubin reserves all rights and remains available to meet and confer on each.

**Response to Plaintiffs' final paragraph of Section II.K**. Defendant Rubin briefly notes Plaintiffs' assertion in the final paragraph of Section II.K that Defendant has "inappropriately disclosed" the timing of Plaintiffs' drafts. The dates Defendant references — Plaintiffs' Monday, June 15, 2026 initial draft and Plaintiffs' June 16, 2026 9:00 p.m. redline — are not characterizations of any draft's substance; they are the dates on which Plaintiffs first reduced their RFP 19 position, and then their deposition-driven theory of relevance, to writing. Those dates are necessary to the Rule 37(a)(1) and Section III.A objections, because when a moving party first raises an issue or a theory in writing is what bears on whether it has been properly noticed and meet-and-conferred. Defendant has not characterized the substance of any Plaintiff draft beyond what is needed to identify the moment of first written assertion, which is the very point of the procedural objection.

Defendant Rubin remains available to address any of the foregoing on a meet-and-confer basis at Plaintiffs' counsel's convenience.

Fact discovery closes June 30, 2026.

Respectfully submitted,

LAW OFFICES OF MORDY GROSS LLC

BENESCH FRIEDLANDER COPLAN & ARONOFF LLP

*/s/ Mordy Gross*
Mordy Gross
418 Broadway #10612
Albany, New York 12207
Telephone: (484) 680-0768
mg@mordygross.com

*Attorney for Defendant Jonathan Rubin*

*/s/ Lauren Zimmerman*
Lauren J. Zimmerman
1155 Avenue of the Americas, Floor 26
New York, NY 10036
Tel: (646) 356-6023
lzimmerman@beneschlaw.com

Jennifer M. Selendy
Babak Ghafarzade
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY  10104
Tel: 212-390-9000
jselendy@selendygay.com
bghafarzade@selendygay.com

*Attorneys for Plaintiffs Angelos Metaxas and Pertshire Investments LP*

cc (via ECF): All counsel of record