1

STENOGRAPHER: SANDRA L. ROCCA, CRR, CSR, RMR, RDR
--------------------------------------------------
REALTIME/INTERACTIVE ROUGH DRAFT TRANSCRIPT AND/OR
UNCERTIFIED REALTIME ASCII DISCLAIMER
--------------------------------------------------
IMPORTANT NOTICE:
- AGREEMENT OF PARTIES -

PROCEEDING BEYOND THIS PAGE CONSTITUTES ACCEPTANCE
OF AND AGREEMENT WITH THE FOLLOWING
TERMS AND CONDITIONS
--------------------------------------------------
   We, the party working with realtime and rough
draft transcripts and/or ASCII files, understand
that if we choose to use the realtime rough draft
screen, the rough printout, or the unedited ASCII
file, that we are doing so with the understanding
that all rough drafts are uncertified copies and...

WE AGREE THEY WILL BE BILLED TO
AND PAID FOR BY US

   We further agree not to comment in the record on,
share, give, copy, scan, fax or in any way
distribute this realtime rough draft or ASCII in any
form (written or computerized) to any party.
However, our own experts, co-counsel, and staff may
have limited internal use of same with the
understanding that we agree to destroy our realtime
rough drafts and/or any computerized form, if any,
and replace it with the final transcript/ASCII file
upon its completion.

REPORTER'S NOTE:
   Since this deposition has been recorded by me in
realtime and is in rough draft form, please be aware
that there may be discrepancies regarding page and
line number when comparing the realtime screen, the
rough draft/uncertified transcript, rough
draft/uncertified ASCII file, and the final

transcript/ASCII file.

Also, please be aware that the realtime screen and the uncertified rough draft transcript/ASCII file may contain untranslated steno, reporter's notes as parentheticals, misspelled proper names, incorrect or missing Q/A symbols or punctuation, and/or nonsensical English word combinations. All such entries will be correct on the final, certified transcript/ASCII file.

2

VIDEOGRAPHER: We are now on the record for the video deposition of Sean [sic] Sprei. The time is 12:31 p.m., June 30th, 2026, in the matter of Angelo Metaxas versus Mark David Graubard, et al., case number 25-cv-5844(AMD)(CLP) being held before the United States District Court for the Eastern District of New York.

The court reporter is Sandra Rocca. The videographer is Gus Phillips, and both are representatives of GregoryEdwards LLC.

Will counsel please state their appearances for the record.

MS. DELUCIA: Eileen DeLucia from Benesch on behalf of the plaintiffs. And I'm joined by my colleague Jessica Frank, also of Benesch on behalf

of the plaintiffs.  I think that's it for counsel who is on the line.

                    SAM SPREI,

having been first duly sworn, was examined and testified as follows:

                 CROSS EXAMINATION

BY MS. DELUCIA:

    Q  So, Mr. Sprei, thank you for joining us today.  My name's Eileen DeLucia.  I'm an attorney at the Benesch law firm.  We're here on behalf of

3

the plaintiffs.  We're going to ask you some questions.  You're going to answer our questions. We'll take a break every hour if you need.

        Sitting here today, do you understand that the testimony you're about to give is the same as if you were giving testimony in a court of law?

    A  Yes, I do want to make on record that I will not be joining the deposition.  As I mentioned yesterday in the email, I'm in the process of retaining counsel.  I did request a short adjournment to have counsel representing my

interests in this matter.  Please note that I was rejected last night by email, that you rejected the request for a very short adjournment.  I did come today as good faith as the court ordered that I should be at the deposition, but due to the fact that I don't have counsel, I do not feel comfortable going forward.  I will -- as soon as new counsel appears for me, I'll be happy to go forward with the deposition.  And I just want to make it clear on the record that's where I am.

Q  So, Mr. Sprei, the court ordered you to participate in the deposition, not just to log on and not answer questions.

A  I do understand that.  I made my -- I just

4

made my statement on the record.  And my attorney that will be representing me very soon will be communicating with you and to the court.  Okay. Thank you very much.

Q  So I think what we're going to have to do, Mr. Sprei, is pursuant to the judge's rules, we're

going to have to reach out to the court and ask them to call us during this deposition which is what they do when disputes arise in the middle of a deposition.

A  Okay.  So if the court wants to reach out to me, you can give them my cellphone number.

Q  No, that's not how to works.  We have to write to the court.  We'll stay on the line and then the court will call us right back.

A  So you can write to the court, copy me, and you can say to the court I'm available by phone and I'll discuss this with the court.  Thank you very much.

Q  That's not how it works, Mr. Sprei.  We have to write the court, stay on the line for the deposition.  The court will call us back while we are on the line and on the record and make a decision.  That's the procedure we have to use pursuant to the judges rules.

5

A  So when you send an email to the court, copy me and I will respond.  Thank you very much.  Have a

good day, guys.

Q  Mr. Sprei, please do not hang up.  The court's procedures require us to proceed --

A  I understand.  I will not go forward without an attorney.  You can send an email to the court and you can copy me and I will respond accordingly.  Have a wonderful day.

(Witness logged off the Zoom call.)

MS. DELUCIA:  So let the record reflect that Mr. Sprei has disconnected from the deposition.  If we could go off the error for one moment and then we might come back on.

VIDEOGRAPHER:  We are off the record.  The time is 12:35 p.m.

(Short recess.)

VIDEOGRAPHER:  We are back on the record.  The time is 12:36 p.m.

MS. DELUCIA:  So Mr. Sprei disconnected from the deposition.  Pursuant to the court's rules, we're going to reach out to chambers and explain the dispute.  We will hold the deposition open while we wait for chambers to call us back.  So if you folks wouldn't mind staying available for the next little

bit, we can get back on the record as soon as we hear back from the court.  So we can go off the record while we reach out to the court and then we'll let you know when we can resume.

VIDEOGRAPHER:  We are off the record.  The time is 12:36 p.m.

(Short recess.)

VIDEOGRAPHER:  We are back on the record. The time is 12:56 p.m.

MS. DELUCIA:  So we're back on the record. Mr. Sprei has disconnected.  We have since been joined by Mordy Gross and Jonathan Rubin.  We're going to call chambers as required by the judge's rules when a dispute arises during a deposition.  So we're calling chambers right now.  We'll make sure that you can hear.

(Phone call.)

MS. DELUCIA:  Hi my name is Eileen DeLucia. I'm an attorney on behalf of the plaintiffs in the Metaxas case that is currently before Judge Cross-Goldenberg.

THE CLERK:  Yeah.

MS. DELUCIA:  We are in the middle of a virtual deposition of defendant Sam Sprei and Mr. Sprei has disconnected from the deposition.

7

THE CLERK:  Oh, all right.  I did just see Ms. Erin's email and I alerted judge to it so she should be addressing that shortly.  I will let her know that he disconnected.

MS. DELUCIA:  So we're still on the record with the other party.  Should we stay online until we hear back from the judge?

THE CLERK:  Waiting to hear back from the judge.  We will -- I will call you back if the judge doesn't dial into the call back number we were given by --

MS. DELUCIA:  Excellent.  Thank you very much.

THE CLERK:  All right.  Bye.

(End of phone call.)

MS. DELUCIA:  So we will -- we will alert you folks when we hear back from the judge and then go back on the record at that time.  So we can go

off the record right now.

VIDEOGRAPHER:  We are off the record.  The time is 12:58 p.m.

(Short recess.)

THE COURT:  Hello this is Judge Cross-Goldenberg.

MS. DELUCIA:  Hello, Judge.

8

THE COURT:  All right.  To make things easiest for the court reporter, let's speak one at a time.  Starting with counsel for plaintiff because I see her box next to mine on the Zoom, can I just get everyone to give their appearance, please.

MS. ZIMMERMAN:  Lauren Zimmerman on behalf of plaintiffs.

MS. DELUCIA:  Eileen DeLucia on behalf of plaintiffs.

MS. FRANK:  Jessica Frank on behalf of Plaintiffs.

MR. SPREI:  And I'm Sam Sprei.

MS. ZIMMERMAN:  I think one of us needs to

mute.

MR. GROSS:  Mordy Gross on behalf of defendant Rubin.

THE COURT:  Okay.  And I see that defendant Rubin is with us too.  Good afternoon to everyone. I understand that you are gathered here for Mr. Sprei's deposition by plaintiffs.  Is that correct, Ms. Zimmerman?

MS. ZIMMERMAN:  Yes.  Let us know if you'd like us to ask the court reporter to go back on the record.

CERTIFIED STENOGRAPHER:  I am on the record,

9

counsel.  We're just not on the video record.

MS. ZIMMERMAN:  Great. Apologies.  That's correct, Judge.  Mr. Rubin -- following the order you issued yesterday, yesterday afternoon, Mr. Rubin withdrew his deposition Notice.  Plaintiffs put all the parties on notice that we would proceed pursuant to your order given that Mr. Rubin had withdrawn.

We provided the -- we got all the logistics in place and we provided the login information to

all the parties which is why, you know, Mr. Sprei was able to join this morning.  And we were prepared to move forward at 12:30 as noticed.

Mr. Sprei appeared, he was sworn in, and then he, you know, made his statement about the fact that he's unwilling to answer any questions and would be logging off in two minutes.

THE COURT:  Okay.  Mr. Sprei, is there anything you want to tell me?

MR. SPREI:  Yes.  Good afternoon, Your Honor.  Yesterday after I received your order, Ms. Zimmerman's law firm sent me an email about the deposition.  I responded to her by email -- that part she left out.  I responded to her by email that I am not available to go forward with the deposition today as I am in the process of retaining counsel.

10

And I need time to retain counsel which I will do in a short period.  And I asked her if she would agree to very short adjournment.

After sending that email, she -- the

plaintiffs counsel responded, I believe it was Ms. DeLucia, that she objected to my request.

I came on the record today this morning at 12:30 as Your Honor said I should go forward with the deposition.  I made my statement that I cannot go forward without an attorney as a legal practice that I need an attorney to represent my interests.  And I requested a short adjournment and it was denied by the plaintiff's counsel again.  And that's why we're here now.

THE COURT:  Okay, Mr. Sprei, you had months of notice for your deposition that was to take place last week.  And at the last minute I understand you said you were unavailable.  I'm not sure how how much notice you had for today, but I do know it's been at least a while because I've had notice for even a few days.  I don't know when Mr. Gross first noticed your deposition, but you were on notice that regardless of who was initiating the questions, you were to be deposed today.  So your unavailability is unacceptable to the court.

11

You have had two attorneys represent you in this case and have not followed through with their representation.  Any request that you are making to adjourn this deposition for the purpose of obtaining counsel is denied.  If you wish to seek further relief, you can do so in writing or at the order to show cause conference on Thursday morning which you've also been ordered to attend.  But my ruling that this deposition is to proceed stands.  And I'm going to direct that it continue.

MR. SPREI:  So I will file a letter -- I will file a letter before Thursday explaining why I cannot go forward with the deposition.  I will have my new attorney hopefully appear on Thursday, I believe July 2nd.  I do ask the court to understand that I cannot appear without counsel.  And I do understand Your Honor's position.  The fact is that I get a notice yesterday -- after Mr. Gross withdrew his deposition, I did get a notice from plaintiff yesterday I think it was 2:00, 3:00 in the afternoon.

And I'm not -- Your Honor, I'm not looking to violate any orders of Your Honor, but I do need to have counsel under the circumstances, which I don't have.  And I do ask the court to consider and

12

give me an opportunity to get counsel to be able to protect my rights.  If Your Honor declines to do so, I'm asking the court to issue a few days stay which we have to go to the judge on the case and ask for relief to get counsel.

THE COURT:  That request is denied, Mr. Sprei.  Discovery is to close today and you have had notice of this deposition date as well as your deposition date from last week.  So that request is denied.  And I'm directing that this deposition continue.

MR. SPREI:  Okay, I do understand, Your Honor.  I will on Thursday we will explain in our papers why we couldn't go forward.  And like I said, I'm happy to go forward as soon as -- in a week -- within a week I'm happy to go forward with the deposition as long as I have counsel protecting my interests.  But if the court doesn't want me to have counsel protecting my interests and denying my application, I do understand.  And so like I said, I

cannot go forward without counsel.

THE COURT:  So, Mr. Sprei, it is an order of this court that you participate in this deposition as directed.  I'm going to hang up and I will see the parties on Thursday.  But as I indicated in my

13

order yesterday, if you do not participate in this deposition, that will be yet another possible basis for sanctions or contempt or other penalties in this case.

MR. SPREI:  Okay.  Okay.  I do understand.

THE COURT:  Is there anything else Ms. Zimmerman?

MS. ZIMMERMAN:  No.  Thank you, Judge.  I'll understand that if Mr. Sprei does choose not to participate that we don't reach out to Your Honor again and we'll address it and obviously another motion for contempt in that instance on Thursday rather than reaching out to chambers again.

