

Lauren Zimmerman
1155 Avenue of the Americas, Floor 26
New York, New York 10036
Direct Dial: 646.356.6023
Fax: 646.755.3397
lzimmerman@beneschlaw.com

July 13, 2026

Via ECF

Magistrate Judge Peggy Cross-Goldenberg
United States District Court
Eastern District of New York
225 Cadman Plaza East, Room 1230
Brooklyn, New York 11201

Re:   *Metaxas et al. v. Graubard et al.*, No. 25-cv-05844 (EK) (PCG)

Dear Judge Cross-Goldenberg:

We write on behalf of Plaintiffs Angelos Metaxas and Pertshire Investments LP, pursuant to the Court's docket order dated June 17, 2026, to respectfully request leave to amend and supplement the Complaint (ECF No. 1) pursuant to Federal Rules of Civil Procedure 14(a)(3), 15(a)(2), and 15(d). Clean and redline copies of Plaintiffs' proposed Amended and Supplemental Complaint are attached as Exhibits A and B, respectively. Plaintiffs' motion should be granted because their proposed amendments and supplementation are timely and brought in good faith, and Plaintiffs' proposed new claims are meritorious.

**Background.** As the Court is aware, and as alleged in the Complaint, this action arises out of $2 million (the "Escrow Deposits") that Plaintiffs entrusted to Defendant Mark David Graubard, Esq. ("Graubard") in December 2024 to hold in escrow pursuant to airtight demand escrow agreements for their sole benefit while they considered a potential investment (the "Potential Investment") solicited by Defendant Yeschiel Shimon "Sam" Sprei ("Sprei"). In January 2025, Graubard refused, at Sprei's direction, to honor his legal and ethical obligations to return Plaintiffs' Escrow Deposits upon their demand. Defendant Frank R. Seddio ("Seddio") then commenced a sham lawsuit in Kings County Supreme Court (the "State Court Action") on February 19, 2025, on behalf of a fictitious entity purportedly managed by Defendant Jonathan Rubin ("Rubin") falsely alleging a dispute over Plaintiffs' Escrow Deposits.

Based on a false and fraudulent affirmation filed by Seddio in Rubin's name, the state court granted Seddio's *ex parte* request for a temporary restraining order ("TRO") directing Graubard to either continue holding the Escrow Deposits or deposit it with the clerk of the court and enjoining Plaintiffs from taking any steps whatsoever to recoup their funds. After lengthy delays obtained by Seddio on his own emergency motion (and the unexplained eleventh-hour recusal of the case's first presiding judge, a close friend of Seddio's), a preliminary-injunction hearing was finally held on July 17, 2025, and the second presiding judge ordered Graubard to deposit Plaintiffs' Escrow Deposits with the clerk's office by July 21, 2025, which he never did. Minutes

Magistrate Judge Peggy Cross-Goldenberg
July 13, 2026
Page 2

before the start of a July 31, 2025 hearing on potential attorney sanctions for Graubard's defiance, Graubard substituted in a new attorney whose close personal relationship with the presiding judge resulted in the latter's immediate recusal the next day. Further delays ensued.

When Plaintiffs commenced this action on October 17, 2025, they had been deprived of their funds for nearly eight months, had already been forced to incur hundreds of thousands of dollars in legal fees defending themselves in the frivolous State Court Action, and still had not been provided with *any* discovery into Defendants' misconduct. Since the Complaint's filing, the following has occurred:

- On November 5, 2025, the third judge presiding over the State Court Action found Graubard in contempt of the July 17, 2025 order requiring him to deposit Plaintiffs' $2 million in Escrow Deposits with the clerk of the court;

- The next day, Seddio discontinued the State Court Action and conceded that it was meritless from the start;

- The state court issued a superseding contempt order on December 3, 2025, directing Graubard to file on the docket redacted records from his interest on lawyer account ("IOLA") showing all deposits, disbursements, or balances related to Plaintiffs' Escrow Deposits (the "Account Records");

- Graubard and Sprei worked in concert to obtain an abusive TRO on December 8, 2025, enjoining enforcement of the court's Account Records filing requirement, and to file five more egregiously frivolous and dilatory TRO applications further delaying justice for Plaintiffs;

- Graubard, Sprei, and Seddio worked in concert to force the third presiding state court judge—the justice who had issued the contempt order against Graubard and who denied many of Graubard's frivolous TRO applications seeking to stay enforcement of such order—to recuse himself by falsely representing to the state court on December 15, 2025 that Seddio had retained the same law firm that was representing the presiding judge in an unrelated litigation, causing the presiding justice's immediate recusal;

- Graubard finally admitted in open court on January 14, 2026, when faced with the prospect of civil commitment for his contempt, that he had transferred Escrow Deposits in December *2024* pursuant to instructions from third parties, whom he later identified as *Sprei* and Third-Party Defendant Chaskel Frankl ("Frankl"), the latter of whom Graubard impleaded to this federal action shortly thereafter; and

