UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ANGELOS METAXAS *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:25-cv-05844-AMD-PCG |
| MARK DAVID GRAUBARD, ESQ. *et al.*, | |
| Defendants. | |

**JOINT STATUS REPORT**

## I.      Plaintiffs' Positions Regarding Outstanding Discovery from Each Defendant

*Sprei*: As indicated in Plaintiffs' July 16, 2026 letter (ECF No. 156), Sprei has not produced a single document to Plaintiffs, in direct violation of multiple court orders, including the July 10 docket order adjourning Sprei's production deadline to July 15. In addition, Sprei was 45 minutes late to, unprepared for, and evasive during his court-ordered deposition on July 16—answering the majority of questions with "I can't recall" or vague promises to check responsive documents— which, of course, Plaintiffs did not have the benefit of reviewing or utilizing given the lack of *any* document productions from Sprei concerning fund tracing or his assets to satisfy a judgment. As a result, Plaintiffs were forced to adjourn Sprei's deposition, for a third time, until after Sprei produces all responsive materials. Plaintiffs renew their request for the coercive sanctions this Court ordered on July 10 in order to ensure that Sprei does in fact produce responsive materials and not waste a fourth day's worth of time and costs on an unproductive deposition.

*Graubard*: Graubard should be ordered to respond fully to Plaintiffs' RFP 33, which seeks "[d]ocuments sufficient to show the amount of unencumbered cash as well as the value of any marketable securities, secured, capital, or liquidatable assets, and liabilities presently held by [Graubard, his wife, or any entities they control]." The Court previously compelled Graubard to produce tax information responsive to RFP 33. *See* 5/4/26 Minute Entry; ECF No. 94. Financial information of this sort is relevant where, as here, Plaintiffs seek a finding that punitive damages are warranted. *See, e.g. Wade v. Sharinn & Lipshie, P.C.,* 2009 WL 37521, at *1 (E.D.N.Y. Jan. 7, 2009). Graubard's admission of liability for at least Plaintiffs' $2 million in escrow deposits, as well as his testimony that most of his assets are held in trust for him and his wife, make this evidence especially important. *See* Graubard Dep. Tr. 409–18, 468.

*Seddio*: (1) Despite the Court's May 20 directive that Seddio obtain potentially responsive communications from the three "per diem" attorneys who appeared on his behalf for three hearings in the state-court action, Seddio did not subpoena any of them until June 19, and then only following Plaintiffs' repeated inquiries. To make matters worse, Seddio claims that his mere issuance of the subpoenas satisfied his discovery obligations, even though he has not received any documents from any of his per diem attorneys, and that it should be *Plaintiffs'* burden to enforce Seddio's own subpoenas.

(2) After admitting to routinely deleting potentially responsive communications from his cell phone, Seddio purportedly issued a subpoena to AT&T. *See* ECF No. 118, at 13. Seddio claims that AT&T could not retrieve the contents of any messages he deleted, but he has refused to share AT&T's written responses with Plaintiffs. Seddio has also failed to produce communications plainly missing from his productions (but produced by others). Given these deficiencies, Plaintiffs understand that the deleted electronically stored information ("ESI") cannot be restored or replaced and reserve the right to seek spoliation sanctions against Seddio. Seddio's claim, made for the first time today, that he now somehow recovered via an unknown iPad all the deleted text messages and emails to which Seddio testified extensively and repeatedly under oath, and many of which Plaintiffs have identified from other sources but which still have not been produced, is nonsensical.

