Metaxas et al. v. Graubard et al., No. 1:25-cv-05844 (EK) (PCG) (E.D.N.Y.)

# EXHIBIT F

NYSCEF Docs. 353 & 354 — Plaintiffs' Proposed Findings of Fact (filed June 26, 2026)

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 2 of 60 PageID #: 1952

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

OLDEN LLC,

        Plaintiff,

      v.

ANGELOS METAXAS and PERTSHIRE
INVESTMENTS LP,

        Defendants,

     and

DAVID GRAUBART,

        Nominal Defendant.

Index No. 505819/2025

Hon. Francois A. Rivera: Part 52

Motion Sequence No. 8

**DEFENDANTS' PROPOSED FINDINGS OF FACT FOR SANCTIONS AGAINST NOMINAL DEFENDANT MARK DAVID GRAUABARD, ESQ.**

# Contents

UNDISPUTED FINDINGS OF FACT ...................................................................................1

    A.    First Allegedly Frivolous Act:
The July 16, 2025 Letter Filed on Graubard's Behalf ..............................3

    B.    Second Allegedly Frivolous Act:
Graubard's Failure to Comply with the July 17, 2025 Deposit Order ....................5

    C.    The Third Allegedly Frivolous Act:
The Denominated Stipulation Dated July 21, 2025 ..................................5

    D.    Fourth Allegedly Frivolous Act:
Non-Appearance at the November 5, 2025, Contempt Hearing .............................7

    E.    Fifth Allegedly Frivolous Act: Graubard's November 5, 2025, Letter ..................9

    F.    Sixth Allegedly Frivolous Act:
Evasive Statements at the November 12, 2025, Hearing..................................9

    G.    The Seriatim Applications for Emergency Injunctive Relief ...............................10

        1.    Seventh Allegedly Frivolous Act:
The December 5 TRO Application..................................11

        2.    Eighth Allegedly Frivolous Act:
The December 11 TRO Application..................................12

        3.    Ninth Allegedly Frivolous Act:
The December 12 TRO Application..................................12

        4.    Tenth Allegedly Frivolous Act:
The December 15 TRO Application..................................14

        5.    Eleventh Allegedly Frivolous Act:
The January 12 TRO Application..................................15

        6.    Twelfth Allegedly Frivolous Act:
The January 13 TRO Application..................................16

    H.    Thirteenth Allegedly Frivolous Act: Graubard's Failure to
Timely File Redacted Account Records ..................................16

    I.    Fourteenth Allegedly Frivolous Act: Graubard's Non-Compliant
Filing of Account Records on January 14, 2026..................................16

DISPUTED FINDINGS OF FACT ..................................................................................17

I.    Pre-Hearing Briefing..................................................................................17

II.    Witness Testimony at the Sanctions Hearing ..................................................18

    A.    Mark David Graubard ..................................................................................18

    B.    Israel Goldberg, Esq...................................................................................19

    C.    Yeshaya Gorkin, Esq. ..................................................................................21

ii

Case 1:25-cv-05844-EK-PCG   Document 162-7   Filed 07/21/26   Page 4 of 60 PageID #: 1954

III.    Additional Facts Concerning Graubard's and Goldberg's Alleged Acts of Frivolity ......................................................................................21

    A.    First Allegedly Frivolous Act: The July 16, 2025 Letter Filed on Graubard's Behalf ..........................................21

    B.    Second Allegedly Frivolous Act: Graubard's Failure to Comply with the July 17, 2025 Deposit Order ...................21

    C.    Third Allegedly Frivolous Act: The Denominated Stipulation Dated July 21, 2025 ................................................22

    D.    Fourth Allegedly Frivolous Act: Non-Appearance at the November 5, 2025, Contempt Hearing ............................24

    E.    Fifth Allegedly Frivolous Act: Graubard's November 5, 2025, Letter .................25

    F.    Sixth Allegedly Frivolous Act: Evasive Statements at the November 12, 2025, Hearing.......................................25

    G.    The Seriatim Applications for Emergency Injunctive Relief ................................26

        1.    Seventh Allegedly Frivolous Act: The December 5 TRO Application ..................................................26

        2.    Eighth Allegedly Frivolous Act: The December 11 TRO Application ................................................26

        3.    Ninth Allegedly Frivolous Act: The December 12 TRO Application ................................................26

        4.    Tenth Allegedly Frivolous Act: The December 15 TRO Application ................................................27

        5.    Eleventh Allegedly Frivolous Act: The January 12 TRO Application ................................................28

        6.    Twelfth Allegedly Frivolous Act: The January 13 TRO Application ................................................30

    H.    Thirteenth Allegedly Frivolous Act: Graubard's Failure to Timely File Redacted Account Records ...........................30

    I.    Fourteenth Allegedly Frivolous Act: Graubard's Non-Compliant Filing of Account Records on January 14, 2026 ...................................................31

IV.    Defendants' Attorneys' Fees.................................................................................31

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 5 of 60 PageID #: 1955

This matter was tried before the Honorable Francois A. Rivera over 9 days: March 23, March 25, March 30, April 14, April 27, April 28, April 29, May 11, and May 12, 2026 (collectively, the "Sanctions Hearing").

During the Sanctions Hearing the Court admitted 90 exhibits into evidence and heard live testimony from three witnesses: Nominal Defendant Mark David Graubard, Esq. ("Graubard"); Israel Goldberg, Esq. ("Goldberg"); and Yeshaya Gorkin, Esq. ("Gorkin").

Upon consideration of the testimony and documentary evidence admitted during the Sanctions Hearing, the reasonable inferences therefrom, and the prior pleadings and proceedings in this case, this Court hereby FINDS:

**UNDISPUTED FINDINGS OF FACT**

1. The action underlying these sanctions proceedings (the "Action") concerned $2 million (the "Deposits") that Defendants wired to Graubard in December 2024 pursuant to escrow agreements to which Graubard was a signatory. 3/23/26 tr. 40:12-18.

2. Each Defendant's escrow agreement with Graubard (together, the "Escrow Agreements") was materially identical; identified Graubard as the "Escrow Agent"; identified each Defendant as the "Escrowee"; provided for each Escrowee to deposit $1 million (the "Escrow Amount") in Graubard's "IOLA account ending in 1102 at Valley National Bank … located at 2054 86th Street, Brooklyn, NY 11214" (the "IOLA"); provided that "the Escrow Amount will be returned to the Escrowee, or its designee, upon Escrowee's demand, which return shall be made in Escrowee's sole and absolute discretion"; provided that upon such demand, Graubard "shall return the Escrow Amount to Escrowee by wire transfer as directed by Escrowee within two business days of such email request"; and provided "that Escrow Agent has no right to, and shall not release, distribute, pledge, deposit or hypothecate any part of the Escrow Deposit for any reason or in any way whatsoever without the express prior written permission and consent of the Escrowee." NYSCEF Doc. Nos. 15, 16 (capitalization altered).

3. On December 6, 2024—within one day of when Defendants wired their Deposits to him, Graubard transferred all of Defendants' $2 million Deposits out of his IOLA at the direction of Sam "Shimmy" Sprei ("Sprei"). *See* 3/23/25 tr. 46:22–47:1; 3/25/26 tr. 76:13-17, 148:18-19; 3/30/26 tr. 240:4-13; 4/14/26 tr. 280:22–281:10.

4. Graubard did not notify Defendants that he was transferring the Deposits out of his IOLA before or after doing so.

5. On January 9 and 10, 2025, Defendants demanded the return of their Deposits.

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 6 of 60 PageID #: 1956

6.     Between January 15 and 23, 2025, Graubard acknowledged receipt of Defendants' demands and conveyed his intent to return the Deposits pursuant to the Escrow Agreements.

7.     On January 27, 2025, Defendants' counsel sent a letter to Graubard again demanding the return of Defendants' Deposits pursuant to the Escrow Agreement.

8.     By letter dated January 28, 2025, Graubard stated that his "client require[d] a general release from each" Defendant before Graubard would return Defendants' Deposits.

9.     On January 29, 2025, Graubard received an email from Frank R. Seddio, Esq. ("Seddio"), copying Sprei and another individual, and stating, "Please be advised that no funds from your account can be released until you receive a release from the investing group as they have been attacking and threatening my client, Mr. Sprei. Mr. Graubard as soon as you receive a release in escrow you may release the funds. In any event if I do not hear from you by 5pm then we will file an order to show cause in Kings County Supreme to have the funds deposited with the Court." Defs.' Ex. 100 (NYSCEF Doc. No. 281); *see also* 3/25/26 tr. 79:1-7.

10.    Graubard understood the "funds" referenced in Seddio's January 29, 2025, email to be the same $2 million at issue in the action underlying these sanctions proceedings. 3/25/26 tr. 81:18-21.

11.    As of January 29, 2025, Graubard did not have the Deposits in his IOLA, and Graubard knew that Sprei was aware of that fact. 3/25/26 tr. 85:8-12.

12.    The Action was commenced on February 19, 2025, by summons with notice filed by Seddio. NYSCEF Doc. No. 1.

13.    The pleading identified Plaintiff as "Olden LLC," named Metaxas and Pertshire as Defendants, and named Graubard as Nominal Defendant. NYSCEF Doc. No. 1.

14.    The notice appended to the summons stated, in its entirety, "This action seeks a judicial declaration and injunctive relief as to escrow funds held by the Nominal Defendants [*sic*], as to which the parties have competing claims." NYSCEF Doc. No. 1.

15.    Also on February 19, 2025, Seddio filed, *ex parte*, a proposed order to show cause, with supporting papers, for a temporary restraining order ("TRO") and preliminary injunction to, among other things, require Graubard to either hold the escrowed funds or deposit them with the clerk of the court. NYSCEF Doc. Nos. 2–6.

16.    The Request for Judicial Intervention that Seddio filed in connection with Plaintiff's *ex parte* application identified the nature of the Action as a commercial contract dispute. NYSCEF Doc. No. 6.

17.    The same day, IAS Part 72 (Hon. Steven Z. Mostofsky) signed the order to show cause and granted the requested TRO pending a hearing on Plaintiff's motion for a preliminary injunction. NYSCEF Doc. No. 7.

2

18.  The hearing on Plaintiff's motion for a preliminary injunction was ultimately scheduled for July 17, 2025. *See* 3/23/26 tr. 55:22–56:1.

19.  Valley National Bank closed Graubard's IOLA in June 2025. 3/23/26 tr. 49:3-12; 3/25/26 tr. 168:14-17.

### A.  <u>First Allegedly Frivolous Act: The July 16, 2025 Letter Filed on Graubard's Behalf</u>

20.  At 6:55 p.m. on July 16, 2025, Sprei contacted Gorkin for the purpose of representing Graubard as counsel in the Action. 5/12/26 tr. 754:3-5, 758:3-8; Defs.' Ex. 187, at AG_001337 (NYSCEF Doc. No. 325).

21.  While Graubard had a close relationship with Sprei and represented Sprei in connection with other matters, Graubard and Sprei did not have an attorney-client relationship in connection with this Action. 3/23/26 tr. 26:16–27:6, 51:11-16; 3/25/26 tr. 148:3-5.

22.  At 7:02 p.m., Gorkin had a six-minute phone call with Sprei concerning the potential representation. 5/12/26 tr. 759:16-25; Defs.' Ex. 187, at AG_001337 (NYSCEF Doc. No. 325).

23.  At 7:11 p.m., Gorkin had an eleven-minute phone call with Sprei and Graubard concerning the potential representation. 3/23/26 tr. 50:21–51:7; 5/12/26 tr. 759:19–760:3; Defs.' Ex. 2 ¶ 4 (NYSCEF Doc. No. 204); Defs.' Ex. 187, at AG_001337 (NYSCEF Doc. No. 325).

24.  From those two phone calls, Gorkin "absolutely" understood that Sprei was authorized to direct Gorkin's work on behalf of Graubard in this Action. 5/12/26 tr. 760:19-22.

25.  Gorkin was "definitely not informed" by Sprei or Graubard on July 16, 2025, that Graubard was not in possession of the disputed Deposits or that Graubard's IOLA had in fact been closed in June 2025. 5/12/26 tr. 760:23–761:11.

26.  Based on his July 16, 2025, phone calls with Sprei and Graubard, Gorkin believed that Graubard still possessed the $2 million in dispute, which Gorkin later learned was untrue. 5/12/26 tr. 761:12-17.

27.  At 7:25 p.m. and 7:26 p.m. on July 16, 2025, Sprei sent Gorkin two successive audio messages directing Gorkin to email Defendants' counsel, copying Seddio, to request a one-week adjournment of the next day's hearing on Plaintiff's motion for a preliminary injunction and to state that Plaintiff's counsel, Seddio, had consented to the request. 5/12/26 tr. 761:18–762:13, 765:13–766:6; Defs.' Ex. 195 (transcribed at NYSCEF Doc. No. 332).

28.  Gorkin thus understood Sprei not only to have authority to direct legal services for Graubard but also "to have the ability to speak on behalf of Plaintiff, because he was a member [of] or in some way associated with Plaintiff." 5/12/26 tr. 766:12-15; *see also* Defs.' Ex. 114 ¶ 37 (NYSCEF Doc. No. 203) (affirmation of Graubard's counsel Randall Tesser, Esq.) (crediting "Defendants' persistent allegations that Gorkin was acting on the instruction of Sprei's former counsel Seddio.").

3

Case 1:25-cv-05844-EK-PCG   Document 162-7   Filed 07/21/26   Page 8 of 60 PageID
#: 1958

29. Graubard also knew that Sprei was "associated with the Plaintiff" in this Action. 3/23/26 tr. 38:24–39:2; Defs.' Ex. 2 ¶ 4 (NYSCEF Doc. No. 204).

30. Over the course of the next half hour, Gorkin drafted and sent Sprei a proposed email to send to Defendants' counsel, subject to Sprei's approval, and indicated that he would request a two-week adjournment, rather than the one week proposed by Sprei. 5/12/26 tr. 768:16–769:23; Defs.' Ex. 187, at AG_001337–38 (NYSCEF Doc. No. 325).

31. Sprei responded, "It doesn't make a difference with the Court is not available after tomorrow until September between me and you so, it's fine." 5/12/26 tr. 771:5–772:15; Defs.' Ex. 196 (transcribed at NYSCEF Doc. No. 333).

32. Justice Mostofsky's Part 9 Rules provide that "adjournment requests are only granted … on consent of all parties by NYSCEF filing of a stipulation prior to the return date."[1]

33. After Gorkin advised Sprei that any adjournment request by simple letter would not have any effect because Justice Mostofsky's "rules are pretty explicit about not sending or emailing the Court for adjournments," Sprei engaged in communications with Gorkin which gave Gorkin the understanding that Sprei knew Justice Mostofsky's Principal Law Clerk Charles Siegel and would "try to gain an advantage, or use his relationship with Siegel to get the letter through and get the adjournment granted." 5/12/26 tr. 773:16–776:21; Defs.' Ex. 197 (transcribed at NYSCEF Doc. No. 334).

34. At 11:09 p.m. on July 16, 2025, Sprei emailed Graubard a draft of Gorkin's July 16, 2025, letter to the Court requesting an unspecified adjournment of the next day's hearing on Plaintiff's motion for a preliminary injunction. NYSCEF Doc. No. 205 (Exhibit A to Graubard's 2/25/26 affirmation opposing sanctions).

35. Graubard never directed Gorkin not to file the letter. 3/23/26 tr. 53:1-5.

36. Gorkin filed the letter at 11:14 p.m. on July 16, 2025. 5/12/26 tr. 776:22-25; Defs.' Ex. 3 (NYSCEF Doc. No. 42).

37. The letter stated, among other things, that Graubard was "willing to release the funds at issue, provided the parties execute a mutual release and consent order." Defs.' Ex. 3 (NYSCEF Doc. No. 42).

38. Gorkin included that statement in the letter based on Gorkin's understanding from his earlier phone calls with Sprei and/or Graubard that Graubard possessed the funds at issue. 5/12/26 tr. 777:14-24.

---

[1] https://www.nycourts.gov/courts/kings-county-supreme-court-civil-term/hon-steven-z-mostofsky (emphasis added).

4

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 9 of 60 PageID #: 1959

39. The statement in the letter was inaccurate because Graubard had transferred the Deposits out of his account on December 6, 2024, and did not possess the Deposits as of July 16, 2025. 3/23/26 tr. 45:3-5, 46:17–47:5.

40. Graubard's IOLA had been closed as of June 2025. 3/25/26 tr. 168:14-17.

41. After the letter was filed, Graubard never directed Gorkin to withdraw the letter or correct its inaccurate statement about Graubard's willingness to release the funds at issue. 3/23/26 tr. 53:6-12, 53:20-23; 5/12/26 tr. 777:14–778:4.

**B.    Second Allegedly Frivolous Act: Graubard's Failure to Comply with the July 17, 2025 Deposit Order**

42. IAS Part 9 (Mostofsky, J.) held a hearing on Plaintiff's motion for a preliminary injunction on July 17, 2025. *See* Defs.' Ex. 11 (NYSCEF Doc. No. 44).

43. Following the hearing, Justice Mostofsky issued an order granting Plaintiff's motion for a preliminary injunction to the extent of directing Graubard to deposit the $2 million with the clerk of the court by July 21, 2025, at 5:00 p.m., and directing the parties to notify Graubard of the order by July 18, 2025, at 12:00 p.m. Defs.' Ex. 11 (NYSCEF Doc. No. 44).

44. Plaintiffs provided such notice to Graubard via email on July 17, 2025.

45. Graubard has never contested service of the July 17, 2025 deposit order. 3/25/26 tr. 93:17-21.

46. Graubard never complied with the Court's directive in the July 17, 2025 deposit order that he deposit $2 million with the clerk of the court. 3/25/26 tr. 94:5–95:13.

47. By decisions dated November 7 and December 2, 2025, IAS Part 99 (Montelione, J.) found that Graubard had "willfully disobeyed" the July 17, 2025 deposit order, and that his conduct "was calculated to and actually did defeat, impair, impede and prejudice the rights and remedies of the defendants." Defs.' Exs. 33, 35 (NYSCEF Doc. Nos. 91, 102).

