Metaxas et al. v. Graubard et al., No. 1:25-cv-05844 (EK) (PCG) (E.D.N.Y.)

# EXHIBIT A

NYSCEF Doc. 11 — Plaintiffs' Brief of April 11, 2025

Case 1:25-cv-05844-EK-PCG   Document 163-2   Filed 07/22/26   Page 2 of 20 PageID #: 2119

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

OLDEN LLC,

               Plaintiff,

       v.

ANGELOS METAXAS and PERTSHIRE
INVESTMENTS LP,

               Defendants,

       and

DAVID GRAUBART,

               Nominal Defendant

Index No. 505819/2025

Motion Sequence No. 1

## DEFENDANTS ANGELOS METAXAS AND PERTSHIRE INVESTMENTS LP'S ANSWERING BRIEF IN RESPONSE TO THE ORDER TO SHOW CAUSE

Date:  April 11, 2025

Jennifer M. Selendy
Lauren J. Zimmerman
Babak Ghafarzade
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY  10104
Tel: 212-390-9000
jselendy@selendygay.com
lzimmerman@selendygay.com
bghafarzade@selendygay.com

*Attorneys for Defendants Angelos Metaxas
and Pertshire Investments LP*

## **TABLE OF CONTENTS**

**Pages**

PRELIMINARY STATEMENT ......................................................................................................1

STATEMENT OF FACTS ............................................................................................................4

      A.     Defendants Deposit $2 Million in Graubard's Interest on Lawyer Account Solely to Show Their Liquidity for a Potential Investment ....................................4

      B.     Metaxas, Pertshire, Maamari, and El-Khoury Demand the Return of Their Escrow Deposits, but Graubard Conspires with Sprei and Others to Hold The Money Hostage ........................................................................................................5

      C.     Graubard and Sprei Admit to Holding Defendants' Escrow Deposits Hostage and Demand Unwarranted Releases from Liability for Their Misconduct............................................................................................................7

      D.     Defendants Contact Law Enforcement, Then Olden LLC Commences This Baseless Action Interfering with the Plain Terms of the Escrow Agreements ......................................................................................................9

ARGUMENT.................................................................................................................................11

I.     Graubard Should Be Required to Deposit the Full $2 Million with the Clerk of Court and Prove It Has, At All Relevant Times, Been Held in His IOLA ........................11

II.     Olden LLC Should Be Required to Post a Mandatory Undertaking of $180,000 Initially, Subject to Future Increase as Needed ...............................................................13

CONCLUSION.............................................................................................................................14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Other Authorities**

*Berichi v. Allan Sloan, P.C.*,
121 A.D.2d 884 (1st Dept. 1986) ............................................................................. 12

*Bonded Concrete, Inc. v. Town of Saugerties*,
42 A.D.3d 852 (3d Dept. 2007) ............................................................................... 14

*Congregation Erech Shai Bais Yosef, Inc. v. Werzberger*,
189 A.D.3d 1165 (2d Dept. 2020) ........................................................................... 11

*Lelekakis v. Kamamis*,
103 A.D.3d 693 (2d Dept. 2013) ............................................................................. 13

*Margolies v. Encounter, Inc.*,
42 N.Y.2d 475 (1977) .............................................................................................. 13

*Nat'l Union Fire Ins. Co. v. Proskauer Rose Goetz & Mendelsohn*,
165 Misc. 2d 539 (Sup. Ct. N.Y. Cty. 1994), *aff'd,*
227 A.D.2d 106 (1st Dept. 1996) ............................................................................. 12

*NML Cap. v. Republic of Argentina*,
17 N.Y.3d 250 (2011) .............................................................................................. 13

*Sasidharan v. Piverger*,
145 A.D.3d 814 (2d Dept. 2016) ............................................................................. 11

*Schwartz v. Gruber*,
261 A.D.2d 526 (2d Dept. 1999) ............................................................................. 13

*Shu Yiu Louie v. David & Chiu Place Rest.*,
261 A.D.2d 150 (1st Dept. 1999) ............................................................................. 13

*Tahmin v. Interlaken Owners, Inc.*,
228 A.D.3d 983 (2d Dept. 2024) ............................................................................. 13

**Rules**

CPLR 308 ................................................................................................................... 10

CPLR 3012(b) ............................................................................................................ 10

CPLR 5004(a) ............................................................................................................ 13

ii

Case 1:25-cv-05844-EK-PCG     Document 163-2     Filed 07/22/26     Page 5 of 20 PageID
                                       #: 2122

Defendants Angelos Metaxas ("Metaxas") and Pertshire Investments LP ("Pertshire") respectfully submit this answering brief ("Brief") in response to the Court's February 19, 2025 order to show cause (Doc. 7). The underlying facts supporting this Brief are set forth in the accompanying affirmations of Lauren J. Zimmerman ("Zimmerman Aff."), Angelos Metaxas ("Metaxas Aff."), and Javier Macaya ("Macaya Aff.").

