Metaxas et al. v. Graubard et al., No. 1:25-cv-05844 (EK) (PCG) (E.D.N.Y.)

# EXHIBIT H

Excerpts of Deposition Transcripts (cited pages, with title and reporter-certification pages, each as received from the reporting service)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK


. . . . . . . . . . . . . . . . . . . . . . . X

ANGELOS METAXAS and PERTSHIRE INVESTMENTS, LP,

                    Plaintiffs,


          -against-       Docket No.
                          1:25-cv-05844-AMD-PCG

MARK DAVID GRAUBARD, ESQ. D/b/a M. DAVID
GRAUBARD, YESCHIEL SHIMON "SAM" SPREI, FRANK R.
SEDDIO, ESQ., and JONATHAN RUBIN,

                    Defendants.
. . . . . . . . . . . . . . . . . . . . . . . X




                    Remote Deposition

                    May 26, 2026

                    10:10  a.m.

          DEPOSITION of JAVIER MACAYA, the 30(B)(6)

Witness, taken on behalf of the Parties,

pursuant to Order, held before a Notary Public

of the State of New York.




Job No. 132861

**JAVIER MACAYA**

**May 26, 2026**

JAVIER MACAYA

Q.   The amount deposited before or after December 5, 2024?

**A.   I don't have that date -- specific date right in front of me, I don't remember if it was the 4 or 5.  What I know is that Pertshire did deposit one million in the escrow agreement.  Now, exactly what date, I don't have that information with me right now.**

(Whereupon, the aforementioned document was marked as Defendant's Exhibit 20 for identification as of this date by the Reporter.)

Q.   Looking at paragraph 45 of the complaint, does that refresh your recollection?

**A.   Yes, and it also confirms my recollection.**

Q.   So one million was deposited on December 5?

**A.   Yes.**

Q.   By Pertshire?

**A.   Yes.**

Q.   Can you identify on behalf of Pertshire on which documents Pertshire relies to support that Mr. Rubin had knowledge before

JAVIER MACAYA

December 5 of Surf 9?

MS. ZIMMERMAN:  Objection, vague, lacks foundation, speculation.

**A.   When you say, you, this is Javier --**

Q.   Pertshire.

**A.   And your question is.**

Q.   On behalf of Pertshire, identify on behalf of Pertshire every document on which Pertshire relied to support the federal complaint as to Mr. Rubin's pre-December 5th knowledge of Surf 9?

**A.   I can't provide that list, I don't have a list of that.  What I will say is that it came as a very great surprise to me to see that filing by Mr. Rubin.  As of that time, I had never had any interaction.**

Q.   Did you try to contact Mr. Rubin?

**A.   No.**

MS. ZIMMERMAN:  Is the, you here --

Q.   Did Pertshire try to contact Mr. Rubin?

**A.   No.**

Q.   Why?

MS. ZIMMERMAN:  Objection, I want to

**JAVIER MACAYA**

**May 26, 2026**

JAVIER MACAYA

escrow signing?

A.    When you say, participated in the signing, what do you mean?

Q.    In any capacity, did Mr. Rubin participate in the signing of the escrow agreements?

A.    I don't have knowledge of it, but he may have had it.

Q.    There is no allegation that Mr. Rubin participated in the wire transfers, correct?

A.    When you say, wire transfers, sorry, can you be more specific?

Q.    The wire transfers made by Pertshire or the other plaintiffs?

A.    Those wire transfers were done by the plaintiffs.

Q.    There is no allegation that Mr. Rubin had any communication with Mr. Sprei, Mr. Montclare or Ms.  Wachtler --  sorry, there is no allegation that Mr. Rubin had any allegation with Mr. Montclare before January 24, 2025, correct?

A.    To my knowledge, Mr. Montclare has

JAVIER MACAYA

information in it, and you know, I can't categorically say yes or no.

Q.   There is no allegation that Mr. Rubin had any communication in this complaint with Mr. Wachtler before January 24, 2025, correct?

A.   I don't believe that there is, no.

Q.   As of January 23, 2025, as of February 19, 2025 the date before the state court filing, there was no factual basis Pertshire alleges in the complaint to name Mr. Rubin as a defendant?

MS. ZIMMERMAN:  Objection, lacks foundation, vague as to Mr. Seddio's filing and if you are referring to the state court action that was February 19.

Q.   As of February 19, 2025 the date before the state court filing.  There was no factual basis Pertshire alleges in the complaint to name Mr. Rubin as a defendant?

MS. ZIMMERMAN:  Objection, vague, calls for a legal conclusion, you can answer to the extent that you are able.

A.   Say that again.

JAVIER MACAYA

May 26, 2026

JAVIER MACAYA

Q.   As of February 19, 2025 the date before the state court filing, there was no factual basis Pertshire alleges in the complaint to name Mr. Rubin as a defendant?

MS. ZIMMERMAN:  As of the date of the filing or as of the date of the initiation of the state court action?

Q.   In the complaint, there is no factual basis alleged in the complaint to name Mr. Rubin?

MS. ZIMMERMAN:  Objection, vague, calls for a legal conclusion, you can answer to the extent that you are able to.

