Lauren Zimmerman
1155 Avenue of the Americas, Floor 26
New York, New York 10036
Direct Dial:  646.356.6023
Fax:  646.755.3397
lzimmerman@beneschlaw.com

July 31, 2026

Via ECF

Magistrate Judge Peggy Cross-Goldenberg
United States District Court
Eastern District of New York
225 Cadman Plaza East, Room 1230
Brooklyn, New York 11201

Re:     *Metaxas et al. v. Graubard et al.*, No. 25-cv-05844 (EK) (PCG)

Dear Judge Cross-Goldenberg:

We write on behalf of Plaintiffs Angelos Metaxas and Pertshire Investments LP to update the Court on the status of discovery produced by Sprei and further to the Court's June 29, 2026 Minute Order. Put simply, Sprei's production is woefully incomplete.

Three minutes before midnight on July 29, Sprei served Responses and Objections ("R&Os") to Plaintiffs' First Set of Interrogatories and Requests for Production ("RFPs") dated January 20, 2026, a document production containing 96 families of documents, and a privilege log with 2,414 entries, each of which makes an identical privilege claim.[1] Upon review, Sprei's R&Os are patently deficient. Sprei's interrogatory responses provide virtually no information while punting his obligations to his co-Defendants and third parties. Worse, far from providing any actual information about Sprei's assets or asset-tracing for Plaintiffs' escrowed funds, Sprei's document production is little more than a hodge-podge of apparently random documents that appear to have been haphazardly tossed together for last-minute production. If there is any rhyme or reason as to which documents were included and which were excluded, it is not obvious.

Document Production

While Sprei's document production consists mostly of a smattering of insurance policy certificates, wholly absent, among other critical discovery, are any of the following requested documents:

- **Bank account records**. In response to Interrogatory No. 10, Sprei responded that he has unspecified bank accounts with Bank of America and Santander but "does not possess any document," although the "statements [have been] ordered [sic] awaiting delivery." It is not

---

[1] *See* **Ex. 1,** Sprei's R&Os to Plaintiffs' First Set of Interrogatories; **Ex. 2,** Sprei's R&Os to Plaintiffs' Requests for Production; **Ex. 3,** Sprei's Privilege Log.

Magistrate Judge Peggy Cross-Goldenberg
July 31, 2026
Page 2

credible that Sprei does not possess or have access to a single one of his bank account statements, including those available online or by simply walking into one of his several banks' branches. Nor is it credible that in the six months since Plaintiffs requested these documents, or the *over one month's time since Sprei's newest counsel entered the matter*, that neither Sprei nor his counsel could not have obtained a single bank statement responsive to RFP No. 5.

Moreover, Sprei's sworn interrogatory response flatly contradicts the sworn testimony that he offered during his deposition, where he identified two accounts with *Flagstar* Bank (and did not identify holding any accounts at Bank of America or Santander).[2] Sprei's response raises serious concerns, including about spoliation and perjury.

- **Documents reflecting transactions with relevant entities**. Plaintiffs' Interrogatory No. 7 seeks the identification of transactions between Sprei and/or his entities, on the one hand, and sixteen specific individuals or entities, on the other hand. Sprei's response states that he paid $20,000 in legal fees to Imran Ansari, Esq., counsel to co-Defendant Frank R. Seddio ("Seddio") in the related action in Kings County Supreme Court (the "State Court Action") and $70,000 in legal fees to Montclare & Wachtler LLP—a firm led by Paul Montclare and Lauren Wachtler, players in the overall scheme alleged in the Complaint—but he produced *no documents* evincing these transactions as required by Plaintiffs' RFP No. 7 (seeking documents and communications concerning his transactions with specific individuals and entities).

  Sprei further responded to Interrogatory No. 7 that he "does not possess any document" showing his transactions with CPE Member LLC—Defendant Chaskel Frankel's entity, Defendant David Graubard or persons acting on his behalf, former Supreme Court Justice Edward H. King, Ethan Kobre or his law firm, Defendant Jonathan Rubin ("Rubin"), or Rubin's companies Queen Equities LLC or WHP Equities LLC, but Sprei claims to have requested that each of these individuals and entities provide "any and all transactions with Sprei so that he can share same with the parties in the instant action." As a threshold matter, Sprei cannot shift his own discovery burden onto his co-Defendants or other third parties. More troubling, however, is that Sprei's response concedes that such transactions exist,[3] but his hollow responses make clear that he could not possibly have conducted a reasonable, good faith search for responsive documents.

- **WhatsApp communications, text messages, and call logs.** Plaintiffs' RFP Nos. 6 and 7 called for production of all documents and communications concerning a specific wire transfer to Seddio from Graubard's interest on lawyer account which held Plaintiffs' funds, and any transactions between Sprei and/or his entities and fourteen identified individuals and entities, including the named defendants in this action. Sprei has not produced a single WhatsApp message or text message. We know such WhatsApp communications and text messages exist

---

[2] *See* **Ex. 4**, Sprei 7/16/26 Tr. at 141:5-142:19 ("Q. Do you have any bank account? A. Yes, I do. Q. Let's go through them one by one. Can you tell me about -- let's start with checking accounts. Do you have any checking accounts? A. I have two checking accounts. Q. With which bank? A. Flagstar Bank. Q. Both with Flagstar? A. Yeah… Q. Do you have any savings accounts? A. No. Q. Do you currently store any money in any IOLA accounts? A. No.").

