UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGELOS METAXAS and PERTSHIRE INVESTMENTS LP,<br><br>        Plaintiffs,<br><br>    v.<br><br>MARK DAVID GRAUBARD, ESQ. d/b/a M. DAVID GRAUBARD, YESCHIEL SHIMON "SAM" SPREI, FRANK R. SEDDIO, ESQ., JONATHAN RUBIN, and CHASKEL FRANKL a/k/a CHASKEL FRANKEL,<br><br>        Defendants. | Case No. 1:25-cv-05844-EK-PCG |

## JOINT STATUS REPORT

Plaintiffs Angelos Metaxas ("Metaxas") and Pertshire Investments LP ("Pertshire"), jointly with Defendant Jonathan Rubin ("Rubin") respectfully submit this joint status report pursuant to the Court's instruction at the July 29, 2026 conference to file a joint status report notifying the Court whether there were any changes or updates to the parties' discovery disputes outlined in the July 17, 2026 joint status report on discovery, ECF No. 161 ("July Status Report").

### I.    Plaintiffs' Positions

#### A.    Seddio's Third-Party Subpoena to AT&T

As to Plaintiffs' second dispute with Seddio outlined in the July Status Report (at 1), after seeking clarification from Seddio regarding his production of the written response and production he received in response to the third-party subpoena he issued to his cellular phone carrier, AT&T (the "AT&T Subpoena"), it appears Seddio is not only unwilling to provide the text message data he received but also the call log records he specifically requested in his subpoena, which is attached hereto as Exhibit A.[1]

Seddio subpoenaed this information because Plaintiffs' document requests and interrogatories specifically requested his relevant communications. Moreover, Plaintiffs again and repeatedly requested Seddio's call logs during the course of his deposition in this matter, during which

---

[1] Seddio's Request No. 4 sought "Documents and ESI sufficient to show all call detail records for the Relevant Period, including at least: a. Date and time of each incoming and outgoing call; b. Calling and called numbers; Duration of each call; and d. Any available cell site / section information ordinarily maintained in the regular court of business." Ex. A.

he testified that he a "phone guy," and thus mainly communicated via phone calls during the relevant period here, including with Defendant Yeschiel Shimon Samuel "Sam" Sprei and other major players in the alleged fraud scheme, including Lauren Wachtler, Esq. To date, and without any basis, Seddio has not produced even one call log from a single day during the relevant period.

In addition to lacking any basis for his refusal to provide documents responsive to Plaintiffs requests, in his March 25, 2026 response to Plaintiffs' Request for Production No. 27, attached hereto as Exhibit B, Seddio committed that he would "produce documents produced to him by other parties or third parties that are not equally available to Plaintiffs." The records produced to Seddio by AT&T are not equally available to Plaintiffs. Seddio must therefore be ordered to produced the entirety of the production he received in response to the to AT&T Subpoena—as all parties have been required to do to date—but in the very least, his text messages, emails, and phone logs from the relevant period.

Plaintiffs have attempted for weeks to obtain Seddio's position on this issue. On Monday, July 27, Plaintiffs relayed their above position and requested counsel's response "by 11am tomorrow, July 28" in advance of the Court's July 29, 2026 discovery conference. Seddio did not respond. Plaintiffs again requested Seddio's position on Thursday, August 6. Seddio's counsel did not respond. Plaintiffs for a third time requested Seddio's position yesterday, August 10, and requested that Seddio respond "by 1pm so we can supplement the joint status report if necessary." Still Seddio did not respond. When Plaintiffs contacted Seddio's counsel for a fourth time today, Seddio finally responded as follows: "I'm deferring to Vinny [Miletti] on this issue as the AT&T issue is something that occurred before my retention." After receiving Seddio's position today, Plaintiffs provided a draft of the instant joint status report to counsel for Seddio and Rubin at 5:30pm and requested that it be returned with their positions this evening for filing. Counsel for Rubin promptly provided his position, and even provided revisions to his position later in the evening before the instant filing. Counsel for Seddio also promptly responded to Plaintiffs, but declined to provide his position, stating that he would only do so in the morning. Pursuant to the Court's July 29, 2026 instruction, Plaintiffs have sought to ensure this issue is timely before the Court for tomorrow's conference by repeatedly seeking Seddio's position over the past two weeks. Should Seddio in fact wish to provide his position in the morning, Plaintiffs have no objection to his doing so.

