Benesch

Lauren Zimmerman
1155 Avenue of the Americas, Floor 26
New York, New York 10036
Direct Dial: 646.356.6023
Fax: 646.755.3397
lzimmerman@beneschlaw.com

August 26, 2026

Via ECF

Magistrate Judge Peggy Cross-Goldenberg
United States District Court
Eastern District of New York
225 Cadman Plaza East, Room 1230
Brooklyn, New York 11201

Re: *Metaxas et al. v. Graubard et al.*, No. 25-cv-05844 (EK) (PCG)

Dear Judge Cross-Goldenberg:

Plaintiffs respectfully submit this response to the letter motion for a discovery conference and supplemental letter filed yesterday by Defendant Jonathan Rubin ("Rubin"). ECF Nos. 190–191. This is the second time this month that Rubin has made a unilateral discovery motion that not only omits Plaintiffs' position but also misrepresents Plaintiffs' communications about the issue.[1] Rubin's repeated violation of this Court's clear rules for discovery motion practice is inappropriately multiplying these proceedings and inflicting undue costs on Plaintiffs, who were required yesterday (as they were on August 13 and 14) to review multiple inaccurate filings by Rubin, correspond with him throughout the day, and re-draft their position to address Rubin's shifting filings.[2] This conduct needs to stop, and Plaintiffs reserve all rights to seek appropriate relief, including under Rule 37.

A. Background of Rubin's Refusal to Retrieve and Review the Data from His Phone

Rubin's latest motions concern his limited-feature cellular phone[3] (the "Phone"), which after failing to timely respond to Plaintiffs' January 2026 document requests, ECF No. 50, at 3–4, in March 2026 Rubin claimed for the first time he had dropped "in the toilet" in August 2025—shortly after Rubin claims to have first become aware of the underlying sham state court action (the "State Court Action") in this matter and after the forced recusal of the second assigned judge, who had been poised to issue contempt sanctions at the end of July 2025. *See* Am. Compl. ¶¶ 175–186. *See* Rubin Ex. F-2. Based on this claim, Rubin took the position that he could not produce any documents or communications responsive to Plaintiffs' discovery requests from the Phone he

[1] *See* ECF No. 182 (Rubin admitting that the discovery motion he filed jointly with Defendant Frank Seddio the prior evening contained inaccurate representations about Plaintiffs' communications and inappropriately omitted Plaintiffs' position due to a self-created "compressed timeline").

[2] Highlighting the inefficiency and confusion caused by Rubin's rush to shoot first and ask questions later, Rubin responded to his first motion (ECF No. 190) an hour after he filed it to note his "regrets" for overlooking an email Plaintiffs sent him before his first filing that mooted several of the issues raised in his motion. *See* ECF No. 191.

[3] The Phone was manufactured by Fig and held out as a Kosher "[c]ustomized operating mobile device developed to maximize efficiency without compromising religious standards." *See* www.kosherfig.com.

utilized during the majority of the relevant period and which was his primary mode of communicating with Defendant Yeschiel Shimon "Sam" Sprei ("Sprei").

In response to this representation, Plaintiffs repeatedly requested that Rubin bring the Phone to a certified technician to confirm that the data was in fact irretrievable. Rubin refused and now concedes that, after Plaintiffs provided him with a proposed joint letter motion to the Court seeking relief for this refusal, "[r]ather than litigate the question, [he] offered to surrender the [phone] so that Plaintiffs could attempt recovery at their own expense." ECF No. 190, at 2. *At no point before handing over his Phone did Rubin ever request, let alone require, that Plaintiffs commit to having their vendor segregate and sequester any materials for his first-line review or even execute Exhibit A to the Confidentiality Order.*

Plaintiffs received the Phone from Rubin on June 25, 2026, and subsequently engaged FTI Consulting Technology LLC ("FTI") merely to attempt to obtain and transmit to Plaintiffs a forensic image of the Phone's data at which point they could review and produce the materials, if any, to all Defendants. *See* ECF No. 177, at 3 n.2. After Plaintiffs informed Rubin of their engagement of FTI on August 11, Rubin demanded, *for the first time*, that Plaintiffs obtain FTI's undertaking to abide by the Confidentiality Order (ECF No. 66) and direct FTI to identify and sequester potentially privileged communications based on unspecified "indicia-based" criteria.

While Plaintiffs do not agree that FTI has any obligation to execute Exhibit A to the Confidentiality Order—since Plaintiffs engaged FTI solely to extract and transmit to them a forensic image of the Phone, not to review any discovery materials—in an effort at compromise, Plaintiffs told Rubin at 9:32 a.m. yesterday that they would obtain and provide to him FTI's signed agreement and methodology, which they did at 1:38 p.m. and 4:52 p.m. yesterday, respectively. Despite Plaintiffs' 9:32am representations, Rubin filed his letter motion *over two hours later* and chose to completely *omit these key facts*, which resolved and mooted Items 1 and 2 from Rubin's first motion of the day, *see* ECF No. 190, at 3.[4]

---

[4] Rubin confirmed both issues were mooted via email at 5:40 p.m. yesterday. In that same email, Rubin requested confirmation whether FTI had not yet obtained a forensic image and report of the Phone's contents. Rubin represented that, if FTI had not done so, his "Item 3," concerning the speed with which such materials would be transmitted to him, was "moot and [Rubin would] withdraw it." By email this morning, Plaintiffs confirmed that, to their knowledge, FTI has not yet extracted any forensic image of the Phone's data, and Plaintiffs reiterated their repeated commitment to producing any such data reasonably promptly if and when FTI transmits it to Plaintiffs. Based on that correspondence, Plaintiffs believe Issue 3 has been resolved.