THE COURT:  I mean, I think my ruling is clear.  Is there anything you think I need today to make it clear?

MS. ZIMMERMAN:  I think Mr. Sprei is certainly saying he understands your ruling.  I agree it's completely clear.  I'm not convinced that Mr. Sprei is -- while he's in a car is going to participate in the deposition, but I hope that he does and I hope that he follows your orders.

THE COURT:  If there are any questions about the details, I'm sure the court reporter would be happy to read them back.

14

Let me ask, Mr. Gross, if there's anything on behalf of Mr. Rubin that you think we need to address?

MR. GROSS:  Nothing that I think needs to be addressed.  I just want to put on the record and make clear the only reason why I withdrew on behalf of Mr. Rubin was because Mr. Sprei told me that he would not participate and I felt that it was not within Mr. Rubin's best interests to have a deposition where I would have somebody not participating.  But that's the only thing -- I felt

the need to put on the record.  That's it.

THE COURT:  Thank you, Mr. Gross.  Can I ask you if you know -- and you may not have it front of you -- when did you notice Mr. Sprei's deposition for today?

MR. GROSS:  Definitely more than a week ago.  I don't have it in front of me, but I can follow up with Your Honor.

THE COURT:  That's fine.  I think if you have the information on Thursday that would be great.  I don't actually need it right now.

MR. GROSS:  I'll have the information on Thursday.

THE COURT:  Okay.  Well, I am going to hang

15

up.  And I will ask counsel since this is plaintiff's deposition, I will ask counsel for plaintiff to file a one-page letter updating me on what happened with the remainder of the deposition by noon tomorrow so that I have it in preparation for Thursday's conference and I guess the sooner you can do that the better, but by noon tomorrow at the

latest.

MS. ZIMMERMAN:  Understood.

THE COURT:  Thank you, everybody.

MS. DELUCIA:  Thank you.  We're still on the record, Sandra?

(Stenographer clarification.)

MS. DELUCIA:  Can we go back on the video record, please?

VIDEOGRAPHER:  We are back on the record. The time is 1:37 p.m.

BY MS. DELUCIA:

Q  So, Mr. Sprei, you've heard the court's order.  Are you ready to proceed with the remainder of the deposition?

Mr. Sprei, you're still muted.  Can you please restore your video and also unmute, please?

Mr. Sprei, can you please unmute your microphone and also return the video?

16

Mr. Sprei has disconnected from the deposition.  Can we go off the record, please?

VIDEOGRAPHER:  We are off the record.  The time is 1:38 p.m.

(Short recess.)

VIDEOGRAPHER:  We are back on the record. The time is 3:03 p.m.

BY MS. DELUCIA:

Q  Okay.  Welcome back, Mr. Sprei.  You understand you're still under oath from earlier today?

A  Yes.

Q  Okay.  We appreciate you rejoining the Zoom. We're going to proceed today and get to the end of our deposition, however long that takes.  I understand you've said that you needed to depart at 5:15.  We're not going to be finished by 5:155, so I just wanted to advise you that should you disconnect or leave the deposition before it's complete, we will leave it open and reserve the right to raise that issue with the court.

A  That's fine.

Q  Okay.  Mr. Sprei, do you have a Joint Defense Agreement with any of the other defendants in this case?

17

A  Based on the recommendation of my attorney, I plead the fifth to all the questions that you're going to ask me today that will be every response to every question.  If you want to go through every question, I'll be happy to respond to every question with the same response.

Q  Who is your attorney, Mr. Sprei?

A  I discussed with with my attorney.  I plead the Fifth on all the questions you ask me.

Q  I understand you're invoking the Fifth Amendment.  Who is your attorney you mentioned?

A  I had discussed it with one of my attorneys that I discussed it.  I will not disclose the information.

Q  You understand that the court issued an order denying your request for a stay based on your Fifth Amendment concerns related to your criminal case.  Do you understand that?

A  I do understand.  And I'm like I said, based on the advice of my attorney, I am pleading the Fifth and I'm happy -- you could go through every question and every question will be the same answer.

Q  The identity of your attorney, Mr. Sprei, is

not privileged or protected by the Fifth Amendment.

A   That's fine.  I will not respond to that

18

question.

Q   Mr. Sprei, have you spoken with Jonathan Rubin recently?

A   I plead the Fifth.  Based on my attorneys recommendation I plead the Fifth to this answer.

Q   And what's your basis for pleading the Fifth as to the question about when you last spoke with Mr. Rubin?

A   As the recommendation of my attorney, I plead the Fifth.

Q   Have you spoken with Mr. Graubard recently?

A   Waived on the recommendation of my attorney I plead the Fifth.

Q   Have you spoken with Mr. Seddio recently?

A   Based on the recommendation of my attorney I plead the Fifth.

Q   Is anyone else in the room with you right now, Mr. Sprei?

A  No.

Q  I would instruct you to disconnect from any messaging services, email services, texts, WhatsApp throughout the pendency of this deposition, do you understand?

A  Yes.

Q  Do you have any documents in front of you,

19

Mr. Sprei?

A  No, I don't.

Q  Okay.  Have you spoken with Chaskel Frankel recently?

A  Based on recommendation of my attorney I plead the Fifth.

Q  Who is Mr. Frankel?

A  Based on recommendation of my attorney, I plead the Fifth.

Q  Have you spoken with Israel Goldberg recently?

A  Based on the recommendation of my attorney I plead the Fifth.

Q  Mr. Sprei, if you intended to invoke your

Fifth Amendment privilege, why did you say you were unable to proceed with today's deposition?

A    As I explained earlier I'm not -- I was not available as the court ordered that I should be here and I'm here and I do need time to have the attorney and if think attorney will advise me to go forward with the deposition and answer the questions, I will but I will not do it without an attorney.

Q    I'm having trouble reconciling your testimony that you don't have an attorney with your testimony that your attorney is directing you to

20

invoke the Fifth.  How can you -- how can both of those things be true?

A    I did speak to one of my attorneys and this is the recommendation so until I don't have an attorney to respond, I will be very clear that every question I'm happy to sit here to respond to every question but it will be the same answer.

Q    Have you spoken with Shaya Gorkin recently, Mr. Sprei?

A As recommendation by my attorney I plead the Fifth.

Q Have you spoken with Chang Hahn recently?

A Based on the recommendation of my attorney I plead the Fifth.

Q Have you spoken with Ed King recently?

A Based on the recommendation I plead the Fifth.

Q You are aware Mr. Sprei that you have not produced a single document in response to plaintiff's requests for production in this case, correct?

A Based on recommendation, I plead the Fifth.

Q Why haven't you produced any documents Mr. Sprei?

A Based on recommendation I plead the Fifth.

21

Q You understand that you're obligated to do so under the Federal Rules of Civil Procedure, do you not?

A Based on recommendation I plead the Fifth.

Q What was the scheduling conflict that made

you unavailable for today's deposition, Mr. Sprei?

A  I had a dentist appointment.

Q  Did you consider rescheduling that dentist appointment when you were noticed for deposition more than two months ago?

A  I did try and like I said, based on the recommendation, I plead the Fifth on everything else.

Q  What steps have you taken to preserve documents and communications in connection with this litigation?

A  Based on the recommendation I plead the Fifth.

Q  Have you deleted any communications or documents in connection with this litigation?

A  Based on the recommendation, I plead the Fifth.

Q  Mr. Sprei, you're taking this deposition from your mobile phone device, is that correct?

A  Yes.

22

Q  What is the name of your dentist with whom you had an appointment today?

A  Based on the recommendation, I plead the Fifth.

Q  Mr. Sprei, your dentist's identity cannot possibly subject you to Fifth Amendment risks.

A  Based on the recommendation of my attorney all the responses -- this is going to be my response.

Q  What is the telephone number of your dentist?

A  Based on the recommendation, I plead the Fifth.

Q  And your dentist's address?

A  Based on recommendation I plead the Fifth.

Q  What's your current address, Mr. Sprei?

A  1362 54th Street.

Q  And how long have you lived there?

A  Based on recommendation I plead the Fifth.

Q  What is your highest level of education, Mr. Sprei?

A  Based on recommendation I plead the Fifth.

Q  What time was your dentist appointment today?

A  Based on recommendation I plead the Fifth.

23

Q  And when did you make that dentist appointment?

A  Based on recommendation I plead the Fifth.

Q  Do you hold any professional licenses, Mr. Sprei?

A  Based on recommendation I plead the Fifth.

Q  Do you have an ownership interest in an entity called 536 Holdings LLC?

A  Based on recommendation, I plead the Fifth.

Q  You are the sole principal of Olden Group LLC, correct?

A  Based on recommendation I plead the Fifth.

Q  Why were you unable to attend your deposition last Thursday, Mr. Sprei?

A  Based on recommendation, I plead the Fifth.

Q  Olden LLC is a fictitious entity, correct, Mr. Sprei?

A  Based on the recommendation, I plead the Fifth.

Q  Olden LLC is actually an alter ego of you, correct, Mr. Sprei?

A   Based on recommendation I plead the Fifth.

Q   You have an ownership interest in Surf 9 LLC?

A   Based on the recommendation, I plead the

24

Fifth.

Q   You have an ownership interest in 1145 Realty?

A   Based on the recommendation, I plead the Fifth.

Q   You have an ownership interest in Kineret Florist Inc.?

A   Based on recommendation I plead the Fifth.

Q   Do you have an ownership interest in the entity that owns 3052 Brighton?

A   Based on recommendation I plead the Fifth.

Q   What is your association with Express Trade Capital?

A   Based on the recommendation I plead the Fifth.

Q   Do you have an ownership interest in CPE

Member LLC?

A  Based on the recommendation I plead the Fifth.

Q  In what other entities do you have an ownership interest?

A  Based on recommendation I plead the Fifth.

Q  In what other entities do you exercise control?

A  Based on recommendation I plead the Fifth.

25

Q  Do you own any real property?

A  Based on recommendation I plead the Fifth.

Q  How many properties do you own, Mr. Sprei?

A  Based on recommendation I plead the Fifth.

Q  Do you own any real property in the name of an entity that you control?

A  Based on recommendation I plead the Fifth.

Q  What is your current net worth, Mr. Sprei?

A  Based on the recommendation I plead the Fifth.

Q  What bank accounts do you hold in your name?

A  Based on the recommendation I plead the

Fifth.

Q  What bank accounts do you hold in the name of entities that you control?

A  Based on the recommendation I plead the Fifth.

Q  Where do you keep your money Mr. Sprei?

A  Based on recommendation I plead the Fifth.

Q  You're familiar with Mr. Graubard, Mr. Sprei?

A  Based on recommendation I plead the Fifth.

Q  And Mr. Graubard served as the escrow agent for contemplated investments in Surf 9, correct?

A  Based on recommendation I plead the Fifth.

26

Q  Did you select him as the escrow agent?

A  Based on the recommendation I plead the Fifth.

Q  Do you consider yourself to be on the same side of the State court action as Mr. Graubard?

A  Based on the recommendation I plead the Fifth.

Q  When was the last time you communicated with Mr. Graubard?

A  Based on the recommendation I plead the Fifth.

Q  You have a borrower/lender relationship with Mr. Rubin, is that correct?

A  Based on recommendation I plead the Fifth.

Q  And Mr. Rubin has loaned you personally money correct?

A  Based on recommendation I plead the Fifth.

Q  Under what terms does Mr. Rubin or one of his entities lend money to you or your entities?

A  Based on the recommendation I plead the Fifth.

Q  Were those loans documented in written agreements?

A  Based on the recommendation I plead the Fifth.

27

Q  Did you ever fail to repay Mr. Rubin or his entities on any promised repayment date?

A  Based on the recommendation I plead the

Fifth.

Q  Mr. Rubin loaned you money in connection with Surf 9 just in the last few weeks, correct?

A  Based on the recommendation, I plead the Fifth.

Q  Did you direct Mr. Rubin or his entity Queen Equities to send wires to third parties on your behalf?

A  Based on the recommendation I plead the Fifth.

Q  Did Mr. Rubin or his entity Queen Equities send money at your direction to Frank Seddio?

A  Based on recommendation I plead the Fifth.

Q  Did you ever use Mr. Rubin's accounts or entities to move money for transactions unrelated to those entities' business purposes?

A  Based on the recommendation I plead the Fifth.

Q  Do you have access to Mr. Rubin's email account?

A  Based on recommendation I plead the Fifth.

Q  Have you ever sent any emails impersonating

28

Mr. Rubin?

A  Based on recommendation I plead the Fifth.

Q  How many emails have you sent impersonating Mr. Rubin and to whom?

A  Based on recommendation I plead the Fifth.

Q  From which accounts have you sent emails impersonating Mr. Rubin?

A  Based on recommendation I plead the Fifth.

Q  Have you ever sent emails from the account http://JRubinprop@gmail.com?

A  Based on the recommendation, I plead the Fifth.

Q  You've known Frank Seddio for approximately 12 years, correct?