- Plaintiffs finally obtained discovery and testimony highlighting a level of collusion, deceit, and other misconduct by Defendants that shocks the conscience and of which Plaintiffs were unaware or merely suspected before filing their Complaint. For example, 2025 text messages and recorded voice notes between Sprei and Graubard's then-attorney, obtained through a third party subpoena here, revealed their detailed

Magistrate Judge Peggy Cross-Goldenberg
July 13, 2026
Page 3

schemes to ghostwrite false and fraudulent representations that Seddio later transmitted to the court as though from himself, to synchronize filings in the State Court Action to ensure that chambers or court staff that they perceived as favorable would receive them or that chambers staff that they perceived as unfavorable would not, and to bring attorneys into the State Court Action with the aim of causing the recusals of at least two presiding judges. Sprei responded to the recusals he had engineered with "[h]a ha" and "lol."

Amendment and supplementation of the Complaint are thus warranted to conform the pleadings to the facts as they are known to Plaintiffs today. (Defendants have at all times been aware of their respective conduct.) At a high level, Plaintiffs propose making the following changes:

1.  adding claims and related allegations against Third-Party Defendant Frankl for tortious interference with the Escrow Agreements, aiding and abetting breaches of Graubard's fiduciary duties, and aiding and abetting conversion;

2.  adding claims and related allegations against Graubard for abuse of process based on the December 8, 2025 TRO, for malicious prosecution, and for attorney deceit and collusion under N.Y. Judiciary Law § 487;

3.  adding claims and related allegations against Sprei for abuse of process based on both the initial February 19, 2025 TRO and the December 8, 2025 TRO, for malicious prosecution, and unjust enrichment;

4.  adding claims and related allegations against Seddio for malicious prosecution, and adding allegations further supporting the existing claim against Seddio for attorney deceit and collusion under N.Y. Judiciary Law § 487; and

5.  adding claims and related allegations against Rubin for malicious prosecution and unjust enrichment.

**Argument.** Rule 14(a)(3) permits a plaintiff to "assert against the third-party defendant any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." Rule 15(a)(2) directs a court to "freely give leave [to amend a pleading] when justice so requires." Under Rule 15(d), "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." "The distinction between Rules 15(a) and 15(d) is of little practical significance as the standards used in ruling on a motion to amend or on a motion to supplement are generally the same." *Wertzberger v. Shapiro, DiCaro & Barak LLC*, 19-CV-4272 (MKB), 2021 WL 327619, at *3 (E.D.N.Y. Feb. 1, 2021) (cleaned up) (citation omitted). "This is a liberal and permissive standard, and the only grounds on which denial of leave to amend has long been held proper are upon a showing of undue delay, bad faith, dilatory motive, or futility." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (quotations and citation omitted); *accord Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (applying the same

Magistrate Judge Peggy Cross-Goldenberg
July 13, 2026
Page 4

standard to a motion to supplement the pleadings under Rule 15(d)). Plaintiffs' proposed amendment and supplementation easily clear these standards.[1]

*First*, Plaintiffs' claims against Third-Party Defendant Frankl plainly arise out of the same transactions and occurrences as Plaintiffs' claims against Defendant/Third-Party Plaintiff Graubard. Based on information obtained months after this action was commenced, Plaintiffs allege that Frankl directly participated in the same improper transfer of Plaintiffs' Escrow Deposits out of Graubard's IOLA in December 2024 as Graubard, which conduct amounted to tortious interference with the Escrow Agreements, aiding and abetting Graubard's breach of fiduciary duties, and aiding and abetting conversion. Indeed, Graubard's own third-party claims against Frankl include contribution for Graubard's liability to Plaintiffs on their claims against Graubard for breach of fiduciary duties and breach of contract. *See* ECF No. 44 ¶¶ 18–25. And Graubard himself described those third-party claims as "aris[ing] out of the same operative facts as the underlying dispute" (ECF No. 34 at *3)—*i.e.*, Plaintiffs' claims against Graubard and the other Defendants. Thus, Plaintiffs should be permitted to assert their claims against Frankl.

*Second*, Plaintiffs' proposed amendments and supplementation do not reflect any dilatory motive or bad faith, and allowing Plaintiffs to amend and supplement their Complaint will not cause any undue delay or prejudice to any Defendant. A substantial portion of Plaintiffs' proposed changes to the Complaint reflect newly identified misconduct that took place after this action was commenced in October 2025, including the strategic discontinuance of the State Court Action the day after Graubard was found in contempt, the abusive December 8, 2025 TRO, and the collusive and deceitful manufactured recusal a week later of the third justice then presiding over the State Court Action. The remainder of the proposed changes reflect existing facts and conduct that Defendants concealed from Plaintiffs for nearly a year, such as Sprei's direct involvement in falsifying the February 2025 pleadings and initial TRO application in the State Court Action, Sprei's retention and direction of nearly all his co-Defendants' lawyers in the State Court Action, and Graubard's involvement (through counsel) in ghostwriting false representations for Seddio to convey to the state court and Plaintiffs about the status of their Escrow Deposits.