(3) Despite Seddio's repeated insistence, including during his deposition on Monday, June 22, that he searched all of his devices for any potentially responsive communications, and sworn testimony that he rarely sends text messages and does not have or know how to use the WhatsApp application,

1

*see* Seddio 6/22/36 Dep. Tr. 35–36, Seddio claimed on Friday, June 19, to have "discovered" an iPad containing responsive text messages with Defendant Sprei and two other relevant third parties: Lauren Wachtler, Esq., and Kings County Supreme Court Justice Katherine Levine. During his deposition, Seddio testified that he and his assistant reviewed his iPad and selected what to produce to Plaintiffs without the assistance of his counsel. That violates the well-established, affirmative obligation of counsel to supervise the collection, search, and production of ESI. *E.g.*, *Li v. GreatCare, Inc.*, 2026 WL 276083, at *1 (S.D.N.Y. Feb. 2, 2026); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 433 (S.D.N.Y. 2004). Seddio's conduct is all the more unacceptable given Seddio's sworn deposition testimony, *even after this Court's May 20, 2026 cautionary instruction*, that he is "technologically retarded." Seddio 6/22/26 Dep. Tr. 36:19-20. In addition, on a break during the second day of Seddio's deposition, Seddio mentioned in passing *for the first time* that he has an Apple Watch. In response to a request by Plaintiffs, Seddio's counsel refused to run the Court's so-ordered search terms across Seddio's iPad and declined, completely, to even search Seddio's Apple Watch. Seddio's counsel should be ordered to conduct these searches and to certify that they have done so.

(4) In his Rule 26(a) disclosures, Seddio stated that he was "not aware of any insurance policy that may be available to satisfy all or part of any possible judgment against him or reimburse him for payments made to satisfy any judgments this Action." Seddio's counsel has since informed Plaintiffs that Seddio's carrier has agreed to pay his legal expenses and may cover any liability he incurs. Seddio must amend his Rule 26(a) disclosures and sworn interrogatory responses.

(5) As with Graubard, Seddio should be ordered to respond to Plaintiffs' RFP 21, which seeks information regarding his assets and unencumbered cash. This is especially necessary given Seddio's deposition testimony that he previously transferred all of his real estate to his wife and has no savings despite receiving a monthly retainer of up to $25,000 per month from Sprei alone. *See* Seddio 6/22/26 Dep. Tr. 185:4-7; Seddio 6/29/26 Dep. Tr. 103:4-7, 107:18-19

**_Rubin_**: Plaintiffs are entitled to discovery regarding Rubin's personal accounts and financial assets (RFPs 2 and 19; ROG 12). *See Wade*, 2009 WL 37521, at *1. Rubin's deposition testimony underscores the need for this information as he testified to loaning Sprei millions of dollars, including as recently as last month and in connection with Surf 9, while at the same time refusing to provide information regarding his assets and unencumbered cash. Moreover, Rubin's omission of his ownership in 287 Prop LLC in response to ROGs 1 and 2—an entity which owns an apartment complex located at 287, 293 and 299 McGuiness Blvd., in Williamsburg (the "McGuiness Property"), and his refusal to provide such information when requested raises troubling questions as to which other entities Rubin owns, has a stake in, or controls but failed to disclose despite repeatedly supplementing his sworn interrogatory responses. Notably, when after Plaintiffs learned of this entity in discovery, they identified a February 17, 2025 unsigned assignment agreement in which 100% of Rubin's complete ownership in 287 Prop LLC would transfer to Sprei. The following day, 287 Prop LLC purchased the McGuiness Property. When the 287 Prop LLC assignment agreement was eventually executed on December 18, 2025, 287 Prop LLC's interest in the McGuiness Property was conveyed to Sprei. Sprei now claims he has no ownership stake in the building. Rubin should be required to respond to RFPs 2 and 19 as well as ROG 12, as well as to finally fully and truthfully supplement his responses to ROGs 1 and 2.

2

On June 19, Rubin notified Plaintiffs that on January 15, 2026, he sent a letter to Seddio and Sprei demanding the withdrawal of Rubin's as-filed affirmation in the related state court action. Rubin refuses, however, to provide the transmittal email by which such email was purportedly sent and any response thereto based on, in his words, a "common-interest/joint defense privilege." This cannot be so given Rubin's present defense that Sprei and Seddio filed the affirmation against his interest. Moreover, both Rubin and Seddio testified that no joint defense agreement exists. Rubin should be ordered to produce these purported communications in full, as required by Plaintiffs' RFPs, or be precluded from using them as evidence on summary judgment or at trial.