**C.    The Third Allegedly Frivolous Act: The Denominated Stipulation Dated July 21, 2025**

48. On July 18, 2025, Sprei informed Graubard's then-attorney Gorkin that Graubard would not be able to comply with the court-ordered July 21 deadline to deposit the $2 million with the clerk of the court, purportedly because Graubard would be out of town, and requested Gorkin's advice as to whether to make a motion to extend the deadline until July 24. 5/12/26 tr. 780:14-25; Defs.' Ex. 198 (transcribed at NYSCEF Doc. No. 335).

49. Gorkin understood that Sprei, on behalf of Graubard, intended to delay Graubard's obligation to comply with the Court's directive. 5/12/26 tr. 784:1-7.

5

50.    At 11:03 a.m. on July 21, 2025, Graubard emailed Sprei, "I need to call the attorney Shaya Gorkin so I will know exactly what is happening today. So let us discuss." 3/25/26 tr. 111:19-24 (referring to Defs.' Ex. 137 (NYSCEF Doc. No. 249)).

51.    One minute later, Sprei responded, "As of now I don't have the money, that's all I can say. Your e-mails and calls don't let me work." 3/25/26 tr. 112:11-14.

52.    Those emails and referenced phone calls concerned the $2 million at issue, because Graubard knew he was obligated by the Court's order to deposit the funds with the clerk of the court by 5:00 p.m. that day, but Graubard did not have the money in his possession, so he was asking Sprei to obtain it. 3/25/26 tr. 112:15–113:5.

53.    At 1:59 p.m. on July 21, 2025, Gorkin emailed Plaintiff's counsel, Seddio, copying Defendants' counsel and requesting Seddio's consent to extend the court-ordered deposit deadline until July 24, 2025. 3/25/26 tr. 115:10-18; Defs.' Ex. 133 (NYSCEF Doc. No. 206).

54.    At 2:05 p.m., Seddio responded, "Good afternoon. Please draft a stipulation for review." 3/25/26 tr. 115:3-5; Defs.' Ex. 133 (NYSCEF Doc. No. 206).

55.    At 2:08 p.m., Seddio forwarded the email exchange to Sprei. 3/25/26 tr. 114:23–115:2; Defs.' Ex. 133 (NYSCEF Doc. No. 206).

56.    At 2:09 p.m., Sprei forwarded the messages to Graubard. 3/25/26 tr. 114:13-22; Defs.' Ex. 133 (NYSCEF Doc. No. 206).

57.    Graubard received the messages forwarded to him by Sprei, and at 2:27 p.m. Graubard responded to Sprei stating "Thanks--on our way to NJ for the family get together with grandchildren before they go back [to Israel]." 3/25/26 tr. 124:8-24; Defs.' Ex. 138 (NYSCEF Doc. No. 250).

58.    Graubard gave no indication that Graubard did not want Gorkin to file the stipulation ("Denominated Stipulation") on his behalf. *See id.*

59.    At 2:28 p.m., Gorkin relayed to Sprei, via WhatsApp, the text of an email from Defendants' counsel to Gorkin and Seddio stating that the denominated stipulation, which purported to extend that day's Court ordered deadline, was ineffective because "only the Court [could] grant an extension of its own order" and that, in any event, Defendants opposed the proposed extension and so the denominated stipulation was further ineffective without agreement of all parties. 5/12/26 tr. 787:15–788:12.

60.    At 2:29 p.m., Sprei sent Gorkin two successive audio messages stating, "It's fine, the Court will accept the stipulation. I did what I needed to, prepare, prepare it, do an E signature with Frank [Seddio] and see if sends it to him for his approval." 5/12/26 tr. 788:13–789:11; Defs.' Ex. 199 (transcribed at NYSCEF Doc. No. 336).

61.    Gorkin testified that he understood Sprei to be conveying that he had some "inside information" that Justice Mostofsky would "accept the stipulation" and deem the date indicated

6

in the denominated stipulation as Graubard's new deadline to deposit the funds with the clerk of the court. 5/12/26 tr. 789:20–790:19.

62. At 3:01 p.m., Gorkin filed, on behalf of Graubard, the denominated stipulation signed by himself and Seddio—but opposed by Defendants' counsel and not so-ordered by the Court—purporting to extend Graubard's deadline under the July 17, 2025 deposit order from July 21 to July 24. Defs.' Ex. 14 (NYSCEF Doc. No. 47); 3/25/26 tr. 96:14–98:19; 5/12/26 tr. 791:19-22.

63. By proposing that delay of Graubard's obligation to deposit the $2 million with the Court, Graubard's counsel was in effect representing to the Court that Graubard (a) still possessed the $2 million at issue and (b) would deposit the $2 million by the July 24 deadline proposed in the denominated stipulation. 5/12/26 tr. 788:23–792:8.

64. Both representations were incorrect because Graubard did not have the Deposits on July 21, 2025 or July 24, 2025. *See* 3/25/26 tr. 113:1-5; 5/12/26 tr. 793:14-22.

65. Graubard did not direct Gorkin to withdraw the Denominated Stipulation. 3/25/26 tr. 108:20-22; 5/12/26 tr. 792:9-11.

66. On July 24, 2025, Graubard expressly informed Gorkin that Graubard did not possess the $2 million at issue because Graubard had previously released the funds out of his IOLA, and that Graubard was trying to obtain the funds from another source. 5/12/26 tr. 793:14–794:2.

67. Also on July 24, 2025, Graubard sent Gorkin a draft letter to the Court concerning the $2 million at issue and containing the following passage: "I released the funds that are at issue. Accordingly, I am not presently in possession of the funds." Defs.' Ex. 188 (NYSCEF Doc. No. 326); 5/12/26 tr. 794:17–796:5

68. Ultimately, Graubard decided not to notify the Court that he was not in possession of the Deposits and thus could not abide by the Court's July 17, 2024 deposit Order. Graubard never directed Gorkin to file any version of the draft letter or to inform the Court that Graubard did not have the $2 million at issue in his possession. 5/12/25 tr. 796:11-16.

**D.** **Fourth Allegedly Frivolous Act: Non-Appearance at the November 5, 2025, Contempt Hearing**

69. On July 29, 2025, Defendants moved, by notice of motion (sequence no. 2), to hold Graubard, Seddio, and Gorkin in contempt of court for violating and assisting in Graubard's violation of the July 17, 2025 deposit order. NYSCEF Doc. Nos. 54–60.

70. The return date on the face of Defendants' notice of motion was August 7, 2025. NYSCEF Doc. No. 54

71. On or about July 30, 2025, the return date for Defendants' motion was scheduled by the Court for September 4, 2025.

7

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 12 of 60 PageID #: 1962

72. On July 31, 2025, at 1:20 p.m., Goldberg filed a substitution of counsel notifying the Court that Goldberg Law Group PLLC was being substituted in place of Ainsworth Gorkin PLLC as counsel of record for Graubard in the Action as of July 31, 2025. NYSCEF Doc. No. 66; *see also* Defs. Ex. 25 (NYSCEF Doc. No. 67 (7/31/25 letter from Goldberg)).

73. At the time Goldberg appeared in the Action on July 31, 2025, he knew Graubard "was not able to pay out $2 million, that should have been in his escrow account." 4/28/26 tr. 529:21–530:2.

74. On August 1, 2025, Justice Mostofsky issued an order recusing himself from the Action due to his "personal relationship" with Goldberg. Defs.' Ex. 28 (NYSCEF Doc. No. 70).

75. Following Justice Mostofsky's recusal, the Action was reassigned to IAS Part 99 (Montelione, J.), and the return date for Defendants' contempt motion (sequence no. 2) was adjourned to November 5, 2025. *See* NYSCEF Doc. No. 70 (notes).

76. On October 29, 2025, Seddio emailed Justice Montelione's chambers and counsel for all parties requesting that the Court either adjourn the November 5, 2025, return date or take Defendants' contempt motion on submission and permit Seddio to file answering papers by November 15, 2025.

77. On October 31, 2025, Justice Montelione issued an interim order (the "October 31 Order") conditionally granting Seddio's request only if one of three conditions was met by Monday, November 3, 2025, at 5:00 p.m.: (1) Graubard filed proof that he had deposited $2 million with the clerk of the court; (2) Graubard filed properly redacted bank records concerning the Deposits; or (3) Plaintiff filed an undertaking of $120,000 with the clerk of the court. Defs.' Ex. 30 (NYSCEF Doc. No. 81).

78. None of those conditions were met, so the hearing on Defendants' contempt motion proceeded as scheduled on November 5, 2025.

79. The October 31 Order further directed Graubard "and his counsel" to "appear on the return date … and bring with him any and all original and unredacted bank records reflecting that the $2,000,000.00 at issue herein was deposited into his attorney escrow account, and include but limited [*sic*] to, all checks, bank statements, and deposit receipts, detailing any and all transfers of funds regarding the $2,000,000.00 to date." Defs.' Ex. 30 (NYSCEF Doc. No. 81).

80. At 12:05 a.m. on the morning of November 5, 2025, Graubard sent Sprei an email stating, "Shimmie- earlier tonight, I came up with an idea for tomorrow morning. I will go to Brooklyn tomorrow morning and go to Frank Seddio's office. We will wait to hear from the attorney he is sending with the bond at 10:15 (calendar is 9:30 and second call is at 10:30.) If the matter gets adjourned, fine, and if not, and the judge directs appearances, I will be downtown. Of course I will speak to Israel Goldberg early tomorrow to see what he thinks. If we get the adjournment, we could discuss how to approach the judge about a in-chambers conference on how to resolve the matter. You and I could talk in the morning." 3/25/26 tr. 141:12-142:3.

8

81. Graubard was aware of the November 5 hearing. 3/25/26 tr. 143:23-24.

82. Neither Graubard nor Goldberg appeared at the November 5 hearing on Defendants' motion for contempt. 3/25/26 tr. 139:17–140:5.

83. Neither Graubard nor Goldberg brought to the November 5, 2025 hearing the bank records required under the October 31 Order. *See* 3/25/26 tr. 140:6-9.

### E. Fifth Allegedly Frivolous Act: Graubard's November 5, 2025, Letter

84. During the November 5 hearing, Justice Montelione orally granted Defendants' motion for contempt, as against Graubard, on Graubard's default. 3/25/26 tr. 144:7-9.

85. Despite being represented by counsel at the time, at 11:36 p.m. on November 5, 2025, Graubard filed, using his own NYSCEF credentials, a letter directed to Justice Montelione "asking the Court to hold a confidential Chambers Conference with the parties in order to comply with Court directives and to reach an amicable global resolution of the underlying matter." Defs.' Ex. 31 (NYSCEF Doc. No. 82).

86. At the time Graubard filed his letter, the Court's directives to Graubard included depositing $2 million with the Clerk of the Court pursuant to the July 17, 2025 deposit order and submitting related bank records pursuant to the October 31 Order. 3/25/26 tr. 153:16-23.

87. In his letter, Graubard did not disclose that he could not have complied with the Court's July 17, 2026 order to deposit the $2 million with the Clerk of the Court because he did not have the Deposits in his possession. 3/25/26 tr. 154:15–155:1.

### F. Sixth Allegedly Frivolous Act: Evasive Statements at the November 12, 2025, Hearing

88. On November 6, 2025, Plaintiff filed a notice of discontinuance. NYSCEF Doc. No. 83.

89. Alongside the notice of discontinuance, Plaintiff filed a letter asserting that the discontinuance "divests this Court of jurisdiction over the matter" and "terminates the proceeding in its entirety." NYSCEF Doc. No. 84.

90. On November 7, 2025, the Court issued its "Final Order Punishing David Graubart, Escrow Agent/Nominal Defendant" (the "November 7 Contempt Order") memorializing the Court's November 5, 2025 oral ruling and directing Graubard purge his contempt by paying a fine, motion costs, Defendants' counsel fees, and depositing $2 million with the clerk of the court. Defs.' Ex. 33 (NYSCEF Doc. No. 91).

91. However, because the court learned of the discontinuance after its typed and signed November 7 Contempt Order, the Court also issued the following hand-written provision on page 4 of 4 of the Final Order: "The foregoing Final Order is stayed pending a further order from the Court. All counsel for the respective parties must show cause at the call of the calendar on 11/12/2025 at 9:30am, Part 99, whether the forgoing final order should or

9

Case 1:25-cv-05844-EK-PCG   Document 162-7   Filed 07/21/26   Page 14 of 60 PageID #: 1964

should not be vacated, modified, or enforced, based on the notice of discontinuance filed on 11/6/2025." Defs.' Ex. 33 (NYSCEF Doc. No. 91).

92.   The show-cause hearing proceeded as scheduled on November 12, 2025.

93.   Goldberg appeared on Graubard's behalf at the hearing.

94.   The Court directly asked Goldberg whether Graubard was in possession of the Deposits: "Let me ask you. Are the escrow funds still in the escrow account?" Defs.' Ex. 34 (NYSCEF Doc. No. 96), at 9:18-19.

95.   When Goldberg appeared in the Action on July 31, 2025, he knew Graubard "was not able to pay out $2 million, that should have been in his escrow account." 4/28/26 tr. 529:21–530:2.

96.   On November 12, 2025, Goldberg responded to the Court's inquiry as follows: "I have not checked the escrow account. I can't say. I am not going to represent." Ex. 34 (NYSCEF Doc. No. 96), at 9:20-21.

## G.     The Seriatim Applications for Emergency Injunctive Relief

97.   On December 3, 2025, the Court filed its Superceding Final Order Punishing David Graubart, Escrow Agent/Nominal Defendant (the "Superceding Contempt Order"). Defs.' Ex. 35 (NYSCEF Doc. No. 102).

98.   In the Superceding Contempt Order, the Court determined that Plaintiff's November 6, 2025, notice of discontinuance did "not render the motion for contempt academic" Defs.' Ex. 35 (NYSCEF Doc. No. 102) (*citing Destino v. Q Mgt. Properties*, LLC, 237 AD3d 1162, 1163 (2d Dept. 2025); *Wells Fargo Bank, N.A. v. Bagley*, 104 A.D.3d 938, 938–39, 960 (2d Dept. 2013)).

99.   The Superceding Contempt Order ordered as follows: that (i) the November 7, 2025 contempt order be vacated; (ii) that Graubard is guilty of contempt of court in having willfully disobeyed the provisions and requirements of the Court's Order dated July 17, 2025, namely, the direction therein that Graubard deposit the Deposits with the Clerk of the Court by July 21, 2025, 5:00pm; (iii) that Graubard's misconduct and the offense committed by him as aforesaid was calculated to and actually did defeat, impair, impede and prejudice the rights and remedies of the defendants; (iv) Graubard must pay a fine for the misconduct and contempt of court; (v) Graubard must reimburse Defendants' motion costs; (vi) upon failure of Graubard to purge his contempt, an ex parte application, upon the affirmation of defendants' counsel, may be made for a warrant directing the Sheriff of any County of the State of New York to seize and arrest Graubard and bring him before the Court to show cause why he should not be committed; and (vii) Graubard must file on NYSCEF properly redacted copies of any and all bank records pertaining to all deposits and disbursements and balances within his escrow account, involving the subject Deposits within one business day or an *ex parte* application may be made for his upon the affirmation of defendants' counsel, may be made for a warrant directing the Sheriff of any County of the State of New

10

York to seize and arrest Graubard and bring him before the Court to show cause why he should not be committed.

### 1.     Seventh Allegedly Frivolous Act: The December 5 TRO Application

100.     On December 5, 2025, Goldberg moved by order to show cause to vacate and stay enforcement of the portion of the Superceding Contempt Order ordering Graubard to file bank records, as well as for a TRO (the "First TRO Application") against enforcement of the Superceding Contempt Order pending a decision on the motion. NYSCEF Doc. Nos. 105–109.

101.     The purpose of the First TRO Application was to delay enforcement of the Superceding Contempt Order. 3/30/26 tr. 197:21-23.

102.     Goldberg's supporting affirmation for the First TRO Application (NYSCEF Doc. No. 106) contained at least one set of inaccurate statements.

103.     Goldberg affirmed that he had "sought [an] adjournment [of the November 5 hearing] via email due to a severe medical condition that made it impossible for him to leave his house and perform work functions." Defs.' Ex. 37 ¶ 11 (NYSCEF Doc. No. 106).

104.     This statement was inaccurate because *Plaintiff's* counsel, not Goldberg, requested the adjournment, with Goldberg having "not consented to or opposed the application." Defs.' Ex. 30 (NYSCEF Doc. No. 81), at 1.

105.     Goldberg affirmed that, during the November 12 hearing, the Court "never mentioned any non-monetary sanctions." Defs.' Ex. 37 ¶ 14 (NYSCEF Doc. No. 106).

106.     Defendants allege that this statement was inaccurate because the Court stated to Goldberg during the November 12 hearing that it would order Graubard's submission of "documentary evidence" of the Account Records and further stated, "That's also a sanction, if you want to call it a sanction." Goldberg expressly confirmed that he "underst[ood]" and would "take [the Court's] directives back to the client and talk to them and tell them what the ramifications are." Defs.' Ex. 34 (NYSCEF Doc. No. 96), at 9:22-10:17.

107.     On December 6 and 7, 2025, Defendants notified Goldberg of these purportedly inaccurate statements in his affirmation, and Goldberg agreed to correct at least the statements referenced in ¶ 105, *supra*. *See* NYSCEF Doc. No. 110 ¶¶ 26, 29.

108.     Defendants opposed the First TRO Application on December 7, 2025.

109.     On December 7, 2025, Goldberg filed a supplemental affirmation omitting the two statements described above, but Goldberg did not withdraw his prior affirmation. *See* NYSCEF Doc. No. 111 ¶¶ 11, 14; 4/29/26 tr. 608:14-20.

110.     On December 8, 2025, Justice Montelione granted in part Graubard's First TRO Application to the extent of enjoining enforcement of the Superceding Contempt Order until December 12, 2025, "to afford the nominal defendant David Graubart time to seek a stay in

11

the Appellate Division inasmuch as the court's underlying order of contempt, based on the failure of the nominal defendant to deposit $2M with the clerk of the court, and the subsequent discontinuance of the action which makes such deposit impossible, provides a pure question of law as to whether the trial court may direct the nominal defendant, an attorney, to provide evidence that he is in fact meeting his fiduciary responsibilities." NYSCEF Doc. No. 112 (the "December 8 Order"), at 2.