## PRELIMINARY STATEMENT

This frivolous action is a brazen attempt to dress up embezzlement and extortion as a legal dispute. Defendants Metaxas and Pertshire have never interacted or transacted with Plaintiff Olden LLC or its manager, Johnathan Rubin. Until they were served with process, Defendants had no idea that Plaintiff or its manager even existed. To the extent that Plaintiff's meager filings show anything, it is that Plaintiff and Rubin are willing to mislead the Court and have colluded with Nominal Defendant David Graubard[1] and others to hold $2 million of Defendants' money hostage. After Defendants reported Graubard's misconduct to local law enforcement, Plaintiff commenced this sham litigation, based on Rubin's false affirmation, to pretend there were legitimate competing claims to Defendants' money. Although there are none, Defendants nonetheless do not contest the issuance of a preliminary injunction here as long as it requires (1) Graubard to deposit the $2 million he has stolen from Defendants with the Clerk of Court and provide documentary evidence and a sworn affidavit establishing that Defendants' funds have at all relevant times been held in his interest on lawyer account, and (2) Olden LLC to post a bond of at least $180,000 representing Defendants' lost interest at the statutory 9% annual rate on the funds Graubard, and apparently Olden LLC and Rubin, have unlawfully withheld from Defendants and possibly dissipated.

---

[1] Plaintiff's papers erroneously spell Nominal Defendant's name "Graubart." The correct spelling, "Graubard," is used herein.

Case 1:25-cv-05844-EK-PCG     Document 163-2     Filed 07/22/26     Page 6 of 20 PageID #: 2123

As this Brief and the April 23, 2025 hearing will establish, there is no question that Metaxas and Pertshire have exclusive and preclusive rights to the $2 million at issue. In December 2024, Metaxas and Pertshire each engaged Graubard as their escrow agent and transferred the funds to him to hold in escrow for their sole benefit and solely to demonstrate their liquidity in connection with a potential investment opportunity with non-party Yeschiel Shimon "Sam" Sprei ("Sprei"). The deposits were made pursuant to escrow agreements which were each exclusively between a depositor (*i.e.*, Metaxas or Pertshire) and Graubard. Despite the unambiguous contractual terms, which provide that no one other than the depositor has any rights to the escrowed funds which must be returned on demand, Graubard failed to honor multiple express written demands by Metaxas and Pertshire in mid-January and repeated demands since that time both for the return of the funds and proof that the funds have not been unlawfully transferred or expended.

Instead, Graubard employed a multitude of stall tactics to avoid his obligation to return the funds, likely because he no longer has them. To cut through the excuses, Metaxas and Pertshire engaged the undersigned counsel to contact Graubard about meeting his legal obligations. In response, Graubard brazenly admitted that he and Sprei were intentionally interfering with and frustrating Metaxas's and Pertshire's contractual rights under the escrow agreements. Graubard, an attorney whom Metaxas and Pertshire had engaged as *their* escrow agent, shockingly referred to Sprei as *his* client and claimed that his duties to Sprei overrode his contractual and fiduciary obligations to return the escrow deposits. Before this point, Graubard had *never disclosed* that he served as Sprei's counsel. Despite Metaxas's and Pertshire's unconditional rights to their escrow deposits, both Graubard and Sprei demanded blanket releases for Sprei from any potential future claims against him before Graubard would return the $2 million.