A.   I can't answer, I don't know.

Q.   Is Capital One's bank system failure alleged in the complaint?

A.   I have read a lot of documents in order to be ready for this.  I have a jumbo of documents, including some that you, yourself put on the screen that bring up Capital One.  Can I tell you whether the complaint is in it or not, I can't say that.  If you know that it is, I ask that you show me.

**JAVIER MACAYA**

**May 26, 2026**

C E R T I F I C A T E

STATE OF NEW YORK )
                  )        ss:
COUNTY OF NEW YORK)

I, STACY ADAMES, a Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

That JAVIER MACAYA, the witness whose DEPOSITION was held on May 26, 2026, as hereinbefore set forth, was duly sworn by me, and that this transcript of such Examination is a true and accurate record of the testimony given by such witness, to the best of my ability.

I further certify that I am not related to any of the parties to this action by blood or by marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 26th day of May, 2026.

*Stacy Adames*
_____
STACY ADAMES

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
ANGELOS METAXAS and PERTSHIRE
INVESTMENTS LP,
                         Plaintiffs,

-against-

MARK DAVID GRAUBARD, ESQ. D/b/a M. DAVID
GRAUBARD, YESCHIEL SHIMON "SAM" SPREI,
FRANK R. SEDDIO, ESQ., AND JOHNATHAN RUBIN