[3] This is highlighted by Sprei's express statement of "none known" for transactions with Esther Equities LLC and Chaskel Frankl.

Magistrate Judge Peggy Cross-Goldenberg
July 31, 2026
Page 3

from the productions Plaintiffs received from third parties in response to subpoenas, as well as Defendants' deposition testimony. Rubin also testified under oath that he and Sprei communicated "daily" via text and phone call, and that they discussed transactions over text and phone call.[4]

Interrogatory Responses

Sprei's interrogatory responses are likewise deficient to the point of being useless. Rather than provide the requested information, Sprei mostly deflects and directs Plaintiffs to documents that will apparently be produced at some later date (*see, e.g.*, response to Interrogatory No. 6 ("Defendant refers Plaintiff to the organizational and formation documents produced or to be produced…")) or to other Defendants or third-parties (*see, e.g.*, response to Interrogatory No. 7 ("Sprei has specifically requested that WHP Equities provide any and all transactions with Sprei so that he can share same with the parties in the instant action")). These responses are improper, incomplete, and a total dereliction of Sprei's discovery obligations.

Privilege Log

Sprei's privilege log is also woefully inadequate. As a preliminary matter, it strains credulity that Sprei has withheld 2,414 responsive documents *regarding the state of his personal assets and bank accounts* as privileged while producing a paltry 96 families of non-privileged documents concerning his assets and the tracing of funds.  Each of the 2,414 entries on his privilege log contains the exact same description: *"WITHHELD FOR PRIVILEGE: Attorney - Client communications seeking or receiving legal advice."* 1,156 of the entries have no descriptive information whatsoever apart from this stock description, Bates numbers, the fact that they were attachments to emails, and (for 929 of them) the "primary date."

In addition, of the entries that are emails, many do not involve attorneys. Even for emails with attorneys, we know that Sprei often communicated with attorneys on behalf of other individuals and without having an attorney-client relationship. And counsel for Sprei logged non-non-privileged communications involving *opposing parties* where he himself is counsel to Sprei.[5] These communications cannot be privileged.

Finally, in Sprei's R&Os, Sprei indicated that he may have withheld documents based on the attorney work product doctrine, the common interest doctrine, and the joint defense doctrine, *none of which appear on the privilege log*. Plaintiffs cannot possibly assess the validity of Sprei's privilege assertions as to the 2,414 withheld documents based on these insufficiently detailed

---

[4] *See* **Ex. 5**, Rubin 6/11/26 Tr. at 89:5-7 ("Q. About how frequently would you communicate with Sprei by text? A. Daily.") 88:14-22  ("Q. Now, you mentioned, Mr. Rubin, that you communicated with Sprei via e-mail, via text and sometimes over the telephone, correct? A. More often telephone than the other two, yes. Q. More often telephone than e-mail or text? A. Yes."), 81:24-82:7 ("Q. In the course of your lender/borrower relationship with Mr. Sprei, did you ever have formal loan agreements written? A. Under escrows. Only like -- it was like in the e-mail we saw before, Exhibit 1. Q. And who –A. Sometimes just texts. Sometimes even less than that.").

[5] *See* **Ex. 3**, Sprei's Privilege Log at SPREI-PRIV-001677 and SPREI-PRIV-001678 (emails from Plaintiff Michael Rolnick regarding his lawsuit against Sprei and others in Nassau County, Index No. 611100/2025, in which Mr. Emouna appeared as Sprei's counsel on June 18, 2026).

Magistrate Judge Peggy Cross-Goldenberg
July 31, 2026
Page 4

entries and, in any event, Sprei has already testified that he does not have a joint defense agreement with any of the other defendants, a fact which was confirmed by each of his co-Defendants' sworn testimony.[6]

\* \* \*

Sprei's belated discovery responses reflect not just a refusal to produce responsive information but a wholesale failure to engage in a good faith search for responsive information. Because Sprei's document production and interrogatory responses do not amount to substantial compliance with Defendant Sprei's discovery obligations, Plaintiffs respectfully request that the Court impose the automatic financial sanctions that were previously ordered by the Court on July 20 and reinforced in the Court's July 29, 2026 Minute Order, beginning as of July 30. Plaintiffs also intend to seek their costs and expenses for Sprei's continued noncompliance in accordance with this Court's July 20 and July 29 Minute Orders.[7]

Respectfully submitted,

BENESCH, FRIEDLANDER,
  COPLAN & ARONOFF LLP

*/s/ Lauren Zimmerman*

Lauren Zimmerman

Cc: All Counsel via ECF

---

[6] *See* **Ex. 5**, Rubin 6/11/26 Tr. at 13:6-9 ("Q. Okay. Do you have a joint defense agreement with any of the other parties in this case? A. No."); **Ex. 6**, Graubard 6/17/26 Tr. at 32:14-17 ("Q. So is it your testimony that you have a common defense agreement with Mr. Sprei? A. No."); **Ex. 7,** Seddio 6/22/26 Tr. 14:17-20 ("Q. Have you entered any sort of joint defense agreement with any of the other defendants named in this case? A. No.").

[7] Plaintiffs have again been forced to unnecessarily incur costs and expend resources attempting to bring Sprei into compliance with his discovery obligations. Plaintiffs have now been forced to reschedule, for a fourth time, Sprei's deposition, meet and confer with Sprei's counsel to address, yet again, his ongoing discovery violations, and review productions, interrogatories, and logs that are plainly insufficient.