**B.    Rubin's Shifting Responses to Plaintiffs' Interrogatory Nos. 1 and 2**

As to the pending dispute with Rubin, *see* ECF No. 161 at 2 & 5, Plaintiffs' Interrogatory No. 1 seeks the identification all corporate entities in which Rubin has held any direct or indirect ownership interest, or any management role. In his second supplemental responses to Interrogatory No. 1, dated June 25, 2026, Rubin disclosed his 50% ownership of Lexington Avenue Associates LLC, which is purportedly 50% owned by Rubin's wife. Rubin described Lexington Avenue Associates LLC "as a holding company through which [Rubin] holds his real property interests." In his fifth supplemental response to Interrogatory No. 1, dated July 21, 2026, Rubin stated, under oath, that "Lexington Avenue Associates LLC is the sole 100% member" of 287 Prop LLC, which "holds fee title to the real property at 287, 289, and 299 McGuinness Boulevard, Brooklyn, New York."

2

That statement is false. In response to an inquiry from Plaintiffs, Rubin's counsel represented, in an email dated July 28, 2026, that "287 Prop LLC, to [Rubin's] recollection, was set up as a wholly owned subsidiary of Lexington Avenue Associates [LLC] … from inception." After Plaintiffs' counsel shared evidence to the contrary, Rubin's counsel confirmed that Rubin's prior sworn statements, and his counsel's related representations, were inaccurate. In an email dated July 29, 2026, Rubin's counsel stated that "Rubin is currently identified on the operative Operating Agreement, the CP-575 EIN letter, the recorded mortgage note, and other corporate records of 287 Prop LLC as the entity's sole member of record. That has been the case since the entity's formation in February 2025 and remains the case today." Rubin's counsel contended that "the point [Rubin's] Fifth Supplemental Response was making" was that Rubin "intends, consistent with his prior practice as to other disregarded entities, to report 287 Prop LLC's operations on the 2025 federal return of Lexington Avenue Associates LLC." But there is simply no universe in which "100% owner" can be construed to mean "non-owner reporting entity for tax purposes."

While Rubin's counsel committed to serving a *sixth* supplemental response to correct this sworn misstatement about Rubin's direct ownership of 287 Prop LLC, two issues remain. First, Rubin's counsel claims that, because "Rubin is currently traveling," he is somehow "unavailable to execute a verification under Fed. R. Civ. P. 33(b)(3) and 28 U.S.C. § 1746 until his return" at the end of August. But Section 1746(1) expressly provides for unsworn declarations under penalty of perjury "executed without the United States." Second, the shifting sands of Rubin's and his counsel's representations about 287 Prop LLC call into question the accuracy of Rubin's other disclosures about his assets and further underscore the need for fulsome discovery into Rubin's finances, which Rubin has thus far resisted.[2]

## II.     Defendant Rubin's Position

Plaintiffs' position fundamentally overstates what is actually before the Court. There is one dispute: whether one Brooklyn real-estate-holding LLC (287 Prop LLC) is properly characterized in Rubin's Fifth Supplemental Response to Interrogatory No. 1 as an entity in which Rubin holds a *direct* sole-member interest (a corporate-law fact) or an *indirect* interest held through his previously-disclosed 50%-owned Lexington Avenue Associates LLC (a federal-tax-reporting fact). Rubin holds a controlling interest under *either* characterization; the property is his to control either way; his sworn identification of it in the Fifth Supplemental Response gave Plaintiffs exactly the information Interrogatory No. 1 asks for. His Sixth Supplemental Response, which will follow upon his return at the end of August 2026, will unify both facts in a single verified response. This dispute does not warrant the Court's intervention on the merits and, as set forth in the final paragraph below, cannot fairly be used as an in-road to reopen closed discovery on subjects Plaintiffs abandoned during the discovery period.

---

[2] Separately, Plaintiffs note that, on June 24, 2026, Rubin delivered to Plaintiffs a cell phone that he believed had been destroyed due to water damage. *See* ECF No. 72, at 4. On August 11, 2026, Plaintiffs notified Rubin that they had engaged FTI Consulting Technology LLC to work on attempting to repair and recover data from Rubin's cell phone. Plaintiffs will provide an update if and when they are able to recover any such data.