In the event Rubin continues to press for Plaintiffs' "contemporaneous" transmission, that would be impracticable because Plaintiffs have to process and Bates stamp any materials received from FTI before producing them, and Plaintiffs have committed to doing so reasonably promptly. That is how all prior productions, from all parties, have worked to date, and Rubin offers no good reason why these materials should be treated any differently. Plaintiffs note that they already produced to Rubin yesterday the two videos referenced in Rubin's filings of yesterday. Plaintiffs will promptly produce those videos to the co-Defendants and will produce any additional materials reasonably promptly after receiving them.

B. Rubin Demands That Plaintiffs Do (More of) the Work He Refused to Do

Since Rubin has withdrawn his Items 3 and 5, ECF No. 191; n. 4 *supra*, the only issue that remains in dispute is Rubin's untenable eleventh-hour demand that Plaintiffs compel FTI to somehow "sequester" any item bearing what he calls "privilege indicia" and first provide such materials to Rubin for his own review. ECF No. 190, at 3 (Item 4). As Plaintiffs have repeatedly made clear to Rubin, acceding to that demand would impose undue costs and delays on Plaintiffs and be in complete contradiction of the terms and spirit of the agreement Plaintiffs made with Rubin in June, which allowed him to "surrender" his own discovery obligations to Plaintiffs and avoid motion practice regarding same—terms he has now clearly violated.

As the parties agreed, Plaintiffs engaged FTI solely to attempt a forensic extraction and imaging of the phone's data; satisfying Rubin's completely new demand that FTI first upload the materials to its own database, run searches across such data, and then review and isolate certain materials for Rubin to review before Plaintiffs is patently absurd as it would force Plaintiffs to completely change the scope and nature of the work for which they engaged FTI, and transform FTI's engagement from a simple data extraction to a full-scale e-discovery review and production process. This is not remotely what Plaintiffs agreed in exchange for allowing Rubin to abdicate his responsibility to retrieve the Phone data and produce the responsive materials it contained. Rubin's new position—that Plaintiffs agreed to take on the burden and expense of hiring and working with a certified vendor, repairing the Phone, and retrieving its data, only to hand the data back to Rubin at no expense is nonsensical and would amount to Plaintiffs effectively serving as Rubin's agents. Doing so would also force Plaintiffs to shoulder significant *additional* costs for FTI to process and host the extracted data on a newly-created review platform, run Rubin's proposed "indicia" as search terms across the database, and process any productions from it.

In terms of any claimed waiver or privacy concerns, there are none. Rubin *conspicuously omitted* from his both his letters yesterday that Plaintiffs *already agreed that the Confidentiality Order will apply* in the first instance to all Phone data they retrieve and that Rubin's clawback rights remain intact. Rubin argues that a clawback under Federal Rule of Civil Procedure 26(b)(5)(B) "is a remedy after disclosure, not a substitute for avoiding it," but that ship already sailed when Rubin chose to produce the entire Phone, with its data, over to Plaintiffs to inspect rather than perform that work himself. Plaintiffs should not be expected to do more of Rubin's work for him, and demanding that a forensic-imaging vendor like FTI conduct what amounts to a first-line privilege review is not only impractical (if not impossible) but would exponentially increase Plaintiffs' costs and cause undue delays and in this already-delayed discovery process. Rubin notes that the Court has not entered a clawback order under Federal Rule of Evidence 502(d), but that is only because he has not requested one, which Plaintiffs already informed him they would not oppose. Because there is no risk of inadvertent waiver by Rubin, his motion should be denied.

C. Rubin Has Made False Representations About the Phone

One final point about Rubin's lack of candor with Plaintiffs and the Court regarding the Phone. Rubin declared under oath, in a declaration his counsel has submitted to the Court, that the Phone "ceased to function" as of August 20, 2025, and he was "no longer able to power on the

[Phone], access its contents, or use it to send or receive communications" afterward. Rubin Ex. F-2. As a result, he claimed, pre-August 20, 2025 communications could not be recovered from the Phone, and the Phone could not contain any post-August 20, 2025 communications.

The FTI videos that have now been produced to Rubin, however, prove the falsity of both representations. Specifically, one of the two videos provided by FTI—"a recording 2:14 in length of a technician scrolling the [phones] call history," ECF No. 191—shows that ***Rubin used the Phone repeatedly after August 20, 2025***, when he claims it became inoperable, including as recently as January 2026. This indicates that Rubin apparently made false statements about both his inability to access the Phone's pre-August 20, 2025 communications and the non-existence of post-August 20, 2025 communications on the Phone, and Plaintiffs have only now begun to learn the truth after his deposition and only after spending considerable time and money to investigate the issue. This evidence helps explain why Rubin is now fighting so hard to hinder and obstruct Plaintiffs' ability to extract the Phone's data. Plaintiffs reserve all rights to seek appropriate sanctions, including fee-shifting and adverse inferences, based on this misconduct as well.

Respectfully submitted,

BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP

*/s/ Lauren Zimmerman*

Lauren J. Zimmerman

Cc: All Counsel via ECF