A  Based on recommendation I plead the Fifth.

Q  And Mr. Seddio is an attorney, correct?

A  Based on recommendation I plead the Fifth.

Q  During that time, Mr. Seddio has represented you and your entities on a retainer basis, correct?

A  Based on recommendation I plead the five.

Q  Do you have a written engagement letter with Mr. Seddio?

A  Based on recommendation I plead the Fifth.

Q  How much do you pay Mr. Seddio?

A  Based on recommendation I plead the Fifth.

29

Q  And how often do you pay Mr. Seddio?

A  Based on recommendation I plead the Fifth.

Q  You directed Mr. Seddio to initiate the State court action, correct?

A  Based on recommendation I plead the Fifth.

Q  And when I say State court action, I'm referring to the action that was filed in Kings County State court in which -- excuse me -- Mr. Graubard was named as a nominal defendant, Olden LLC was named as the plaintiff.  Are you familiar with that action?

A  Based on recommendation I plead the Fifth.

Q  You worked with co-defendants to steal plaintiffs' escrow deposits for your own benefit, correct?

A  Based on recommendation, I plead the Fifth.

Q  You paid Mr. Seddio $25,000 a month to bribe judges in Kings County Supreme Court, correct?

A  Based on recommendation I plead the Fifth.

Q   You paid Mr. Seddio $25,000 a month for him to file bogus lawsuits on your behalf, correct?

A   Based on recommendation I plead the Fifth.

Q   You worked with defendant Rubin to file the affirmation in his name in the State court action direct?

30

A   Based on recommendation I plead the Fifth.

Q   Did you ever have access to Mr. Seddio's ECF credentials?

A   Based on recommendation, I plead the Fifth.

Q   How did you acquire those credentials?

A   Based on recommendation I plead the Fifth.

Q   Have you ever filed any documents on a docket using Mr. Seddio's credentials?

A   Based on recommendation I plead the Fifth.

Q   Have you ever had access to Mr. Seddio's NYSCEF credentials?  And that's N-Y-S-C-E-F.

A   Based on recommendation, I plead the Fifth.

Q   Have you ever filed any documents using Mr. Seddio's NYSCEF credentials?

A  Based on recommendation I plead the Fifth.

Q  How did you acquire Mr. Seddio's NYSCEF credentials?

A  Based on recommendation I plead the Fifth.

Q  You arranged for Israel Goldberg to replace Shaya Gorkin as Mr. Graubard's counsel in the State court action, correct?

A  Based on recommendation I plead the Fifth.

Q  And you knew that Mr. Goldberg's appearance would cause Justice Mostofsky to recuse himself, correct?

31

A  Based on recommendation I plead the Fifth.

Q  And you knew that because you knew that Mr. Goldberg and Justice Mostofsky were personal friends, correct?

A  Based on recommendation I plead the Fifth.

Q  How did you know that?

A  Based on recommendation I plead the Fifth.

Q  How did you acquire Mr. Goldberg's NYSCEF credentials?

A  Based on recommendation I plead the Fifth.

Q  Did you provide Mr. Goldberg's NYSCEF credentials to anyone else?

A  Based on recommendation I plead the Fifth.

Q  You retained Shaya Gorkin to represent Mr. Graubard in the state action, correct?

A  Based on recommendation I plead the Fifth.

Q  But even after Mr. Gorkin withdrew his representation, you continued directing his firm Ainsworth Gorkin to perform legal work on behalf of Mr. Graubard, correct?

A  Based on recommendation I plead the Fifth.

Q  Are you familiar with Chang Hahn who is an associate at Ainsworth Gorkin?

A  Based on recommendation I plead the Fifth.

Q  You often asked Chang Hahn at Ainsworth

32

Gorkin to prepare filings for the State court action, correct?

A  Based on recommendation I plead the five.

Q  You offered Ms. Hahn bonuses for work performed in connection with the State court action,

15:20:13  correct?

15:20:13  A  Based on recommendation I plead the Fifth.

15:20:15  Q  Did you direct Mr. Rubin to wire money to
15:20:18  Ms. Hahn for a bonus?

15:20:19  A  Based on recommendation I plead the Fifth.

15:20:22  Q  You're aware that Mr. Gorkin testified
15:20:29  pursuant to a subpoena in the sanctions hearing in
15:20:31  the State court action, correct?

15:20:33  A  Based on recommendation I plead the Fifth.

15:20:35  Q  You watched his testimony, correct?

15:20:38  A  Based on recommendation I plead the Fifth.

15:20:40  Q  And after he testified you threatened to
15:20:42  report him to the disciplinary committee, correct?

15:20:44  A  Based on recommendation I plead the Fifth.

15:20:47  Q  And after he testified, you tried to cancel
15:20:50  payments to him, correct?

15:20:51  A  Based on recommendation I plead the Fifth.

15:20:54  Q  And after he testified, you threatened to
15:20:57  serve him with a subpoena, correct?

15:20:58  A  Based on recommendation I plead the Fifth.

33

15:21:00  Q  And after he testified, you tried to get him

fired from other litigation, correct?

A  Based on recommendation I plead the Fifth.

Q  When was the last time you communicated with anyone from Ainsworth Gorkin?

A  Based on recommendation I plead the Fifth.

Q  How much do you owe in outstanding bills to Ainsworth Gorkin?

A  Based on recommendation I plead the Fifth.

Q  You're familiar with Chaskel Frankel?

A  Based on recommendation I plead the Fifth.

Q  How are you first introduced to Mr. Frankel?

A  Based on recommendation I plead the Fifth.

Q  Mr. Frankel acted as Mr. Graubard's agent in connection with the escrow agreement at issue here, correct?

A  Based on recommendation I plead the Fifth.

Q  Have you ever sent any emails impersonating Mr. Frankel?

A  Based on recommendation I plead the Fifth.

Q  Have you ever sent an email from the address Chaskel -- C-H-A-S-K-E-L -- http://123@gmail.com?

A  Based on recommendation I plead the Fifth.

Q  Did you send emails from Chaskel123@gmail.com in connection with my clients'

34

escrow agreement?

A  Based on recommendation I plead the Fifth.

Q  You're familiar with Paul Montclare?

A  Based on recommendation I plead the Fifth.

Q  How were you first introduced to Mr. Montclare?

A  Based on recommendation I plead the Fifth.

Q  You're familiar with Lauren Wachtler?

A  Based on recommendation I plead the Fifth.

Q  How were you first introduced to Ms. Wachtler?

A  Based on recommendation I plead the Fifth.

Q  You're familiar with the law firm Montclare and Wachtler?

A  Based on recommendation I plead the Fifth.

Q  Was Montclare & Wachtler holding any Surf 9 funds as escrow agent?

A  Based on recommendation I plead the Fifth.

Q  For which investors or transactions did Montclare & Wachtler holds funds relating to Surf 9?

A  Based on recommendation, I plead the Fifth.

Q  When were you first introduced to Ed King?

A  Based on recommendations, I plead the Fifth.

Q  And in what context did you first meet Mr. King?

35

A  Based on recommendation I plead the Fifth.

Q  You and Mr. King were involved in various transactions together, correct?

A  Based on recommendation I plead the Fifth.

Q  Mr. King acted as an escrow agent for you, correct?

A  Based on recommendation I plead the Fifth.

Q  You're aware that during the time he acted as your escrow agent, Mr. King was a sitting justice of the Kings County Supreme Court, correct?

A  Based on recommendation, I plead the Fifth.

Q  On or about December 6th, 2024, Mr. King issued a check for $3.5 million from his IOLA account at Chase Bank made payable to Mr. Graubard. Did you ask Mr. King to issue that check?

A  Based on recommendation I plead the Fifth.

Q  What was the intended purpose of that check?

A  Based on recommendation I plead the Fifth.

Q  Were you aware that the check bounced?

A  Based on my recommendation I plead the Fifth.

Q  In November 2025, Mr. King caused a $2 million cashier's check from his IOLA account at Chase Bank to be issued made payable to Mr. Graubard.  Did you arrange for that check to be

36

issued?

A  Based on the recommendation I plead the Fifth.

Q  What was the intended purpose of that $2 million check?

A  Based on recommendation, I plead the Fifth.

Q  That $2 million check was intended to be deposited with the clerk of Kings County Supreme Court to comply with the court's deposit order, correct?

A  Based on recommendation I plead the Fifth.

Q  At the time you arranged delivery of that

$2 million check to Mr. Graubard, were you aware that Chase Bank had placed a hold on Mr. King's accounts?

A   Based on recommendation I plead the Fifth.

Q   When did you first become involved in a transaction to purchase or invest in Surf 9 LLC?

A   Based on recommendation I plead the Fifth.

Q   Did you ask Mr. Montclare to find you potential investors for Surf 9?

A   Based on recommendation I plead the Fifth.

Q   At some point you became introduced to our clients including Mr. Macaya, correct?

A   Based on recommendation I plead the fifth.

37

Q   You solicited Mr. Macaya and Mr. Metaxas to invest in the Surf 9 transaction, correct?

A   Based on recommendation I plead the Fifth.

Q   You own the secured debt in Surf 9, correct?

A   Based on recommendation I plead the Fifth.

Q   When did you purchase that secured debt?

A   Based on recommendation I plead the Fifth.

Q   As of December 2024, how much money had you

invested in Surf 9?

A  Based on recommendation I plead the Fifth.

Q  Do you have a deal to buy out Surf 9?

A  Based on recommendation I plead the Fifth.

Q  As of June 2026, is Surf 9 your only significant asset?

A  Based on recommendation I plead the Fifth.

Q  You put millions of dollars into Surf 9?

A  Based on recommendation, I plead the Fifth.

Q  Some of the money that you put into Surf 9 came from Mr. Rubin, correct?

A  Based on recommendation I plead the Fifth.

Q  And Surf 9 is currently in bankruptcy, correct?

A  Based on recommendation I plead the Fifth.

Q  And you're trying to get Surf 9 out of bankruptcy in order to sell it?

38

A  Based on recommendation, I plead the Fifth.

Q  You're familiar with the escrow agreements that Mr. Graubard entered into with Mr. Metaxas and

Pertshire Investments in December 2024?

A  Based on recommendation I plead the Fifth.

Q  The sole purpose of those escrow deposits was to establish that the escrowees had available cash, correct?

A  Based on recommendation, I plead the Fifth.

Q  And the purpose of the escrow deposits was not to consummate an investment, correct?

A  Based on recommendation I plead the Fifth.

Q  You understood that the escrow depositors did not authorize the use of their funds to actually purchase Surf 9, correct?

A  Based on recommendation, I plead the Fifth.

Q  No one else had any right to those funds correct?

A  Based on recommendation, I plead the Fifth.

Q  You asked Mr. Metaxas to put money into escrow for the Surf 9 investment, correct?

A  Based on recommendation I plead the Fifth.

Q  And you told Mr. Macaya that the escrow deposits were to "show good faith" correct?

A  Based on recommendation I plead the Fifth.

39

Q   You told him that it was "soft money" correct?

A   Based on recommendation I plead the Fifth.

Q   You told him that there was "no risk" with the escrow deposits, correct?

A   Based on recommendation I plead the Fifth.

Q   You told him that he could "pull back money any time" correct?

A   Based on recommendation I plead the Fifth.

Q   You understood that if the investors wanted to proceed with the investment that would require an entirely new escrow agreement, correct?

A   Based on recommendation I plead the Fifth.

Q   You set up the escrow arrangements between the investors and Mr. Graubard, correct?

A   Based on recommendation I plead the Fifth.

Q   And in fact, on December 3rd, 2024, you asked Paul Montclare to revise a draft escrow agreement that you prepared, correct?

A   Based on recommendation I plead the Fifth.

Q   And you understood that if the investors wanted to proceed with the investment, that would require an entirely new escrow agreement, correct?

A   Based on recommendation I plead the Fifth.

Q And you agreed with Paul Montclare that the

40

escrow agreement would allow each investor to unilaterally get a return of their respective escrow fund amounts upon demand, correct?

A Based on recommendation I plead the Fifth.

Q And that's because the escrow was just to show proof of funds, correct?

A Based on recommendation I plead the Fifth.

Q You caused the escrow agreement for Olden Group LLC to be prepared, correct?

A Based on recommendation I plead the Fifth.

Q Mr. Graubard was acting as escrow agent at your direction, correct?

A Based on recommendation I plead the Fifth.

Q And on December 5th, you sent a draft of the escrow agreement to Mr. Graubard, correct?

A Based on recommendation I plead the Fifth.

Q And that draft was based on the escrow agreements that you had prepared for my clients, correct?

A  Based on recommendation, I plead the Fifth.

Q  Now, initially, you told my clients that you were going to invest $6 million in Surf 9, correct?

A  Based on recommendation, I plead the Fifth.

Q  But when you later wrote to Mr. Graubard about the escrow agreement for Olden Group LLC, you

41

reduced it to $1 million, correct?

A  Based on recommendation, I plead the Fifth.