Plaintiffs were only finally able to peer behind the veil once discovery in this action got substantially underway in May 2026. Even then, there were significant delays caused by the dilatory conduct of most of the Defendants here. At every step, Plaintiffs have sought to move this litigation forward efficiently. And Plaintiffs first raised their anticipated amendment and supplementation on June 3, 2026, within weeks of multiple Defendants' initial document productions, and before any Defendant or third party depositions took place. *See* ECF No. 118, at 16–20.[2] Nearly every new production of documents and line of sworn testimony has brought to

---

[1] Because the operative scheduling order does not set a deadline for amending the pleadings, Rule 16's "good cause" standard does not apply. Even if it did, Plaintiffs have demonstrated sufficient good cause for amending and supplementing their Complaint.

[2] Plaintiffs initially proposed briefing their motion to amend and supplement the Complaint on the same timeline as dispositive motions, so the Court could consider all merits arguments under Rules 12, 15(a), 15(d), and 56 together. ECF No. 118, at 19. After the Court modified the discovery schedule, the parties jointly moved, and the Court agreed, to extend the dispositive-motion deadline until after Plaintiffs' Rule 15 motion is resolved. *See* ECF No. 143; July 2, 2026 docket order.

Magistrate Judge Peggy Cross-Goldenberg
July 13, 2026
Page 5

light additional details of Defendants' misconduct and given rise to some new causes of action, as well as expanded liability on some existing claims. And "[t]his is not a case where the amendment [comes] on the eve of trial and would result in new problems of proof." *State Teachrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). Here, as in *State Teachers*, "no trial date ha[s] been set by the court and no motion for summary judgment ha[s] yet been filed." *Id.*

Because all of the facts giving rise to Plaintiffs' new and expanded claims have been thoroughly explored in both document and deposition discovery to date, the amended and supplemental claims will require *no additional discovery* apart from Frankl's production of relevant materials not already produced.[3] But discovery from Frankl would be unsurprising because the proceedings as to him are still at the pleading stage; his deadline to respond to Graubard's Third-Party Complaint is July 17. Moreover, the Court has already indicated that the claims against Frankl might proceed on a separate track from those against Defendants.

*Third*, Plaintiffs' new and expanded claims are not futile. "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)…." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). Here, no prior deficiencies in the current Complaint have been identified, no Defendant even moved to dismiss any claims, and two Defendants have effectively conceded liability on at least some of Plaintiffs' claims. *See* July 10, 2026 Order ("Defendant Sprei no longer contests liability in this action."); June 18, 2026, Graubard Dep. . 468:10-14 ("Q Have you raised at any time as a defense that Plaintiffs are not entitled to the return of the -- their $1 million respectively in this action? A No."). The only wholly new claims proposed by Plaintiffs are for malicious prosecution regarding the State Court Action, abuse of process based on the December 8, 2025 TRO, and an alternative claim of unjust enrichment based on Sprei's receipt of a portion of the Escrow Deposits in or around December 2024 through various corporate intermediaries and use of them to consummate the Potential Investment himself, and on Rubin's receipt of a portion of the Escrow Deposits in or around December 2024 through his company Queen Equities as payment in connection with Rubin's services for Sprei, and each of those are plausible. *E.g.*, *Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 288-89 (E.D.N.Y. 2014) (voluntary discontinuance of underlying action without settlement supported claim for malicious prosecution); *Roelcke v. Zip Aviation, LLC*, 571 F. Supp. 3d 214, 233–34 (S.D.N.Y. 2021) (sustaining claim for abuse of process arising out of TROs obtained under false pretenses); *United States v. Rivieccio*, 661 F. Supp. 281, 293 (E.D.N.Y. 1987) (movement of funds through entities defendants owned, controlled, or were associated with supported unjust enrichment claim).

Accordingly, Plaintiffs should be permitted to amend and supplement their Complaint. Plaintiffs respectfully submit that, to efficiently continue moving this case toward resolution on the merits, and because Plaintiffs' proposed amended and supplemental claims will not require any additional discovery, any dispositive motions under either Rule 12 or Rule 56 should be briefed together.

---

[3] Plaintiffs have already requested from the other Defendants their communications with Frankl, so—assuming the other Defendants produced them as requested—there should be few if any as-yet-unproduced communications from Frankl.

Magistrate Judge Peggy Cross-Goldenberg
July 13, 2026
Page 6

Respectfully submitted,

BENESCH, FRIEDLANDER,
  COPLAN & ARONOFF LLP

*/s/ Lauren Zimmerman*

Lauren Zimmerman

cc: All Parties via ECF