With respect to Rubin's request for Plaintiffs communications that post-date the filing of State Court Action on February 19, 2025, his explanation establishes the lack of any relevance or bearing on this matter, especially in the light of the fact that Rubin has asserted no affirmative defenses or counterclaims against Plaintiffs. There is no dispute that Plaintiffs have not received any reimbursement of their $2 million in stolen escrow deposits (and even if they have, this could be established through accounting records though there are none) and, as Rubin concedes, Plaintiffs have produced to all Defendants invoices reflecting their attorney's fees and costs to date. This Court previously denied Rubin's request that Plaintiffs somehow allocate their costs and regardless, the Plaintiffs' individual communications would not establish the allocation of attorney's work and fees. Finally, Plaintiffs only today learned of Rubin's request for communications with counsel. For obvious reasons, any communications with counsel at any point in time are privileged. And at no point did Plaintiffs' counsel communicate with all of the potential Surf 9 investors.

## II.    Defendants' Positions

***Graubard:*** Defendant maintains his stated objections to Plaintiffs' RFP 33, including, *inter alia,* that the production of documents showing his and his wife's net worth is overly broad, disproportionate, and premature in a pre-judgement context. This is especially true in light of the fact that Defendant Graubard previously produced a recent tax return, as ordered by the Court. When Defendant Graubard's objections to Plaintiffs' RFP 33 were raised at a discovery conference on March 16, 2026, Your Honor withheld decision on the objection.

The tax return that Your Honor ordered Defendant Graubard to produce which Plaintiffs described as responsive to RFP 33 was attached to an email which, as alleged by Plaintiffs, was also responsive to RFP 10(z), 11(w), 12(q), and 13(u). The Court did not explicitly order Defendant Graubard to produce the tax return as responsive to RFP 33.

***Seddio***: (1) Defendant Seddio served subpoenas on the per diem attorneys from whom Plaintiffs seek discovery and is awaiting third-party responses. Defendant Seddio does not possess these documents nor does he have the authority to compel a non-party's compliance. If Plaintiffs believe additional discovery from those attorneys is warranted, Plaintiffs remain free to seek such discovery directly.

(2) While Plaintiffs imply that there was spoliation, they ignore the fact that Seddio ultimately located his iPad which was synchronized with the same iCloud account as his cellular telephone, and the text messages previously believed to have been deleted from the phone were produced. Seddio had served the subpoena on AT&T before the deleted texts were recovered.

3

(3) Using the telephone numbers specifically identified in the Court's May 5, 2026 Order as search parameters, Seddio with the assistance of an attorney in his office searched iPad for responsive communications.  The search revealed no text communications with Graubard, Rubin, or Paul Montclare. Texts with Sprei were located and produced in their entirety.  Searches were conducted for texts between Seddio and Supreme Court Justices Levine, Mostofsky, Montelione, Velasquez, and Rivera.  Any responsive texts (including personal texts having nothing to do with this litigation, were nonetheless produced.  Plaintiffs' demand that Defendant search his Apple Watch is unnecessary and unduly burdensome. Defendant's Apple Watch is synchronized with the same iCloud account as his iPhone and iPad. Likewise, Seddio through counsel, searched his WhatsApp messages and located no responsive communications.

(4) Seddio has produced a copy of his insurance policy on multiple occasions – a point Plaintiffs have failed to advise the court of.  They have all the information that they supposedly seek with respect to the amended discovery responses.  Moreover, at no time did Seddio's counsel offer a coverage opinion as to whether Seddio's insurance carrier had "agreed" to cover any of Seddio's costs or provide any indemnity.  In fact, Seddio's counsel specifically advised Plaintiffs' counsel during a Mr. Sprei's deposition yesterday that the insurer advised that it had not issued a coverage letter yet and that it would be produced upon issuance.