### 2.    Eighth Allegedly Frivolous Act: The December 11 TRO Application

111. On December 11, 2025, Graubard, through a separate attorney named Scott Horn, moved the Appellate Division, Second Department, by order to show cause for leave to appeal the Superceding Contempt Order and December 8 Order and for an interim stay of enforcement of both orders pending the Appellate Division's decision (the request for an interim stay constituting the "Second TRO Application"). *See* Defs' Ex. 45 (NYSCEF Doc. No. 119); 3/30/26 tr. 198:2-6.

112. The goal of the Second TRO Application was to delay enforcement of the Superceding Contempt Order against Graubard. 3/30/26 tr. 198:7-11.

### 3.    Ninth Allegedly Frivolous Act: The December 12 TRO Application

113. That same day, following oral argument, the Second Department denied Graubard's Second TRO Application and set a return date of December 19, 2025 for Graubard's motion, which, pursuant to the Appellate Division's rules, would be considered on the papers alone and without oral argument. *See* Defs' Ex. 45 (NYSCEF Doc. No. 119); 4/29/26 tr. 611:14-17.

114. On the morning of December 12, 2025 at 10:49 a.m., Chang Hahn emailed Sprei, Goldberg, and Gorkin stating "Morning, all. Let me know your thoughts. I couldn't find any directly relevant cases and the cases in general are not favorable, but this motion includes a meritorious argument" and attaching the draft affirmation of the Third TRO Application (see *infra* ¶ 120). Defs.'Ex. 86 (NYSCEF Doc. No. 285); 3/30/26 tr. 201:17–202:21.

115. Chang Hahn is an associate at the firm Ainsworth Gorkin PLLC, which Graubard had discharged as his counsel of record in the Action on July 31, 2025, *see* 3/30/26 tr. 200:7-13; Defs.' Ex. 25 (NYSCEF Doc. No. 67), and was engaged by Sprei to draft papers on Graubard's behalf, *id.* 204:8-16.

116. Graubard never directed Sprei to stop discussing his legal matters on his behalf with attorneys who were not Goldberg. 3/30/26 tr. 208:18-21.

117. Graubard never directed Hahn or anyone at Ainsworth Gorkin PLLC to stop drafting filings on his behalf. 3/30/26 tr. 208:22-25.

118. At 11:25 a.m., Hahn followed up stating, "Added in TRO language." Defs.'Ex. 86 (NYSCEF Doc. No. 285); 3/30/26 tr. 200:22-24.

12

119. At 11:26 a.m., Sprei forwarded the messages to Graubard. Defs.'Ex. 86 (NYSCEF Doc. No. 285); 3/30/26 tr. 200:3-6.

120. At 11:40 a.m. on December 12, 2025, Graubard again moved by order to show cause to stay enforcement of the Superceding Contempt Order and for a TRO (the "Third TRO Application") granting the same relief pending a decision on the motion. NYSCEF Doc. Nos. 121–124 (corrected versions); 4/29/26 tr. 613:7-15, 634:19–635:14.

121. The purpose of the Third TRO Application was to delay enforcement of the Superceding Contempt Order against Graubard. 3/30/26 tr. 215:25–216:3.

122. The Third TRO Application consisted of the same affirmation and supporting documents drafted by Hahn and sent to Sprei, Gorkin, and Goldberg. 3/30/26 tr. 202:19-21; 4/29/26 tr. 632:4-14.

123. Goldberg did not make any substantive edits to Hahn's drafts. 4/29/26 tr. 636:8-12.

124. Graubard never directed Goldberg to tell Sprei or anyone at Ainsworth Gorkin PLLC to stop drafting filings on his behalf. 3/30/26 tr. 209:6-18.

125. Goldberg's supporting affirmation stated that the Appellate Division had "scheduled a hearing for December 19, 2025" on the motion underlying Second TRO Application. NYSCEF Doc. No. 123 ¶ 22.

126. That statement in Goldberg's affirmation was inaccurate because the Appellate Division did not schedule a hearing; rather, the motion underlying the Second TRO Application was submitted on the papers alone. 4/29/26 tr. 616:4-16.

127. Goldberg's supporting affirmation also did not disclose that the Appellate Division had denied the Second TRO Application the day before. 4/29/26 tr. 615:6-14.

128. Goldberg's affirmation of exigent circumstances supporting the Third TRO Application stated that "no[] prior application has been made to this Court based on the claims in this proceeding" and that the "[a]pplication for the relief requested on the circumstances presented ha[d] not been previously made to the Court." NYSCEF Doc. No. 122 ¶¶ 2, 6.

129. The First and Second TRO Applications sought identical relief: a stay of the Superceding Contempt Order. 4/29/26 tr. 614:9.

130. Alongside the Third TRO Application, Goldberg filed a letter addressed to Justice Montelione. NYSCEF Doc. No. 124.

131. The letter was drafted by Sprei and sent to Goldberg at 7:00 p.m. the day before 4/29/26 tr. 637:15-20, 640:6-16.

132. Defendants opposed the Third TRO Application the same day it was filed, December 12, 2025. NYSCEF Doc. No. 125.

13

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 18 of 60 PageID #: 1968

133. The Court denied the Third TRO Application on the evening of December 12, 2025, and set a return date March 4, 2026, for the underlying motion. NYSCEF Doc. No. 126.[2]

### 4. Tenth Allegedly Frivolous Act: The December 15 TRO Application

134. Also on December 12, 2025, the December 8 Order expired. *See* NYSCEF Doc. No. 112.

135. On December 14, 2025, Defendants filed an *ex parte* application for Graubard's arrest and commitment. NYSCEF Doc. No. 129.

136. Defendants renewed their arrest motion on December 17, 2025. NYSCEF Doc. Nos. 144–152.

137. On December 15, 2025, Graubard paid the monetary sanctions imposed by the Superceding Contempt Order but did not file the redacted Account Records in accordance with the Superceding Contempt Order. NYSCEF Doc. Nos. 136, 137.

138. Instead, Goldberg filed Graubard's fourth motion by order to show cause for relief, including a TRO (the "Fourth TRO Application"), from the Superceding Contempt Order. NYSCEF Doc. Nos. 131–134.

139. Redlines of the Third and Fourth TRO Application papers make clear that the filings were substantially identical. NYSCEF Doc. Nos. 139–141.

140. Graubard concedes that the Fourth TRO Application was "likely frivolous" because it sought "identical relief to the third TRO application and contain[ed] the incorrect statement that no prior motion for the same relief had been requested." Defs.' Ex. 114 ¶ 85 (NYSCEF Doc. No. 203) (affirmation of Graubard's counsel Randall Tesser, Esq.).

141. Graubard never directed Goldberg to withdraw the Fourth TRO Application. 3/30/26 tr. 220:9-12.

142. Defendants opposed the Fourth TRO Application on December 15, 2025. NYSCEF Doc. Nos. 138-141.

143. The primary purpose of the Fourth TRO Application was to delay enforcement of the Superceding Contempt Order. 3/30/26 tr. 220:13-15.

144. Goldberg's affirmation in support of the Fourth TRO Application again stated, "No prior application for the relief sought herein has been made in this or any other court of competent jurisdiction." NYSCEF Doc. No. 133 ¶ 32.

---

[2] The Court's December 12, 2025 order was received by NYSCEF at 5:06 p.m. on that day, but it was not officially filed by the Clerk until the morning of December 15, 2025. NYSCEF Doc. No. 126 (confirmation notice).

14

145. That statement in Goldberg's affirmation was inaccurate because the First, Second, and Third TRO Applications sought identical relief. 4/29/26 tr. 644:10-15.

146. Goldberg's affirmation also stated that Goldberg provided notice to counsel of the Fourth TRO Application. NYSCEF Doc. No. 133 ¶ 33.

147. Any such notice was ineffective as Goldberg did not provide Defendants with copies of the Fourth TRO Application. 4/29/26 tr. 660:9-13.

148. On December 23, 2025 at 1:51 p.m., Justice Rivera denied and struck out the TRO that was sought in the Fourth TRO Application and scheduled a hearing for January 6, 2026. NYSCEF Doc. No. 153.

149. On January 5, 2025 at 1:17 p.m. Goldberg requested, via email and letter, an adjournment of the January 6 hearing due to a conflicting medical appointment for a health issue that arose "[o]ver the New Year." NYSCEF Doc. No. 158.

150. The Court denied the request via email and directed Goldberg to appear in person at the January 6, 2026 hearing on his motion for an order to show cause to make an oral request to adjourn the hearing. NYSCEF Doc. No. 254.

### 5.  Eleventh Allegedly Frivolous Act: The January 12 TRO Application

151. The January 6, 2026 hearing proceeded as scheduled.

152. Neither Goldberg nor Graubard appeared at the January 6, 2026 hearing.

153. At the January 6, 2026 hearing, the Court orally denied Graubard's Fourth TRO Application on Graubard's default. NYSCEF Doc. No. 159.

154. Also at the January 6, 2026 hearing, the Court granted Defendants' *ex parte* application for an arrest warrant and show-cause hearing regarding Graubard's potential commitment for failing to purge his contempt. Defs' Ex. 63 (NYSCEF Doc. No. 161) (the "Arrest Order").

155. Defendants promptly served copies of the order on all counsel and on the Queens Office of the New York City Sherrif. NYSCEF Doc. No. 163.

156. On January 12, 2026, Graubard again moved by order to show cause to stay, vacate, and re-argue the Arrest Order and denial of the Fourth TRO Application, as well as for a TRO (the "Fifth TRO Application") enjoining enforcement of the Superceding Contempt Order. NYSCEF Doc. No. 173–177.

157. The Court denied the Fifth TRO Application the next morning, January 13, 2026, and set a return date of January 14, 2026, for the underlying motion. NYSCEF Doc. No. 178.

15

### 6. Twelfth Allegedly Frivolous Act: The January 13 TRO Application

158. On January 13, 2026, Goldberg again made an emergency application to the Appellate Division (the "Sixth TRO Application") to override the Supreme Court's denial of the Fifth TRO Application by granting it directly. *See* NYSCEF Doc. No. 197.

159. The Appellate Division denied the application the next day, January 14, 2026. NYSCEF Doc. No. 197.

### H. Thirteenth Allegedly Frivolous Act: Graubard's Failure to Timely File Redacted Account Records

160. Graubard did not file the Redacted Account Records by the December 12, 2025 deadline imposed by the Superceding Final Order. 4/27/26 tr. 427: 16-18.

### I. Fourteenth Allegedly Frivolous Act: Graubard's Non-Compliant Filing of Account Records on January 14, 2026

161. On January 14, 2026, at 8:52 a.m., Graubard made two pairs of identical filings using his own NYSCEF credentials. *See* NYSCEF Doc. Nos. 182–185; 4/14/26 tr. 360:1-10. At the time, Graubard was represented by counsel.

162. The first pair of filings consisted of four heavily redacted pages from Graubard's December 2024 IOLA statement. NYSCEF Doc. Nos. 182–183.

163. Graubard's redactions covered the beginning balance, ending balance, total deposits, total withdrawals, and total credits for the month. Defs.' Ex. 74 (NYSCEF Doc. No. 196), at 47:6–51:2.

164. The second pair of filings was an affirmation from Graubard in opposition to Defendants' Order to Show Cause for Graubard's Arrest and Commitment which included, *inter alia*, the statement from Graubard, "I affirmatively state that I intend to appear in person and that there is no need for any type of enforcement with respect to that court appearance." NYSCEF Doc. Nos. 184–185.

165. The January 14, 2026 hearing proceeded as scheduled.

166. During the hearing, the Court determined that Graubard's filings of Account Records "unequivocally, indisputably [did] not comply with the Court's [Superceding Contempt Order], and anyone who could read would know that." Defs.' Ex. 74 (NYSCEF Doc. No. 196), at 15:14-16; *see also id.* at 69:8-10 ("THE COURT: … The redactions were not proper. They are not in compliance with Judge Montelione's order.").

167. The Court further stated that it was "baffled," "confound[ed]," and could not "even begin to imagine why an attorney, an officer of the court, would risk everything, his license, his livery, absolutely everything to willfully disobey a Court order." Defs.' Ex. 74 (NYSCEF Doc. No. 196), at 55:6-10.

16

168. The Court noted that it was not a "heavy lift to find that this satisfies the definition of frivolous conduct" and that Graubard's noncompliant filings were "at least frivolous." Defs.' Ex. 74 (NYSCEF Doc. No. 196), at 55:22-24, 84:4-9.

169. During the January 14 hearing, Goldberg represented to the Court that he had "not seen" the Account records and "wasn't involved with" Graubard's belated filings on January 14, 2026. Defs.' Ex. 74 (NYSCEF Doc. No. 196), at 14:18-21, 15:18-19.

## DEFENDANTS' PROPOSED FINDINGS OF FACT

### I.    Pre-Hearing Briefing

170. By order dated January 15, 2026, and with the consent of Defendants, Graubard, and Goldberg, the Court converted Defendants' motion sequence no. 8, which originally sought the commitment of Graubard for contempt of court, to a motion for frivolity sanctions pursuant to 22 NYCRR § 130-1.1. Defs.' Ex. 118 (NYSCEF Doc. No. 187); Defs.' Ex. 74 (NYSCEF Doc. No. 196), at 89:9-13; 3/23/26 tr. 14:24–15:1.

171. The Court permitted Defendants to include, as the basis for sanctions, all instances of frivolity, including Graubard's conduct on January 14, 2026, which the Court ruled was noncompliant with the Superceding Contempt Order and therefore frivolous. Defs.' Ex. 118 (NYSCEF Doc. No. 187); Defs' Ex. 74 (NYSCEF Doc. No. 196), at 89:13-17.

172. The Court set deadlines of February 11, 2026, for Defendants' motion papers; February 25, 2026, for answering papers; and March 11, 2026, for reply papers. Defs.' Ex. 118 (NYSCEF Doc. No. 187). The Court's order specifically stated that no adjournments of the briefing schedule or return date would be permitted "except by the procedures set forth in the Court's Part 52 Rules." *Id.*

173. Defendants filed their notice of motion and supporting papers on February 11, 2026. NYSCEF Doc. Nos. 194–199.

174. Graubard filed his answering papers on February 25, 2026. NYSCEF Doc. Nos. 202–208.

175. Among the arguments made in his answering papers, Graubard argued that Defendants' motion sequence no. 8 was converted under "false pretenses," and the sanctions motion should be limited to the sufficiency of the bank records filed by Graubard on January 14, 2026. Defs.' Ex. 114 (NYSCEF Doc. No. 203), at ¶¶ 6–28.

176. With the Court's leave, Graubard subsequently filed superseding answering papers substituting the word "incorrect" for "false" in his characterizations of Defendants' counsel's statements but otherwise leaving that argument in place. NYSCEF Doc. No. 305 ¶¶ 6–28.

177. Goldberg belatedly filed his answering affirmation along with a single exhibit, the federal complaint in *Metaxas et al. v. Graubard et al.*, No. 25-cv-5844 (E.D.N.Y. Oct. 17, 2025), ECF No. 1, on February 26, 2026. NYSCEF Doc. Nos. 209–210. Goldberg did not seek leave of the Court pursuant to the Court's Part 52 Rules for his untimely filing, in violation

17

of the Court's order setting the briefing schedule for the parties' sanctions motion briefing. Defs.' Ex. 118 (NYSCEF Doc. No. 187).

178. Because Goldberg did not offer any basis for his late filing, the Court disregards it.

179. Defendants filed their reply papers on March 11, 2026. NYSCEF Doc. Nos. 247–259.

## II. Witness Testimony at the Sanctions Hearing

### A. Mark David Graubard

180. Graubard testified in these sanctions proceedings on March 23, March 25, March 30, April 14, April 27, and April 28, 2026.

181. Graubard's testimony on direct examination by Defendants' counsel was evasive and contradictory.

182. For example, Graubard claimed not to have personally "received" emails that were "received" by his email account. 3/23/26 tr. 52:16-20.

183. Graubard was similarly evasive about his communications with Sprei about these sanctions proceedings. On two separate hearing dates, when asked whether he had "spoken with anybody about [his] testimony in this matter", Graubard answered unequivocally: "No." 3/30/26 tr. 186:25–187:3; 4/14/26 tr. 249:5-14. When pressed, however, Graubard contradicted his prior testimony, revealing that he had in fact spoken with Sprei about his testimony in these proceedings multiple times. 4/14/26 tr. 252:3-5; 257:1-4, 258:22–259:1.

184. Graubard provided an incredible explanation for his prior inaccurate testimony: that he had construed counsel's question to be asking only whether *he* had affirmatively communicated *to* others, and not whether *they* had communicated *to him*. 4/14/26 tr. 250:25–251:2 ("A. You asked if I communicated with him. I did not. Q. Did he communicate with you, Mr. Graubard? A. Yes, yes.").

185. Graubard's conduct caused the Court to admonish Graubard to "[s]top playing with" the Court and counsel by answering questions evasively and then asking for them to be repeated. 4/14/26 tr. 304:15-16.

186. The Court expressly determined that Graubard's responses to "direct questions" from the Court concerning a $2 million check made out to Graubard from then-Supreme Court Justice Edward H. King were "wishy washy." 3/25/26 tr. 157:2-3.

187. Graubard claimed, incredibly, to have been "told" that King was a judge but not to have known on "which court or where." 3/30/26 tr. 233:25–234:1.

188. And when confronted with a text message he sent to then-Justice King on December 3, 2025, shortly before Justice Montelione issued the Superceding Contempt Order against Graubard, Defs.' Ex. 35 (NYSCEF No. 102), stating that then-Justice King was "playing with fire by not responding to" Graubard, Defs.' Ex. 152 (NYSCEF Doc. No. 288),

18

Graubard testified incredibly that he merely intended to "prompt [King] to call" Graubard, and did not intend to threaten then-Justice King with consequences for failing to do so, 4/14/26 tr. 273:21–275:20.

189. Graubard's testimony about his lack of compunction about having Sprei—whom Graubard knew to be associated with Plaintiff and directing Plaintiff's counsel Seddio—also pay for and direct Graubard's own attorneys was similarly incredible. *See* 3/23/26 tr. 51:20-22; 3/30/26 tr. 207:2-12; 4/28/26 tr. 460:3-6.