2

Case 1:25-cv-05844-EK-PCG Document 163-2 Filed 07/22/26 Page 7 of 20 PageID #: 2124

After Metaxas and Pertshire refused to submit to this attempted extortion and reported the unlawful withholding of their funds to the Manhattan District Attorney's Office, Plaintiff Olden LLC commenced this action by summons and notice and obtained an *ex parte* temporary restraining order preventing Graubard from returning the funds until after a hearing on the requested preliminary injunction. Like Sprei, however, Olden LLC and its manager, Rubin, are not parties to or third-party beneficiaries of any of the escrow agreements. As noted above, neither Metaxas nor Pertshire had ever interacted with or even known of Olden LLC or Rubin before being served with process in this action. Nor has Olden LLC or Rubin ever requested a release from Metaxas or Pertshire or made any claim to the escrow deposits before filing the instant action. From all outward appearances, Olden LLC and Rubin are acting as fronts to help Graubard and Sprei continue holding the $2 million hostage based on false statements and specious arguments. Metaxas and Pertshire intend to assert claims against these wrongdoers and anyone working in concert with them at the appropriate time, whether in the instant action or another, and reserve all rights to seek appropriate sanctions, including attorney's fees, for Olden LLC's and Rubin's abuse of the legal process and false statements.

To ensure that Defendants' funds are not dissipated while they defend against this action and pursue their own claims, Defendants do not contest the issuance of a protective order that compels Graubard to both deposit the $2 million with the Court and demonstrate that their funds have at all relevant times been held in his interest on lawyer account as required by the escrow agreements. An undertaking from Plaintiff of at least $180,000 is also warranted to reflect one year's worth of lost interest on Metaxas's and Pertshire's funds at the statutory 9% annual rate.

3

Case 1:25-cv-05844-EK-PCG    Document 163-2    Filed 07/22/26    Page 8 of 20 PageID #: 2125

**STATEMENT OF FACTS**

**A.** **Defendants Deposit $2 Million in Graubard's Interest on Lawyer Account Solely to Show Their Liquidity for a Potential Investment**

In or around November 2024, Metaxas, Pertshire, and two business associates, Reda Maamari and Phillip Elias Farid El-Khoury, began to explore in earnest a potential investment opportunity with non-party Sprei in a company called "Surf 9" (the "Potential Investment"). Metaxas Aff. ¶ 2; Macaya Aff. ¶ 2. To demonstrate their good-faith interest in exploring the Potential Investment, at Sprei's suggestion, Metaxas, Pertshire, Maamari, and El-Khoury agreed to deposit cash in an escrow account to show they had sufficient liquidity to complete the Potential Transaction, if they so chose. *See* Zimmerman Aff. Exs. 1–4 ¶ 3. Metaxas, Pertshire, Maamari, and El-Khoury each separately engaged Graubard, who held himself out as an independent and trustworthy attorney, to serve as their escrow agent, and they entered into four materially identical escrow agreements, all governed by New York law, with Graubard on December 5 and 6, 2024 (the "Escrow Agreements"). *Id.* Exs. 1–4 ¶¶ 14–15.

Under the Escrow Agreements, Metaxas, Pertshire, Maamari, and El-Khoury each agreed to deposit funds (the "Escrow Deposits") to Graubard's interest on lawyer account ("IOLA") ending in -1102 at Valley National Bank located at 2054 86th Street, Brooklyn, NY 11214. *Id*. Exs. 1–4 ¶ 2. The "sole purpose" of the Escrow Deposits was to "establish" that each depositor "ha[d] available cash equal to" the amount of the Escrow Deposit. *Id.* Exs. 1–4 ¶ 3. The Escrow Agreements expressly grant each depositor the unconditional right to have their Escrow Deposits returned upon demand. Paragraph 4 of each Escrow Agreement provides, in bold capital letters, "The Escrow Amount will be returned to the Escrowee,[2] or its designee, upon Escrowee's demand,

---

[2] Although the terms "escrow agent" and "escrowee" are typically used interchangeably to refer to "[t]he third-party depositary of an escrow," *Escrow agent*, Black's Law Dictionary (12th ed.

4

Case 1:25-cv-05844-EK-PCG Document 163-2 Filed 07/22/26 Page 9 of 20 PageID #: 2126

*which return shall be made in Escrowee's sole and absolute discretion*, in accordance [with] paragraph 5 of this Escrow Agreement." *Id.* Exs. 1–4 ¶ 4 (capitalization altered; some bold removed; italics added). Paragraph 5 provides that Graubard "shall" return an Escrow Deposit by wire transfer within two business days of an email requesting such return. *Id.* Exs. 1–4 ¶ 5.