                         Defendants.
------------------------------------X
                            May 29, 2026
                            10:06 a.m.
```

ZOOM DEPOSITION OF ANGELOS METAXAS, a Plaintiff herein, taken by the respective parties, pursuant to Order, before Larin Kaywood, a Notary Public for and within the State of New York.

Reported by:

Larin Kaywood

Job No. 132864

Identify every fact you learned in between.

                MS. ZIMMERMAN:  Objection.

        Form.

                You can answer to the extent

         you're able.

        **A.    I don't know how to answer that question.**

        Q.    As of April, when your attorney filed this on your behalf, your sworn position was that Mr. Rubin was a front. It was a name used by Mr. Sprei and Graubard?

                MS. ZIMMERMAN:  Objection.

        Q.    As of October of 2025, you sued Johnathan Rubin as a knowing participant. What changed?

                What facts did you learn in between that made that change identify them?  Tell me what they were?

                MS. ZIMMERMAN:  Objection.

         Form.

        **A.    I can't answer that.**

        Q.    Why not?

        **A.    I don't know.**

        Q.    Okay.  So you can't identify

ANGELOS METAXAS

May 29, 2026

Graubard, that you personally contend was wrongful in this lawsuit that Mr. Rubin did?

A.    That I personally contend that was what?  What's the word you used?

Q.    That Mr. Rubin did.  That you contend --

A.    No.

Q.    I'll repeat the question.

Identify with specificity specifically every affirmative act of Mr. Rubin not Sprei, not Graubard, that you contend was wrongful in this lawsuit.

A.    In the lawsuit of --

Q.    The Federal lawsuit?

A.    -- October '25.

Q.    Mm-hmm.  Yes.

A.    Well, I mean Rubin sued me, okay?  And that's the fact.  And he sued me together with Seddio so -- yeah, so that's it.

Q.    So he sued you.  So you sued him back?

A.    No.  I wouldn't say that.  I didn't sue him back because he sued me.

**ANGELOS METAXAS**

**May 29, 2026**

C E R T I F I C A T E

STATE OF NEW YORK)

                                    :ss

COUNTY OF SUFFOLK  )


        I, LARIN KAYWOOD, a Notary Public within and for the State of New York, do hereby certify:

        That the witness whose examination is hereinbefore set forth was duly sworn and that such an examination is a true record of the testimony given by such a witness.

        I further certify that I am not related to any of these parties to this action by blood or marriage, and that I am not in any way interested in the outcome of this matter.

        IN WITNESS WHEREOF, I have hereunto set my hand this DATE day of MONTH, 2026.


*Larin Kaywood*
_____
            Larin Kaywood

Frank R. Seddio - June 22, 2026

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
                                 )
ANGELO METAXAS et al.,           )
                                 )
          Plaintiff,             )
                                 )  Case No.
     v.                          )  25-cv-5844(AMD)(CLP)
                                 )
MARK DAVID GRAUBARD et al.,      )
                                 )
          Defendants.            )
_____)

          DATE:  June 22nd, 2026

          TIME:  10:28 A.M.

          EXAMINATION BEFORE TRIAL of the

Defendant, FRANK R. SEDDIO, taken by the

Plaintiffs, held at the offices of 1155 Avenue

of the Americas in New York, New York, before

Eileen Monteagudo, a Notary Public of the State

of New York.

Frank R. Seddio - June 22, 2026

Page 21

FRANK SEDDIO

Q.    Okay.  So someone from your firm did appear --

A.    Yes.

Q.    -- on his behalf?

THE VIDEOGRAPHER:  Excuse me. You're covering your microphone --

THE WITNESS:  Oh, I'm sorry.

MR. MILETTI:  Oh, him?

VIDEOGRAPHER:  Yes.

MR. MILETTI:  Oh.

Q.    When was the last time you spoke to David Graubard?

A.    I can't remember ever speaking to David Graubard.

Q.    When was the last time you spoke to Jonathan Rubin, the defendant in this case?

A.    I can't remember the last time I spoke with him, uh, if ever.  Maybe, uh, uh, years ago, in the last year sometime.  I don't recall.

Q.    Did Mr. Rubin's counsel send a letter to you or your counsel demanding that you withdraw the affirmation you filed on his behalf in the Kings County action?

Frank R. Seddio - June 22, 2026

Page 96

FRANK SEDDIO

filed with the belief that Mr. Rubin had, uh, agreed to file that.

Q.    Right.  The belief that the defendant Rubin had agreed to the filing?

A.    Correct.

Q.    But you hadn't spoken to Mr. Rubin before you filed the sworn affirmation, right?

A.    Correct.  Nor did I see the final documents, as I was not in the office that day.

Q.    Okay.  And so when you filed the state court action on February 9th, 2025 -- excuse me, on February 19th, 2025, you filed a motion asking the Court to order Mr. Graubard not to return the escrowed funds to plaintiffs?

A.    I did not file -- if that's -- is that -- if the document said that it wasn't under my, uh -- it was -- it was not something I would've written.  Is that in the document?

MS. ZIMMERMAN:  Can I have Tab 15?

Q.    So sitting here today, you don't

Frank R. Seddio - June 22, 2026

Page 108

FRANK SEDDIO

was marked as Seddio Exhibit 7 for identification as of this date by the Reporter.)

Q.     Okay.  So this is the draft order to show cause that Ethan Kobre first sent to Mr. Sprei on February 18th.

A.     Right.

Q.     And that Mr. Sprei then sent to your associate, Mr. Nesaralli, on February 19th at 1:13 p.m., right?

A.     Yes.

Q.     And attached is a draft of the order to show cause that was ultimately filed alongside the initiation papers for the state court action, right?

A.     I'm sorry.  The, uh, order to show cause.

Q.     Order to show cause.

A.     Yes.

Q.     Yes.  And again, here Olden Group LLC is listed as the Plaintiff?