**Rubin's supplementation has already gone well beyond what the parties' April 16, 2026 agreement required.** The parties' April 16, 2026 agreement limited Rubin's response to Interrogatory No. 1 to entities in which Rubin holds a *controlling ownership interest*. Rubin's four supplementations to Interrogatory No. 1 have disclosed his four controlling-interest parent entities *plus* subsidiaries of those entities *plus* IRA-held vehicles *plus* other indirect interests — none of which the parties' agreement required Rubin to disclose. Rubin supplemented for completeness and out of cooperation, and 287 Prop LLC itself appears in Rubin's Fifth Supplemental Response *because Rubin voluntarily disclosed it* — not because Plaintiffs asked. Plaintiffs may not fairly convert Rubin's voluntary transparency into rhetorical grounds for sanctions-adjacent characterizations ("false statement," "shifting sands," "sworn misstatement") or into a runway for expanded discovery Plaintiffs did not seek during the discovery period.

**The Fifth Supplemental Response is not a "false statement."** Plaintiffs assert that "there is simply no universe" in which describing 287 Prop LLC as a wholly-owned "subsidiary" of Lexington Avenue Associates LLC can be reconciled with the corporate records identifying Rubin as sole member of record. In fact, this is elementary federal-income-tax practice: a single-member LLC is treated as *disregarded* from its owner under Treasury Regulation § 301.7701-3, and it is entirely standard for the owning entity — here Lexington Avenue Associates LLC, on whose 2025 federal return Rubin intends to report 287 Prop LLC's operations — to be described as the SMLLC's "parent" or "reporting entity." Rubin's counsel candidly acknowledged in the July 28, 2026 email that the Fifth Supplemental Response's language conflated Rubin's *intended tax reporting treatment* with the *current corporate-law identity of the member of record*, and undertook to serve a Sixth Supplemental Response clarifying the distinction. That is FRCP 26(e)(1)(A) doing what it is designed to do. It is not sanctionable conduct and does not implicate Rubin's credibility on any other disclosure.

287 Prop LLC has no connection to the Escrow Deposits or to any transaction pleaded in Plaintiffs' Complaint, and Plaintiffs had ample opportunity to inquire about it during discovery. 287 Prop LLC was formed in February 2025 for a specific Brooklyn real-estate acquisition unrelated to the Surf 9 escrow, unrelated to Plaintiffs' claims, and unrelated to the transactions among Sprei, Graubard, Seddio, and Frankl that form the basis of the Complaint. The corporate records for the entity — the Operating Agreement, the CP-575 EIN letter, the mortgage note recorded with the NYC Department of Finance, and the Assignment referenced in Plaintiffs' JSR — were produced by Rubin in the ordinary course of his May 18, 2026 and June 30, 2026 productions, and Plaintiffs had those records well in advance of Rubin's June 11, 2026 deposition. Contrary to Plaintiffs' framing that they "were unable to inquire about that interest during Mr. Rubin's deposition last month," Plaintiffs' counsel *did* inquire. At Volume 1, transcript page 121, Ms. DeLucia expressly asked Mr. Rubin: "Do you have a deal with a number that includes 287 in the entity name?" Mr. Rubin's sworn answer was: "I own a property called 287 — McGuinness Avenue." Tr. 121:19–23. That June 11, 2026 deposition testimony is consistent with the corporate-law record (Mr. Rubin as sole member of 287 Prop LLC) and consistent with the position Mr. Rubin's Sixth Supplemental Response will confirm. Any inconsistency with the Fifth Supplemental Response's tax-reporting-treatment description is being corrected precisely because the deposition testimony and the corporate records are, and always have been, aligned. Plaintiffs, having posed the question at deposition and having received a responsive answer identifying Mr. Rubin's personal ownership of the property, cannot now claim they were denied the opportunity to inquire. And Plaintiffs propounded no

4

follow-up interrogatory or Rule 34 request directed at Brooklyn real-estate holdings and made no motion to compel any additional information about the entity during the discovery period.