Q  Did you ever tell my clients that you were reducing your deposit?

A  Based on recommendation I plead the Fifth.

Q  Did you ever actually deposit that money with Mr. Graubard?

A  Based on recommendation I plead the Fifth.

Q  Did you ever demand the return of your money from the escrow?

A  Based on recommendation I plead the Fifth.

Q  You understood that as escrow agent, Mr. Graubard was obligated to hold the deposited funds in his IOLA account, correct?

A  Based on recommendation I plead the Fifth.

Q  You understood that Mr. Graubard could not release those funds without authorization from the depositors, correct?

A  Based on recommendation I plead the Fifth.

Q  And you understood that Mr. Metaxas and Pertshire Investments had not authorized anyone to direct Mr. Graubard to release those deposits, correct?

A  Based on recommendation I plead the Fifth.

Q  What was Mr. Frankel's relationship to the

42

escrowed funds?

A  Based on recommendation plead the fifth.

Q  Mr. Frankel had no authority to direct the disbursement of my client's escrowed funds, correct?

A  Based on recommendation I plead the fifth.

Q  You had no authority to direct the disbursement of my clients' funds, correct?

A  Based on recommendation I plead the fifth.

Q  You had no legal entitlement to the escrowed funds, correct?

A   Based on recommendation I plead the fifth.

Q   Mr. Frankel was not a party to the escrow agreements, correct?

A   Based on recommendation I plead the Fifth.

Q   You intended the transfer of funds from Mr. Graubard's IOLA account to go to 536 Holdings, correct?

A   Based on recommendation I plead the Fifth.

Q   You knew the source of those funds was the $3 million in escrow deposits from my clients, correct?

A   Based on recommendation I plead the Fifth.

Q   None of Metaxas, Pertshire, or Mamari had ever authorized you to release their escrowed deposits, correct?

43

A   Based on recommendation I plead the Fifth.

Q   But you directed Mr. Graubard to do so anyway, correct?

A   Based on recommendation I plead the Fifth.

Q   Why did you direct the transfer of my clients' money from the escrow account?

A  Based on recommendation I plead the Fifth.

Q  And on December 6th, 2024, you went to Mr. Graubard's office and accompanied him in person to the bank to make wire transfers, correct?

A  Based on recommendation I plead the Fifth.

Q  And at your direction, Mr. Graubard transferred $2.5 million to 536 Holdings on December 6th, 2024, correct?

A  Based on recommendation I plead the Fifth.

Q  And that at Mr. Rubin's direction Mr. Graubard also sent $350,000 by check to Queen Equities LLC on December 6th, correct?

A  Based on recommendation I plead the Fifth.

Q  And Mr. Graubard gave the check that was made out to Queen Equities LLC to you, correct?

A  Based on recommendation I plead the Fifth.

Q  Why did Mr. Graubard do that?

A  Based on recommendation I plead the Fifth.

Q  None of the escrow depositors authorized you

44

to direct those transfers, correct?

A   Based on recommendation I plead the Fifth.

Q   On December 112th, you directed Mr. Graubard to prepare an authorization letter for Mr. Frankel to sign, correct?

A   Based on recommendation, I plead the Fifth.

Q   And Mr. Graubard was the escrow agent, but you described Mr. Frankel as your partner, correct?

A   Based on recommendation, I plead the Fifth.

Q   In what way were you and Mr. Frankel partners?

A   Based on recommendation I plead the Fifth.

Q   And the purpose of the letter was to justify Mr. Graubard's unlawful disbursements of plaintiffs' funds, correct?

A   Based on recommendation I plead the Fifth.

Q   Why did you need Mr. Frankel to sign this letter?

A   Based on recommendation I plead the Fifth.

Q   You knew that the escrowed funds could not be disbursed without authorization, correct?

A   Based on recommendation I plead the Fifth.

Q   And you knew that Mr. Frankel was not authorized by the investors to disburse those funds, correct?

A  Based on recommendation I plead the Fifth.

Q  So you fabricated an authorization letter, correct?

A  Based on recommendation I plead the Fifth.

Q  The letter confirmed Frankel's previous instructions to Graubard to transfer the escrow deposits, correct?

A  Based on recommendation I plead the Fifth.

Q  And the letter stated that Frankel had authority to issue such instructions, correct?

A  Based on recommendation, I plead the Fifth.

Q  And this so-called authorization from Mr. Frankel was not obtained until December 11, 2024, correct?

A  Based on recommendation, I plead the Fifth.

Q  You would agree with me that was five days after the funds had actually been transferred, correct?

A  Based on recommendation I plead the Fifth.

Q  You also approved $250,000 to be sent to Mr. Rubin on December 11th, correct?

A  Based on recommendation, I plead the Fifth.

Q  Why did you confirm Mr. Rubin's request for a $250,000 disbursement from Mr. Graubard's IOLA?

A  Based on recommendation I plead the Fifth.

46

Q  You knew that this $250,000 came from the investors' escrow deposits, correct?

A  Based on recommendation I plead the Fifth.

Q  You had no authority to direct that disbursement, correct?

A  Based on recommendation I plead the Fifth.

Q  And then Mr. Rubin then advanced that $250,000 to you, correct?

A  Based on recommendation I plead the Fifth.

Q  Around then on December 12th, 2024, you directed that an additional $335,000 be wired to 536 Holdings, correct?

A  Based on recommendation I plead the Fifth.

Q  And you knew that that $335,000 came from the investors' escrowed deposits, correct?

A  Based on recommendation, I plead the Fifth.

Q  You had no authority to direct that

15:36:23 disbursement, correct?

15:36:24 A  Based on recommendation I plead the Fifth.

15:36:27 Q  On December 12th and 13th, Mr. Graubard

15:36:31 wired himself an additional $50,000 total from his

15:36:34 IOLA, correct?

15:36:35 A  Based on recommendation, I plead the Fifth.

15:36:37 Q  Were those for your legal fees?

15:36:39 A  Based on recommendation I plead the Fifth.

47

15:36:41 Q  What were those legal fees incurred in

15:36:44 connection with?

15:36:44 A  Based on recommendation I plead the Fifth.

15:36:46 Q  And he made that disbursement at your

15:36:50 direction, correct?

15:36:51 A  Based on recommendation I plead the Fifth.

15:36:54 Q  You had no authority to direct that

15:36:57 disbursement, correct?

15:36:58 A  Based on recommendation I plead the Fifth.

15:37:00 Q  Mr. Frankel had no authority to approve that

15:37:04 disbursement correct?

15:37:05 A  Based on recommendation I plead the Fifth.

15:37:07 Q  Now, by mid-December 2024, Mr. Graubard's

Surf 9 IOLA account was down to less than $15,000, correct?

A  Based on recommendation I plead the Fifth.

Q  And Surf 9 related funds were routed through other attorney escrow or IOLA accounts besides Mr. Graubard's IOLA account correct?

A  Based on recommendation I plead the Fifth.

Q  Between mid-December and early January, Montclare & Wachtler's IOLA account made several disbursements in connection with Surf 9, correct?

A  Based on recommendation I plead the Fifth.

Q  During that time, Montclare & Wachtler's

48

IOLA disbursed roughly $4.8 million to 536 Holdings for the repayment of the Surf 9 deal, correct?

A  Based on recommendation, I plead the Fifth.

Q  And that money was spread out over ten separate transactions, correct?

A  Based on recommendation I plead the Fifth.

Q  And during that time, Montclare & Wachtler's IOLA account disbursed roughly $2.6 million to Queen

Equities for the repayment of the Surf 9 deal, correct?

A  Based on recommendation I plead the Fifth.

Q  And that occurred across two separate transactions, correct?

A  Based on recommendation I plead the Fifth.

Q  Did you send Mr. Rubin the account number, routing number and IOLA information for Montclare & Wachtler with the memo description Surf 9?

A  Based on recommendation I plead the Fifth.

Q  Why did you direct Mr. Rubin or Queen Equities to send $2,450,000 to Montclare & Wachtler's IOLA account with a Surf 9 reference?

A  Based on recommendation I plead the Fifth.

Q  And January 9th, 2025, you received Mr. Metaxas' demand to return his $1 million, correct?

49

A  Based on recommendation I plead the Fifth.

Q  You also received Mr. Kobre's demand to return his $250,000, correct?

A  Based on recommendation I plead the Fifth.

Q   And you also received Mr. Macaya's demand for his return of $1 million, correct?

A   Based on recommendation I plead the Fifth.

Q   They demanded the return of their escrow deposits by January 15, correct?

A   Based on recommendation I plead the Fifth.

Q   Mr. Graubard then drafted a response for your review and comment.  Did you speak to Mr. Graubard about the demands?

A   Based on recommendation I plead the Fifth.

Q   What did you discuss with Mr. Graubard?

A   Based on recommendation I plead the Fifth.

Q   And you actually had a Zoom call with the investors that day.  What did you discuss with the investors?

A   Based on recommendation I plead the Fifth.

Q   On January 16th, you represented to plaintiffs that their funds would be returned, correct?

A   Based on recommendation I plead the Fifth.

Q   You knew at the time that Mr. Graubard did

50

not have sufficient funds in his account to return those, correct?

A   Based on recommendation I plead the Fifth.

Q   You knowingly lied to the investors about the return of their funds, correct?

A   Based on recommendation I plead the Fifth.

Q   So you workshopped with Mr. Graubard another excuse for the non-return of the funds that the banks were closed, correct?

A   Based on recommendation I plead the Fifth.

Q   And that was false, correct?

A   Based on recommendation I plead the Fifth.

Q   The banks were not shut down due to computer problems, correct?

A   Based on recommendation I plead the Fifth.

Q   And you approved Mr. Graubard sending this excuse to further delay the return of the funds, correct?

A   Based on recommendation I plead the Fifth.

Q   On January 18th, you made another false representation to the investors that Mr. Graubard would refund the money on Monday if the banks were working.  You knew that the bank were working all along, correct?

A   Based on recommendation I plead the Fifth.

51

Q   And you knew that Mr. Graubard would not refund the money on that Monday, correct?

A   Based on recommendation I plead the Fifth.

Q   You sent this to further delay the return of the funds, correct?

A   Based on recommendation I plead the Fifth.

Q   On January 24th, Mr. Macaya put you and Mr. Graubard on notice of Mr. Graubard's breach of fiduciary duty, correct?

A   Based on recommendation I plead the Fifth.

Q   And he gave you an ultimatum of that day before initiating legal action the following week, correct?

A   Based on recommendation I plead the Fifth.

    (Stenographer clarification.)

A   I'd like to take a break in a few minutes.

Q   You need to take a break, Mr. Sprei?

A   Yes, I do.

Q   Can we go off the record?

    VIDEOGRAPHER:  We are off the record.  The

time is 3:41 p.m.

(Short recess.)

VIDEOGRAPHER:  We are back on the record.
The time is 3:47 p.m.

THE WITNESS:  I want to make clear again on

52

the record that in the event, Ms. DeLucia, if I'm
not pronouncing your name correct, Ms. DeLucia, I
apologize, as soon as my lawyer is retained which
hopefully will be the next day or so I'm happy to
reconvene at a deposition when he's there.  And if
he tells me to answer the questions, I will.  I just
want to make the record very clear that I'm only
invoking based on recommendation I don't have an
attorney but I'm happy like I said to come back once
I have an attorney to go through the questions again
or I just want to make it very clear that once I
have an attorney. I'm happy to go forward again, but
it's your decision.

BY MS. DELUCIA:

     Q  Mr. Sprei, during the break, did you speak

Q  with anyone or communicate with anyone?

A  No, I did not.

Q  Not by email or text or WhatsApp?

A  Correct.

Q  Okay.  Mr. Sprei, after your failure to -- yours and Mr. Graubard's failure to return my clients' escrowed funds to them, you purported to direct Mr. Graubard to file an order to show cause, correct?

A  Based on recommendation, I plead the Fifth.

53

Q  At the time, you knew that all of my clients' funds had already been disbursed, correct?

A  Based on recommendation, I plead the Fifth.

Q  And at the same time, you were still directing Mr. Graubard to send fake wire confirmations to the investors, correct?

A  Based on recommendation, I plead the Fifth.

Q  You made it seem as though you intended to return their funds even though you knew their money was already gone, correct?

A  Based on recommendation, I plead the Fifth.

Q  And when my clients had their counsel send Mr. Graubard a letter demanding the return of their escrowed funds, you responded -- excuse me -- -- strike that.

When my client's counsel sent Mr. Graubard a letter on January 27 demanding the return of their escrow deposits, you workshopped a response with Mr. Graubard, correct?

A  Based on recommendation, I plead the Fifth.

Q  And in the response that you workshopped with Mr. Graubard, you demanded a release of liability for you before the outstanding escrow deposits would be returned, correct?

A  Based on recommendation, I plead the Fifth.

54

Q  And Mr. Graubard had no basis to release a liability against you, correct?