(5) Plaintiffs were granted extreme leeway during Seddio's deposition to inquire about not only Seddio's assets but his wife's.  That leeway ends now.  Plaintiff do not have a judgment against Mr. Seddio.  Pre-judgment asset discovery is not permitted as "the plaintiffs have not come close to showing good cause for the extraordinary remedy of pre-judgment discovery of assets." See, e.g., Vincent v Money Store, 2012 WL 6622707, at *1  (S.D.N.Y. Dec. 20, 2012).

***Sprei:*** Defendant Sprei respectfully disagrees with Plaintiffs' characterization of the July 16, 2026 deposition. Although the deposition commenced approximately 45 minutes after its scheduled start time, Plaintiffs omit that both Mr. Sprei and Defendant Rubin's counsel, Mordy Gross, timely notified counsel that they were delayed due to traffic. Mr. Sprei thereafter appeared and fully participated in the deposition as ordered. Defendant incorporates by reference his July 17, 2026 submission (ECF No. 160), which sets forth the procedural history following the Court's July 10, 2026 Order and Defendant's continuing good faith efforts to comply with the Court's discovery directives. Consistent with the Court's Order, counsel met and conferred regarding the narrowed scope of damages discovery, and the parties agreed that Defendant's remaining written discovery is limited to Requests for Production Nos. 4, 5, 6, 7, 19, 20, and 22 and Interrogatory Nos. 1, 2, 7, 10, and 11. The parties also agreed that Plaintiffs' deposition of Mr. Sprei will continue on August 3, 2026, after Defendant's July 29, 2026 production deadline. Defendant respectfully submits that the record reflects continuing good faith compliance with the Court's Orders and that the remaining discovery is proceeding in accordance with the schedule established by the Court.

***Rubin:*** Rubin has completed his discovery obligations. The items Plaintiffs raise were jointly memorialized as at impasse after the parties' June 30, 2026 meet-and-confer; they are not new deficiencies. Rubin produced more than 52,000 Bates-numbered pages, including complete statements for every account he controls, and supplemented his interrogatory responses four times (most recently June 30 and July 1, 2026). Fact discovery closed June 30, 2026 (ECF No. 132) and

was reopened only for the Nesaralli deposition, held July 14. Rubin responds to Plaintiffs' requests and separately raises his own items below.

**1. Financial-condition requests (RFPs 2 and 19; ROG 12)—at impasse.** The parties memorialized impasse on these weeks ago and Plaintiffs did not bring them up again for several weeks; Rubin offered to resolve RFP 19 by stipulating to his net worth, and Plaintiffs declined. The requests fail on the merits regardless. The only tort likely to survive a motion to dismiss— aiding and abetting conversion (Count 9)—is highly doubtful to survive summary judgment, and New York permits punitive damages only for conduct evincing "a high degree of moral turpitude and . . . such wanton dishonesty as to imply a criminal indifference to civil obligations," *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 489 (2007) (*quoting Walker v. Sheldon*, 10 N.Y.2d 401, 404–05 (1961))—which the complaint's boilerplate that Rubin acted "intentionally" and "willfully" (¶ 186) does not meet. Rubin will also move under Rule 12(c) and opposes Plaintiffs' motion to amend (ECF No. 151), so whether any punitive-eligible claim survives is undecided. In all events, courts defer financial-condition discovery until a prima facie punitive showing and then limit it to a net-worth affidavit or stipulation—what Rubin offered—not sweeping asset discovery. *See Tillery v. Lynn*, 607 F. Supp. 399, 402–03 (S.D.N.Y. 1985); *Wade v. Sharinn & Lipshie, P.C.*, 2009 WL 37521, at *1 (E.D.N.Y. Jan. 7, 2009) (Plaintiffs' own authority).