190. The Court further finds incredible Graubard's testimony, 4/27/26 tr. 422:12-16, 4/28/26 tr. 486:24–487:6, that he simply wanted the opportunity to provide his IOLA account records ("Account Records") in a non-public fashion as Graubard did not once request such relief from the Court. In addition, Graubard refused to respond to Defendants' August 18, 2025 discovery requests, which sought his IOLA records. *See* NYSCEF Doc. No. 75. Had Graubard legitimately wanted to provide the IOLA records to Defendants in a non-public fashion, and to not further delay the instant Action, he could have simply responded to Defendants' document requests.

191. The Court therefore finds that Graubard was not a credible witness and discounts his self-serving testimony accordingly.

## B.    Israel Goldberg, Esq.

192. Goldberg testified in these sanctions proceedings on April 28, April 29, and May 11, 2026.

193. Goldberg's testimony on direct examination by Defendants' counsel was evasive and contradictory.

194. During Goldberg's testimony, the Court repeatedly warned Goldberg that his evasiveness on the stand could result in sanctions. *See* 4/28/26 tr. 507:6-13; 4/29/26 tr. 605:2–606:2, 607:8-14.

195. The Court specifically found that Goldberg was "doing a certain dance up on the bench" that consisted of "willful" and "dilatory tactics in reading and wasting time and not answering direct questions." 4/29/26 tr. 605:9-15.

196. Goldberg was also impeached multiple times.

197. Goldberg initially testified that he provided an adjournment request letter Goldberg addressed to Sprei "to make sure there were no typos in it." 4/28/26 tr. 509:25-510:3. Then Goldberg changed his testimony to state that he sent Sprei the letter because he needed Sprei to file the letter on the docket because Goldberg was unavailable to do so. *Id.* at 516:8-14. But ultimately it was established that Goldberg did in fact file the letter on the docket himself and only provided the copy to Sprei *after* the filing. *Id.* at 518:17–519:14; 521:9-13 (admitting Defendants' Exhibits 156–158 "because it's being used for impeachment of the witness's testimony read here before us in court").

198. Goldberg's testimony regarding his coordination with Sprei and Graubard to cause Justice Mostofsky's recusal as the presiding judge in this Action was also impeached—an impeachment that went unrebutted. 4/28/26 tr. 541:25-542:15 (Goldberg testifying that he had not had any conversation with Sprei "at any point in 2025 onward . . . about the fact that [Goldberg] ha[d] a relationship with [Justice] Mostofky"); 543:5-9 (admission that Goldberg knew at the time he was engaged, and before he noticed his appearance in this Action, that Justice Mostofsky was the presiding judge); *contra* Defs.' Ex. 187 (NYSCEF Doc. No. 325), at AG_001352 (audio message from Sprei to Gorkin: "I spoke to Izzy [Goldberg]. He says great idea osc [.] He will come in to case after[.] And judge has to recuse after so it's good."); Defs.' Ex. 200 (NYSCEF Doc. No. 337), at 808:9–809:1 (similar); 5/12/26 tr. 805:12–806:22 (testimony from Gorkin confirming same).

199. The Court found incredible Goldberg's testimony that he never responded to a pending motion against his client because Justice Mostofsky had recused himself. 4/28/26 tr. 548:10-22; 549:1-11 ("THE COURT: Because, because, a motion doesn't disappear into the air, because it's just assigned to another judge, and anyone whose admitted in the State of New York knows that.").

200. Goldberg further provided incredible and self-serving testimony about emails sent from his email account, claiming in one instance that he had been "hacked" and in another that he could not remember emails he sent but which looked like his writing. 4/29/26 tr. 649:14-16 ("THE COURT: I am disregarding the hacking, the compromise, the loss of memory, et cetera. When you say it looks like something I wrote.").

201. The Court instructed Goldberg to "cut it out" and stop providing "trick responses." *Id.* at 663:23–664:8.

202. Despite the Court's instructions, Goldberg went on to provide an incredible explanation of the legal term "ex parte". *Id.* at 677:2-21 ("THE COURT: We're going to take a look and see if his face is red; it's not. Okay, that's a statement being made that has no basis in law. In fact, in realty. Ex-parte means the other side need not know, everyone knows that, especially someone who has been licensed for decades. Anyone whose claiming that it means something else, I don't know what's going on, ma[ybe] it was the hacking, who knows.").

203. Goldberg's explanation for his lack of compunction regarding his communications and receipt of draft court filings from a party adverse to his client was similarly incredible. 5/11/26 tr. 693:18–695:5; *see also* 687:21–688:1; 691:3-12; 702:15-23

204. Goldberg's preparation for and approach to his testimony did not align with the seriousness of this Court or these proceedings. 4/29/26 tr. 641:11-20.

205. The Court therefore finds that Goldberg was not a credible witness and discounts his self-serving testimony accordingly.

206. Based on Goldberg's *pro se* status, the Court permitted Goldberg to offer narrative testimony in his defense. 5/11/26 tr. 727:19-21.

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 25 of 60 PageID #: 1975

207. Because Goldberg's narrative testimony was irrelevant, the Court sustained Defendants' standing objection and struck the entirety of Goldberg's testimony. *See* 5/11/26 tr. 727:25–732:2. The Court further provided an extensive explanation of the irrelevance and impropriety of Goldberg's narrative testimony. *Id.*737:6–738:3.

208. Accordingly, the documentary evidence and testimony marshalled by Defendants concerning Goldberg's alleged frivolity went completely unrebutted by Goldberg.

### C.     Yeshaya Gorkin, Esq.

209. Gorkin was called and offered as a witness by Defendants' counsel, and he gave testimony on May 12, 2026.

210. Both Graubard and Goldberg declined to cross-examine Gorkin. 5/12/26 tr. 870:5-8.

211. Accordingly, Gorkin's testimony went completely unrebutted by Graubard and Gorkin.

### III.    Additional Facts Concerning Each of Graubard's and Goldberg's Alleged Acts of Frivolity

### A.     First Allegedly Frivolous Act: The July 16, 2025 Letter Filed on Graubard's Behalf

212. Gorkin, the author of the July 16, 2025 letter filed on Graubard's behalf, conceded that the letter lacked any legal basis, 5/12/26 tr. 773:25–775:10.

213. The purpose of the July 16, 2025 letter was to delay the July 17, 2025 preliminary injunction hearing. 3/23/26 tr. 55:22–56:1.

214. The July 16, 2025 letter asserted material factual statements that are inaccurate, namely that Graubard was willing to return Defendants' Deposits. *See* 3/23/26 tr. 45:3-5, 46:17–47:5; 3/25/26 tr. 168:14-17.

### B.     Second Allegedly Frivolous Act: Graubard's Failure to Comply with the July 17, 2025 Deposit Order

215. Graubard was aware of the July 17, 2025 hearing, but chose not to appear. 3/25/26 tr. 56:21–57:20.

216. Gorkin also did not appear at the hearing.

217. Graubard did not offer any testimony or documentary evidence tending to establish any legal basis for his failure to comply with the Court's July 17, 2025 deposit order to deposit the $2 million at issue with the clerk of the court and this Court has ruled that Graubard "willfully disobeyed" the July 17, 2025 deposit order, and in doing so prejudiced the rights and remedies of the Defendants. Defs.' Exs. 33, 35 (NYSCEF Doc. Nos. 91, 102).

21

INDEX NO. 505819/2025
RECEIVED NYSCEF: 06/26/2026

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 26 of 60 PageID #: 1976

218. Graubard's failure to comply with the Court's July 17, 2025 deposit order was intended primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

219. The Superceding Contempt Order's directive that Graubard "reimburse … the expenses of the defendant's counsel fees in the amount of $2,000.00," Defs.' Ex. 35 (NYSCEF Doc. No. 102) at 4, did not purport to be a comprehensive accounting of Defendants' attorneys' fees resulting from Graubard's contemptuous conduct and was rendered without the aid of evidentiary submissions or a hearing, as the instant motion was. The Court specifically finds that $2,000 comes nowhere near accounting for Defendants' reasonable attorneys' fees. *See* NYSCEF Doc. No. 196, at 75:14-21 (this Court's observation that the amount was "fascinating" and "curious")

## C.    The Third Allegedly Frivolous Act: The Denominated Stipulation Dated July 21, 2025

220. The Denominated Stipulation was completely without merit in law and cannot be supported by a reasonable argument for an extension, modification, or reversal of existing law. 4/29/27 tr. 98:3-5 ("THE COURT: So not all parties. So it is a stipulation that is null and void because it wasn't by all parties, and it is also not so-ordered.")

221. The Denominated Stipulation was intended primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

222. The Denominated Stipulation asserted a material factual statement that was inaccurate, namely that Graubard would deposit the Deposits by 5pm on July 24, 2025.

223. The frivolity of the Denominated Stipulation is further supported by the egregious conduct that Graubard and Goldberg engaged in after Justice Mostofsky discovered that his July 17, 2025 deposit order had been violated, including but not limited to knowingly allowing inaccurate representations be made to the Court and the intentional engineering of Justice Mostofsky's recusal as the presiding judge over this matter.

224. On July 25, 2025, at 11:58 a.m., one day after the Denominated Stipulation's purported deadline, Charles Siegel, Esq., Principal Law Clerk to Justice Mostofsky, emailed counsel for all parties in the Action stating, "Justice Mostofsky has directed me to ascertain whether the $2 million was deposited with the as ordered [*sic*]." Defs.' Ex. 192 (NYSCEF Doc. No. 328).

225. Almost immediately thereafter, Gorkin sent, via WhatsApp, an image of Mr. Siegel's email to Sprei. 5/12/26 tr. 797:7–798:2.

226. Within 30 seconds, Sprei messaged Gorkin, "I will have Frank respond," meaning Sprei would direct Seddio—Plaintiff's counsel—to respond to the email inquiry from Mr. Siegel. 5/12/26 tr. 798:15–799:3.

227. At 12:11 p.m., Gorkin messaged Sprei a draft email, which Sprei had dictated to Gorkin, for Seddio to send to Mr. Siegel. 5/12/26 tr. 799:4-17.

22

228. The 12:11 p.m. draft email began, "dear principal law clerk, given the amount at issue, I intended to personally oversee the deposit to ensure proper compliance. However, I was unable to make it to the courthouse before leaving town and did not feel it appropriate for the Nominal Defendant to deposit the funds in my absence." 5/12/26 tr. 799:8-14.

229. This statement was inaccurate because neither Graubard nor Sprei told Gorkin that Graubard had not complied with the Court's July 17, 2025 deposit order because Seddio wanted to accompany Graubard to the courthouse and oversee the deposit. 5/12/26 tr. 800:20-25.

230. Graubard and Sprei had both informed Gorkin that Graubard was not, as of July 24, 2025, in possession of the Deposits. 5/12/26 tr. 800:8-12.

231. At 1:00 p.m., Gorkin messaged Sprei a revised draft of the email for Seddio to send to Justice Mostofsky's Principal Law Clerk, with the only addition being a statement that Seddio would "coordinate with Nominal Defendant's counsel, Shaya Gorkin, and ensure the deposit is made promptly upon my return next week." Defs.' Ex. 187, at AG_001348 (NYSCEF Doc. No. 325). This additional statement was not accurate because Gorkin never spoke to Seddio regarding depositing the funds. 5/12/26 tr. 801:20-23.

232. At 4:56 p.m., Seddio sent an email to Mr. Siegel containing the exact same factually inaccurate text that Gorkin had messaged to Sprei earlier at 1:00pm. 5/12/26 tr. 802:2–803:5.

233. On July 27, 2025, Gorkin forwarded the correspondence with Mr. Siegel to Graubard, who confirmed receipt. Defs.' Ex. 192 (NYSCEF Doc. No. 328).

234. Graubard never directed Gorkin to correct the inaccurate representation to the Court that the reason Graubard had not abided by the Court's July 17, 2025 deposit order was because Seddio had directed him not to. 5/12/26 tr. 803:13-17. And this Court relied on that material misrepresentation in addressing Graubard's violation of the July 17, 2025 deposit order. *See* Defs.' Ex. 29 (NYSCEF Doc. No. 72), at 4:25–5:2 ("THE COURT: Mr. Seddio, you said you were going to bring him to court because you didn't want him to carry a $2 million dollar check with him. I understand that.")

235. Justice Mostofsky *sua sponte* scheduled a video hearing on 2 p.m. on July 31, 2025, for Seddio and Gorkin "to be heard on why sanctions should not be imposed on them for their inexcusable delay in, and failure to comply with, th[e] Court's July 17, 2025 order." NYSCEF Doc. No. 52; NYSCEF Doc. No. 53.

236. At 9:29 p.m. on July 29, Sprei messaged Gorkin, who at all times was acting as Graubard's lawyer in this matter, on WhatsApp stating, "I spoke to Izzy [Goldberg]. He says great idea osc [.] He will come in to case after[.] And judge has to recuse after so it's good." Defs.' Ex. 187, at AG_001352 (NYSCEF Doc. No. 325).

237. Gorkin and Sprei thus agreed that Gorkin should move by order to show cause to withdraw as Graubard's attorney of record in the Action, that Goldberg would then appear as Graubard's counsel, and as a result Justice Mostofsky would be forced to recuse himself. 5/12/26 tr. 805:12–806:22.

23

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 28 of 60 PageID #: 1978

238.  In audio messages sent from Sprei to Gorkin at 11:14 and 11:15 p.m. on July 29, 2025, Sprei stated as follows: "Okay, so I have a long conversation with Izzy Mr. Goldberg, let me explain to you what I told him, he says if he does substitution of counsel, the judge right away realize that oh, you did it because he wants to recuse himself and that might even make it worse. He says the motion to withdraw is a good idea, Order to Show Cause, he says because if the judge doesn't decide, the Second Department will, and he can come in as a lawyer, if he comes in, the judge will have to recuse later on. At least we accomplish what we wanted." 5/12/26 tr. 808:9-17; Defs.' Ex. 200 (NYSCEF Doc. No. 337).

239.  At 12:59 a.m. on July 30, Gorkin messaged Sprei, "I have never been threatened with sanctions by a judge before, so this is new for me, and it's quite concerning. I also don't see this OSC being granted which means the hearing will go forward anyway. At that point we will just have to bite the bullet and say we can't disclose what's going on, but the Court might sanction us just for refusing to disclose." 5/12/26 tr. 809:14-21.

240.  In response, Sprei intimated that he knew when Justice Mostofsky would leave the courthouse and had connections in the courthouse to ensure Gorkin's order to show cause to withdraw as counsel would be directed to a favorable judge. 5/12/26 tr. 810:13–812:12; Defs.' Ex. 201 (transcript at NYSCEF Doc. No. 338).

241.  On 3:50 p.m. on July 30, Gorkin's law firm moved by order to show cause to be relieved as counsel to Graubard in the Action. NYSCEF Doc. Nos. 63–65.

242.  At 1:20 p.m. on July 31, 2025—forty minutes before the sanctions hearing before Justice Mostofsky was scheduled to begin—Goldberg filed on the docket in this Action a substitution of counsel and letter addressed to Justice Mostofsky expressing his retainment by Graubard. NYSCEF Doc. Nos. 66–68.

243.  Less than twenty-four hours later, Justice Mostofsky recused himself from the instant Action "due to [his] personal relationship with Israel Goldberg, Esq., incoming attorney for the nominal defendant, David Graubard, Esq." Defs.' Ex. 28 (NYSCEF Doc. No. 70).

244.  On August 18, 2025, Defendants served discovery requests on Graubard seeking the Account Records, which he ignored. *See* NYSCEF Doc. No. 75.

**D.    Fourth Allegedly Frivolous Act: Non-Appearance at the November 5, 2025, Contempt Hearing**

245.  Graubard and Goldberg knew the Court had directed them both to appear at the November 5 hearing on Defendants' motion for contempt and to bring account records. 3/25/26 tr. 136:13–138:20; 4/29/26 tr. 566:3-25

246.  Nonetheless, Graubard and Goldberg did not appear at the November 5 hearing in direct violation of the Court's October 31 Order. 4/29/26 tr. 567:1-3; Defs.' Ex. 30 (NYSCEF Doc. No. 81).

247.  Neither Graubard nor Goldberg offered any testimony or documentary evidence tending to establish any legal basis for their failure to appear at the November 5 hearing as ordered.

248. Graubard's and Goldberg's decision not to attend the November 5, 2025 Contempt Hearing as ordered by the Court was intended primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

**E.      Fifth Allegedly Frivolous Act: Graubard's November 5, 2025, Letter**

249. Graubard's filing of the November 5, 2025, letter under his own credentials violated CPLR 321(a), which is especially problematic given that Graubard is an attorney and officer of the Court.

250. Graubard's decision to file the November 5, 2025 letter *pro se*, when he was represented by counsel, was completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law.

251. Graubard's November 5, 2025 letter was undertaken primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

252. Graubard's statement in the November 5, 2025 letter indicating that he wished "to comply with Court directives" was a material factual statement that was inaccurate because Graubard could not comply with the Court's directive to deposit the $2 million Deposits. 3/25/26 tr. 154:19-23.

**F.      Sixth Allegedly Frivolous Act: Evasive Statements at the November 12, 2025, Hearing**

253. Goldberg testified that at the time he appeared in the Action he knew that Graubard did not have the Deposits and was having issues complying with the Court's July 17, 2025 deposit order. 4/28/26 tr. 529:21–530:2

254. Goldberg further testified that he did not need to review Graubard's IOLA bank records to verify the status of the Deposits because "a representation [had already been] made to [him] that the money was not in the account," so "there was no need to review a record of what was already admitted to [him]." 4/29/26 tr. 577:9-12.

255. At the November 12 2025 hearing, this Court directly and clearly asked Goldberg whether the Deposits were still in Graubard's IOLA and Goldberg failed to inform the Court that he knew Graubard no longer had the Deposits. 4/29/26 tr. 579:9-10, 579:20-24. Instead, Goldberg stated that he had "not checked the escrow account" and so could not say whether the Deposits remained in the IOLA. Defs.' Ex. 34, at 9:18-21 (NYSCEF Doc. No. 96).

256. This omission, coupled with Goldberg's half-truth about not checking Graubard's escrow account, which Goldberg had previously deemed unnecessary given his own knowledge that the Deposits were not in the IOLA, amounted to a material factual statement that was inaccurate.

257. To date, Goldberg has not corrected or withdrawn his misrepresentation to the Court on November 12, 2025.

25

258. At no point has Graubard directed Goldberg to withdraw or correct the misrepresentations he made to the Court at the November 12, 2025 hearing.