Other provisions of the Escrow Agreements further cement Metaxas's and Pertshire's absolute control over and right to their Escrow Deposits. Paragraph 6 requires Graubard "to release and return the Deposit or any part thereof as the case may be, pursuant to and in strict accordance with all of the terms and conditions of this Escrow Agreement." *Id.* Exs. 1–4 ¶ 6. Graubard expressly "warrant[ed] and agree[d] that *only the Escrowee has any right to recover or direct the payment or distribution of the Escrow Amount or any part thereof*." *Id.* (emphasis added). Graubard further expressly "acknowledge[d], warrant[ed] and agree[d] that [he] has no right to, and shall not release, distribute, pledge, deposit or hypothecate any part of the Escrow Deposit for any reason or in any way whatsoever without the express prior written permission and consent of Escrowee." *Id.* Exs. 1–4 ¶ 7.

The Escrow Deposits totaled $3,250,000—Metaxas, Pertshire, and Maamari each wired $1,000,000 to Graubard, and El-Khoury wired him $250,000. *Id.* Exs. 5–8.

> **B.** **Metaxas, Pertshire, Maamari, and El-Khoury Demand the Return of Their Escrow Deposits, but Graubard Conspires with Sprei and Others to Hold The Money Hostage**

In early January 2025, Metaxas, Pertshire, Maamari, and El-Khoury decided not to pursue the Potential Investment. Metaxas Aff. ¶ 3; Macaya Aff. ¶ 3. On January 9 and 10, 2025, in

---

2024), each Escrow Agreement expressly defines its *beneficiary* as "Escrowee" and defines Graubard as "Escrow Agent." *See* Zimmerman Aff. Exs. 1–4. Accordingly, where quoted provisions of the Escrow Agreements refer to "Escrowee," they should be understood to mean the beneficiary of such Escrow Agreement, *i.e.*, one of Defendants, Maamari, or El-Khoury.

5

Case 1:25-cv-05844-EK-PCG    Document 163-2    Filed 07/22/26    Page 10 of 20 PageID #: 2127

accordance with Paragraph 4 of the Escrow Agreements, which gave them the "sole and absolute discretion" to obtain the return of their Deposits, each depositor (or its designee) sent Graubard an email (together, the "Demands") demanding the return of their respective Escrow Deposits by January 15, and provided individualized instructions for the return wire transfers. *See* Zimmerman Aff. Exs. 9–12. Under paragraphs 4 and 5 of the Escrow Agreements, nothing more was required to trigger Graubard's unqualified obligation to return the Escrow Deposits.

Instead of complying with his unqualified contractual obligations to return the Escrow Deposits, however, Graubard made misleading statements and, on information and belief, conspired with Sprei and others to hold the funds hostage, likely because Graubard had unlawfully exhausted or transferred the Escrow Deposits out of his IOLA. On January 16, when Defendants inquired into the status of their funds, Graubard falsely blamed a "computer problem" at his bank for the delay in returning the Escrow Deposits, writing, "Unfortunately, some of the New York banks have been hit with a computer problem that has shut down operations. We are working to see what else can be done to get wires out." *Id.* Ex. 13, at 3. When an advisor to Defendant Pertshire, Javier Macaya, emailed Graubard on January 17 to "confirm that the funds ha[d] been wired," *Sprei* responded, falsely, "Bank is still down." *Id.* Ex. 14 at 11.

Over the following weeks, Graubard repeatedly failed to return any portion of Defendants' $2 million Escrow Deposits and engaged in transparent stall tactics. Macaya again emailed Graubard on January 21, demanding the return of Pertshire's Escrow Deposit, and Graubard responded the same day acknowledging his obligation to do so and representing that he would "send the confirmation as soon as it is done." *Id.* at 6. On January 21, 22, and 23, Graubard and his agent Chaskel Frankel falsely represented to Metaxas and Pertshire that their Escrow Deposits had been returned by wire transfer. *Id.* at 4–5. However, no wire was sent. On the morning of January 27,

6

Case 1:25-cv-05844-EK-PCG   Document 163-2   Filed 07/22/26   Page 11 of 20 PageID #: 2128

Metaxas again emailed Graubard for an update on the return of his Escrow Deposit. *Id.* at 2. In response, Graubard's agent Frankel falsely represented that the wire would be "out today." *Id.* at 1. Notably, *not once in any of these interactions* did Graubard contest his contractual obligation to return the Escrow Deposits or suggest that Olden LLC or Sprei had any right to interfere with the return of the funds. Instead, Graubard repeatedly committed and claimed to return Defendants' Deposits.