A.     Yes.

Q.     And looking at the first line, it says, "Upon the annex affirmation of Sam Sprei

Case 1:25-cv-05844-EK-PCG    Document 163-9    Filed 07/22/26    Page 17 of 53 PageID #: 2241

FRANK SEDDIO

dated February 18th, 2025."

So initially, Mr. Sprei was supposed to be the party who filed an affirmation in support of the order to show cause?

A.     According to this document, yes.

Q.     Why didn't Mr. Sprei ultimately sign and -- sign the affirmation in support of the order to show cause that was filed under your credentials?

A.     I have no idea why he didn't sign it.  I also was not present in the office at the time these documents were received or forwarded to the, uh, NYSCEF.

Q.     But why --

A.     NYSCEF or NYSCEF, I don't --

Q.     But it's not only that Mr. Sprei didn't sign it, the affiant was swapped out to defendant Jonathan Rubin.  So why did your office swap out Jonathan Rubin as the affiant in support of the order to show cause?

A.     I have no idea.  I was not present, and I did not participate in this. So I don't know.

Frank R. Seddio - June 22, 2026

Page 120

FRANK SEDDIO

Q.     So that's -- yes.  You didn't have any basis for this paragraph 1, or at least you didn't have any personal knowledge of Mr. Rubin being the manager of Olden LLC?

A.     I'm not aware of any information in this document other than the fact that it was filed from my office and provided, I assume, by -- by another attorney.

Q.     So you didn't do any of your own investigation into the veracity of the statements made in this document filed by your office?

A.     I did none, because I wasn't even aware that Mr. Rubin signed it.

Q.     And so at this point you didn't have any knowledge one way or the other as to whether Mr. Rubin had ever met the Plaintiffs?

A.     I had no knowledge about Mr. Ruben's -- Ruben's role in this other than the fact that I know he was a partner of Mr. Sprei.  But had -- had had nothing to do with the document itself.

Q.     And so you didn't have any basis to say in this document that disputes

Frank R. Seddio - June 22, 2026

Page 210

FRANK SEDDIO

THE REPORTER:  Who?  I'm sorry.  Who contacted him?

THE WITNESS:  Mr. Sprei.

Q.     But Mr. -- it was your duty to prepare your per diem lawyer to appear on your behalf, right?

A.     I -- if you want to call it a duty, yeah.  I -- I believe he was already aware of the case.

Q.     But you had to prepare Mr. Spirgel for the preliminary injunction hearing that you were sending on -- him to appear before on your -- for your office, right?

A.     I did not -- I didn't have to do it.  I think he already was aware of it may -- may have been made aware of it by Mr. Sprei who -- whom he has relationship with as well.

Q.     But Mr. Sprei was not the counsel of record for plaintiff, right?

A.     Mr. Sprei is -- is -- was my client.

Q.     So that's yes.  Mr. Sprei was not

Frank R. Seddio - June 22, 2026

Page 350

FRANK SEDDIO

Q.    Hold on.

THE REPORTER:  Please don't.

THE WITNESS:  I let too much slide in the last --

Q.    Now as you said, Mr. Seddio, Mr. Sprei paid for your -- for Ms. -- for the Aidala Law Firm's representation of you --

A.    He paid the initial retainer, yes.

Q.    Mr. Seddio, please let me finish the question.

A.    I'm sorry.  I'm sorry.

Q.    As you stated, Mr. Sprei paid for your representation in the state court matter by the Aidala Law Firm, right?

A.    Mr. Sprei paid the initial retainer, yes.

Q.    And he also was a party to the engagement letter that you entered into with Aidala, Bertuna & Kamins, right?

A.    Yes.  I believe he was as a result of providing the retainer, yes.

Q.    So why was Mr. Sprei who you've said was responsible for causing you to be the

C E R T I F I C A T E


STATE OF NEW YORK      )
                       : SS.:
COUNTY OF SUFFOLK      )


        I, EILEEN MONTEAGUDO, a Notary Public for

and within the State of New York, do hereby

certify:

        That the witness whose examination is

hereinbefore set forth was duly sworn and that

such examination is a true record of the

testimony given by that witness.

        I further certify that I am not related

to any of the parties to this action by blood

or by marriage and that I am in no way

interested in the outcome of this matter.

        IN WITNESS WHEREOF, I have hereunto set

my hand this 22nd day of June 2026.




                    _____
                    EILEEN MONTEAGUDO

Frank R. Seddio - June 29, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
                               )
ANGELO METAXAS et al.,         )
                               )
          Plaintiff,           )
                               )  Case No.
      v.                       )  25-cv-5844(AMD)(CLP)
                               )
MARK DAVID GRAUBARD et al.,    )
                               )
          Defendants.          )
_____)


                    - - -
             June 29, 2026
                    - - -

             VOLUME II




       Continued Videotaped Deposition of

FRANK R. SEDDIO, held at the law offices of

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP,

Suite 2600, 1155 6th Avenue, New York, NY10036,

beginning at 2:20 p.m., on the above date,

before Denise D. Bach, a Registered Professional

Reporter, Certified Court Reporter, License No.

XI0003990, and Notary Public, PA, NJ, DE & NY.

Frank R. Seddio - June 29, 2026

Page 122

A.     The fact that I'm sitting here today in this whole deposition and based on, really on everything that was as a result of this action and my need to place further review on what was done on my part in this matter.

Q.     Switching the topic, now we are going to move to the affirmation.

Before the Rubin-named affirmation was filed, did you personally read it?

A.     No.

Q.     Were you physically present in the office when the Rubin-named affirmation was filed?

A.     No.