The Sixth Supplemental Response's timing is reasonable and Plaintiffs' Section 1746(1) argument misstates our position. Rubin's counsel has not represented that Rubin is "out of the country" — Plaintiffs' counsel has read that in on its own. Rubin is traveling, and as a matter of practice does not execute sworn interrogatory responses under electronic-execution conditions at all. This case makes clear why: the Plaintiffs entire complaint is about an alleged electronic signature of Mr Rubin. Rubin will not change his long-standing practice. No deadline in this action depends on Rubin's Sixth Supplemental Response, its substantive content is already set forth in Rubin's counsel's July 28, 2026 email to Plaintiffs, and Rubin's counsel offered — and Plaintiffs declined — to memorialize the substance of that response in an interim written stipulation or joint letter to the Court while the verified Sixth Supplemental is being prepared. Plaintiffs' invocation of 28 U.S.C. § 1746(1)'s permissive language regarding out-of-country execution of *unsworn* declarations does not require Rubin to short-circuit his careful review of the corporate record on Plaintiffs' preferred schedule.

Plaintiffs' broader request for "fulsome discovery into Rubin's finances" is an untimely — and previously abandoned — attempt to reopen closed discovery on a subject Plaintiffs knew was in impasse. This is the core issue underlying the entire dispute. Fact discovery closed on June 30, 2026. The Court has never ruled that pre-judgment financial or asset discovery is available in this action against Rubin, no party has moved for such an order, and, as this Court is aware from the parties' repeated meet-and-confer submissions, the parties reached — and repeatedly memorialized — an impasse on that very question during discovery. Plaintiffs moved on the bank-records issues within discovery; they conspicuously *did not* move on the broader asset-discovery question, notwithstanding that the impasse was fully known to them for months. Under settled Second Circuit and Southern/Eastern District of New York practice, general pre-judgment discovery into a defendant's financial condition is not permitted absent a specific showing of relevance to a claim, a defense, or a provisional remedy. *See, e.g., Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990) (financial-worth discovery is generally impermissible pre-judgment absent a showing of specific relevance to a substantive issue); *Sequa Corp. v. Gelmin*, No. 91 Civ. 8675 (DAB) (JCF), 1995 WL 404726, at *2 (S.D.N.Y. July 6, 1995) (same). Plaintiffs have made no such showing against Rubin here. Plaintiffs cannot fairly leverage a single tax-vs.-corporate-law characterization dispute — over a Brooklyn real-estate holding LLC unrelated to any claim or defense in this action — into a wholesale reopening of an issue that was in impasse during discovery, was not the subject of a timely motion, is not pending before the Court, and would not be granted on the record before the Court if it were. The suggestion in Plaintiffs' JSR that Rubin's Rule 26(e) supplementation to Interrogatory No. 1 has somehow reopened this settled boundary should be firmly rejected.

Rubin respectfully requests that the Court permit Rubin to serve his Sixth Supplemental Response upon his return at the end of August 2026, decline to intervene further on the Interrogatory No. 1 characterization dispute, and reject Plaintiffs' effort to convert a Rule 26(e) supplementation into an in-road for the broader asset discovery that Plaintiffs did not seek during the discovery period, that is not before the Court, and that under Second Circuit doctrine is not available on the present record.

\*      \*      \*

The parties appreciate the Court's attention to this matter.


Dated:  August 11, 2026

/s/ Lauren Zimmerman

Lauren J. Zimmerman
Eileen DeLucia
Babak Ghafarzade
BENESCH FRIEDLANDER COPLAN &
ARONOFF LLP
1155 Avenue of the Americas, Floor 26
New York, NY 10036
Tel: (646) 356-6023
lzimmerman@beneschlaw.com
edelucia@beneschlaw.com
bghafarzade@beneschlaw.com


Jennifer M. Selendy
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY  10104
Tel: 212-390-9000
jselendy@selendygay.com


*Attorneys for Plaintiffs Angelos Metaxas and
Pertshire Investments LP*

/s/ Mordy Gross

Mordy Gross
LAW OFFICES OF MORDY GROSS LLC
18 Broadway Ste 10612
Albany, NY 12207
484-680-0768
Mg@mordygross.com


*Attorney for Defendant Jonathan Rubin*