A  Based on recommendation, I plead the Fifth.

Q  You told Mr. Graubard around that time that $1 million would be replenished in his IOLA, correct?

A   Based on recommendation, I plead the Fifth.

Q   And on January 29th, Mr. Graubard asked you where that $1 million was, correct?

A   Based on recommendation, I plead the Fifth.

Q   And you responded to Mr. Graubard and you said, do you want I should throw myself off the roof, correct?

A   Based on recommendation, I plead the Fifth.

Q   What did you mean by that?

A   Based on recommendation, I plead the Fifth.

Q   That same day and a few minutes later, Frank Seddio sent an email to Mr. Graubard, to Ethan Kobre, and to you, correct?

A   Based on recommendation, I plead the Fifth.

Q   And Mr. Seddio wrote, please be advised that no funds from your account can be released until you receive a release from the investing group as they have been attacking and threatening my client, Mr. Sprei.  Mr. Graubard, as soon as you receive a

55

release in escrow, you may release the funds.  In any event, if I do not hear from you by 5:00 p.m.

then we will file an order to show cause in Kings County Supreme Court to have the funds deposited with the court.  When did you first reach out to Mr. Seddio about the escrowed funds?

A  Based on recommendation, I plead the Fifth.

Q  And you directed Mr. Seddio to send that email, correct?

A  Based on recommendation, I plead the Fifth.

Q  Did you write that email for him?

A  Based on recommendation, I plead the Fifth.

Q  Did you send that email from Mr. Seddio's email address?

A  Based on recommendation, I plead the Fifth.

Q  How do you know Mr. Kobre?

A  Based on recommendation, I plead the Fifth.

Q  On January 30th, 2025, you caused a letter to be sent to the plaintiffs' counsel demanding that they sign a release before their escrowed funds would be returned, correct?

A  Based on recommendation, I plead the Fifth.

Q  And that letter was from your litigation counsel, Ethan Kobre, correct?

A  Based on recommendation, I plead the Fifth.

56

Q   When did you engage Mr. Kobre?

A   Based on recommendation, I plead the Fifth.

Q   Why did that letter come from Mr. Kobre and not Mr. Seddio?

A   Based on recommendation, I plead the Fifth.

Q   And you directed -- you later directed Mr. Graubard not to return the escrowed funds to the plaintiffs, correct?

A   Based on recommendation, I plead the Fifth.

Q   There was no legal basis for you to direct Mr. Graubard not to return the escrowed funds, correct?

A   Based on recommendation, I plead the Fifth.

Q   You yourself had no legal entitlement to those funds, correct?

A   Based on recommendation, I plead the Fifth.

Q   You knew that Mr. Graubard had a fiduciary duty as escrow agent to the depositors, correct?

A   Based on recommendation, I plead the Fifth.

Q   And you knew that the escrow depositors were demanding the return of their funds as early as January 2025, correct?

A   Based on recommendation, I plead the Fifth.

Q   And you directed Mr. Graubard not to inform the depositors that their funds had already been

57

transferred out of this IOLA account, correct?

A   Based on recommendation, I plead the Fifth.

Q   In fact, at no time did you tell Mr. Graubard to return the funds to the depositors, correct?

A   I would like to take a break one minute, please.  I do apologize.

Q   Two minutes.

A   That's fine.  No problem.

VIDEOGRAPHER:  We are off the record.  The time is 3:54 p.m.

(Short recess.)

VIDEOGRAPHER:  We are back on the record. The time is 3:57 p.m.

BY MS. DELUCIA:

Q   Okay.  Mr. Sprei, no more breaks.  Okay, let's --

A   If I have to have a break, I will make a

break.  Thank you.

Q  So you said when you came back on the record earlier, Mr. Sprei, that you would answer questions if we were to reconvene this deposition once you have counsel.  Is that right?

A  That is correct, yes.  If my counsel will direct me to answer, I will answer.

58

Q  In that event, will you withdraw your Fifth Amendment assertions and provide substantive answers to my questions?

A  I will leave that up to my attorney.

Q  Okay.  Is your sole -- continue.

A  I'm happy to as soon as I retain counsel I will reach out to you and try to resolve a date as soon as possible and try to resolve it.  I'm happy to stay on until 5:15 and give you the same answers but that's your decision.  But like I said hopefully I will have an attorney by the next day.  And as soon as we do, I'm sure you'll know about it and I'm happy to reconvene at the earliest date possible.

Q  Is your sole basis for refusing to answer my questions today that you do not have an attorney present, Mr. Sprei?

A  That's one of the reasons.  And also based on the Fifth Amendment constitutional role.

Q  Okay.  You knew that Mr. Graubard had a fiduciary duty as escrow agent to the depositors, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you're aware that Plaintiffs $2 million in escrow deposits has not been returned to them, correct?

59

A  Based on recommendation, I plead the Fifth.

Q  And you were the one who directed those funds out of Mr. Graubard's account, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you're aware that my clients have been harmed by the non-return of their deposits, correct?

A  Based on recommendation, I plead the Fifth.

Q  Now, you directed Mr. Seddio to commence this action in State court, Olden LLC versus

Metaxas, correct?

A   Based on recommendation, I plead the Fifth.

Q   And you were Mr. Seddio's client in that action, correct?

A   Based on recommendation, I plead the Fifth.

Q   The summons with notice was filed under Mr. Seddio's credentials on February 19th, 2025 at 1:59 p.m.  Did you use Mr. Seddio's credentials to file it?

A   Based on recommendation, I plead the Fifth.

Q   You provided the information to Mr. Seddio that formed the basis for that summons with notice, correct?

A   Based on recommendation, I plead the Fifth.

Q   And you did not provide Mr. Seddio with any document establishing that Olden LLC had a legal

60

claim to the plaintiffs' escrow funds, correct?

A   Based on recommendation, I plead the Fifth.

Q   What was Mr. Kobre's involvement in the commencement of the State court action?

A  Based on recommendation, I plead the Fifth.

Q  Why did Mr. Kobre not appear in the State court action if he was serving as your litigation counsel?

A  Based on recommendation, I plead the Fifth.

Q  Did you communicate with Mr. Seddio, Mr. Kobre, Mr. Rubin or Mr. Graubard before the State court action was filed?

A  Based on recommendation, I plead the Fifth.

Q  Mr. Kobre drafted the summons with notice for the State court action, correct?

A  Based on recommendation, I plead the Fifth.

Q  And he sent it to you on February 18th, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you then forwarded it to Javid Nesaralli on February 19th, correct?

A  Based based on recommendation, I plead the Fifth.

Q  And Mr. Nesaralli at the time was an attorney at Seddio & Associates, correct?

61

A  Based on recommendation, I plead the Fifth.

Q  That version of the summons identified Olden Group LLC as the plaintiff, correct?

A  Based on recommendation, I plead the Fifth.

Q  And the summons was filed 46 minutes later, correct?

A  Based on recommendation, I plead the Fifth.

Q  The filed summons identified Olden LLC as the plaintiff.  Did you direct Mr. Nesaralli to make that change?

A  Based on recommendation, I plead the Fifth.

Q  Did you direct him to make that change that the entity would not be traced to you?

A  Based on recommendation, I plead the Fifth.

Q  And did you direct him to make that change because you had other litigation ongoing and you didn't want this litigation to interfere with that litigation?

A  Based on recommendation, I plead the Fifth.

Q  And the purpose of commencing the State court action was to prevent the return of the plaintiffs' escrowed funds, correct?

A  Based on recommendation, I plead the Fifth.

Q  At the time you directed Mr. Seddio to file that action, you already knew that the escrow funds

62

had been transferred after out of Mr. Graubard's account, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you knew that there was no legitimate competing claim to the funds when you directed Mr. Seddio to file that action, correct?

A  Based on recommendation, I plead the Fifth.

Q  And in addition to commencing that action, a TRO application was also filed alongside the summons with notice, correct?

A  Based on recommendation, I plead the Fifth.

Q  And the TRO application sought to prevent Mr. Graubard from releasing the $2 million from his IOLA, correct?

A  Based on recommendation, I plead the Fifth.

Q  Mr. Sprei -- okay.

A  I'm here.  I said based on recommendation, I plead the Fifth.

Q  Okay.  Alongside that filing, there was a proposed emergency order to show cause, correct?

A   Based on recommendation, I plead the Fifth.

Q   And the proposed emergency order to show cause for application for a TRO and preliminary injunction was filed under Mr. Seddio's credentials in the State court action on February 19th, 2025?

63

A   Based on recommendation, I plead the Fifth.

Q   And the first sentence of the filed order to show cause states, "upon the next affirmation of Johnathan Rubin dated February 18th, 2025, the emergency affirmation of Frank Seddio and upon all other pleadings, and then it continues.  And the affirmation was filed on behalf of Jonathan Rubin spelled J-O-H-N-A-T-H-A-N Rubin.  Do you recall that?

A   Based on recommendation, I plead the Fifth.

Q   You caused that affirmation to be filed, correct?

A   Based on recommendation, I plead the Fifth.

Q   In fact, there were different versions of that draft affirmation before the final version was filed, correct?

A  Based on recommendation, I plead the Fifth.

Q  And in fact, the affirmation that was eventually filed in Mr. Rubin's name was originally drafted to be in your name, correct?

A  Based on recommendation, I plead the Fifth.

Q  And that affirmation was originally drafted by Mr. Kobre, correct?

A  Based on recommendation, I plead the Fifth.

Q  And then you sent it to your agent

64

Mr. Nesaralli, correct?

A  Based on recommendation, I plead the Fifth.

Q  And the first draft that Mr. Kobre sent you included an affirmation on your name -- in your name and on behalf of Olden Group LLC, correct?

A  Based on recommendation, I plead the Fifth.

Q  But an affirmation from you was never filed in the State court action, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you did not file an affirmation in your own name because you had other litigations ongoing,

correct?

A   Based on recommendation, I plead the Fifth.

Q   And there was a conflict between those other litigations and the State court case, correct?

A   Based on recommendation, I plead the Fifth.

Q   And that was the Body Glove litigation, correct?

A   Based on recommendation, I plead the Fifth.

Q   With whom did you discuss the decision not to include your affirmation on behalf of Olden Group LLC?

A   Based on recommendation, I plead the Fifth.

Q   Who changed references from Olden Group LLC to Olden LLC in the affirmation documents?

65

A   Based on recommendation, I plead the Fifth.

Q   You informed Mr. Rubin that you changed the affirmation to be in his name, correct?

A   Based on recommendation, I plead the Fifth.

Q   And you understood that you had Mr. Rubin's consent to use his name in the affirmation, correct?

A   Based on recommendation, I plead the Fifth.

Q  Who changed the references to -- from Graubard to Graubart in the filed affirmations?

A  Based on recommendation, I plead the Fifth.

Q  Did you file the order to show cause with Mr. Rubin's permission?

A  Based on recommendation, I plead the Fifth.

Q  Have you or Mr. Seddio filed other lawsuits or papers in Mr. Rubin's name without his permission?

A  Based on recommendation, I plead the Fifth.

Q  You understand that the purpose of a temporary restraining order is to maintain the status quo pending the resolution of a dispute, correct?

A  Based on recommendation, I plead the Fifth.

Q  Olden LLC, the entity that's named as a plaintiff, does not exist, correct?

A  Based on recommendation, I plead the Fifth.

66

Q  You are the sole member of Olden Group LLC, correct?

16:07:42      A  Based on recommendation, I plead the Fifth.

16:07:43      Q  And Olden Group LLC was not a party to any
16:07:50   of the escrow agreements with my clients, correct?

16:07:53      A  Based on recommendation, I plead the Fifth.

16:07:54      Q  The only escrow agreement involving Olden
16:07:59   Group LLC was a separate agreement for Olden Group
16:08:02   LLC's own funds, correct?

16:08:04      A  Based on recommendation, I plead the Fifth.

16:08:05      Q  Now, the practical effect of the TRO was to
16:08:10   prevent the plaintiffs from recovering their money
16:08:13   from Mr. Graubard, correct?

16:08:14      A  Based on recommendation, I plead the Fifth.

16:08:15      Q  You understood that filing the TRO would
16:08:20   delay the Plaintiffs' ability to get their money
16:08:22   back, correct?

16:08:23      A  Based on recommendation, I plead the Fifth.

16:08:24      Q  You had no legitimate legal basis to seek an
16:08:30   injunction against Mr. Graubard returning the
16:08:32   Plaintiffs' escrow deposits, correct?

16:08:33      A  Based on recommendation, I plead the Fifth.

16:08:34      Q  And at the time the TRO was filed, you knew
16:08:39   that the $2 million was no longer in Mr. Graubard's
16:08:42   escrow account, correct?

67

A  Based on recommendation, I plead the Fifth.

Q  And you knew that Mr. Graubard did not have my clients' $2 million to deposit with the court, correct?

A  Based on recommendation, I plead the Fifth.

Q  And that TRO was actually granted, correct?