**2. 287 Prop LLC (ROGs 1 and 2).** Plaintiffs could have learned of 287 Prop LLC from Rubin's own production (RUBIN-004499–004560, served May 3, 2026). 287 Prop LLC is a disregarded entity under Queen Equities LLC—which Rubin disclosed at Interrogatory Nos. 1 and 2. Rubin discussed the treatment of his several disregarded entities with Plaintiffs and is further supplementing his responses to identify them. Nothing was intentionally concealed.

**3. Withdrawal-demand correspondence.** Rubin produced the underlying demand that Sprei and Seddio withdraw the affirmation filed in his name (NYSCEF Doc. No. 4)—an exculpatory document. He has not produced the cover email transmitting it, or any response, which co-counsel designated protected. Plaintiffs have never served a proper RFP that calls for these materials and Rubin has stated on the record that they must serve a proper Rule 34 request—so the ordinary process governs and no party can later claim improper disclosure or withholding. Rubin reserves all objections, including work product.

**4. Rubin's own requests to Plaintiffs—at impasse.** Rubin affirmatively raises two items the Court should compel: (i) Plaintiffs' post-February 19, 2025 communications, which bear on damages—including whether Plaintiffs have already recovered all or part of their $2 million from the co-defendants, a dollar-for-dollar offset; and (ii) communications among the investors and their counsel, and the related engagement materials. Although Plaintiffs produced their attorneys' invoices in lieu of engagement letters, the invoices do not allocate fees among the defendants and include time unrelated to this action, and thus cannot support a fee-based damages theory against Rubin.

**5. Discovery Rubin seeks from Sprei.** Sprei's document production and fund-tracing materials remain outstanding and bear directly on Rubin's defense that the misappropriated funds never reached him; Rubin seeks their completion. Rubin notes that Sprei's counsel, Mr. Emouna, has conferred and agreed to a narrowed scope of remaining discovery, and does not contend that ownership, asset, damages, or fund-tracing facts are immune. Rubin submits that this cooperative, meet-and-confer path—not coercive sanctions—is the way to obtain Sprei's outstanding materials.

5

Dated: July 17, 2026

/s/ Lauren J. Zimmerman
Lauren J. Zimmerman
BENESCH FRIEDLANDER COPLAN
& ARONOFF LLP
1155 Avenue of the Americas, Floor 26
New York, NY 10036
 (646) 356-6023
lzimmerman@beneschlaw.com

Jennifer M. Selendy
Babak Ghafarzade
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY  10104
(212) 390-9000
jselendy@selendygay.com
bghafarzade@selendygay.com

*Attorneys for Plaintiffs Angelos Metaxas and Pertshire Investments LP*

/s/ Randall Tesser
Randall Tesser
TESSER, RYAN & ROCHMAN, LLP
15 Fisher Lane, Suite 200
White Plains, NY 10603
(212) 754-9000
rtesser@tesserryan.com

*Attorney for Defendant Mark David Graubard*

/s/ Vincent Miletti
Vincent Miletti
MILETTI LAW, P.C.
153 West End Avenue, Suite 2A
Brooklyn, New York 11235
(609) 353-6287
Vmiletti@milettilaw.com

*Attorney for Defendant Frank Seddio*

/s/ Mordy Gross
Mordy Gross
LAW OFFICES OF MORDY GROSS LLC
418 Broadway Ste 10612
Albany, NY 12207
(484) 680-0768
Mg@mordygross.com

*Attorney for Defendant Jonathan Rubin*

/s/ Matin Emouna
Matin Emouna, Esq.
EMOUNA & MIKHAIL, PC
100 Garden City Plaza., Suite 520
Garden City, NY 11530
(516) 877-9111
memouna@emiklaw.com

*Attorney for Defendant Yeschiel Shimon Sprei*