259. Neither Graubard nor Goldberg offered any testimony or documentary evidence tending to establish any legal basis justifying the evasive and misleading statements made by Goldberg on behalf of Graubard at the November 12 hearing.

260. Goldberg's evasive statements at the November 12, 2025 hearing, made on Graubard's behalf, were undertaken primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

### G.    The Seriatim Applications for Emergency Injunctive Relief

261. In response to the Supercerceding Contempt Order, Goldberg, on behalf of Graubard, filed six different TRO applications. *See* NYSCEF Doc. Nos. 105–109; 119; 121–124; 131–134; 173–177; 197. For purposes of the instant motion for frivolity sanctions, Defendants dispute the propriety of only the TRO applications contained in each set of moving papers.

262. To this day, neither Graubard nor Goldberg has withdrawn any of the TRO applications or corrected any of the inaccurate statements described below.

263. None of Graubard's six TRO applications sought leave to submit the redacted Account Records under seal or for the Court's *in camera* review.

#### 1.    Seventh Allegedly Frivolous Act: The December 5 TRO Application

264. Neither Graubard nor Goldberg offered any testimony or evidence tending to establish any legal basis for the emergency injunctive relief sought through the First TRO Application.

265. The First TRO Application was undertaken primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

266. The First TRO Application asserted material factual statements that were inaccurate. *See supra* ¶¶ 102–109.

#### 2.    Eighth Allegedly Frivolous Act: The December 11 TRO Application

267. Neither Graubard nor Goldberg offered any testimony or evidence tending to establish any legal basis for the emergency injunctive relief sought through the Second TRO Application.

268. The Second TRO Application was undertaken primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

#### 3.    Ninth Allegedly Frivolous Act: The December 12 TRO Application

269. Goldberg did not provide advanced notice to Defendants that he intended to file the Third TRO Application in violation of 22 NYCRR § 202.8-e.

26

270. Graubard concedes that the Second TRO Application and the Third TRO Application "sought substantially the same relief" as his Second TRO Application. 3/30/26 tr. 215:4-7.

271. The Court deems the Second and Third TRO Applications to be identical. 4/26/26 tr. 614:9 ("THE COURT: I deem the two to be identical.").

272. Graubard did not dispute enforcement of the Court's order of monetary sanctions against him based on the Court's November 5, 2025 oral finding of contempt. NYSCEF Doc. No. 155 ¶ 60; *see* Defs.' Ex. 35 (NYSCEF Doc. No. 102) at 4. Neither Graubard nor Goldberg provided any legal basis for their contention that the Court had the authority to issue monetary but not non-monetary sanctions to punish Graubard's contempt.

273. Neither Graubard nor Goldberg offered any testimony or evidence tending to establish any legal basis for the emergency injunctive relief sought through the Third TRO Application.

274. The Third TRO Application was undertaken primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

275. The Third TRO Application asserted material factual statements that were inaccurate, namely that the Appellate Division had scheduled a hearing when it had not, and that Graubard had not sought prior relief when he had. *See supra* ¶¶ 125–128. Similarly, the non-disclosure of the Appellate Division's denial of the identical Second TRO Application the day before was an omission constituting material fact.

### 4.     Tenth Allegedly Frivolous Act: The December 15 TRO Application

276.

277. Graubard provided no legal basis for his decision to abide by those portions of the Superceding Contempt Order with which he agreed but not those portions of the order with which he disagreed, namely the Superceding Contempt Order's requirement that Graubard file the redacted Account Records on NYSCEF. NYSCEF Doc. Nos. 136, 137.

278. Goldberg violated 22 NYCRR § 202.8-e by failing to provide Defendants with copies of the Fourth TRO Application. 4/29/26 tr. 660:9-13

279. Neither Graubard nor Goldberg offered any testimony or evidence tending to establish any legal basis for the emergency injunctive relief sought through the Fourth TRO Application.

280. The Fourth TRO Application was undertaken primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

281. The Fourth TRO Application asserted material factual statements that were inaccurate. *See supra* ¶¶ 140, 144–147.

27

### a.  Additional Evidence of Graubard's Frivolity: Coordination of Monetelione's Recusal

282. The frivolity of Graubard's TRO applications is further supported by the unrebutted evidence that Graubard conspired, through Sprei and Gorkin, to force the recusal of Justice Monetelione after Justice Monteleone denied Graubard's Third TRO Application seeking a stay of the Superceding Contempt Order's requirement that Graubard file the redacted Account Records while the Appellate Division considered his appeal.

283. Specifically, on December 14, 2025, at 10:52 a.m. Sprei messaged Gorkin, via WhatsApp, "Basic we start a brand-new lawsuit against them. Frank Seddio, Rubin, and we ask the Court to stay all in the old Index Number. John Leventhal will be the lawyer, and the judge will have to recuse himself. 5/12/26 tr. 847:7-14.

284. The goal of "start[ing] a brand-new lawsuit" against Defendants was to cause a stay of the instant Action. 5/12/26 tr. 847:17-21; 848:8-11.

285. At 10:54 a.m., Sprei stated "have to get rid of Richard", meaning Justice Richard Monetelione who was presiding over the Action at that time. 5/12/26 tr. 853:19–854:3.

286. John Leventhal is a partner at the law firm Aidala Bertuna & Kamins P.C. and a former Kings County Supreme Court Justice and Second Department Justice. 5/12/26 tr. 854:4-7.

287. Sprei, acting on Graubard's behalf, suggested that initiating a new lawsuit wherein Leventhal would serve as Plaintiffs' counsel against Defendants would cause the recusal of Justice Montelione. 5/12/26 tr. 854:8-15.

288. The next day, December 15, 2025, Seddio filed a letter to Justice Monetlione stated that he retained Aidala, Bertuna & Kamis P.C., to represent him in this Action. NYSCEF Doc. No. 135.

289. In response, less than 24 hours later, Justice Montelione recused himself based solely on Seddio's "letter dated December 15, 2025, informing the court that the law firm of Aidala, Bertuna &Kamins, P.C. has been retained to represent plaintiff's counsel on a motion for sanctions filed by defendants' counsel," because Justice Montelione was "currently being represented by the same law firm in unrelated litigation." Defs.' Ex. 129 (NYSCEF Doc. No. 142).

290. Sprei's and Gorkin's coordination, on Graubard's behalf and for his benefit, to force the recusal of Justice Montelione was undertaken primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

### 5.  Eleventh Allegedly Frivolous Act: The January 12 TRO Application

291. Goldberg's January 5, 2026 letter, NYSCEF Doc. No. 158, requesting an adjournment of the January 6, 2026 return date for the Fourth TRO Application was not filed by Goldberg himself, rather it was filed by Sprei using Goldberg's NYSCEF credentials, which

28

Goldberg willingly gave to Sprei, 4/28/26 tr. 516:4-8; *see also* 4/28/26 tr. 514:25–515:18 (colloquy regarding NYSCEF credentials).

292. The Court denied the request via email and directed that any adjournment application may be made in person. NYSCEF Doc. No. 254.

293. Graubard was aware that Goldberg would not attend the January 6 hearing and nonetheless chose not to attend himself. 4/14/26 tr. 344:15-17, 21-22.

294. The Arrest Order scheduled a hearing on January 14, 2026 to determine whether Graubard should be committed for his failure to purge his contempt. Defs' Ex. 63 (NYSCEF Doc. No. 161).

295. On January 10, 2026, at 10:28 a.m., Hahn emailed Sprei stating, "I've been working on this since 4AM. But here is a draft of the emergency OSC- it was more convoluted than you had made it sound. But I think it's put together pretty well." Defs' Ex. 85 (NYSCEF Doc. No. 318).

296. Hahn's draft "emergency OSC" was the initial draft of the Fifth TRO Application Goldberg filed on January 12, 2026. 5/11/26 tr. 688:2-4.

297. At 6:12 p.m., Sprei forwarded Hahn's email thread and draft to Goldberg and Graubard. Defs' Ex. 85 (NYSCEF Doc. No. 318).

298. Alongside the Fifth TRO Application Graubard filed emails between counsel, NYSCEF Doc. No. 176, in violation of the Court's January 6, 2026 order that "[t]here shall be no correspondence … filed via the NYSCEF system." NYSCEF Doc. No. 160.

299. As the Court stated at the January 6 Hearing, the purpose of that order was "so it's understood if [the Court does] get a letter seeking anything it's violating a specific Court order." NYSCEF Doc. No. 166, at 21:23-25.

300. The Fifth TRO Application was undertaken primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

301. Neither Graubard nor Goldberg offered any testimony or evidence tending to establish any legal basis for the emergency injunctive relief sought through the Fifth TRO Application, especially in light of the Superceding Contempt Order's express provision allowing Defendants to move *ex parte* for an arrest warrant. Defs' Ex. 35 (NYSCEF Doc. No. 102) at 5; 4/29/26 tr. 677:2-21 ("THE COURT: We're going to take a look and see if his face is red; it's not. Okay, that's a statement being made that has no basis in law. In fact, in realty. Ex-parte means the other side need not know, everyone knows that, especially someone who has been licensed for decades. Anyone whose claiming that it means something else, I don't know what's going on, ma[ybe] it was the hacking, who knows.").

29

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 34 of 60 PageID #: 1984

6. **Twelfth Allegedly Frivolous Act: The January 13 TRO Application**

302. Goldberg and Graubard simply took the Fifth TRO Application and made an identical filing as the Sixth TRO Application to the Appellate Division. 4/14/26 tr. 353:9-17.

303. The purpose of the Sixth TRO Application was to obtain a stay of the enforcement of the Arrest Order. 4/14/26 tr. 353:24–354:3.

304. Nowhere in the Sixth TRO Application did Graubard request leave to submit the redacted Account Records under seal or for *in camera* review.

305. The Sixth TRO Application was undertaken primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

306. Neither Graubard nor Goldberg offered any testimony or evidence tending to establish any legal basis for the emergency injunctive relief sought through the Sixth TRO Application.

H. **Thirteenth Allegedly Frivolous Act: Graubard's Failure to Timely File Redacted Account Records**

307. On December 14, 2025, Graubard emailed Sprei a draft letter to Justice Montelione expressing Graubard's belief that the deadline to file redacted Account Records in compliance with the Superceding Contempt Order was December 15, 2025, and stating that Graubard had prepared Redacted Bank Records to submit to the Court and serve on Defendants' counsel. Defs' Ex. 89 (NYSCEF Doc. No. 301); 4/14/26 tr. 358:4–11.[3]

308. Graubard did not file the redacted Account Records on December 15, 2025.

309. Rather than file the redacted Account Records on December 15, 2025, Graubard chose instead to file his Fourth TRO Application. *See* Defs.' Exs. 51, 53–54 (NYSCEF Doc. Nos. 131–134).

310. Graubard knowingly and intentionally failed to file the redacted Account Records despite understanding that doing so violated the Superceding Contempt Order. 4/14/26 tr. 359:9-15.

311. Graubard did not offer any testimony or evidence tending to establish any legal basis for his failure to abide by his court-ordered obligation to file redacted Account Records by December 15, 2026.

---

[3] At a hearing on January 14, 2026, at which both Graubard and Goldberg appeared, Goldberg inaccurately suggested to the Court that he and Graubard had only recently received the bank records as a result of a subpoena served on Valley National Bank in parallel proceedings. Defs.' Ex. 74 (NYSCEF Doc. No. 196) at 14:12–15:1.

30

## I.    Fourteenth Allegedly Frivolous Act: Graubard's Non-Compliant Filing of Account Records on January 14, 2026

312.    Graubard's filing of the January 14 Account Records under his own credentials violated CPLR 321(a).

313.    Graubard conceded that the January 14 Account Records were non-compliant with the Superceding Contempt Order and did not offer any legal basis for failing to comply with the Court's order. Defs' Ex. 114 (NYSCEF Doc. No. 203), at ¶ 94.

314.    Graubard's non-compliant filing of the January 14 Account Records was undertaken primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

## IV.    Defendants' Attorneys' Fees

315.    Defendants submitted detailed billing records, along with an evidentiary affirmation from counsel, describing the attorneys' fees incurred by Defendants as a result of each frivolous act by Graubard and/or Goldberg. *See* NYSCEF Doc. Nos. 198–199.

316.    Goldberg has not disputed the reasonableness of Defendants' attorneys' fees, rates, or a single of Defendants' provided fee entries.

317.    Graubard has not disputed the billing rates of one of the law firms representing Defendants as co-counsel: Benesch Friedlander Coplan & Aronoff LLP. Graubard also has not specifically disputed 116 of Defendants' 211 billing entries. *Compare* NYSCEF Doc. No. 201 (listing 211 total billing entries), *with* NYSCEF Doc. No. 305 ¶¶ 122–123 (listing 95 disputed billing entries).

318.    Graubard has challenged the reasonableness of the billing rates of one of the law firms representing Defendants as co-counsel: Selendy Gay PLLC ("Selendy").

319.    The billing rates for the Selendy attorneys who worked on this matter range from $920 to $1,800 per hour. *See* NYSCEF Doc. No. 199; NYSCEF Doc. No. 247 ¶ 70 n.7.

320.    The billing rates for the non-attorney Selendy staff who performed legal services in this matter range from $445 to $700 per hour. NYSCEF Doc. No. 199.

321.    Based on the evidence and authorities submitted by Defendants, *see* NYSCEF Doc. No. 247 ¶¶ 65–73; NYSCEF Doc. Nos. 257–259, the Court finds that Selendy's rates are reasonable and commensurate with comparable legal services in New York City, especially given the unique procedural complexities of this dispute.

322.    Graubard also contends that Defendants' counsel billed excessive time, including purportedly duplicative time by multiple attorneys, to certain tasks. NYSCEF Doc. No. 305 ¶¶ 122–123.

31

323. Having reviewed the billing records submitted by Defendants, NYSCEF Doc. No. 199, as well as Defendants' counsel's affirmation explaining the nature of each set of tasks, NYSCEF Doc. No. 198, the Court finds that the hours billed by Defendants' counsel were reasonable and commensurate with the nature of the work performed.

324. Significant time and labor were required by Defendants' counsel to overcome the obfuscation and procedural improprieties by Graubard and Goldberg and finally learn the truth about what happened to the Deposits.

325. The Action and these sanctions proceedings involved difficult questions of law, legal procedure, and fact, including the effect of an apparently strategically timed discontinuance on the Court's authority to compel remedial disclosure and parsing of voluminous documentary, financial, and audio evidence.

326. Navigating these issues required a high degree of skill, attention, and time to address the problems repeatedly and intentionally presented by Graubard, Sprei, and their attorneys and agents.

327. Defendants' lead counsel (Jennifer Selendy, Lauren Zimmerman, and Babak Ghafarzade) have substantial experience (ranging from 10 to 30 years) and legal ability, and the co-counsel law firms have strong reputations in the industry.

328. The amount of money involved—$2 million, plus hundreds of thousands of dollars in lost interest and in legal fees—is considerable.

329. Counsel's work has already benefited Defendants by obtaining critical information that had been actively concealed from them for nearly a year. While the fee award they seek will not make them whole, it would provide an additional benefit to Defendants from counsel's work in this matter.

330. Defendants have submitted unrebutted evidence that the fees charged in this case are commensurate with those charged for similar services. *See* NYSCEF Doc. No. 247 ¶¶ 66–72; NYSCEF Doc. Nos. 257–259 (prior fee awards).

32

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 37 of 60 PageID #: 1987

Dated:  New York, NY                    BENESCH, FRIEDLANDER, COPLAN &
        June 26, 2026                   ARONOFF LLP

                            By:    /s/      *Lauren J. Zimmerman*
                                   Lauren J. Zimmerman
                                   1155 Avenue of the Americas, Floor 26
                                   New York, NY 10036
                                   Tel: 312-212-4949
                                   lzimmerman@beneschlaw.com

                                   Jennifer M. Selendy
                                   Babak Ghafarzade
                                   SELENDY GAY PLLC
                                   1290 Avenue of the Americas
                                   New York, NY  10104
                                   Tel: 212-390-9000
                                   jselendy@selendygay.com
                                   bghafarzade@selendygay.com

                                   *Attorneys for Defendants Angelos Metaxas and*
                                   *Pertshire Investments LP*

33

INDEX NO. 505819/2025
NYSCEF DOC. NO. 354
RECEIVED NYSCEF: 06/26/2026

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

OLDEN LLC,

                    Plaintiff,

          v.

ANGELOS METAXAS and PERTSHIRE
INVESTMENTS LP,

                    Defendants,

          and

DAVID GRAUBART,

                    Nominal Defendant.

Index No. 505819/2025

Hon. Francois A. Rivera: Part 52

Motion Sequence No. 8

**DEFENDANTS' PROPOSED FINDINGS OF FACT FOR SANCTIONS
AGAINST ISRAEL GOLDBERG, ESQ.**

# **Contents**

DEFENDANTS' PROPOSED FINDINGS OF FACT ...................................................................1

I.     Background ......................................................................................................................1

II.    Facts Concerning Goldberg's Alleged Acts of Frivolity ......................................................4

    A.    First Allegedly Frivolous Act by Goldberg:
Non-Appearance at the November 5, 2025, Contempt Hearing .............................4

    B.    Second Allegedly Frivolous Act by Goldberg:
Evasive Statements at the November 12, 2025, Hearing .........................................6

    C.    The Seriatim Applications for Emergency Injunctive Relief ..................................7

        1.    Third Allegedly Frivolous Act by Goldberg:
The December 5 TRO Application ..............................................................8

        2.    Fourth Allegedly Frivolous Act by Goldberg:
The December 12 TRO Application ............................................................9

        3.    Fifth Allegedly Frivolous Act by Goldberg:
The December 15 TRO Application ..........................................................12

        4.    Sixth Allegedly Frivolous Act by Goldberg:
The January 12 TRO Application ..............................................................13

        5.    Seventh Allegedly Frivolous Act by Goldberg:
The January 13 TRO Application ..............................................................15

III.    Pre-Hearing Briefing ......................................................................................................15

IV.    Witness Testimony at the Sanctions Hearing ..................................................................16

    A.    Mark David Graubard .........................................................................................16

    B.    Israel Goldberg, Esq. ..........................................................................................17

    C.    Yeshaya Gorkin, Esq. .........................................................................................19

V.    Defendants' Attorneys' Fees ...........................................................................................19

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 40 of 60 PageID #: 1990

This matter was tried before the Honorable Francois A. Rivera over 9 days: March 23, March 25, March 30, April 14, April 27, April 28, April 29, May 11, and May 12, 2026 (collectively, the "Sanctions Hearing").