After two weeks of false representations about the return of their funds, Metaxas, Pertshire, El-Khoury, and Maamari, through counsel, sent Graubard a letter on January 27, demanding the immediate return of each Escrow Deposit in full, with interest at the New York statutory rate of 9% annually from January 15, 2025, and documentation establishing that the Escrow Deposits were currently held, in full, in Graubard's IOLA as required by the Escrow Agreements. *Id.* Ex. 15. That evening, the Escrow Deposits of El-Khoury and Maamari were returned in full, though without any interest reflecting the unauthorized twelve-day delay in repayment. The $2 million Escrow Deposits of Defendants Pertshire and Metaxas, however, remain outstanding.

### C.    Graubard and Sprei Admit to Holding Defendants' Escrow Deposits Hostage and Demand Unwarranted Releases from Liability for Their Misconduct

On January 29, two days after returning El-Khoury's and Maamari's Escrow Deposits and after counsel for Defendants sent the demand letter to Graubard, Graubard made an about-face from his prior commitments over the preceding two weeks to return to the Escrow Deposits. For the first time, Graubard stated that he would not return Metaxas's and Pertshire's  Escrow Deposits (despite returning those of El-Khoury and Maamari). *Id.* Ex. 16.[3] Rather than acknowledging his contractual and fiduciary duties to *Defendants* as their escrow agent, Graubard claimed *for the first*

---

[3] Although Graubard's letter is dated January 28, it was not sent to Defendants' counsel until January 29. *See* Zimmerman Aff. Ex. 17, at 4.

Case 1:25-cv-05844-EK-PCG    Document 163-2    Filed 07/22/26    Page 12 of 20 PageID #: 2129

*time* to be representing *his* "client," later revealed to be Sprei, who purportedly "require[d] a general release" of liability from Metaxas and Pertshire before Graubard would fulfill his legal obligation to return the Escrow Deposits. *Id.* At no point in Metaxas and Pertshire's dealings with Graubard and Sprei did either of them indicate that Graubard served as Sprei's counsel, let alone that Graubard would put Sprei's interests ahead of his duties to Defendants as their escrow agent. In subsequent correspondence the same day, Graubard ignored repeated requests from counsel for Defendants to confirm that the Escrow Deposits were in fact being held in the IOLA, as required by the Escrow Agreements. Instead, Graubard continued to stall, writing, "I am asking  you to indulge me another day[] to deal with both my client's release issue and the funds transfer." *Id.* Ex. 17, at 1. Indeed, to this day, and despite repeated requests from counsel, *see, e.g.*, *id.* Ex. 15, at 2; *id.* Ex. 19, at 1, Graubard has refused to provide proof that the Escrow Deposits have not been unlawfully transferred or dissipated.

On January 30, counsel for Metaxas and Pertshire received a letter from Sprei's "litigation counsel," Ethan A. Kobre, further establishing the brazen, unlawful collusion between Graubard and Sprei. *Id.* Ex. 18. In that letter, Kobre stated that Sprei had "instructed Mr. Graubard not to release the escrowed funds." *Id.* Kobre reiterated the proposed hostage deal: "Your clients want the escrowed funds. My client wants certainty that your clients will not pursue meritless claims against him. All that's needed for everyone's satisfaction is a release in my client's favor." *Id.* (emphasis omitted). Defendants' counsel responded to Kobre's letter on January 31 reiterating Graubard's unqualified duty to return the Escrow Deposits, noting Graubard's repeated refusal to provide proof that the funds remained in his IOLA, and flagging the impropriety of Graubard's and Sprei's conditioning the return of funds on any releases in direct violation of the Escrow Agreements. *Id.* Ex. 19.

8

Case 1:25-cv-05844-EK-PCG    Document 163-2    Filed 07/22/26    Page 13 of 20 PageID #: 2130

**D.** **Defendants Contact Law Enforcement, Then Olden LLC Commences This Baseless Action Interfering with the Plain Terms of the Escrow Agreements**

Metaxas and Pertshire refused to give in to Graubard and Sprei's improper demands and, convinced that criminal conduct was afoot, on January 31, 2025, reported the misconduct to the Manhattan District Attorney's office ("DA's Office"). Zimmerman Aff. ¶ 22. On or about February 12, when on information and belief Graubard and Sprei learned that Metaxas and Pertshire had reported their conduct to law enforcement, Sprei's attorney, Kobre, again contacted counsel for Defendants in an attempt to shield his client from criminal prosecution and extort Metaxas and Pertshire by demanding a release in return for the escrowed funds. Kobre wrote, "Mr. Graubard no longer wishes to hold the escrowed funds. As such, my client [Sprei] will move tomorrow to deposit the money into the court. My client remains willing to have the escrowed funds sent to you or your client upon receipt of a release. The choice is yours." *Id.* Ex. 20, at 2.