Q.     Did you personally change the affiant from Sam Sprei to Jonathan Rubin?

A.     No.

Q.     Did you personally direct anyone else to change the affiant from Sam Sprei to Jonathan Rubin?

A.     No.

Q.     Did you speak with Mr. Rubin before the Rubin-named affirmation was filed?

A.     No.

Q.     At the time of filing, did you

knowingly file an affirmation that you understood to be unauthorized?

A.      No.

Q.      What was your understanding at the time concerning why documents bearing Mr. Rubin's name were being filed?

A.      I wasn't aware that Mr. Rubin was signing anything, nor was I aware that the affirmation was being filed.

Q.      So, a paper, a sheet of paper came in, we had submitted this.

ATTORNEY MILETTI:  Can you -- to the reporter, the Seddio 3090, what exhibit was that, do you know?  You don't know?

ATTORNEY GHAFARZADE:  40.

ATTORNEY MILETTI:  40, okay.

BY ATTORNEY MILETTI:

Q.      So, I'm going to present to you Exhibit 40.  You have it there.  Just hold onto that --

ATTORNEY ZIMMERMAN:  It looks like that's been marked.  Why is there markings on it?

ATTORNEY MILETTI:  Oh.  You have a clean one?

Frank R. Seddio - June 29, 2026

Page 155

on the 22nd of June, do you acknowledge that you should have supervised this matter more carefully?

A.    Absolutely.

Q.    Does that mean that you knowingly participated into any scheme to steal, transfer, conceal or dissipate plaintiff's escrow funds?

A.    No.

Q.    Does that mean that you knowingly filed a false unauthorized Rubin affirmation?

A.    I'm sorry, repeat?

Q.    Does that mean that you could have -- that you should have supervised this more carefully, does that mean that you knowingly filed a false or an unauthorized Rubin affirmation?

A.    I did not file -- I did not mean to do that, and I never knew that it was filed under Mr. Rubin's name.

Q.    In your opinion, and the final question here, what is the difference between failing to supervise this matter as carefully as you should have and knowing -- knowingly participating in a fraud or a conversion?

A.    Complete difference.  One is

Mr. Graubard?

A.    No.

Q.    When was the last time you spoke to Mr. Rubin?

A.    Never.  In a year.  On rare occasions, back quite -- certainly not during this matter.

Q.    You testified on the direct examination that you did not review the November 5th transcript in preparation for your first day of deposition.

What documents, if any, have you reviewed before your second day's deposition?

A.    You mean since last week?

Q.    Yes.

A.    Other than reading the transcript, nothing.  I read the transcript over that we got, the rough transcript.

Q.    And so now, since you have a memory of what you have and haven't read, what other documents did you read in preparation for both of your deposition dates?

A.    That's the only thing I read was that document.

Q.    It's your testimony that the only

Frank R. Seddio - June 29, 2026

Page 164

C E R T I F I C A T E

I HEREBY CERTIFY that the witness
was duly sworn by me and that the deposition is
a true record of the testimony given by the
witness.

_____
DENISE D. BACH,
Registered Professional Reporter
Certified Court Reporter
Notary Public/Expiration: March 2030
Dated:  July 7, 2026

(The foregoing certification of this
transcript does not apply to any reproduction of
the same by any means, unless under the direct
control and/or supervision of the certifying
reporter.)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
                              )
ANGELO METAXAS et al.,        )
                              )
            Plaintiff,        )
                              )  Case No.
        v.                    )  25-cv-5844(AMD)(CLP)
                              )
MARK DAVID GRAUBARD et al.,   )
                              )
            Defendants.       )
_____)

DEPOSITION UNDER ORAL EXAMINATION OF

YESHAYA GORKIN

DATE:  June 9, 2026

REPORTED BY:  CHARLENE FRIEDMAN, CCR, RPR, CRR

Yeshaya Gorkin - June 9, 2026

Mr. Sprei then responds, quote, I am Olden, end quote.

And then you respond, quote, Big problem, end quote.

What did you mean by "big problem"?

A    I don't remember.

And I actually looked at these messages yesterday trying to remember what I meant by "big problem," and I don't remember what my thought process was then or why I was asking him these questions, so I would be speculating if I told you what I meant by "big problem."

Q    Did you -- so you understood that -- Mr. Sprei to be telling you that he was acting on behalf of plaintiff in the state action?

A    Are you talking about in July of 2025?

Q    Let me rephrase.

In the message we just looked at, Mr. Sprei told you that he is the plaintiff in the state action?

A    Yes.

Q    Okay.  Did you see a problem with

C E R T I F I C A T E

I, CHARLENE FRIEDMAN, a Certified Court Reporter and Notary Public, qualified in and for the State of New Jersey do hereby certify that prior to the commencement of the examination YESHAYA GORKIN was duly sworn by me to testify to the truth the whole truth and nothing but the truth.

I DO FURTHER CERTIFY that the foregoing is a true and accurate transcript of the testimony as taken stenographically by and before me at the time, place and on the date hereinbefore set forth.

I DO FURTHER certify that I am neither a relative of nor employee nor attorney nor counsel for any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the action.

CHARLENE FRIEDMAN, RPR, CRR, CCR of the

State of New Jersey

License No:  30XI00204900

Date:  June 9, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

ANGELOS METAXAS and PERTSHIRE                )
INVESTMENTS LP,                              )    Civil Action No.
                                             )    25-cv-5844(AMD)(PCG)
                            Plaintiffs,       )
             v.                              )
                                             )