A  Based on recommendation, I plead the Fifth.

Q  You were notified by Mr. Nesaralli that it was granted, correct?

A  Based on recommendation, I plead the Fifth.

Q  And the order enjoined Mr. Graubard from releasing the escrowed funds and directed Mr. Graubard to continue to hold the escrow funds in his escrow account or deposit the funds with the court, correct?

A  Based on recommendation, I plead the Fifth.

Q  The order also directed that Mr. Seddio, on behalf of the plaintiff in that case, effectuate personal service of the order and supporting papers on all parties by March 7th.  You were served, correct?

A  Based on recommendation, I plead the Fifth.

Q  But you never effectuated personal service

on Mr. Graubard, correct?

A   Based on recommendation, I plead the Fifth.

68

Q   And neither did your attorneys, correct?

A   Based on recommendation, I plead the Fifth.

Q   Did you direct your attorneys not to personally serve Mr. Graubard?

A   Based on recommendation, I plead the Fifth.

Q   Justice Mostofsky's February 19th, 2025 order to show cause also scheduled a preliminary injunction hearing for April 23rd, 2025, correct?

A   Based on recommendation, I plead the Fifth.

Q   And Mr. Seddio repeatedly sought adjournments of that PI hearing in the State court action, correct?

A   Based on recommendation, I plead the Fifth.

Q   And those adjournments were sought at your direction?

A   Based on recommendation, I plead the Fifth.

Q   And one purpose of delaying the PI hearing was to give you more time before the court learned

that the escrowed funds were gone, correct?

A  Based on recommendation, I plead the Fifth.

Q  Mr. Seddio -- strike that.

Did you instruct Mr. Seddio to try to delay the PI hearing?

A  Based on recommendation, I plead the Fifth.

Q  Now, plaintiffs' counsel served Mr. Graubard

69

on April 18th.  You had not served Mr. Graubard by that time, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you didn't serve him because you wanted to further delay the state action, correct?

A  Based on recommendation, I plead the Fifth.

Q  Did you tell Mr. Graubard to ignore Ms. Zimmerman's service email?

A  Based on recommendation, I plead the Fifth.

Q  And you did that for the purpose of delaying the state action, correct?

A  Based on recommendation, I plead the Fifth.

Q  Were you upset that Mr. Graubard confirmed receipt of Ms. Zimmerman's email instead of ignoring

16:11:37    it?

16:11:37        A   Based on recommendation, I plead the Fifth.

16:11:38        Q   Mr. Seddio was ultimately successful in

16:11:43    adjourning the hearing.  Justice Levine ultimately

16:11:50    scheduled the hearing for May 12th, correct?

16:11:52        A   Based on recommendation, I plead the Fifth.

16:11:53        Q   And Justice Levine recused herself on

16:11:57    May 9th, correct?

16:11:59        A   Based on recommendation, I plead the Fifth.

16:12:00        Q   Did you know that she was going to do that?

16:12:02        A   Based on recommendation, I plead the Fifth.

70

16:12:02        Q   Were you involved in Justice Levine's

16:12:08    recusal?

16:12:08        A   Based on recommendation, I plead the Fifth.

16:12:09        Q   Did you direct Mr. Graubard to pay

16:12:14    Mr. Seddio in connection with Justice Levine's

16:12:17    recusal?

16:12:18        A   Based on recommendation, I plead the Fifth.

16:12:19        Q   Justice Mostofsky was assigned to the case

16:12:25    and the show cause hearing was scheduled for

July 17th, 2025.  At that time you knew that Mr. Graubard still did not have the funds, correct?

A  Based on recommendation, I plead the Fifth.

Q  And Mr. Seddio again tried to adjourn the hearing, correct?

A  Based on recommendation, I plead the Fifth.

Q  Did you direct Mr. Seddio to do that?

A  Based on recommendation, I plead the Fifth.

Q  Throughout the State court action, you worked with Shaya Gorkin to represent Mr. Graubard, correct?

A  Based on recommendation, I plead the Fifth.

Q  And throughout the State court action, you directed Mr. Gorkin regarding Mr. Graubard's defense, correct?

A  Based on recommendation, I plead the Fifth.

71

Q  And you worked with Mr. Gorkin to develop Mr. Graubard's legal strategy, correct?

A  Based on recommendation, I plead the Fifth.

Q  Now, the hearing ultimately proceeded on July 17th.  And on July 17th, Justice Mostofsky

issued an order directing Mr. Graubard to deposit the $2 million with the clerk of the court by July 21, 2025.  You knew that Mr. Graubard did not have the $2 million to deposit because you had directed those funds out of his account in December 2024, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you assisted Mr. Graubard in defying the court's July 17th deposit order, correct?

A  Based on recommendation, I plead the Fifth.

Q  Now, thereafter, Mr. Seddio reached out to plaintiffs' counsel and offered to settle the matter for $2 million plus an additional $35,000.  Did you give Mr. Seddio a settlement authority?

A  Based on recommendation, I plead the Fifth.

Q  Did you direct Mr. Seddio to make that settlement offer?

A  Based on recommendation, I plead the Fifth.

Q  Why did you offer to settle rather than just discontinuing the action?

72

A   Based on recommendation, I plead the Fifth.

Q   On July 21st, 2025, a purported stipulation was entered extending the time to deposit the funds, correct?

A   Based on recommendation, I plead the Fifth.

Q   And you coordinated with Mr. Gorkin to prepare that stipulation, correct?

A   Based on recommendation, I plead the Fifth.

Q   And you did so in order to delay the depositing of the funds, correct?

A   Based on recommendation, I plead the Fifth.

Q   And you did so because you knew that Mr. Graubard did not have the funds, correct?

A   Based on recommendation, I plead the Fifth.

Q   In fact, you told Mr. Gorkin that Mr. Graubard would not be able to comply with the court's July 21 deadline, correct?

A   Based on recommendation, I plead the Fifth.

Q   And Mr. Gorkin messaged you with an idea to delay the court's deposit deadline, correct?

A   Based on recommendation, I plead the Fifth.

Q   And the idea was that you could get an extension without needing the plaintiff's consent, correct?

A   Based on recommendation, I plead the Fifth.

73

Q  Why did you think the court would accept the stipulation filed by some but not all of the parties?

A  Based on recommendation, I plead the Fifth.

Q  Did you have information, inside information about that?

A  Based on recommendation, I plead the Fifth.

Q  In fact, you told Mr. Gorkin, I did what I needed to do.  What did you do?

A  Based on recommendation, I plead the Fifth.

Q  Ultimately at your direction, Mr. Gorkin filed a denominated stipulation on Mr. Graubard's behalf, correct?

A  Based on recommendation, I plead the Fifth.

Q  And by proposing that extension of the deposit deadline, you were representing to the court that Mr. Graubard would deposit defendants' funds on Thursday, July 24, correct?

A  Based on recommendation, I plead the Fifth.

Q  Now, sometime later, Mr. Goldberg substituted in as Mr. Graubard's counsel, correct?

A  Based on recommendation, I plead the Fifth.

Q  But you continued to direct the litigation strategy, correct?

A  Based on recommendation, I plead the Fifth.

74

Q  You had Mr. Gorkin's firm, Ainsworth Gorkin, draft filings that were then filed under Mr. Goldberg's credentials, correct?

A  Based on recommendation, I plead the Fifth.

Q  And Mr. Goldberg sent you letters to review and approve before filing them, correct?

A  Based on recommendation, I plead the Fifth.

Q  And Mr. Goldberg was, in effect, a stand-in witness whose files -- excuse me -- whose filings you controlled, correct?

A  Based on recommendation, I plead the Fifth.

Q  Now, you knew in December 2024 immediately after the transfers that you directed from Mr. Graubard's IOLA account that his account had been deleted of the escrowed deposits, correct?

A  Based on recommendation, I plead the Fifth.

Q  You never replaced those funds in Mr. Graubard's account, correct?

A  Based on recommendation, I plead the Fifth.

Q  You're aware that on July 29th, the defendants filed a motion to hold Mr. Graubard -- excuse me.  Strike that.

You're aware that on July 29th, my clients filed a motion to hold Mr. Graubard, Mr. Gorkin, and Mr. Seddio in contempt of the July 17th order,

75

correct?

A  Based on recommendation, I plead the Fifth.

Q  And you're aware that on July 31, Justice Mostofsky held a virtual hearing on possible sanctions for the disobedience of his July 17th order, correct?

A  Based on recommendation, I plead the Fifth.

Q  Shortly before that hearing began, Mr. Goldberg was substituted in as Mr. Graubard's counsel of record in place of Mr. Gorkin, correct?

A  Based on recommendation, I plead the Fifth.

Q  And Mr. Goldberg filed a letter stating that

he was aware of the contempt motion against you and intended to file opposition papers in advance of the September 4 return date, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you're aware that the next day, August 1, Justice Mostofsky recused himself based on his personal relationship with Mr. Goldberg, correct?

A  Based on recommendation, I plead the Fifth.

Q  You arranged for Mr. Graubard to retain Mr. Goldberg as his counsel, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you were aware that Mr. Goldberg had a

76

relationship with Justice Mostofsky before you retained him in that matter, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you engaged Mr. Goldberg to represent Mr. Graubard knowing that his appearance would cause Justice Mostofsky to recuse himself, correct?

A  Based on recommendation, I plead the Fifth.

Q  And after Justice Mostofsky recused himself, you told Mr. Graubard that you believed the appearance would cause the recusal, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you promised to pay for Mr. Goldberg's legal services, correct?

A  Based on recommendation, I plead the Fifth.

Q  And even after Mr. Goldberg substituted in as Mr. Graubard's counsel, you continued to direct the litigation strategy, correct?  Mr. Sprei?

A  Hello.

Q  Can you hear us?

A  Yes.  I don't know what happened with the Zoom.  I keep on getting like an error.  Hold on a minute.  I apologize.  Can you hear me?

Q  Yes.

A  Let me try to put back -- I'm here.  The Zoom is -- I apologize.

77

Q  Is that okay for you, Gus?

VIDEOGRAPHER:  I just don't have video yet.

A  I hear you but for some reason I don't know

what happened with the -- I see you guys now.

VIDEOGRAPHER:  You may have to tap the video.  Yeah, I think it's coming back on now.

A  I'm sorry.

Q  Okay.  After Mr. Goldberg substituted in as Mr. Graubard's counsel, you continued to direct the litigation strategy, correct?

A  Based on recommendation, I plead the Fifth.

Q  And Mr. Goldberg was, in effect, a stand-in whose filings you controlled, correct?

A  Based on recommendation, I plead the Fifth.

Q  You understood that contempt proceedings had been initiated against Mr. Graubard for failure to deposit the $2 million, correct?

A  Based on recommendation, I plead the Fifth.

Q  And after this case was assigned to Justice Montelione, the contempt hearing was set for November 5th, 2025, correct?

A  Based on recommendation, I plead the Fifth.

Q  On October 29, Mr. Seddio emailed the court requesting an adjournment.  Did you direct him to do that?

78

A   Based on recommendation, I plead the Fifth.

Q   The court entered an interim order granting the adjournment request only if one of three conditions was satisfied by 5:00 p.m. on November 3rd and the preconditions were:  1, Graubard deposited the $2 million with the clerk of court; 2, Graubard uploaded bank statements proving that he still retained the escrow deposits in his IOLA account; or 3, you filed an undertaking of $120,000 with the clerk of court.  Did you -- strike that.

Did you work with Mr. Nesaralli to obtain a bond in connection with that order?

A   Based on recommendation, I plead the Fifth.

Q   And did you discuss that bond with Mr. Nesaralli?

A   Based on recommendation, I plead the Fifth.

Q   Did you discuss that bond with Mr. Rubin?

A   Based on recommendation, I plead the Fifth.

Q   Did you discuss that bond with Mr. Seddio?

A   Based on recommendation, I plead the Fifth.

Q   Did you discuss the bond with Mr. Graubard?

A   Based on recommendation, I plead the Fifth.

Q  And you understand that that precondition of the interim order was not met because this was a

79

draft bond and it was never a finalized undertaking, correct?

A  Based on recommendation, I plead the Fifth.

Q  Who is Neil Petersen?

A  Based on recommendation, I plead the Fifth.

Q  You, Mr. Graubard, and Mr. Seddio were all on notice that you were still required to be present at the November 5th hearing, correct?

A  Based on recommendation, I plead the Fifth.

Q  None of you attended the hearing, correct?

A  Based on recommendation, I plead the Fifth.

Q  And in fact, you assisted Mr. Graubard in his plan to evade the November 5 contempt hearing, correct?

A  Based on recommendation, I plead the Fifth.

Q  Did you encourage Mr. Graubard not to attend the hearing?

A  Based on recommendation, I plead the Fifth.

Q  And you knew that Mr. Seddio was planning to

send a representative to make an application for an adjournment, correct?

A  Based on recommendation, I plead the Fifth.