During the Sanctions Hearing the Court admitted 90 exhibits into evidence and heard live testimony from three (3) witnesses: Nominal Defendant Mark David Graubard, Esq. ("Graubard"); Israel Goldberg, Esq. ("Goldberg"); and Yeshaya Gorkin, Esq. ("Gorkin").

Upon consideration of the testimony and documentary evidence admitted during the Sanctions Hearing, the reasonable inferences therefrom, and the prior pleadings and proceedings in this case, this Court hereby FINDS:

<b><u>DEFENDANTS' PROPOSED FINDINGS OF FACT</u></b>[1]

**I.      <u>Background</u>**

1.      The action underlying these sanctions proceedings (the "Action") concerned $2 million (the "Deposits") that Defendants wired to Graubard in December 2024 pursuant to escrow agreements to which Graubard was a signatory. 3/23/26 tr. 40:12-18.

2.      Each Defendant's escrow agreement with Graubard (together, the "Escrow Agreements") was materially identical; identified Graubard as the "Escrow Agent"; identified each Defendant as the "Escrowee"; provided for each Escrowee to deposit $1 million (the "Escrow Amount") in Graubard's interest on lawyer account ("IOLA") "account ending in 1102 at Valley National Bank … located at 2054 86th Street, Brooklyn, NY 11214" (the "IOLA"); provided that "the Escrow Amount will be returned to the Escrowee, or its designee, upon Escrowee's demand, which return shall be made in Escrowee's sole and absolute discretion"; provided that upon such demand, Graubard "shall return the Escrow Amount to Escrowee by wire transfer as directed by Escrowee within two business days of such email request"; and provided "that Escrow Agent has no right to, and shall not release, distribute, pledge, deposit or hypothecate any part of the Escrow Deposit for any reason or in any way

---

[1] On May 12, 2026 the Court ordered the parties to the Sanctions Hearing to exchange and attempt to reach agreement upon any potential undisputed findings of facts. Defendants provided a draft of their proposed undisputed facts to Graubard and Goldberg via email on the night of Tuesday, June 23, 2026, and requested responses by Thursday, June 25. While Graubard returned revisions to Defendants' proposed findings, resulting in a set of undisputed facts as between Defendants and Graubard, Goldberg never responded to Defendants' multiple efforts to contact him regarding this court-ordered filing. Accordingly, Defendants were not able to reach agreement with Goldberg as to any undisputed facts.

whatsoever without the express prior written permission and consent of the Escrowee." NYSCEF Doc. Nos. 15, 16 (capitalization altered).

3.   On December 6, 2024—within one day of when Defendants wired their Deposits to him, Graubard transferred all of Defendants' Deposits out of his IOLA at the direction of Sam "Shimmy" Sprei ("Sprei"). *See* 3/23/25 tr. 46:22–47:1; 3/25/26 tr. 76:13-17, 148:18-19; 3/30/26 tr. 240:4-13; 4/14/26 tr. 280:22–281:10.

4.   Graubard did not notify Defendants that he was transferring the Deposits out of his IOLA before or after doing so.

5.   On January 9 and 10, 2025, Defendants demanded the return of their Deposits.

6.   Between January 15 and 23, 2025, Graubard acknowledged receipt of Defendants' demands and conveyed his intent to return the Deposits pursuant to the Escrow Agreements.

7.   When Graubard failed to return their Deposits, on January 27, 2025, Defendants' counsel sent a lawyer's letter to Graubard again demanding the return of Defendants' Deposits pursuant to the Escrow Agreement.

8.   By letter dated January 28, 2025, Graubard stated that his "client require[d] a general release from each" Defendant before Graubard would return Defendants' Deposits.

9.   On January 29, 2025, Graubard received an email from Frank R. Seddio, Esq. ("Seddio"), copying Sprei and another individual, and stating, "Please be advised that no funds from your account can be released until you receive a release from the investing group as they have been attacking and threatening my client, Mr. Sprei. Mr. Graubard as soon as you receive a release in escrow you may release the funds. In any event if I do not hear from you by 5pm then we will file an order to show cause in Kings County Supreme to have the funds deposited with the Court." Defs.' Ex. 100 (NYSCEF Doc. No. 281); *see also* 3/25/26 tr. 79:1-7.

10.  Graubard understood the "funds" referenced in Seddio's January 29, 2025, email to be the same $2 million at issue in the action underlying these sanctions proceedings (the "Action"). 3/25/26 tr. 81:18-21.

11.  As of January 29, 2025, Graubard did not have the Deposits in his IOLA, and Graubard knew that Sprei was aware of that fact. 3/25/26 tr. 85:8-12.

12.  The Action was commenced on February 19, 2025, by summons with notice filed by Seddio. NYSCEF Doc. No. 1.

13.  The pleading identified Plaintiff as "Olden LLC," named Metaxas and Pertshire as Defendants, and named Graubard as Nominal Defendant. NYSCEF Doc. No. 1.

14.  The notice appended to the summons stated, in its entirety, "This action seeks a judicial declaration and injunctive relief as to escrow funds held by the Nominal Defendants [*sic*], as to which the parties have competing claims." NYSCEF Doc. No. 1.

15. Also on February 19, 2025, Seddio filed, *ex parte*, a proposed order to show cause, with supporting papers, for a temporary restraining order ("TRO") and preliminary injunction to, among other things, require Graubard to either hold the escrowed funds or deposit them with the clerk of the court. NYSCEF Doc. Nos. 2–6.

16. The Request for Judicial Intervention that Seddio filed in connection with Plaintiff's *ex parte* application identified the nature of the Action as a commercial contract dispute. NYSCEF Doc. No. 6.

17. The same day, IAS Part 72 (Hon. Steven Z. Mostofsky) signed the order to show cause and granted the requested TRO pending a hearing on Plaintiff's motion for a preliminary injunction. NYSCEF Doc. No. 7.

18. The hearing on Plaintiff's motion for a preliminary injunction was ultimately scheduled for July 17, 2025. *See* 3/23/26 tr. 55:22–56:1.

19. Valley National Bank closed Graubard's IOLA in June 2025. 3/23/26 tr. 49:3-12; 3/25/26 tr. 168:14-17.

20. IAS Part 9 (Mostofsky, J.) held a hearing on Plaintiff's motion for a preliminary injunction on July 17, 2025. *See* Defs.' Ex. 11 (NYSCEF Doc. No. 44).

21. Following the hearing, Justice Mostofsky issued an order granting Plaintiff's motion for a preliminary injunction to the extent of directing Graubard to deposit the Defendants' $2 million in Deposits with the Clerk of the Court by July 21, 2025, at 5:00 p.m., and directing the parties to notify Graubard of the order by July 18, 2025, at 12:00 p.m. Defs.' Ex. 11 (NYSCEF Doc. No. 44).

22. Plaintiffs provided such notice to Graubard via email on July 17, 2025.

23. Graubard never complied with the Court's directive in the July 17, 2025, order that he deposit $2 million with the clerk of the court. 3/25/26 tr. 94:5–95:13.

24. Justice Mostofsky *sua sponte* scheduled a video hearing on 2 p.m. on July 31, 2025, for Seddio and Gorkin "to be heard on why sanctions should not be imposed on them for their inexcusable delay in, and failure to comply with, th[e] Court's July 17, 2025 order." NYSCEF Doc. No. 52; NYSCEF Doc. No. 53.

25. At 9:29 p.m. on July 29, Sprei messaged Gorkin, who at all times was acting as Graubard's lawyer in this matter, on WhatsApp stating, "I spoke to Izzy [Goldberg]. He says great idea osc [.] He will come in to case after[.] And judge has to recuse after so it's good." Defs.' Ex. 187, at AG_001352 (NYSCEF Doc. No. 325).

26. Gorkin and Sprei thus agreed that Gorkin should move by order to show cause to withdraw as Graubard's attorney of record in the Action, that Goldberg would then appear as Graubard's counsel, and as a result Justice Mostofsky would be forced to recuse himself. 5/12/26 tr. 805:12–806:22.

3

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 43 of 60 PageID #: 1993

27. In audio messages sent from Sprei to Gorkin at 11:14 and 11:15 p.m. on July 29, 2025, Sprei stated as follows: "Okay, so I have a long conversation with Izzy Mr. Goldberg, let me explain to you what I told him, he says if he does substitution of counsel, the judge right away realize that oh, you did it because he wants to recuse himself and that might even make it worse. He says the motion to withdraw is a good idea, Order to Show Cause, he says because if the judge doesn't decide, the Second Department will, and he can come in as a lawyer, if he comes in, the judge will have to recuse later on. At least we accomplish what we wanted." 5/12/26 tr. 808:9-17; Defs.' Ex. 200 (NYSCEF Doc. No. 337).

28. At 12:59 a.m. on July 30, Gorkin messaged Sprei, "I have never been threatened with sanctions by a judge before, so this is new for me, and it's quite concerning. I also don't see this OSC being granted which means the hearing will go forward anyway. At that point we will just have to bite the bullet and say we can't disclose what's going on, but the Court might sanction us just for refusing to disclose." 5/12/26 tr. 809:14-21.

29. Sprei intimated that he knew when Justice Mostofsky would leave the courthouse and had connections in the courthouse to ensure Gorkin's order to show cause to withdraw as counsel would be directed to a favorable judge. 5/12/26 tr. 810:13–812:12; Defs.' Ex. 201 (transcript at NYSCEF Doc. No. 338).

30. On 3:50 p.m. on July 30, Gorkin's firm moved by order to show cause to be relieved as counsel to Graubard in the Action. NYSCEF Doc. Nos. 63–65.

31. At 1:20 p.m. on July 31, 2025—forty minutes before the sanctions hearing before Justice Mostofsky was scheduled to begin—Goldberg filed on the docket in this Action a substitution of counsel and letter addressed to Justice Mostofsky expressing his retainment by Graubard. NYSCEF Doc. Nos. 66–68.

32. Less than twenty-four hours later, Justice Mostofsky recused himself from the instant Action "due to [his] personal relationship with Israel Goldberg, Esq., incoming attorney for the nominal defendant, David Graubard, Esq." Defs.' Ex. 28 (NYSCEF Doc. No. 70).

## II. **Facts Concerning Goldberg's Alleged Acts of Frivolity**

### A. **First Allegedly Frivolous Act by Goldberg: Non-Appearance at the November 5, 2025, Contempt Hearing**

33. On July 29, 2025, Defendants moved, by notice of motion (sequence no. 2), to hold Graubard, Seddio, and Gorkin in contempt of court for violating and assisting in Graubard's violation of the July 17, 2025, order. NYSCEF Doc. Nos. 54–60.

34. The return date on the face of Defendants' notice of motion was August 7, 2025. NYSCEF Doc. No. 54

35. On or about July 30, 2025, the return date for Defendants' motion was scheduled by the Court for September 4, 2025.

4

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 44 of 60 PageID #: 1994

36. On July 31, 2025, at 1:20 p.m., Goldberg filed a substitution of counsel notifying the Court that Goldberg Law Group PLLC was being substituted in place of Ainsworth Gorkin PLLC as counsel of record for Graubard in the Action as of July 31, 2025. NYSCEF Doc. No. 66; *see also* Defs. Ex. 25 (NYSCEF Doc. No. 67 (7/31/25 letter from Goldberg)).

37. At the time Goldberg appeared in the Action on July 31, 2025, he knew Graubard "was not able to pay out $2 million, that should have been in his escrow account." 4/28/26 tr. 529:21–530:2.

38. On August 1, 2025, Justice Mostofsky issued an order recusing himself from the Action due to his "personal relationship" with Goldberg. Defs.' Ex. 28 (NYSCEF Doc. No. 70).

39. Following Justice Mostofsky's recusal, the Action was reassigned to IAS Part 99 (Montelione, J.), and the return date for Defendants' contempt motion (sequence no. 2) was adjourned to November 5, 2025. *See* NYSCEF Doc. No. 70 (notes).

40. On October 29, 2025, Seddio emailed Justice Montelione's chambers and counsel for all parties requesting that the Court either adjourn the November 5, 2025, return date or take Defendants' contempt motion on submission and permit Seddio to file answering papers by November 15, 2025.

41. On October 31, 2025, Justice Montelione issued an interim order (the "October 31 Order") conditionally granting Seddio's request only if one of three conditions was met by Monday, November 3, 2025, at 5:00 p.m.: (1) Graubard filed proof that he had deposited $2 million with the clerk of the court; (2) Graubard filed properly redacted bank records concerning the Deposits; or (3) Plaintiff filed an undertaking of $120,000 with the clerk of the court. Defs.' Ex. 30 (NYSCEF Doc. No. 81).

42. None of those conditions were met, so the hearing on Defendants' contempt motion proceeded as scheduled on November 5, 2025.

43. The October 31 Order further directed Graubard "and his counsel" to "appear on the return date … and bring with him any and all original and unredacted bank records reflecting that the $2,000,000.00 at issue herein was deposited into his attorney escrow account, and include but limited [*sic*] to, all checks, bank statements, and deposit receipts, detailing any and all transfers of funds regarding the $2,000,000.00 to date." Defs.' Ex. 30 (NYSCEF Doc. No. 81).

44. At 12:05 a.m. on the morning of November 5, 2025, Graubard sent Sprei an email stating, "Shimmie- earlier tonight, I came up with an idea for tomorrow morning. I will go to Brooklyn tomorrow morning and go to Frank Seddio's office. We will wait to hear from the attorney he is sending with the bond at 10:15 (calendar is 9:30 and second call is at 10:30.) If the matter gets adjourned, fine, and if not, and the judge directs appearances, I will be downtown. Of course I will speak to Israel Goldberg early tomorrow to see what he thinks. If we get the adjournment, we could discuss how to approach the judge about a in-chambers conference on how to resolve the matter. You and I could talk in the morning." 3/25/26 tr. 141:12-142:3.

5

Case 1:25-cv-05844-EK-PCG     Document 162-7     Filed 07/21/26     Page 45 of 60 PageID
#: 1995

45. Graubard and Goldberg knew the Court had directed them both to appear at the November 5 hearing on Defendants' motion for contempt and to bring account records. 3/25/26 tr. 136:13–138:20; 4/29/26 tr. 566:3-25

46. Nonetheless, Graubard and Goldberg did not appear at the November 5 hearing in direct violation of the Court's October 31 Order. 3/25/26 tr. 139:17–140:5; 4/29/26 tr. 567:1-3; Defs.' Ex. 30 (NYSCEF Doc. No. 81).

47. Neither Graubard nor Goldberg brought to the November 5, 2025 hearing the bank records required under the October 31 Order. *See* 3/25/26 tr. 140:6-9.

48. Neither Graubard nor Goldberg offered any testimony or documentary evidence tending to establish any legal basis for their failure to appear at the November 5 hearing as ordered.

49. Graubard's and Goldberg's decision not to attend the November 5, 2025 Contempt Hearing as ordered by the Court was intended primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

**B.** **Second Allegedly Frivolous Act by Goldberg: Evasive Statements at the November 12, 2025, Hearing**

50. During the November 5 hearing, Justice Montelione orally granted Defendants' motion for contempt, as against Graubard, on Graubard's default. 3/25/26 tr. 144:7-9.

51. On November 6, 2025, Plaintiff filed a notice of discontinuance. NYSCEF Doc. No. 83.

52. Alongside the notice of discontinuance, Plaintiff filed a letter asserting that the discontinuance "divests this Court of jurisdiction over the matter" and "terminates the proceeding in its entirety." NYSCEF Doc. No. 84.

53. On November 7, 2025, the Court issued its "Final Order Punishing David Graubart, Escrow Agent/Nominal Defendant" (the "November 7 Contempt Order") memorializing the Court's November 5, 2025 oral ruling and directing Graubard purge his contempt by paying a fine, motion costs, Defendants' counsel fees, and depositing $2 million with the clerk of the court. Defs.' Ex. 33 (NYSCEF Doc. No. 91).

54. However, because the court learned of the discontinuance after its typed and signed November 7 Contempt Order, the Court also issued the following hand-written provision on page 4 of 4 of the Final Order: "The foregoing Final Order is stayed pending a further order from the Court. All counsel for the respective parties must show cause at the call of the calendar on 11/12/2025 at 9:30am, Part 99, whether the forgoing final order should or should not be vacated, modified, or enforced, based on the notice of discontinuance filed on 11/6/2025." Defs.' Ex. 33 (NYSCEF Doc. No. 91).

55. The show-cause hearing proceeded as scheduled on November 12, 2025.

56. Goldberg appeared on Graubard's behalf at the hearing.

6

57. The Court directly asked Goldberg whether Graubard was in possession of the Deposits: "Let me ask you. Are the escrow funds still in the escrow account?" Defs.' Ex. 34 (NYSCEF Doc. No. 96), at 9:18-19.

58. When Goldberg appeared in the Action on July 31, 2025, he knew Graubard "was not able to pay out $2 million, that should have been in his escrow account." 4/28/26 tr. 529:21–530:2.

59. Goldberg further testified that he did not need to review Graubard's IOLA bank records to verify the status of the Deposits because "a representation [had already been] made to [him] that the money was not in the account," so "there was no need to review a record of what was already admitted to [him]." 4/29/26 tr. 577:9-12.

60. At the November 12 2025 hearing, this Court directly and clearly asked Goldberg whether the Deposits were still in Graubard's IOLA and Goldberg failed to inform the Court that he knew Graubard no longer had the Deposits. 4/29/26 tr. 579:9-10, 579:20-24. Instead, Goldberg stated that he had "not checked the escrow account" and so could not say whether the Deposits remained in the IOLA. Defs.' Ex. 34, at 9:18-21 (NYSCEF Doc. No. 96).

61. This omission, coupled with Goldberg's half-truth about not checking Graubard's escrow account—an act Goldberg had deemed unnecessary given his own knowledge that the Deposits were not in the IOLA, amounted to a material factual statement that was inaccurate.