When counsel for Metaxas and Pertshire declined Kobre's extortionate offer and confirmed the involvement of local law enforcement, Olden LLC—not Sprei, contrary to Kobre's February 12 threat—commenced this action in an apparent effort to manufacture a legal dispute to give cover to their improper conduct. Doc. 1. Neither Olden LLC nor its manager, Johnathan Rubin, were known to Defendants before this action was filed, *see* Metaxas Aff. ¶ 4; Macaya Aff. ¶¶ 4–5, and like Sprei, neither has any rights over or interests in Defendants' Escrow Deposits.

Olden LLC and Rubin appear to be nothing more than fronts to help facilitate Sprei and Graubard's theft of $2 million from Defendants. Indeed, Rubin's affirmation in support of Olden LLC's motion by order to show cause for a temporary restraining order ("TRO") parrots the same pretextual arguments made in the January 30 letter from Sprei's counsel. Rubin states that, after Defendants made "threats of litigation" against him and Olden LLC, Rubin "asked that Defendants provide [him] with a release before the Escrowed Funds were returned" and directed Graubard not

9

Case 1:25-cv-05844-EK-PCG   Document 163-2   Filed 07/22/26   Page 14 of 20 PageID #: 2131

to "release the Escrowed Funds before the dispute is resolved," which directive Rubin claims triggered Graubard's "fiduciary duty" to refrain from returning the Escrow Deposits.[4] Doc. 4 ¶¶ 10–12. Apart from being false—Defendants have never interacted or communicated with Rubin—these statements perfectly match the assertions made by counsel for *Sprei* in his January 30 letter to Defendants' counsel, which states that, based on purported "threats" from Defendants, *Sprei* "object[ed] to the release of the escrow," demanded "a release in [*Sprei's*] favor," and "instructed Mr. Graubard not to release the escrowed funds" based on Graubard's purported "fiduciary duties" to *Sprei*. Doc. 5.

Part 72 (Mostofsky, J.) granted the TRO on February 19, 2025, the same day it was requested, and scheduled a show-cause hearing before this Court on April 23, 2025. Doc. 7. At the request of Plaintiff's counsel, Defendants' counsel accepted service of the summons with notice and order to show cause via email on February 23, 2025, and filed notices of appearance on March 5, 2025. *See* Docs. 8–10.

The deadline for Plaintiff to serve its complaint pursuant to CPLR 3012(b) was March 25, 2025. *Plaintiff has failed to do so and is thus in default.*[5] Defendants have not yet moved to dismiss the action on this ground and reserve their right to do so at the appropriate time. Defendants Metaxas and Pertshire (along with non-parties Maamari and El-Khoury) fully intend to file affirmative

---

[4] Rubin's assertion that Defendants have "unleashed a campaign to terrorize and bully" him, including "through the filing of false and malicious criminal complaints," Doc. 4 ¶ 14, is categorically false. Defendants have not "fil[ed]" any criminal process, nor could they. As noted above, Defendants' counsel reported the relevant misconduct to the DA's Office. The undersigned counsel also provided Plaintiff's counsel with the contact information for the Assistant District Attorney investigating the matter. Zimmerman Aff. ¶ 23. Any further investigatory or prosecutorial decisions will of course be made independently by the DA's Office.

[5] It is unclear whether Plaintiff is also in default of its obligation to personally serve Graubard with a copy of the Order to Show Cause by March 7, 2025, as no proof of service has been filed. *See* Doc. 7, at 2; CPLR 308.

claims (whether in this action in response to any filed complaint, or a separate action) to hold Nominal Defendant Graubard, Plaintiff Olden LLC, Sprei, and Rubin, and any others who acted in concert with them responsible for interfering with Defendants' contractual rights and personal property. Metaxas and Pertshire also reserve all rights to seek appropriate sanctions, including attorney's fees, from Olden LLC and Rubin for their abuse of court process and false statements in this action.