MARK DAVID GRAUBARD, ESQ. d/b/a              )
M. DAVID GRAUBARD, YESCHIEL SHIMON           )
"SAM" SPREI, FRANK R. SEDDIO, ESQ.,          )
and JONATHAN RUBIN,                          )
                                             )
                            Defendants.       )

_____



VIDEO-RECORDED DEPOSITION OF CHANGYEUN HAHN



New York, New York

Friday, June 12, 2026



Reported by:
Jeffrey Benz, CRR, RMR

Changyeun Hahn - June 12, 2026

Page 260

spelled my name Johnathan with an H.

A.    Correct.

Q.    And then you wrote to Mr. Rubin, Please see attached, the last paragraph on the first page.

And you quote some language from the attached letter, right?

A.    Yes.

Q.    And so you wrote, Unless I am misunderstanding this to mean that the subpoena spelled your name as j-o-h-n-a-t-h-a-n.

A.    Correct.

Q.    And so he wrote at 12:02 a.m., this is on the first page now, No.  What it means is that I Jonathan, j-o-n-a-t-h-a-n, Rubin of Lakewood, New Jersey, am being sued for something that a Johnathan, j-o-h-n-a-t-h-a-n, Rubin of Olden signed, and that is not me.  And the subpoena identifies me as both Johnathan, with an H, and Jonathan by various -- at various times.

Right?

A.    Yes.

Q.    And you wrote back at 6:33, at the top -- the top email now of Exhibit 28, Sorry

Changyeun Hahn - June 12, 2026

Page 268

C E R T I F I C A T E

STATE OF NEW YORK     )
                      )  Ss.:
COUNTY OF NEW YORK    )


        I JEFFREY BENZ, a Certified Realtime

Reporter, Registered Merit Reporter and Notary

Public within and for the State of New York, do

hereby certify:

        That the witness whose examination is

hereinbefore set forth was duly sworn by me and

that this transcript of such examination is a true

record of the testimony given by such witness.

        I further certify that I am not related to

any of the parties to this action by blood or

marriage and that I am in no way interested in the

outcome of this matter.

        IN WITNESS WHEREOF, I have hereunto set my

hand this 22nd of June, 2026.


_____
JEFFREY BENZ, CRR, RMR

Case 1:25-cv-05844-EK-PCG    Document 163-9    Filed 07/22/26    Page 34 of 53 PageID #: 2258

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
                              )
ANGELO METAXAS et al.,        )
                              )
          Plaintiff,          )
                              )  Case No.
     v.                       )  25-cv-5844(AMD)(CLP)
                              )
MARK DAVID GRAUBARD et al.,   )
                              )
          Defendants.         )
_____)


DEPOSITION UNDER ORAL EXAMINATION OF

JONATHAN RUBIN

DATE:  June  11, 2026


REPORTED BY:  CHARLENE FRIEDMAN, CCR, RPR, CRR

Case 1:25-cv-05844-EK-PCG Document 163-9 Filed 07/22/26 Page 35 of 53 PageID #: 2259

I guess he hadn't met your clients yet.

MS. DELUCIA: Move to strike that as non-responsive and inflammatory.

Q Moving on --

A I don't think it was inflammatory. It was definitely responsive.

Q Yeah, okay.

Well, tell me, have you asked Mr. Sprei or Mr. Seddio to withdraw that affirmation?

(Reporter clarification.)

MR. GROSS: Objection, compound.

BY MS. DELUCIA:

Q Have you asked Mr. Seddio to withdraw that affirmation?

A No.

Q Have you asked Mr. Sprei to withdraw that affirmation?

A Yes.

Q And what did he say?

A He's going to take care of it. He has to get a lawyer. He's going to take care of it. He's going to take care of it.

Q And has he withdrawn it yet?

Jonathan Rubin - June 11, 2026

A    No.   You know better than me.

Q    Has he submitted an affirmation suggesting that it was a mistake?

A    How would I know?  You would know.

Q    So Mr. Sprei told you that he wrote the affirmation, is that right?

A    He didn't say he wrote the affirmation, but he did say that he was the one who had -- who caused it to be filed.

Q    Did he say that he had --

A    Unless somebody else caused it.

Q    -- changed the name from Sam Sprei to Jonathan Rubin?

A    No, he did not say that.  I never asked him.

I asked him why he would file something in my name or the name Jonathan Rubin with an H.

Q    And his response was he didn't want to file it in his own name?

A    Correct.

Q    Because he had other litigations ongoing?

A    Correct.

I think there was some kind of

Jonathan Rubin - June 11, 2026

anything, and I asked him to file a withdrawal.

Q     And what is the nature of the case Queen Equities various Ira Russack?

A     I made a loan to Mr. Russack, and he's trying to deny it.

Q     And Mr. Seddio has been engaged on Queen Equities' behalf?

A     Correct.

Q     Are you currently paying Mr. Seddio in connection with that litigation?

A     No.

Q     But to date, he has not withdrawn?

A     I just asked him yesterday when I realized he's not being responsive to the courts.

Q     What is the status of that case as we sit here today?

A     There's no status.  They won some kind of conference, and Mr. Seddio has not been responding, and I asked him to withdraw. I have to get another attorney.

Q     You mentioned Queen Equities.

     Is that an entity with which you are associated?

A    Yes.

Q    What is the nature of your association with Queen Equities?

A    I guess you can say I'm the owner.

Q    You're the owner.

What kind of business does Queen Equities operate?

A    Primarily, it does loans.

Q    Loans.

A    Yes.

Q    Are there any other members of Queen Equities besides you?

A    Yes.

Q    Who?

A    My wife.

Q    Your wife.

What's your wife's name?

A    Malka.

Q    Malka.

And what are your respective percentages of ownership?

A    I think I'm 99 and she's 1.  I have to double-check.

Q    Is she involved with the day-to-day operations of Queen Equities?

Jonathan Rubin - June 11, 2026

A    No.

Q    Is anyone else besides you involved with the day-to-day operations of Queen Equities?