Q  And that was to delay the resolution of the contempt motion against Mr. Graubard, correct?

A  Based on recommendation, I plead the Fifth.

80

Q  And one purpose of delaying the contempt hearing was to prevent the court from learning that the escrowed funds were gone, correct?

A  Based on recommendation, I plead the Fifth.

Q  And ultimately, no adjournment was granted and at the November 5th hearing, Justice Montelione orally granted the motion, the contempt motion against Mr. Graubard on his default, correct?

A  Based on recommendation, I plead the Fifth.

Q  Now, you understand that filing a notice of discontinuance terminates a pending action, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you understand that after discontinuance, the court may lose jurisdiction to

enforce certain orders, correct?

A  Based on recommendation, I plead the Fifth.

Q  You directed Mr. Gorkin to draft a notice of discontinuance in the state case, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you also directed Mr. Gorkin to draft a letter explaining the notice of discontinuance, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you did that because you wanted to strip the court of jurisdiction over the contempt hearing,

81

correct?

A  Based on recommendation, I plead the Fifth.

Q  And your idea behind filing a notice of discontinuance just two days -- strike that.

Your idea behind filing a notice of discontinuance was to divest the court of jurisdiction from enforcing the final contempt order, correct?

A  Based on recommendation, I plead the Fifth.

Q  And the primary purpose of those -- of this

discontinuance was to divest the court from jurisdiction over the contempt order, correct?

A   Based on recommendation, I plead the Fifth.

Q   And that was because you did not want the contempt order from being enforced against Mr. Graubard, correct?

A   Based on recommendation, I plead the Fifth.

Q   And you didn't want Mr. Graubard to have to deposit the $2 million funds with the court, correct?

A   Based on recommendation, I plead the Fifth.

Q   And you directed the discontinuance because you knew that Mr. Graubard could not comply with the deposit order, correct?

A   Based on recommendation, I plead the Fifth.

82

Q   Before Mr. Seddio filed the November 6th discontinuance letter, did you discuss with him the effect of discontinuance on the court's jurisdiction over the contempt order?

A   Based on recommendation, I plead the Fifth.

Q   You could have asked Mr. Seddio to discontinue that action at any time before that, correct?

A   Based on recommendation, I plead the Fifth.

Q   And that's because you never had a legal basis for bringing the action in the first place, correct?

A   Based on recommendation, I plead the Fifth.

Q   And you waited until November 6th to discontinue the action to further delay the return of the escrowed deposits, correct?

A   Based on recommendation, I plead the Fifth.

Q   Now, to determine the effect of the discontinuance on the contempt proceedings, the court set a hearing for November 12th.  Did you plan to send Sam Spirgel to the November 12th hearing?

A   Based on recommendation, I plead the Fifth.

Q   Who is Sam Spirgel?  And that's S-P-I-R-G-E-L.

A   Based on recommendation, I plead the Fifth.

83

Q   How do you know Mr. Spirgel?

A  Based on recommendation, I plead the Fifth.

Q  Instead, Mr. Archibald was the per diem attorney who appeared for Mr. Seddio.  Are you familiar with Mr. Archibald?

A  Based on recommendation, I plead the Fifth.

Q  Were you involved in preparing Mr. Archibald for the November 12th hearing?

A  Based on recommendation, I plead the Fifth.

Q  Were you involved in preparing Mr. Goldberg for that hearing?

A  Based on recommendation, I plead the Fifth.

Q  Did you tell Mr. Goldberg, Mr. Archibald, or Mr. Seddio before the hearing that that money was no longer in Mr. Graubard's account?

A  Based on recommendation, I plead the Fifth.

Q  Why didn't you tell them that?

A  Based on recommendation, I plead the Fifth.

Q  During the period from November 2025 to January 2026, you directed Ainsworth Gorkin to draft various other filings for the State court action, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you directed them to draft those filings on behalf of Mr. Graubard, correct?

84

A  Based on recommendation, I plead the Fifth.

Q  Ainsworth Gorkin was not representing you or your entities in connection with the State court action, correct?

A  Based on recommendation, I plead the Fifth.

Q  On December 3rd, 2025, the court entered the superseding contempt order dated December 2nd, against you, correct?

A  Based on recommendation, I plead the Fifth.

Q  And the superseding contempt order ordered several sanctions against you, correct?

A  Based on recommendation, I plead the Fifth.

Q  A fine of $250, correct?

A  Based on recommendation, I plead the Fifth.

Q  Attorneys' fees and expenses of $2,045, correct?

A  Based on recommendation, I plead the Fifth.

Q  And the court ordered a sanction requiring you to file on NYSCEF properly redacted copies of any and all bank records pertaining to all deposits and disbursements and balances within the escrow

account involving the $2 million.

A  Based on recommendation, I plead the Fifth.

Q  In response to the superseding contempt

order, you directed Ainsworth Gorkin to draft a

85

total of six motions to stay the enforcement of the

superseding contempt order over the course of

39 days, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you directed Mr. Goldberg to file these

motions on behalf of Mr. Graubard, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you directed Ainsworth Gorkin to draft a

TRO application on behalf of Mr. Graubard on

December 4th, 2025, correct?

A  Based on recommendation, I plead the Fifth.
I do have to take a break, use a the restroom for a

minute.  I'm sorry.

Q  Okay.  Quick break.

VIDEOGRAPHER:  We are off the record.  The

time is 4:30 p.m.

(Short recess.)

VIDEOGRAPHER:  We are back on the record.

The time is 4:32 p.m.

BY MS. DELUCIA:

Q  So you directed Ainsworth Gorkin to draft a TRO application on behalf of Mr. Graubard which was filed on December 5th.  Correct?

VIDEOGRAPHER:  Wait one, counsel.

86

BY MS. DELUCIA:

Q  Do we still have you, Mr. Sprei?

A  I'm here, yes.

Q  Did you catch my last question or no?

A  No, I did not.

Q  Okay.  You directed Ainsworth Gorkin to prepare a TRO application on behalf of Mr. Graubard that was filed on December 5th, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you directed Ms. Hahn to file the December 5th TRO papers using Mr. Goldberg's credentials, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you provided Ms. Hahn with Mr. Goldberg's credentials, correct?

A  Again, based on recommendation, I plead the Fifth.

Q  Before doing so, did you obtain authorization from Mr. Goldberg?

A  Based on recommendation, I plead the Fifth.

Q  Did you tell Mr. Goldberg to approve the TRO papers that had been prepared by Ainsworth Gorkin?

A  Based on recommendation, I plead the Fifth.

Q  And the goal of the December 5th TRO application was to stay enforcement of the

87

superseding contempt order, correct?

A  Based on recommendation, I plead the Fifth.

Q  And if it was granted, Mr. Graubard's deadline to file the account records would have been delayed, correct?

A  Based on recommendation, I plead the Fifth.

Q  Before the December 5th application was filed, did Ms. Hahn tell you that she could not find

authority showing that the court lacked power to

compel disclosure after discontinuance?

A   Based on recommendation, I plead the Fifth.

Q   And on December 9th, 2025, you directed

Ainsworth Gorkin to draft a TRO application on

behalf of Mr. Graubard, correct?

A   Based on recommendation, I plead the Fifth.

Q   And that TRO application was filed by

Mr. Horn on December 11th, correct?

A   Based on recommendation, I plead the Fifth.

Q   And the goal of the December 11th TRO was to

delay resolution of the contempt proceedings against

Mr. Graubard, correct?

A   Based on recommendation, I plead the Fifth.

Q   And on December 11th, 2025, you directed

Ainsworth Gorkin to draft another TRO application on

behalf of Mr. Graubard, correct?

88

A   Based on recommendation, I plead the Fifth.

Q   And that was filed on December 12th,

correct?

A  Based on recommendation, I plead the Fifth.

Q  And the goal of the December 12th TRO application was to stay enforcement of the superseding contempt order, correct?

A  Based on recommendation, I plead the Fifth.

Q  And if it was granted, Mr. Graubard's deadline to file the account records would be delayed, correct?

A  Based on recommendation, I plead the Fifth.

Q  On December 15th, 2025, you directed Ainsworth Gorkin to draft another TRO application on behalf of Mr. Graubard, correct?

A  Based on recommendation, I plead the Fifth.

Q  And that was filed on December 15th, correct?

A  Based on recommendation, I plead the Fifth.

Q  And the goal of the December 15th TRO application was to stay enforcement of the superseding contempt order, correct?

A  Based on recommendation, I plead the Fifth.

Q  The December 15th TRO application sought identical relief to the December 12th TRO

89

application, correct?

A  I'd like to plead the Fifth based on recommendation.

Q  Before the December 15th TRO application was filed, did you ask Mr. Gorkin to give Ms. Hahn case law concerning privilege over escrow account records?

A  Based on recommendation, I plead the Fifth.

Q  Now, not only were you directing filings on behalf of Mr. Graubard, but you were also directing counsel for Mr. Seddio, correct?

A  Based on recommendation, I plead the Fifth.

CERTIFIED STENOGRAPHER:  Because he's outside I think our connection is not very good.

BY MS. DELUCIA:

Q  Mr. Sprei, are you able to move somewhere with a stronger connection?

A  I'm not outside.  I'm actually on my indoor porch.

Q  I think we're still having trouble hearing you.

A  I'm in a very good spot.  Can you guys hear me now?

Q  We can hear you, but there's delay in your

video.

90

A  Why don't we just stipulate that all the answers to your questions are that responses and instead of just going through --

Q  Because the law doesn't permit us to do that, Mr. Sprei.  We have to actually ask the questions.

A  Why don't we just -- can you hear me now?

Q  We can hear you.  The law doesn't allow us to stipulate on a broad basis about your --

A  Can you hear me now?  Let me hang up.  Let me hang up and call back in.  Can you hear me now?

Q  We can hear you.  Your video is choppy.

A  Hello.  Can you guys hear me?

Q  We can hear you, Mr. Sprei.

A  I'm saying why don't we stipulate that all the questions -- yes, I do.

Q  The court does not allow us --

A  Can you hear me?

Q  My goodness.  The court does not allow us to

stipulate like that.  We have to ask the questions and you have to invoke your Fifth Amendment privilege as to each specific question.  Do you understand?

A  Okay, no problem.  I just -- no problem.  I hope you'll be finished.  Yes, that's fine.

91

Q  Okay.

A  That's fine.  Go ahead.

Q  Do you have my last question, Sandra?  I'm sorry.

(Stenographer clarification.)

BY MS. DELUCIA:

Q  It was your idea, Mr. Sprei, to hire the law firm Aidala Bertuna & Kamins PC to represent Mr. Seddio from the State court action, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you did so with the intent to orchestrate the recusal of Justice Montelione, correct?

A  Based on recommendation, I plead the Fifth.

Q  Who is John Leventhal?

16:39:21  A  Based on recommendation, I plead the Fifth.

16:39:23  Q  He's an attorney at Aidala, Bertuna & Kamins

16:39:30  PC, correct?

16:39:31  A  Based on recommendation, I plead the Fifth.

16:39:32  Q  How did you know that engaging that firm

16:39:37  would force a recusal of Justice Montelione?

16:39:40  A  Based on recommendation, I plead the Fifth.

16:39:42  Q  You coordinated the engagement of that firm

16:39:48  for Mr. Seddio, correct?

16:39:49  A  Based on recommendation, I plead the Fifth.

92

16:39:50  Q  And you sent a letter -- strike that.

16:40:01  Did you advise anyone at Aidala Bertuna &

16:40:05  Kamins PC that Justice Montelione was presiding over

16:40:09  the matter for which you had engaged them?

16:40:11  A  Based on recommendation, I plead the Fifth.

16:40:14  Q  You understood that retaining that firm

16:40:16  would create a conflict with the judge, correct?

16:40:18  A  Based on recommendation, I plead the Fifth.

16:40:21  Q  Were you paying that law firm's fees on

16:40:43  behalf of Mr. Seddio?

A  Based on recommendation, I plead the Fifth.

Q  Why did you agree to pay that law firm's fees for Mr. Seddio?

A  Based on recommendation, I plead the Fifth.

Q  Have you communicated with anyone from that law firm regarding the representation of Mr. Seddio?

A  Based on recommendation, I plead the Fifth.

Q  Did you discuss Mr. Seddio's testimony at sanctions hearing in the State court action with anyone from that firm?

A  Based on recommendation, I plead the Fifth.

Q  After Justice Montelione recused himself, Justice Velasquez was appointed, correct?

A  Based on recommendation, I plead the Fifth.

Q  Justice Velasquez immediately recused and

93

then Justice Rivera was appointed.  Was it funny to you that Justice Rivera was appointed to the state action?

A  Based on recommendation, I plead the Fifth.

Q  On January th the court issued an order to show cause for Mr. Graubard's arrest and commitment.

And on January 9th, you directed Ainsworth Gorkin to draft another TRO application on behalf of Mr. Graubard.  Correct?  Can you hear me?