62. To date, Goldberg has not corrected or withdrawn his misrepresentation to the Court on November 12, 2025.

63. Neither Graubard nor Goldberg offered any testimony or documentary evidence tending to establish any legal basis justifying the evasive and misleading statements made by Goldberg on behalf of Graubard at the November 12 hearing.

64. Goldberg's evasive statements at the November 12, 2025 hearing were undertaken primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

## C. The Seriatim Applications for Emergency Injunctive Relief

65. On December 3, 2025, the Court filed its Superceding Final Order Punishing David Graubart, Escrow Agent/Nominal Defendant (the "Superceding Contempt Order"). Defs.' Ex. 35 (NYSCEF Doc. No. 102).

66. In the Superceding Contempt Order, the Court determined that Plaintiff's November 6, 2025, notice of discontinuance did "not render the motion for contempt academic" Defs.' Ex. 35 (NYSCEF Doc. No. 102) (*citing Destino v. Q Mgt. Properties*, LLC, 237 AD3d 1162, 1163 (2d Dept. 2025); *Wells Fargo Bank, N.A. v. Bagley*, 104 A.D.3d 938, 938–39, 960 (2d Dept. 2013)).

67. The Superceding Contempt Order ordered as follows: that (i) the November 7, 2025 contempt order be vacated; (ii) that Graubard is guilty of contempt of court in having willfully

7

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 47 of 60 PageID #: 1997

disobeyed the provisions and requirements of the Court's Order dated July 17, 2025, namely, the direction therein that Graubard deposit the Deposits with the Clerk of the Court by July 21, 2025, 5:00pm; (iii) that Graubard's misconduct and the offense committed by him as aforesaid was calculated to and actually did defeat, impair, impede and prejudice the rights and remedies of the defendants; (iv) Graubard must pay a fine for the misconduct and contempt of court; (v) Graubard must reimburse Defendants' motion costs; (vi) upon failure of Graubard to purge his contempt, an ex parte application, upon the affirmation of defendants' counsel, may be made for a warrant directing the Sheriff of any County of the State of New York to seize and arrest Graubard and bring him before the Court to show cause why he should not be committed; and (vii) Graubard must file on NYSCEF properly redacted copies of any and all bank records ("Account Records") pertaining to all deposits and disbursements and balances within his escrow account, involving the subject Deposits within one business day or an *ex parte* application may be made for his upon the affirmation of defendants' counsel, may be made for a warrant directing the Sheriff of any County of the State of New York to seize and arrest Graubard and bring him before the Court to show cause why he should not be committed.

68. In response to the Superceding Contempt Order, Goldberg, on behalf of Graubard, filed five different TRO applications.[2] *See* NYSCEF Doc. Nos. 105–109; 119; 121–124; 131–134; 173–177; 197. For purposes of the instant motion for frivolity sanctions, Defendants dispute the propriety of only the TRO applications contained in each set of moving papers.

69. To this day, neither Graubard nor Goldberg has withdrawn any of the TRO applications or corrected any of the inaccurate statements described below.

70. None of the five TRO applications submitted by Goldberg sought leave to submit the redacted Account Records under seal or for the Court's *in camera* review.

### 1. **Third Allegedly Frivolous Act by Goldberg: The December 5 TRO Application**

71. On December 5, 2025, Goldberg moved by order to show cause to vacate and stay enforcement of the portion of the Superceding Contempt Order ordering Graubard to file bank records, as well as for a TRO (the "First TRO Application") against enforcement of the Superceding Contempt Order pending a decision on the motion. NYSCEF Doc. Nos. 105–109.

72. Neither Graubard nor Goldberg offered any testimony or evidence tending to establish any legal basis for the emergency injunctive relief sought through the First TRO Application.

73. The First TRO Application was undertaken primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants. 3/30/26 tr. 197:21-23.

---

[2] A sixth TRO application, to the Appellate Division, was filed by another attorney on Graubard's behalf on December 11, 2025. *See* NYSCEF Doc. Nos. 118–120.

74.  The First TRO Application asserted material factual statements that were inaccurate. Specifically Goldberg's supporting affirmation for the First TRO Application (NYSCEF Doc. No. 106) contained two sets of inaccurate material statements.

75.  *First*, Goldberg affirmed that he had "sought [an] adjournment [of the November 5 hearing] via email due to a severe medical condition that made it impossible for him to leave his house and perform work functions." Defs.' Ex. 37 ¶ 11 (NYSCEF Doc. No. 106). This statement was inaccurate because *Plaintiff's* counsel, not Goldberg, requested the adjournment, with Goldberg having "not consented to or opposed the application." Defs.' Ex. 30 (NYSCEF Doc. No. 81), at 1.

76.  *Second*, Goldberg affirmed that, during the November 12 hearing, the Court "never mentioned any non-monetary sanctions." Defs.' Ex. 37 ¶ 14 (NYSCEF Doc. No. 106). This statement was inaccurate because the Court stated to Goldberg during the November 12 hearing that it would order Graubard's submission of "documentary evidence" of the Account Records and further stated, "That's also a sanction, if you want to call it a sanction." Goldberg expressly confirmed that he "underst[ood]" and would "take [the Court's] directives back to the client and talk to them and tell them what the ramifications are." Defs.' Ex. 34 (NYSCEF Doc. No. 96), at 9:22-10:17.

77.  On December 6 and 7, 2025, Defendants notified Goldberg of these purportedly inaccurate statements in his affirmation, and Goldberg agreed to correct at least the statements referenced in ¶ 105, *supra*. *See* NYSCEF Doc. No. 110 ¶¶ 26, 29.

78.  Defendants opposed the First TRO Application on December 7, 2025.

79.  On December 7, 2025, Goldberg filed a supplemental affirmation omitting the two statements described above, but Goldberg did not withdraw his prior affirmation. *See* NYSCEF Doc. No. 111 ¶¶ 11, 14; 4/29/26 tr. 608:14-20.

80.  On December 8, 2025, Justice Montelione granted in part Graubard's First TRO Application to the extent of enjoining enforcement of the Superceding Contempt Order until December 12, 2025, "to afford the nominal defendant David Graubart time to seek a stay in the Appellate Division inasmuch as the court's underlying order of contempt, based on the failure of the nominal defendant to deposit $2M with the clerk of the court, and the subsequent discontinuance of the action which makes such deposit impossible, provides a pure question of law as to whether the trial court may direct the nominal defendant, an attorney, to provide evidence that he is in fact meeting his fiduciary responsibilities." NYSCEF Doc. No. 112 (the "December 8 Order"), at 2.

### 2.  Fourth Allegedly Frivolous Act by Goldberg: The December 12 TRO Application

81.  On December 11, 2025, Graubard, through a separate attorney named Scott Horn, moved the Appellate Division, Second Department, by order to show cause for leave to appeal the Superceding Contempt Order and December 8 Order and for an interim stay of enforcement of both orders pending the Appellate Division's decision (the request for an interim stay

9

constituting the "Second TRO Application"). *See* Defs' Ex. 45 (NYSCEF Doc. No. 119); 3/30/26 tr. 198:2-6.

82. That same day, following oral argument, the Second Department denied Graubard's Second TRO Application and set a return date of December 19, 2025 for Graubard's motion, which, pursuant to the Appellate Division's rules, would be considered on the papers alone and without oral argument. *See* Defs' Ex. 45 (NYSCEF Doc. No. 119); 4/29/26 tr. 611:14-17.

83. On the morning of December 12, 2025 at 10:49 a.m., Chang Hahn emailed Sprei, Goldberg, and Gorkin stating "Morning, all. Let me know your thoughts. I couldn't find any directly relevant cases and the cases in general are not favorable, but this motion includes a meritorious argument" and attaching the draft affirmation of the Third TRO Application (see *infra* ¶ 120). Defs.'Ex. 86 (NYSCEF Doc. No. 285); 3/30/26 tr. 201:17–202:21.

84. Chang Hahn is an associate at the firm Ainsworth Gorkin PLLC, which Graubard had discharged as his counsel of record in the Action on July 31, 2025, *see* 3/30/26 tr. 200:7-13; Defs.' Ex. 25 (NYSCEF Doc. No. 67), and was engaged by Sprei to draft papers on Graubard's behalf, *id.* 204:8-16.

85. Graubard never directed Sprei to stop discussing his legal matters on his behalf with attorneys who were not Goldberg. 3/30/26 tr. 208:18-21.

86. Graubard never directed Hahn or anyone at Ainsworth Gorkin PLLC to stop drafting filings on his behalf. 3/30/26 tr. 208:22-25.

87. At 11:25 a.m., Hahn followed up stating, "Added in TRO language." Defs.'Ex. 86 (NYSCEF Doc. No. 285); 3/30/26 tr. 200:22-24.

88. At 11:26 a.m., Sprei forwarded the messages to Graubard. Defs.'Ex. 86 (NYSCEF Doc. No. 285); 3/30/26 tr. 200:3-6.

89. At 11:40 a.m. on December 12, 2025, Graubard again moved by order to show cause to stay enforcement of the Superceding Contempt Order and for a TRO (the "Third TRO Application") granting the same relief pending a decision on the motion. NYSCEF Doc. Nos. 121–124 (corrected versions); 4/29/26 tr. 613:7-15, 634:19–635:14.The purpose of the Third TRO Application was to delay enforcement of the Superceding Contempt Order against Graubard. 3/30/26 tr. 215:25–216:3.

90. The Third TRO Application consisted of the same affirmation and supporting documents drafted by Hahn and sent to Sprei, Gorkin, and Goldberg. 3/30/26 tr. 202:19-21; 4/29/26 tr. 632:4-14.

91. Goldberg did not make any substantive edits to Hahn's drafts. 4/29/26 tr. 636:8-12.

92. Goldberg did not provide advanced notice to Defendants that he intended to file the Third TRO Application in violation of 22 NYCRR § 202.8-e.

10

NYSCEF DOC. NO. 354

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 50 of 60 PageID #: 2000

93. Graubard concedes that the Second TRO Application and the Third TRO Application "sought substantially the same relief" as his Second TRO Application. 3/30/26 tr. 215:4-7.

94. The Court deems the Second and Third TRO Applications to be identical. 4/26/26 tr. 614:9 ("THE COURT: I deem the two to be identical.").

95. Graubard did not dispute enforcement of the Court's order of monetary sanctions against him based on the Court's November 5, 2025 oral finding of contempt. NYSCEF Doc. No. 155 ¶ 60; *see* Defs.' Ex. 35 (NYSCEF Doc. No. 102) at 4. Neither Graubard nor Goldberg provided any legal basis for their contention that the Court has the authority to issue monetary but not non-monetary sanctions to punish Graubard's contempt.

96. Neither Graubard nor Goldberg offered any testimony or evidence tending to establish any legal basis for the emergency injunctive relief sought through the Third TRO Application.

97. The Third TRO Application was undertaken primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

98. The Third TRO Application asserted material factual statements that were inaccurate.

99. *First*, Goldberg's supporting affirmation stated that the Appellate Division had "scheduled a hearing for December 19, 2025" on the motion underlying Second TRO Application. NYSCEF Doc. No. 123 ¶ 22. That statement in Goldberg's affirmation was inaccurate because the Appellate Division did not schedule a hearing; rather, the motion underlying the Second TRO Application was submitted on the papers alone. 4/29/26 tr. 616:4-16.

100. *Second*, Goldberg's supporting affirmation also did not disclose the material fact that the Appellate Division had denied the Second TRO Application the day before. 4/29/26 tr. 615:6-14.

101. *Third*, Goldberg's affirmation of exigent circumstances supporting the Third TRO Application stated that "no[] prior application has been made to this Court based on the claims in this proceeding" and that the "[a]pplication for the relief requested on the circumstances presented ha[d] not been previously made to the Court." NYSCEF Doc. No. 122 ¶¶ 2, 6.

102. But the First and Second TRO Applications sought identical relief: a stay of the Superceding Contempt Order. 4/29/26 tr. 614:9.

103. Alongside the Third TRO Application, Goldberg filed a letter addressed to Justice Montelione. NYSCEF Doc. No. 124.

104. The letter was drafted by Sprei and sent to Goldberg at 7:00 p.m. the day before 4/29/26 tr. 637:15-20, 640:6-16.

105. Defendants opposed the Third TRO Application the same day it was filed, December 12, 2025. NYSCEF Doc. No. 125.

11

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 51 of 60 PageID #: 2001

106. The Court denied the Third TRO Application on the evening of December 12, 2025, and set a return date March 4, 2026, for the underlying motion. NYSCEF Doc. No. 126.[3]

### 3. Fifth Allegedly Frivolous Act by Goldberg: The December 15 TRO Application

107. Also on December 12, 2025, the December 8 Order expired. *See* NYSCEF Doc. No. 112.

108. On December 14, 2025, Defendants filed an *ex parte* application for Graubard's arrest and commitment. NYSCEF Doc. No. 129.

109. Defendants renewed their arrest motion on December 17, 2025. NYSCEF Doc. Nos. 144–152.

110. On December 15, 2025, Graubard paid the monetary sanctions imposed by the Superceding Contempt Order but did not file the redacted Account Records in accordance with the Superceding Contempt Order. NYSCEF Doc. Nos. 136, 137.

111. Instead, Goldberg filed Graubard's fourth motion by order to show cause for relief, including a TRO (the "Fourth TRO Application"), from the Superceding Contempt Order. NYSCEF Doc. Nos. 131–134.

112. Neither Graubard nor Goldberg offered any testimony or evidence tending to establish any legal basis for the emergency injunctive relief sought through the Fourth TRO Application.

113. Graubard provided no legal basis for his decision to abide by those portions of the Superceding Contempt Order with which he agreed but not those portions of the order with which he disagreed, namely the Superceding Contempt Order's requirement that Graubard file the redacted Account Records on NYSCEF. NYSCEF Doc. Nos. 137, 137.

114. The Fourth TRO Application was undertaken primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

115. The Fourth TRO Application asserted material factual statements that were inaccurate.

116. Redlines of the Third and Fourth TRO Application papers make clear that the filings were substantially identical. NYSCEF Doc. Nos. 139–141.

117. Graubard concedes that the Fourth TRO Application was "likely frivolous" because it sought "identical relief to the third TRO application and contain[ed] the incorrect statement that no prior motion for the same relief had been requested." Defs.' Ex. 114 ¶ 85 (NYSCEF Doc. No. 203) (affirmation of Graubard's counsel Randall Tesser, Esq.).

---

[3] The Court's December 12, 2025, order was received by NYSCEF at 5:06 p.m. on that day, but it was not officially filed by the Clerk until the morning of December 15, 2025. NYSCEF Doc. No. 126 (confirmation notice).

12

118. Goldberg has never sought to correct or withdraw the Fourth TRO Application. 3/30/26 tr. 220:9-12.

119. Defendants opposed the Fourth TRO Application on December 15, 2025. NYSCEF Doc. Nos. 138-141.

120. The primary purpose of the Fourth TRO Application was to delay enforcement of the Superceding Contempt Order. 3/30/26 tr. 220:13-15.

121. Goldberg's affirmation in support of the Fourth TRO Application again stated, "No prior application for the relief sought herein has been made in this or any other court of competent jurisdiction." NYSCEF Doc. No. 133 ¶ 32.

122. That statement in Goldberg's affirmation was inaccurate because the First, Second, and Third TRO Applications sought identical relief. 4/29/26 tr. 644:10-15.

123. Goldberg's affirmation also stated that Goldberg provided notice to counsel of the Fourth TRO Application. NYSCEF Doc. No. 133 ¶ 33.

124. Any such notice was ineffective as Goldberg did not provide Defendants with copies of the Fourth TRO Application in violation of 22 NYCRR § 202.8-e. 4/29/26 tr. 660:9-13.

125. On December 23, 2025 at 1:51 p.m., Justice Rivera denied and struck out the TRO that was sought in the Fourth TRO Application and scheduled a hearing for January 6, 2026. NYSCEF Doc. No. 153.

126. On January 5, 2025 at 1:17 p.m. Goldberg requested, via email and letter, an adjournment of the January 6 hearing due to a conflicting medical appointment for a health issue that arose "[o]ver the New Year." NYSCEF Doc. No. 158.

127. Goldberg's January 5, 2026 letter, NYSCEF Doc. No. 158, requesting an adjournment of the January 6, 2026 return date for the Fourth TRO Application was not filed by Goldberg himself, rather it was filed by Sprei using Goldberg's NYSCEF credentials, which Goldberg willingly gave to Sprei, 4/28/26 tr. 516:4-8; *see also* 4/28/26 tr. 514:25–515:18 (colloquy regarding NYSCEF credentials).

128. The Court denied the request via email and directed Goldberg to appear in person at the January 6, 2026 hearing on his motion for an order to show cause to make an oral request to adjourn the hearing. NYSCEF Doc. No. 254.

### 4. Sixth Allegedly Frivolous Act by Goldberg: The January 12 TRO Application

129. The January 6, 2026 hearing proceeded as scheduled.

130. Neither Goldberg nor Graubard appeared at the January 6, 2026 hearing.

13

131. At the January 6, 2026 hearing, the Court orally denied Graubard's Fourth TRO Application on Graubard's default. NYSCEF Doc. No. 159.

132. Also at the January 6, 2026 hearing, the Court granted Defendants' *ex parte* application for an arrest warrant and show-cause hearing regarding Graubard's potential commitment for failing to purge his contempt. Defs' Ex. 63 (NYSCEF Doc. No. 161) (the "Arrest Order").

133. The Arrest Order scheduled a hearing on January 14, 2026 to determine whether Graubard should be committed for his failure to purge his contempt. Defs' Ex. 63 (NYSCEF Doc. No. 161).

134. Defendants promptly served copies of the order on all counsel and on the Queens Office of the New York City Sherrif. NYSCEF Doc. No. 163.

135. On January 10, 2026, at 10:28 a.m., Hahn emailed Sprei stating, "I've been working on this since 4AM. But here is a draft of the emergency OSC- it was more convoluted than you had made it sound. But I think it's put together pretty well." Defs.' Ex. 85 (NYSCEF Doc. No. 318).

136. Hahn's draft "emergency OSC" was the initial draft of the Fifth TRO Application Goldberg filed on January 12, 2026. 5/11/26 tr. 688:2-4.

137. At 6:12 p.m., Sprei forwarded Hahn's email thread and draft to Goldberg and Graubard. Defs.' Ex. 85 (NYSCEF Doc. No. 318).