## ARGUMENT

To "maintain the status quo and prevent the dissipation of [the Escrow Deposits] that could render a judgment ineffectual," *see Congregation Erech Shai Bais Yosef, Inc. v. Werzberger*, 189 A.D.3d 1165, 1167 (2d Dept. 2020) (citation omitted), Defendants do not contest Plaintiff's request for the issuance of a preliminary injunction as long as it both (1) compels Graubard to deposit the full $2 million with the Court (as contemplated by the TRO) as well as demonstrate with documentary evidence and a sworn declaration that the entire $2 million has at all relevant times been held in his IOLA, and (2) requires Plaintiff to post an undertaking of at least $180,000 to account for at least one year's worth of lost interest on Defendants' withheld $2 million at the statutory rate of 9% per annum.

### I.   Graubard Should Be Required to Deposit the Full $2 Million with the Clerk of Court and Prove It Has, At All Relevant Times, Been Held in His IOLA

"An escrow agent not only has a contractual duty to follow the escrow agreement, but additionally becomes a trustee of anyone with a beneficial interest in the trust with a duty not to deliver the property held in escrow to anyone except upon strict compliance with the conditions imposed in the escrow agreement." *Sasidharan v. Piverger*, 145 A.D.3d 814, 815 (2d Dept. 2016) (cleaned up). "Escrow agents are considered to be trustees" whose "primary objective … should

11

Case 1:25-cv-05844-EK-PCG    Document 163-2    Filed 07/22/26    Page 16 of 20 PageID #: 2133

be preservation of the escrow funds." *Nat'l Union Fire Ins. Co. v. Proskauer Rose Goetz & Mendelsohn*, 165 Misc. 2d 539, 551 (Sup. Ct. N.Y. Cty. 1994), *aff'd*, 227 A.D.2d 106 (1st Dept. 1996).

Where, as here, there is a dispute over funds held in escrow by a party to the litigation, a preliminary injunction should be issued requiring the escrow agent to deposit the funds with the Clerk of Court to prevent the dissipation of the funds at issue. *E.g.*, *Berichi v. Allan Sloan, P.C.*, 121 A.D.2d 884, 885 (1st Dept. 1986). There can be no reasonable opposition to doing so here given that Plaintiff's proposed Order to Show Cause expressly requests that the Court direct Graubard "to hold the Escrowed Funds in his escrow account (*or deposit the Escrowed Funds with the Court*) pending further order of this Court *or agreement of the parties*." Doc. 2, at 2 (emphasis added). The Order to Show Cause issued by Part 72 contains the same language. Doc. 7, at 2. Here, the parties are in agreement that Graubard should deposit the Escrow Deposits with the Court,[6] and the law supports such a measure to ensure that they are not unlawfully dissipated.

Graubard should also be required to demonstrate that Defendants' full $2 million was never unlawfully transferred or dissipated following Metaxas's and Pertshire's transfers of their funds to Graubard pursuant to the Escrow Agreements. Through his dishonest and obstructionist conduct to date, Graubard has forfeited any presumption of good faith or honest dealing. Compelling Graubard to prove to the Court, through both documentary evidence and a sworn affidavit, that he remained in possession of the entirety of Metaxas's and Pertshire's Escrow Deposits at all relevant

---

[6] Graubard is legally required, pursuant to the Escrow Agreements, to return Defendant's Deposits, and has been since January 15, 2025. Given Graubard's refusal to fulfill his legal and fiduciary obligations, however, and Plaintiff's interference, through the instant litigation, with Defendant's contractual rights, depositing the funds with the Clerk of Court will at least ensure that the funds are not dissipated pending a resolution of the parties' dispute. *See Berichi*, 121 A.D.2d at 885 (directing, where plaintiff alleged conversion of funds held in escrow, that defendants "deposit $100,000 with the County Clerk, to prevent the dissipation of these funds pending trial").

12

Case 1:25-cv-05844-EK-PCG    Document 163-2    Filed 07/22/26    Page 17 of 20 PageID #: 2134

times and in accordance with the Escrow Agreements and his fiduciary obligations is the only way to ensure that they have not been and will not be spent, stolen, or hidden.