A    Not -- depends how you define "involved in the operations," but not really, basically.

Q    You said it's a lender.

Is that right?

A    It's more of a loan broker than a lender, but yes.

Q    And to whom do you -- does Queen Equities lend money?

A    Anyone who has collateral and is willing to borrow at their rates.

Q    And what are your rates?

A    12 percent.  12 percent a month.

Q    Does Mr. Sprei have an interest in Queen Equities?

A    No.

Q    Does Queen Equities loan money to Mr. Sprei?

A    A lot of the money that comes from escrow comes from Queen Equities' account.

I don't know how you want to typify

Jonathan Rubin - June 11, 2026

recipients?

A    Correct.

Q    In exchange for that, would Mr. Sprei pay you something?

A    I wasn't doing it as a -- as a sheriff.  I wasn't doing it as a favor.

Q    Right.

A    It wasn't a present.

Q    So would he pay you?

A    Of course.  Well, he should be.  I mean, he owes me a lot of money, but yes.

These are all loans.  These weren't presents.

Q    And what did he pay you for that?

A    So it depended.  If it was a small amount of money, if I put the money -- $200,000 until my check cleared, usually nothing.

But if it was more substantial, then he would pay me because -- whatever the rates were, nearly 12 percent, whatever the rates were.

Q    Where does Queen Equities get the money to broker these loans?

A    Other people.

Jonathan Rubin - June 11, 2026

Q    Which people?

A    There's a hundred people that give me money to lend out for them.

Q    Which hundred people are giving Queen Equities money to loan out?

A    You want a list -- to name all hundred?

Q    I need some examples.

MR. GROSS:  Objection.  And relevance.  And it's not --

MS. DELUCIA:  I think the relevance is -- I think the horse has left the barn on relevance.  He has testified that Queen Equities had money that he then transferred for purposes of Surf 9. We need to know where that money came from.

MR. GROSS:  Why?

MS. DELUCIA:  Are you directing him not to answer?

MR. GROSS:  As of now, yes, unless you want to take it off the record and you can discuss with me why -- just anything that has to do with Surf 9 -- do you want to go off the record --

Jonathan Rubin - June 11, 2026

Page 41

this or a defendant in a case like this.  You are here to answer questions.

Unless your counsel directs you not to answer a question on the grounds of privilege, you must answer.

A     My father gave me some money.

(Reporter clarification.)

A     My father.

Q     Your father?

A     Yes.

Q     What's your father's name?

A     Bernard Rubin.

Q     Does he routinely give money to Queen Equities?

A     Depends what you call "routinely."

He had -- Queen Equities has money, and money comes in, money goes out.  Money comes in, money goes out.

It's not long-term loans.  They're too expensive to be long-term loans.

Q     And when your father gives money to Queen Equities, which you then use to lend out, do you compensate your father for that money?

A     He gets the 12 percent.

Case 1:25-cv-05844-EK-PCG    Document 163-9    Filed 07/22/26    Page 43 of 53 PageID #: 2267

Q    And then do you collect 12 percent on the other end after you loan the money out?

A    I wish.  No.

Q    Okay.  About how much money would you say your father has contributed to Queen Equities?

A    $3 million.

Q    $3 million.

Are you the sole manager of Queen Equities?

A    I'm not sure what you mean, but yeah.

Q    Okay.  I want to ask you about another entity, and that's WHP Equities.

What's your association with WHP Equities, LLC?

A    I'm a partner.

Q    And what kind of business is WHP Equities, LLC?

A    Primarily, a holding company.

Q    A holding company for what?

(Reporter clarification.)

A    Syndication interests, a partial interest in real estate.

Jonathan Rubin - June 11, 2026

Page 314

                    C E R T I F I C A T E

         I, CHARLENE FRIEDMAN, a Certified Court

Reporter and Notary Public, qualified in and for

the State of New Jersey do hereby certify that

prior to the commencement of the examination

JONATHAN RUBIN was duly sworn by me to testify to

the truth the whole truth and nothing but the

truth.

         I DO FURTHER CERTIFY that the foregoing

is a true and accurate transcript of the testimony

as taken stenographically by and before me at the

time, place and on the date hereinbefore set forth.

         I DO FURTHER certify that I am neither a

relative of nor employee nor attorney nor counsel

for any of the parties to this action, and that I

am neither a relative nor employee of such attorney

or counsel, and that I am not financially

interested in the action.




         CHARLENE FRIEDMAN, RPR, CRR, CCR of the

         State of New Jersey

         License No:  30XI00204900

         Date:  June 11, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
                             )
ANGELO METAXAS et al.,       )
                             )
          Plaintiff,         )
                             )  Case No.
     v.                      )  25-cv-5844(AMD)(CLP)
                             )
MARK DAVID GRAUBARD et al.,  )
                             )
          Defendants.        )
_____)




          VIDEOTAPED DEPOSITION OF

          MARK DAVID GRAUBARD

          NEW YORK, NEW YORK

          WEDNESDAY, JUNE 17, 2026

               10:22 a.m.









     REPORTED BY:  DANIELLE GRANT

M. Graubard

Holdings, LLC, correct?

A    Yes.

Q    And only 2.5 million went to 536 Holdings, LLC, correct?

A    Correct.

Q    Okay.  And there is no attribution in this ledger as to whether that 2.5 million came from which of the three wire -- incoming wire transfers that preceded it were used as the source of funds for that $2.5 million wire out?

A    It's --

Q    It's impossible to tell from the face of the document?

A    That's correct.  There's no indication.