A  Based on recommendation, I plead the Fifth.

Q  And you promised Ms. Hahn bonus payments in connection with work on that TRO, correct?

A  I'm sorry?

Q  Can you hear us, Mr. Sprei?

A  Based on recommendation, I plead the Fifth. I said based on recommendation, I plead the Fifth.

Q  And that TRO application was filed on January 12th, correct?

A  Based on recommendation, I plead the Fifth.

Q  And the primary purpose of the January 12th TRO application was to delay resolution of the contempt proceedings against Mr. Graubard, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you wanted to avoid Mr. Graubard being arrested and having to show cause why he should not

94

be remanded to custody on Ryker's Island, correct?

A   Based on recommendation, I plead the Fifth.

Q   And on January 13th, you sought emergency reconsideration from the appellate division, correct?

A   Based on recommendation, I plead the Fifth.

Q   And the primary purpose of the January 13th TRO application was to delay the January 14th commitment hearing, correct?  Mr. Sprei?  Mr. Sprei, can you hear us?

VIDEOGRAPHER:  I think he's about to drop. Off record, counsel?

MS. DELUCIA:  We lost Mr. Sprei.

VIDEOGRAPHER:  Should I take us off record?

MS. DELUCIA:  Yeah, please.

VIDEOGRAPHER:  We are off the record.  The time is 4:44 p.m.

(Short recess.)

VIDEOGRAPHER:  We are back on the record. The time is 4:45 p.m.

THE WITNESS:  I do have to finish at 5:05, so I'll be happy to reconvene on another day if I need to.  But just letting you know.

BY MS. DELUCIA:

Q   So as I mentioned at the outset, we'll

reserve all rights on that.

Mr. Sprei, did you understand that the December 5th, December 12th, December 15th, January 12th, and January 13th stay or TRO applications all sought substantially the same goal, to delay disclosure of Mr. Graubard's account records?

A  Based on recommendation, I plead the Fifth.

Q  Do you have any phone calls or voice note communications with Mr. Gorkin, Ms. Hahn, Mr. Goldberg, Mr. Horn, or anyone else about those TROs or appeals?

A  Based on recommendation, I plead the Fifth.

Q  Now, a federal action was filed in the Eastern District of New York in which you are named as a defendant, correct?

A  I'm here.

Q  We can't see you, Mr. Sprei.

A  The camera is on.  Can you see me now?  I'm sorry.  Okay, I'm back.

Q  Okay.  You're named as a defendant in the federal action in the Eastern District of New York

that my clients brought, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you've communicated with other

96

defendants in the federal action about that case, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you have coordinated with other defendants about litigation strategy in that action, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you've coordinated with Mr. Rubin in connection with litigation strategy in that case, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you coordinated with Mr. Sprei about litigation strategy in connection with that case, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you've assisted Mr. Graubard in connection with his defense in the federal action,

correct?

A  Based on recommendation, I plead the Fifth.

Q  Ms. Hahn at Ainsworth Gorkin prepared motions to quash subpoenas in the federal action at your direction, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you told Ms. Hahn that you were operating as an agent for Mr. Graubard, correct?

97

A  Based on recommendation, I plead the Fifth.

Q  And you told Ms. Hahn that Mr. Seddio approved certain filings in that case, correct?

A  Based on recommendation, I plead the Fifth.

Q  You directed legal work on behalf of Mr. Graubard in the federal action without being a party's attorney of record, correct?

A  Based on recommendation, I plead the Fifth.

Q  Did you help prepare any answers for any of your co-defendants in the federal action?

A  Based on recommendation, I plead the Fifth.

Q  Did you help prepare any extension requests on balance of any of the co-defendants in the

federal action?

A  Based on recommendation, I plead the Fifth.

Q  Did you help prepare any of the initial disclosures by any of the other co-defendants in the federal action?

A  Based on recommendation, I plead the Fifth.

Q  Did you help prepare any motions on behalf of any of the other defendants in the federal action?

A  Based on recommendation, I plead the Fifth.

Q  Did you help prepare any discovery responses on behalf of any of other defendants in the federal

98

action?

A  Based on recommendation, I plead the Fifth.

Q  Did you help prepare any correspondence with the court on behalf of any of the other defendants in the case?

A  Based on recommendation, I plead the Fifth.

Q  Did Mr. Graubard send you draft answers or extension requests for review in connection with the

federal action?

A   Based on recommendation, I plead the Fifth.

Q   You sent Ainsworth Gorkin a March 10th draft letter motion to quash from Mr. Seddio in the federal action.  Correct?

A   Based on recommendation, I plead the Fifth.

Q   You also sent Ainsworth Gorkin the memorandum in support, correct?

A   Based on recommendation, I plead the Fifth.

Q   At the time you sent that, you were pro se, correct?

A   Based on recommendation, I plead the Fifth.

Q   Did you ask Ainsworth Gorkin to draft a motion to quash or similar filing for you in the federal action?

A   Based on recommendation, I plead the Fifth.

Q   Did you ask Ainsworth Gorkin to draft other

99

filings for you in the federal action?

A   Based on recommendation, I plead the Fifth.

Q   Which filings did you ask Ainsworth Gorkin to draft for you in the federal action?

16:50:51    A  Based on recommendation, I plead the Fifth.

16:50:53    Q  Now, at all times you directed

16:50:59    Mr. Graubard's defense in the State court case,

16:51:02    correct?

16:51:02    A  Based on recommendation, I plead the Fifth.

16:51:03    Q  And you directed the recusals of the

16:51:08    justices in the State court case, correct?

16:51:11    A  Based on recommendation, I plead the Fifth.

16:51:12    Q  And you directed Mr. Graubard not to tell

16:51:20    the court that he didn't have our client's escrowed

16:51:24    funds, correct?

16:51:25    A  Based on recommendation, I plead the Fifth.

16:51:26    Q  And when affirmations were filed in the

16:51:34    State court case on behalf of Mr. Rubin, you knew

16:51:37    that those affirmations were false, correct?

16:51:40    A  Based on recommendation, I plead the Fifth.

16:51:41    Q  And you directed that Mr. Rubin's name be

16:51:47    substituted in for your name in those affirmations,

16:51:50    correct?

16:51:50    A  Based on recommendation, I plead the Fifth.

16:51:51    Q  And you were the mastermind behind all of

100

those abuses of process in the State court case,

correct?

    A  Based on recommendation, I plead the Fifth.

    Q  Now, you prepared the first draft of the

escrow agreement that was sent to my clients,

correct?

    A  Based on recommendation, I plead the Fifth.

    Q  And you directed Mr. Graubard to disburse

the funds from the escrow account, correct?

    A  Based on recommendation, I plead the Fifth.

    Q  I'm sorry.  That last answer was garbled.

Did you catch that, Sandra?

    A  I said based on recommendation, I plead the

Fifth.

    Q  Mr. Sprei, we can't hear you.

    A  I said based on recommendation, I plead the

Fifth.

        MS. DELUCIA:  You were able to hear that,

Sandra?

        CERTIFIED STENOGRAPHER:  Yes.

BY MS. DELUCIA:

    Q  Did we lose Mr. Sprei again?

        CERTIFIED STENOGRAPHER:  No.

    A  I'm here.

Q  I'm sorry.  I still can't hear you,

101

Mr. Sprei.

A  I'm here.  I can hear you fine.

CERTIFIED STENOGRAPHER:  Garbled.

(Technical difficulties.)

A  I can hear you.

Q  Mr. Sprei, your email -- I'm sorry.

A  Can you hear me now?

Q  Not very well, not very clearly.

(Technical difficulties.)

MS. DELUCIA:  I'm sorry.  I didn't catch any of that.

CERTIFIED STENOGRAPHER:  He's gone.

(Technical difficulties.)

BY MS. DELUCIA:

Q  Mr. Sprei we can see your mouth moving but we can't hear anything.

(Technical difficulties.)

MS. DELUCIA:  Based on our inability to hear Mr. Sprei, I will just note on the record that plaintiffs reserve all rights, including to continue

this deposition beyond the time at which Mr. Sprei said he's unable to continue, which he has now represented is 5:05 p.m. today, notwithstanding his earlier representation that it was 5:15. We don't know why Mr. Sprei is unable to continue this

102

deposition past 5:05 or 5:15 today, so we reserve all rights in that respect. Mr. Sprei has just disconnected altogether. Let's go off the record.

VIDEOGRAPHER: Yes, ma'am. We are off the record. The time is 4:55 p.m.

(Short recess.)

VIDEOGRAPHER: We are back on the record. The time is 4:56 p.m.

BY MS. DELUCIA:

Q  Mr. Sprei, why are you unable to continue this deposition past 5:05 today?

A  I'm not available. I have a personal matter.

Q  What is the personal matter that you have?

A  I have a personal matter. I will not

disclose it.  Thank you.

Q  Mr. Sprei, you knew that the affirmations were false when they were filed in the State court action, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you knew that Mr. Graubard had converted our clients' escrowed funds, correct?

A  Based on recommendation, I plead the Fifth.

Q  And you assisted Mr. Graubard in his conversion of the escrowed funds, correct?

103

A  Based on recommendation, I plead the Fifth.

Q  And you knew when the State court action was initiated that there was no good faith basis for it, correct?

A  Plead the Fifth.

Q  And you intended when that action was initiated to do harm or cause adverse consequences to our clients, correct?

A  Plead the Fifth.

Q  And you directed Mr. Seddio to initiate that State court action notwithstanding the absence of a

good faith basis for it, correct?

A  Plead the Fifth.

Q  And the action was commenced with malice, correct?

A  Plead the Fifth.

Q  And it was continued with malice, correct?

A  Plead the Fifth.

Q  And you had no reason to believe that that action could succeed, correct?

A  Plead the Fifth.

Q  And you knew that Mr. Graubard breached his fiduciary duties to my clients, correct?

A  Plead the Fifth.

Q  And you knowingly induced that breach,

104

correct?

A  Plead the Fifth.

Q  And you knowingly participated in that breach, correct?

A  Plead the Fifth.

Q  And my clients suffered damage as a result

of that breach, correct?

A  Plead the Fifth.

Q  What steps have you taken to return our clients' escrowed funds to them?

A  Plead the Fifth.

Q  What was your intent in inducing our clients' investment in the Surf 9 investment?

A  Plead the Fifth.

Q  You're a named defendant in a case captioned Shimon Avrhami versus Sam Sprei currently pending in New York Supreme Court Kings County, correct?

A  Plead the Fifth.

Q  Did you testify in that case?

A  Plead the Fifth.

Q  And the case actually resulted in you having to pay a $900,000 judgment pursuant to a settlement agreement, correct?

A  Plead the Fifth.

Q  Did you actually pay that amount?

105

A  Plead the Fifth.

Q  And you're a named defendant in an action

captioned Ira Russack versus Queen Equities LLC,

et al. in Queens County Supreme Court, correct?

A  Plead the Fifth.

Q  Did you give testimony in that case?

A  Plead the Fifth.

Q  Olden Group LLC is a named defendant in a

case captioned Olden Group LLC V Body Glove

International Inc., et al. in Kings County Supreme

Court, correct?

A  Plead the Fifth.

Q  And you're the principal of Olden Group,

correct?

A  Plead the Fifth.

Q  Did you give testimony in that case?

A  Plead the Fifth.

Q  And Olden Equities LLC is a named defendant

in a case captioned Jetro Cash and Carry Enterprises

LLC versus Olden Equities LLC in Nassau county

Supreme Court, correct?

A  Plead the fifth.

Q  And you're the principal of Olden Equities

LLC, correct?

A  Plead the fifth.

Q  Did you give testimony in that case?

A  Plead the fifth.

Q  And Anhui Edgewater Street Realty is a named defendant in a case captioned Jest Holdings LLC versus Anhui Edgewater Street Realty LLC in Queens county Supreme Court, correct?

A  I said I plead the fifth.  I got to go.  I'm happy to confirm another time when you're available to finish the deposition and we can coordinate times.  Okay.

Q  Mr. Sprei, we'll have to reserve all rights. As you know, we have seven hours pursuant to the Federal Rules of Civil Procedure?

A  That's fine.  I'm happy to accommodate another day as long as -- beforehand I'm happy to accommodate another day.

Q  The court directed you to continue this deposition today, Mr. Sprei.

A  Yes, I'm here at a deposition and I cannot go further.  And I just want to make it known that I did confirm that I'm willing to come another day when it's convenient for you and I'm happy to finish

it up.  Okay.

Q  Mr. Sprei, we're going keep this deposition open until it is concluded.

107

A  Okay.  Thank you very much.  Have a wonderful day.  Thank you everybody for the time and we'll be communicating via email on the times. Thank you.

MS. DELUCIA:  Mr. Sprei has disconnected. We'll note for the record that the deposition will remain open for the time being.  And the plaintiffs reserve all rights.  And we can go off the record.

VIDEOGRAPHER:  We are off the record.  The time is 5:03 p.m.