138. On January 12, 2026, Graubard again filed an order to show cause to stay, vacate, and re-argue the Arrest Order and denial of the Fourth TRO Application, as well as for a TRO (the "Fifth TRO Application") enjoining enforcement of the Superceding Contempt Order. NYSCEF Doc. No. 173–177.

139. Alongside the Fifth TRO Application, Goldberg filed emails between counsel, NYSCEF Doc. No. 176, in violation of the Court's January 6, 2026 order that "[t]here shall be no correspondence … filed via the NYSCEF system." NYSCEF Doc. No. 160.

140. As the Court stated at the January 6 Hearing, the purpose of that order was "so it's understood if [the Court does] get a letter seeking anything it's violating a specific Court order." NYSCEF Doc. No. 166, at 21:23-25.

141. The Fifth TRO Application was undertaken primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

142. Neither Graubard nor Goldberg offered any testimony or evidence tending to establish any legal basis for the emergency injunctive relief sought through the Fifth TRO Application especially in light of the Superceding Contempt Orders, express provision allowing Defendants to move *ex parte* for an arrest warrant. Defs.' Ex. 35 (NYSCEF Doc. No. 102); 4/29/26 tr. 677:2-21 ("THE COURT: We're going to take a look and see if his face is red; it's not. Okay, that's a statement being made that has no basis in law. In fact, in realty. Ex-parte means the other side need not know, everyone knows that, especially someone who

14

has been licensed for decades. Anyone whose claiming that it means something else, I don't know what's going on, ma[ybe] it was the hacking, who knows.").

143. The Court denied the Fifth TRO Application the next morning, January 13, 2026, and set a return date of January 14, 2026, for the underlying motion. NYSCEF Doc. No. 178.

### 5. Seventh Allegedly Frivolous Act by Goldberg: The January 13 TRO Application

144. On January 13, 2026, Goldberg again made an emergency application to the Appellate Division (the "Sixth TRO Application") to override the Supreme Court's denial of the Fifth TRO Application by granting it directly. *See* NYSCEF Doc. No. 197.

145. Goldberg and Graubard simply took the Fifth TRO Application and made an identical filing as the Sixth TRO Application to the Appellate Division. 4/14/26 tr. 353:9-17.

146. The purpose of the Sixth TRO Application was to obtain a stay of the enforcement of the Arrest Order. 4/14/26 tr. 353:24–354:3.

147. Nowhere in the Sixth TRO Application did Goldberg request leave to submit the redacted Account Records on Graubard's behalf under seal or for *in camera* review.

148. The Sixth TRO Application was undertaken primarily to delay or prolong the resolution of the litigation and to harass and maliciously injure Defendants.

149. Neither Graubard nor Goldberg offered any testimony or evidence tending to establish any legal basis for the emergency injunctive relief sought through the Sixth TRO Application.

150. The Appellate Division denied the application the next day, January 14, 2026. NYSCEF Doc. No. 197.

## III. Pre-Hearing Briefing

151. By order dated January 15, 2026, and with the consent of Defendants, Graubard, and Goldberg, the Court converted Defendants' motion sequence no. 8, which originally sought the commitment of Graubard for contempt of court, to a motion for frivolity sanctions pursuant to 22 NYCRR § 130-1.1. Defs.' Ex. 118 (NYSCEF Doc. No. 187); Defs.' Ex. 74 (NYSCEF Doc. No. 196), at 89:9-13; 3/23/26 tr. 14:24–15:1.

152. The Court permitted Defendants to include, as the basis for sanctions, all instances of frivolity, including Graubard's conduct on January 14, 2026, which the Court ruled was noncompliant with the Superceding Contempt Order and therefore frivolous. Defs.' Ex. 118 (NYSCEF Doc. No. 187); Defs' Ex. 74 (NYSCEF Doc. No. 196), at 89:13-17.

153. The Court set deadlines of February 11, 2026, for Defendants' motion papers; February 25, 2026, for answering papers; and March 11, 2026, for reply papers. Defs.' Ex. 118 (NYSCEF Doc. No. 187). The Court's order specifically stated that no adjournments of the

15

briefing schedule or return date would be permitted "except by the procedures set forth in the Court's Part 52 Rules." *Id.*

154. Defendants filed their notice of motion and supporting papers on February 11, 2026. NYSCEF Doc. Nos. 194–199.

155. Graubard filed his answering papers on February 25, 2026. NYSCEF Doc. Nos. 202–208.

156. Among the arguments made in his answering papers, Graubard argued that Defendants' motion sequence no. 8 was converted under "false pretenses," and the sanctions motion should be limited to the sufficiency of the bank records filed by Graubard on January 14, 2026. Defs.' Ex. 114 (NYSCEF Doc. No. 203), at ¶¶ 6–28.

157. With the Court's leave, Graubard subsequently filed superseding answering papers substituting the word "incorrect" for "false" in his characterizations of Defendants' counsel's statements but otherwise leaving that argument in place. NYSCEF Doc. No. 305 ¶¶ 6–28.

158. Goldberg belatedly filed his answering affirmation along with a single exhibit, the federal complaint in *Metaxas et al. v. Graubard et al.*, No. 25-cv-5844 (E.D.N.Y. Oct. 17, 2025), ECF No. 1, on February 26, 2026. NYSCEF Doc. Nos. 209–210. Goldberg did not seek leave of the Court pursuant to the Court's Part 52 Rules for his untimely filing, in violation of the Court's order setting the briefing schedule for the parties' sanctions motion briefing. Defs.' Ex. 118 (NYSCEF Doc. No. 187).

159. Because Goldberg did not offer any basis for his late filing, the Court disregards it.

160. Defendants filed their reply papers on March 11, 2026. NYSCEF Doc. Nos. 247–259.

## IV. **Witness Testimony at the Sanctions Hearing**

### A. **Mark David Graubard**

161. Graubard testified in these sanctions proceedings on March 23, March 25, March 30, April 14, April 27, and April 28, 2026.

162. Graubard's testimony on direct examination by Defendants' counsel was evasive and contradictory.

163. For example, Graubard claimed not to have personally "received" emails that were "received" by his email account. 3/23/26 tr. 52:16-20.

164. Graubard was similarly evasive about his communications with Sprei about these sanctions proceedings. On two separate hearing dates, when asked whether he had "spoken with anybody about [his] testimony in this matter", Graubard answered unequivocally: "No." 3/30/26 tr. 186:25–187:3; 4/14/26 tr. 249:5-14. When pressed, however, Graubard contradicted his prior testimony, revealing that he had in fact spoken with Sprei about his testimony in these proceedings multiple times. 4/14/26 tr. 252:3-5; 257:1-4, 258:22–259:1.

16

165. Graubard provided an incredible explanation for his prior inaccurate testimony: that he had construed counsel's question to be asking only whether *he* had affirmatively communicated *to* others, and not whether *they* had communicated *to him*. 4/14/26 tr. 250:25–251:2 ("A. You asked if I communicated with him. I did not. Q. Did he communicate with you, Mr. Graubard? A. Yes, yes.").

166. Graubard's conduct caused the Court to admonish Graubard to "[s]top playing with" the Court and counsel by answering questions evasively and then asking for them to be repeated. 4/14/26 tr. 304:15-16.

167. The Court expressly determined that Graubard's responses to "direct questions" from the Court concerning a $2 million check made out to Graubard from then-Supreme Court Justice Edward H. King were "wishy washy." 3/25/26 tr. 157:2-3.

168. Graubard claimed, incredibly, to have been "told" that King was a judge but not to have known on "which court or where." 3/30/26 tr. 233:25–234:1.

169. And when confronted with a text message he sent to then-Justice King on December 3, 2025, shortly before Justice Montelione issued the Superceding Contempt Order against Graubard, Defs.' Ex. 35 (NYSCEF No. 102), stating that then-Justice King was "playing with fire by not responding to" Graubard, Defs.' Ex. 152 (NYSCEF Doc. No. 288), Graubard testified incredibly that he merely intended to "prompt [King] to call" Graubard, and did not intend to threaten then-Justice King with consequences for failing to do so, 4/14/26 tr. 273:21–275:20.

170. Graubard's testimony about his lack of compunction about having Sprei—whom Graubard knew to be associated with Plaintiff and directing Plaintiff's counsel Seddio—also pay for and direct Graubard's own attorneys was similarly incredible. *See* 3/23/26 tr. 51:20-22; 3/30/26 tr. 207:2-12; 4/28/26 tr. 460:3-6.

171. The Court further finds incredible Graubard's testimony, 4/27/26 tr. 422:12-16, 4/28/26 tr. 486:24–487:6, that he simply wanted the opportunity to provide his IOLA Account Records in a non-public fashion as Graubard did not once request such relief from the Court. In addition, Graubard refused to respond to Defendants' August 18, 2025 discovery requests, which sought his IOLA records. *See* NYSCEF Doc. No. 75. Had Graubard legitimately wanted to provide the IOLA records to Defendants in a non-public fashion, and to not further delay the instant Action, he could have simply responded to Defendants' document requests.

172. The Court therefore finds that Graubard was not a credible witness and discounts his self-serving testimony accordingly.

**B.    Israel Goldberg, Esq.**

173. Goldberg testified in these sanctions proceedings on April 28, April 29, and May 11, 2026.

174. Goldberg's testimony on direct examination by Defendants' counsel was evasive and contradictory.

17

175. During Goldberg's testimony, the Court repeatedly warned Goldberg that his evasiveness on the stand could result in sanctions. *See* 4/28/26 tr. 507:6-13; 4/29/26 tr. 605:2–606:2, 607:8-14.

176. The Court specifically found that Goldberg was "doing a certain dance up on the bench" that consisted of "willful" and "dilatory tactics in reading and wasting time and not answering direct questions." 4/29/26 tr. 605:9-15.

177. Goldberg was also impeached multiple times.

178. Goldberg initially testified that he provided an adjournment request letter Goldberg addressed to Sprei "to make sure there were no typos in it." 4/28/26 tr. 509:25-510:3. Then Goldberg changed his testimony to state that he sent Sprei the letter because he needed Sprei to file the letter on the docket because Goldberg was unavailable to do so. *Id.* at 516:8-14. But ultimately it was established that Goldberg did in fact file the letter on the docket himself and only provided the copy to Sprei *after* the filing. *Id.* at 518:17–519:14; 521:9-13 (admitting Defendants' Exhibits 156–158 "because it's being used for impeachment of the witness's testimony read here before us in court").

179. Goldberg's testimony regarding his coordination with Sprei and Graubard to cause Justice Mostofsky's recusal as the presiding judge in this Action was also impeached—an impeachment that went unrebutted. 4/28/26 tr. 541:25-542:15 (Goldberg testifying that he had not had any conversation with Sprei "at any point in 2025 onward . . . about the fact that [Goldberg] ha[d] a relationship with [Justice] Mostofky"); 543:5-9 (admission that Goldberg knew at the time he was engaged, and before he noticed his appearance in this Action, that Justice Mostofsky was the presiding judge); *contra* Defs.' Ex. 187 (NYSCEF Doc. No. 325), at AG_001352 (audio message from Sprei to Gorkin: "I spoke to Izzy [Goldberg]. He says great idea osc [.] He will come in to case after[.] And judge has to recuse after so it's good."); Defs.' Ex. 200 (NYSCEF Doc. No. 337), at 808:9–809:1 (similar); 5/12/26 tr. 805:12–806:22 (testimony from Gorkin confirming same).

180. The Court found incredible Goldberg's testimony that he never responded to a pending motion against his client because Justice Mostofsky had recused himself. 4/28/26 tr. 548:10-22; 549:1-11 ("THE COURT: Because, because, a motion doesn't disappear into the air, because it's just assigned to another judge, and anyone whose admitted in the State of New York knows that.").

181. Goldberg further provided incredible and self-serving testimony about emails sent from his email account, claiming in one instance that he had been "hacked" and in another that he could not remember emails he sent but which looked like his writing. 4/29/26 tr. 649:14-16 ("THE COURT: I am disregarding the hacking, the compromise, the loss of memory, et cetera. When you say it looks like something I wrote.").

182. The Court instructed Goldberg to "cut it out" and stop providing "trick responses." *Id.* at 663:23–664:8.

183. Despite the Court's instructions, Goldberg went on to provide an incredible explanation of the legal term "ex parte". *Id.* at 677:2-21 ("THE COURT: We're going to take a look and

18

Case 1:25-cv-05844-EK-PCG    Document 162-7    Filed 07/21/26    Page 58 of 60 PageID #: 2008

see if his face is red; it's not. Okay, that's a statement being made that has no basis in law. In fact, in realty. Ex-parte means the other side need not know, everyone knows that, especially someone who has been licensed for decades. Anyone whose claiming that it means something else, I don't know what's going on, ma[ybe] it was the hacking, who knows.").

184. Goldberg's explanation for his lack of compunction regarding his communications and receipt of draft court filings from a party adverse to his client was similarly incredible. 5/11/26 tr. 693:18–695:5; *see also* 687:21–688:1; 691:3-12; 702:15-23

185. Goldberg's preparation for and approach to his testimony did not align with the seriousness of this Court or these proceedings. 4/29/26 tr. 641:11-20.

186. The Court therefore finds that Goldberg was not a credible witness and discounts his self-serving testimony accordingly.

187. Based on Goldberg's *pro se* status, the Court permitted Goldberg to offer narrative testimony in his defense. 5/11/26 tr. 727:19-21.

188. Because Goldberg's narrative testimony was irrelevant, the Court sustained Defendants' standing objection and struck the entirety of Goldberg's testimony. *See* 5/11/26 tr. 727:25–732:2. The Court further provided an extensive explanation of the irrelevance and impropriety of Goldberg's narrative testimony. *Id.* 737:6–738:3.

189. Accordingly, the documentary evidence and testimony marshalled by Defendants concerning Goldberg's alleged frivolity went completely unrebutted by Goldberg.

## C.    Yeshaya Gorkin, Esq.

190. Gorkin was called and offered as a witness by Defendants' counsel, and he gave testimony on May 12, 2026.

191. Both Graubard and Goldberg declined to cross-examine Gorkin. 5/12/26 tr. 870:5-8.

192. Accordingly, Gorkin's testimony went completely unrebutted by Graubard and Gorkin.

## V.    Defendants' Attorneys' Fees

193. Defendants submitted detailed billing records, along with an evidentiary affirmation from counsel, describing the attorneys' fees incurred by Defendants as a result of each frivolous act by Graubard and/or Goldberg. *See* NYSCEF Doc. Nos. 198–199.

194. Goldberg has not disputed the reasonableness of Defendants' attorneys' fees, rates, or a single of Defendants' provided fee entries.

195. Graubard has not disputed the billing rates of one of the law firms representing Defendants as co-counsel: Benesch Friedlander Coplan & Aronoff LLP. Graubard also has not specifically disputed 116 of Defendants' 211 billing entries. *Compare* NYSCEF Doc. No. 201

19

(listing 211 total billing entries), *with* NYSCEF Doc. No. 305 ¶¶ 122–123 (listing 95 disputed billing entries).

196.  Graubard has challenged the reasonableness of the billing rates of one of the law firms representing Defendants as co-counsel: Selendy Gay PLLC ("Selendy").

197.  The billing rates for the Selendy attorneys who worked on this matter range from $920 to $1,800 per hour. *See* NYSCEF Doc. No. 199; NYSCEF Doc. No. 247 ¶ 70 n.7.

198.  The billing rates for the non-attorney Selendy staff who performed legal services in this matter range from $445 to $700 per hour. NYSCEF Doc. No. 199.

199.  Based on the evidence and authorities submitted by Defendants, *see* NYSCEF Doc. No. 247 ¶¶ 65–73; NYSCEF Doc. Nos. 257–259, the Court finds that Selendy's rates are reasonable and commensurate with comparable legal services in New York City, especially given the unique procedural complexities of this dispute.

200.  Graubard also contends that Defendants' counsel billed excessive time, including purportedly duplicative time by multiple attorneys, to certain tasks. NYSCEF Doc. No. 305 ¶¶ 122–123.

201.  Having reviewed the billing records submitted by Defendants, NYSCEF Doc. No. 199, as well as Defendants' counsel's affirmation explaining the nature of each set of tasks, NYSCEF Doc. No. 198, the Court finds that the hours billed by Defendants' counsel were reasonable and commensurate with the nature of the work performed.

202.  Significant time and labor were required by Defendants' counsel to overcome the obfuscation and procedural improprieties by Graubard and Goldberg and finally learn the truth about what happened to the Deposits.

203.  The Action and these sanctions proceedings involved difficult questions of law, legal procedure, and fact, including the effect of an apparently strategically timed discontinuance on the Court's authority to compel remedial disclosure and parsing of voluminous documentary, financial, and audio evidence.

204.  Navigating these issues required a high degree of skill, attention, and time to address the problems repeatedly and intentionally presented by Graubard, Sprei, and their attorneys and agents.

205.  Defendants' lead counsel (Jennifer Selendy, Lauren Zimmerman, and Babak Ghafarzade) have substantial experience (ranging from 10 to 30 years) and legal ability, and the co-counsel law firms have strong reputations in the industry.

206.  The amount of money involved—$2 million, plus hundreds of thousands of dollars in lost interest and in legal fees—is considerable.

207.  Counsel's work has already benefited Defendants by obtaining critical information that had been actively concealed from them for nearly a year. While the fee award they seek will

20

Case 1:25-cv-05844-EK-PCG   Document 162-7   Filed 07/21/26   Page 60 of 60 PageID #: 2010

not make them whole, it would provide an additional benefit to Defendants from counsel's work in this matter.

208. Defendants have submitted unrebutted evidence that the fees charged in this case are commensurate with those charged for similar services. *See* NYSCEF Doc. No. 247 ¶¶ 66–72; NYSCEF Doc. Nos. 257–259 (prior fee awards).

Dated: New York, NY
June 26, 2026

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

By: /s/ *Lauren J. Zimmerman*

Lauren J. Zimmerman
1155 Avenue of the Americas, Floor 26
New York, NY 10036
Tel: 312-212-4949
lzimmerman@beneschlaw.com

Jennifer M. Selendy
Babak Ghafarzade
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY  10104
Tel: 212-390-9000
jselendy@selendygay.com
bghafarzade@selendygay.com

*Attorneys for Defendants Angelos Metaxas and Pertshire Investments LP*

21