## II. Olden LLC Should Be Required to Post a Mandatory Undertaking of $180,000 Initially, Subject to Future Increase as Needed

A trial court may not grant a plaintiff's "request for a preliminary injunction without requiring [the plaintiff] to give an undertaking which would 'reimburse the defendant for damages sustained if it [were] later finally determined that the preliminary injunction was erroneously granted.'" *Schwartz v. Gruber*, 261 A.D.2d 526, 527 (2d Dept. 1999) (quoting *Margolies v. Encounter, Inc.*, 42 N.Y.2d 475, 477 (1977)). The amount of an undertaking "must be rationally related to the damages the [defendants] might suffer if the court later determines that the relief to which the undertaking relates should not have been granted." *Tahmin v. Interlaken Owners, Inc.*, 228 A.D.3d 983, 985 (2d Dept. 2024). "Lost interest on the funds that were restrained is … a proper element of damages covered by an undertaking in connection with a preliminary injunction." *Shu Yiu Louie v. David & Chiu Place Rest.*, 261 A.D.2d 150, 152 (1st Dept. 1999); *accord Lelekakis v. Kamamis*, 103 A.D.3d 693, 697 (2d Dept. 2013).

Here, the undertaking must account for lost interest on the $2 million during the pendency of the preliminary injunction. Under New York law, interest is recoverable upon an award due to a breach of performance of a contract even if the contract is silent on it. *See NML Cap. v. Republic of Argentina*, 17 N.Y.3d 250, 258 (2011) ("If the parties failed to include a provision in the contract addressing the interest rate that governs after principal is due or in the event of a breach, New York's statutory rate will be applied."). Because the Escrow Agreements do not contain a provision governing interest in the case of breach, Defendants are entitled to the statutory 9% annual interest rate, under CPLR 5004(a), on their $2 million combined Escrow Deposits, amounting to $180,000 per year that the injunction remains in place. Accordingly, the undertaking should be set at

13

$180,000 at this time, without prejudice to a future increase should this action continue for more than a year. *See Bonded Concrete, Inc. v. Town of Saugerties*, 42 A.D.3d 852, 855 (3d Dept. 2007) ("A party seeking modification in the amount of the undertaking may move in the trial court for an increase (or decrease) and the movant may abandon the equitable relief and avoid the mandatory undertaking; the amount is also reviewable on appeal for insufficiency or excessiveness.").[7]

## CONCLUSION

For these reasons, Defendants Metaxas and Pertshire do not contest Plaintiff's request for a preliminary injunction on the conditions that (a) Nominal Defendant Graubard be required to deposit the $2 million with the Clerk of Court and provide documentary evidence and a sworn affidavit establishing that Defendants' funds have at all relevant times been in his IOLA and (b) Plaintiff Olden LLC be required to post a bond of at least $180,000 representing lost interest on the Escrow Deposits at the statutory 9% annual rate to account for at least one year's worth of lost interest on the Escrow Deposits.

---

[7] Defendants Metaxas and Pertshire, as well as non-parties Maamari and El-Khoury, reserve all rights to seek appropriate sanctions, including attorney's fees, against Plaintiff Olden LLC, Nominal Defendant Graubard, Sprei, Rubin, and any others who have act in concert with them for abusing court process and making false statements in the course of the instant litigation.

14

Case 1:25-cv-05844-EK-PCG    Document 163-2    Filed 07/22/26    Page 19 of 20 PageID #: 2136

Dated:    New York, NY
         April 11, 2025

Respectfully submitted,

SELENDY GAY PLLC

By:   /s/    *Lauren J. Zimmerman*

Jennifer M. Selendy
Lauren J. Zimmerman
Babak Ghafarzade
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY  10104
Tel: 212-390-9000
jselendy@selendygay.com
lzimmerman@selendygay.com
bghafarzade@selendygay.com

*Attorneys for Defendants Angelos Metaxas and
Pertshire Investments LP*

15

Case 1:25-cv-05844-EK-PCG Document 163-2 Filed 07/22/26 Page 20 of 20 PageID #: 2137

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

OLDEN LLC,

                Plaintiff,

        v.

ANGELOS METAXAS and PERTSHIRE
INVESTMENTS LP,

                Defendants,

        and

DAVID GRAUBART,

                Nominal Defendant

Index No. 505819/2025

Motion Sequence No. 1

### CERTIFICATE OF WORD COUNT COMPLIANCE

As a member of Selendy Gay PLLC, I hereby certify that this memorandum is in compliance with 22 NYCRR 202.8-b. The foregoing document was prepared using Microsoft Word, and the document contains 4,604 words as calculated by the application's word counting function.

Dated:   New York, New York
         April 11, 2025

                /s/       *Lauren J. Zimmerman*
                         Lauren J. Zimmerman