Q    Do you have any other documentation identifying the source of the 200 -- $2.5 million that went to 536?

MR. TESSER:  You can answer.

A    I'm thinking.

Yes.

Q    And what other documentation do you have that shows that the source of

M. Graubard

transferred $2.5 million by wire to 536 Holdings, I think as we discussed before, you -- based on the face of this document, there is no way to allocate that $2.5 million as among those four separate deposits, correct?

A    Correct.

Q    And that $2.5 million wire is the wire that you described Mr. Sprei accompanying you to the bank and insisting that you make, correct?

A    Yes.

Q    And then that Check Number 1015 for $350,000 is the Check Number 1015 that's listed in the account ledger as paying Queen Equities, LLC, correct?

        MR. TESSER:  Object to form.

        You can answer.

A    Yeah.  I'm just looking at the -- matching up.

Q    It's listed on the account ledger as December 6th?

A    Yes.

Q    And the -- but on the --

M. Graubard

CERTIFICATE

STATE OF NEW YORK )

                 )ss:

COUNTY OF RICHMOND)

I, DANIELLE GRANT, a Certified Shorthand

Reporter and Notary Public within and for the

State of New York, do hereby certify:

That MARK DAVID GRAUBARD, the witness whose

deposition is hereinbefore set forth, was duly

sworn by me and that such deposition is a true

record of the testimony given by such witness.

I further certify that I am not related to

any of the parties to this action by blood or

marriage and that I am in no way interested in

the outcome of this matter.

In witness whereof, I have hereunto set my

hand this 24th day of June, 2026.


*Danielle Grant*
DANIELLE GRANT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK


ANGELOS METAXAS and          )
PERTSHIRE INVESTMENTS LP,     )
                             )
        Plaintiffs,          )
                             )
vs.                          ) Case No. 1:25-cv-5844
                             )          (AMD)(PCG)
                             )
MARK DAVID GRAUBARD, ESQ.    )
d/b/a M. DAVID GRAUBARD,     )
YESCHEL SHIMON "SAM"         )
SPREI, FRANK R. SEDDIO,      )
ESQ. and JONATHAN RUBIN,     )
                             )
        Defendants.          )


VIDEOCONFERENCE DEPOSITION OF

JAVID NESARALLI, taken on behalf of the

Plaintiffs, pursuant to Subpoena, on Tuesday,

July 14, 2026, commencing at 10:04 a.m.,

all parties appearing remotely, before

Janice D. Burness, Registered Professional

Reporter, Certified Court Reporter, and Notary

Public.


JOB NO.:135349

**JAVID NESARALLI**

**July 14, 2026**

back at 11:33.

(A recess was taken.)

BY ATTORNEY GROSS:

Q.   Okay.  Mr. Nesaralli, did you ever speak with Jonathan Rubin about the affirmation?

A.   I don't remember.

Q.   Did you ever receive any communication from Jonathan Rubin about the affirmation?

A.   I don't remember.

Q.   Have you ever seen any documents in which Jonathan Rubin authored the use of his name -- authorized -- I'm sorry.

Let me repeat the question and start from the beginning.

Have you ever seen any documents in which Jonathan Rubin authorized the use of his name on that affirmation?

A.   You're asking me what exactly?

Q.   Have you ever seen any documents in which Jonathan Rubin authorized the use of his name?

A.   I don't remember.

Q.   Did you ever confirm with Jonathan Rubin that any facts stated in this affirmation was true?

A.   I don't recall.

**JAVID NESARALLI**

July 14, 2026

Q. Did you receive any information about Jonathan Rubin in February 2025 from anyone other than Mr. Sprei?

A. I don't remember.

Q. Did you take any step to verify that Jonathan Rubin agreed to be that client?

A. I don't remember.

Q. So sitting here today, do you have Jonathan Rubin's phone number?

A. I do not.

Q. Do you have his email address?

A. I do not know his email address.

Q. Before February 19, 2025, had you ever spoken with Jonathan Rubin by phone?

A. I don't remember.

Q. Via video?

A. I don't recall.

Q. In person?

A. I don't remember any specific meeting.

Q. Have you ever met Jonathan Rubin in person to this day?

A. I don't know.

Q. Before February 19, 2025, had you ever exchanged any written communication with Jonathan Rubin by email, text, letter or anything?

**JAVID NESARALLI**

July 14, 2026

A.   I don't remember, but if I did, it would probably be email.

Q.   Before February 19, 2025, had you ever attended a meeting in which Jonathan Rubin was present?

A.   I don't remember.

Q.   Has Jonathan Rubin ever told you personally that he authorized this affirmation that was filed in his name?

A.   I don't remember this.

Q.   So as of February 19, 2025, you do not remember ever communicating with Jonathan Rubin in any form, correct?

ATTORNEY ZIMMERMAN:  Objection to form.

Are you asking him his memory back in February or are you asking his memory now?

ATTORNEY GROSS:  As of now.

THE WITNESS:  Can you repeat the question?

BY ATTORNEY GROSS:

Q.   As of now, you do not remember ever communicating with Jonathan Rubin in any form?

A.   No, I don't remember any specific communication.

ATTORNEY GROSS:  Now I'm going to mark this as Exhibit 19, and then I'm going to mark

**JAVID NESARALLI**

July 14, 2026

CERTIFICATE OF REPORTER

I, JANICE D. BURNESS, a Certified Court Reporter and Registered Professional Reporter, do hereby certify that prior to the commencement of the examination, JAVID NESARALLI was duly sworn by me to testify the truth, the whole truth and nothing but the truth.

I DO FURTHER CERTIFY that the foregoing is a true and accurate transcript of the testimony as taken stenographically by and before me at the time, place and on the date hereinbefore set forth.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the action.

*Janice D. Burness*

Certified Court Reporter, License 30XI00225900
Registered Professional Reporter
New York Notary Public, License 01BU6422463

Dated:  July 20, 2026